**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AMERICAN BROADCASTING COMPANIES, INC., DISNEY ENTERPRISES, INC., TWENTIETH CENTURY FOX FILM CORPORATION, CBS BROADCASTING INC., CBS STUDIOS INC., FOX TELEVISION STATIONS, LLC, FOX BROADCASTING COMPANY, LLC, NBCUNIVERSAL MEDIA, LLC, UNIVERSAL TELEVISION LLC, and OPEN 4 BUSINESS PRODUCTIONS, LLC,<br><br>        Plaintiffs,<br><br>   v.<br><br>DAVID R. GOODFRIEND and SPORTS FANS COALITION NY, INC.,<br><br>        Defendants. | No. 19-CV-7136 (LLS)<br><br>**ORAL ARGUMENT REQUESTED** |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'/COUNTERCLAIM DEFENDANTS'**
**MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS**

Gerson A. Zweifach
Thomas G. Hentoff (*pro hac vice*)
Joseph M. Terry (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005

650 Fifth Avenue
Suite 1500
New York, NY 10019

Tel: (202) 434-5000
Fax: (202) 434-5029
gzweifach@wc.com
thentoff@wc.com
jterry@wc.com

*Attorneys for All Plaintiffs/Counterclaim Defendants*

Dated October 28, 2019

Paul D. Clement (*pro hac vice*)
Erin E. Murphy (*pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004

Tel: (202) 389-5000
Fax: (202) 389-5200
paul.clement@kirkland.com
erin.murphy@kirkland.com

*Attorneys for Plaintiffs/Counterclaim
Defendants Fox Television Stations, LLC
and Fox Broadcasting Company, LLC*

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................1

BACKGROUND ............................................................................................................4

    A.    Locast Retransmits the Broadcast Companies' Copyrighted Programming Without a License. ..............................................................................................4

    B.    The Broadcast Companies File a Complaint and Locast Files Counterclaims. ....................................................................................................5

        1.    Locast Alleges Conspiracy To Limit "Practical Access" to Signals. ..........6

        2.    Locast Alleges Conspiracy To Make Exclusionary Threats.......................6

        3.    Locast Alleges Conspiracy To Bring Sham Litigation. ..............................7

ARGUMENT .................................................................................................................7

I.    LOCAST FAILS TO STATE A CLAIM UNDER THE SHERMAN ACT. ....................8

    A.    The "Signal Strength" Conspiracy Allegations Fail To State a Claim. .................9

    B.    The "Exclusionary Threats" Conspiracy Allegations Fail To State a Claim.........14

    C.    The "Sham Litigation" Allegations Fail To State a Claim. ...................................17

II.    LOCAST FAILS TO STATE A TORTIOUS INTERFERENCE CLAIM. ......................27

    A.    Locast Fails To Allege the Broadcast Companies Acted Solely Out of Malice or Used Improper Means. .........................................................................27

    B.    Locast Fails To Allege Plaintiffs Interfered Directly with a Third Party. ............29

III.    LOCAST'S REMAINING STATE LAW CLAIMS MUST ALSO BE DISMISSED. ................................................................................................................30

    A.    *Noerr-Pennington* Forecloses the State Law Claims Predicated on "Sham Litigation." ..........................................................................................................31

    B.    The Donnelly Act Claim Fails for the Same Reasons as the Sherman Act Claim.......................................................................................................................32

    C.    Locast Fails To State a Claim Under the N.Y. Deceptive Practices Act. ..............33

1.      Locast Fails To Allege Deceptive or Materially Misleading
        Conduct as to Consumers..........................................................................33

2.      Locast Has Not Been Injured by Alleged Limitation of "Practical
        Access" to Signals.....................................................................................34

3.      The Alleged "Exclusionary Threats" Are Not Consumer-Oriented. .........34

D.      Locast Fails To State a Claim for Unfair Competition Under California
        Law. ..........................................................................................................35

1.      Locast Fails To Allege Facts Sufficient to Invoke California's
        Unfair Competition Law. ...........................................................................35

2.      The UCL Claim Based on the Sherman Act Claim Fails for the
        Same Reasons. ...........................................................................................36

3.      The UCL Claim Premised on Tortious Interference Fails for the
        Same Reasons. ...........................................................................................36

4.      Defendants' Conclusory Mention of Copyright Misuse Is
        Insufficient. ...............................................................................................37

CONCLUSION...................................................................................................................37

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Adobe Sys. Inc. v. Norwood*, 2011 WL 2650945 (N.D. Cal. July 6, 2011) ...................................37

*Agfa Corp. v. United Mktg. Grp., Inc.*, 2003 WL 21555087 (S.D.N.Y. July 10, 2003) ..........................................................................................................................19

*Am. Broad. Cos., Inc. v. Aereo, Inc.*, 874 F. Supp. 2d 373 (S.D.N.Y. 2012), *aff'd sub nom. WNET, Thirteen v. Aereo, Inc.*, 712 F.3d 676 (2d Cir. 2013), *rev'd and remanded sub nom. Am. Broad. Cos., Inc. v. Aereo, Inc.*, 573 U.S. 431 (2014). ...............................................................................................................21

*Am. Broad. Cos., Inc. v. Aereo, Inc.*, 573 U.S. 431 (2014).................................................. passim

*Arista Records LLC v. Lime Grp.*, 532 F. Supp. 2d 556 (S.D.N.Y. 2007) ..............................13, 16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)..................................................................................8, 17

*AstraZeneca AB v. Mylan Labs., Inc.*, 2010 WL 2079722 (S.D.N.Y. May 19, 2010), *aff'd per curiam*, 412 F. App'x 297 (Fed. Cir. 2011)............................................18, 19

*Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328 (1990)....................................................13

*BDCM Fund Adviser, L.L.C. v. Zenni*, 103 A.D. 3d 475 (N.Y. App. Div. 2013) ........................30

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................................. passim

*Bio-Tech. Gen. Corp. v. Genentech, Inc.*, 886 F. Supp. 377 (S.D.N.Y. 1995), *aff'd*, 267 F.3d 1325 (Fed. Cir. 2001) ...............................................................................18, 19

*Black Radio Network, Inc. v. NYNEX Corp.*, 2000 WL 64874 (S.D.N.Y. 2000).........................29

*Breville Pty Ltd. v. Storebound LLC*, 2013 WL 1758742 (N.D. Cal. Apr. 24, 2013) ........................................................................................................................31

*Burns Jackson Miller Summit & Spitzer v. Lindner*, 88 A.D. 2d 50 (N.Y. App. Div. 1982), *aff'd*, 451 N.E.2d 459 (N.Y. 1983)........................................................30

*Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508 (1972)..........................................18

*Carvel Corp. v. Noonan*, 350 F.3d 6 (2d Cir. 2003).........................................................27, 28, 29

*Carvel Corp. v. Noonan*, 818 N.E.2d 1100 (N.Y. 2004) ........................................................27, 28

*CBS Broad. Inc. v. FilmOn.com, Inc.*, 814 F.3d 91 (2d Cir. 2016) ...............................................20

*Cenedella v. Metro. Museum of Art*, 348 F. Supp. 3d 346 (S.D.N.Y. 2018) ..........................10, 16

*Chladek v. Verizon N.Y. Inc.*, 2003 WL 21305347 (S.D.N.Y. June 6, 2003), *aff'd*,
    96 F. App'x 19 (2d Cir. 2004) ........................................................................................32

*City of San Jose v. Office of Comm'r of Baseball*, 776 F.3d 686 (9th Cir. 2015) ......................36

*Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408 (2d Cir. 2005)......................................8, 13

*Design Basics, LLC v. Chelsea Lumber Co.*, 2013 WL 3471142 (E.D. Mich. July
    10, 2013) ..........................................................................................................................26

*DIRECTV, Inc. v. Rayborn*, 2003 WL 23200248 (W.D. Mich. Oct. 20, 2003)...........................19

*Disney Enters., Inc. v. VidAngel, Inc.*, 2017 WL 6883685 (C.D. Cal. Aug. 10,
    2017) ................................................................................................................................36

*Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848 (9th Cir. 2017)..........................................21

*Doron Precision Sys., Inc. v. FAAC, Inc.*, 423 F. Supp. 2d 173 (S.D.N.Y. 2006) ..............3, 17, 33

*Dunham v. Covidien LP*, 2019 WL 2461806 (S.D.N.Y. May 22, 2019)......................................34

*Dushane v. Leeds Hose Co. #1 Inc.*, 2016 WL 9415489 (N.D.N.Y. Feb. 22, 2016)...................26

*Ellis v. Tribune Television Co.*, 443 F.3d 71 (2d Cir. 2006)........................................................11

*Erdman Techs. Corp. v. US Sprint Commc'ns Co.*, 1992 WL 77540 (S.D.N.Y.
    Apr. 9, 1992) ....................................................................................................................10

*Fonar Corp. v. Magnetic Resonance Plus, Inc.*, 957 F. Supp. 477 (S.D.N.Y. 1997)..................29

*Fox Television Stations, Inc. v. Aereokiller, LLC*, 851 F.3d 1002 (9th Cir. 2017).......................20

*Friends of Rockland Shelter Animals, Inc. v. Mullen*, 313 F. Supp. 2d 339
    (S.D.N.Y. 2004)..........................................................................................................31, 32

*G.K.A. Beverage Corp. v. Honickman*, 55 F.3d 762 (2d Cir. 1995).............................................13

*Gatt Commc'ns, Inc. v. PMC Assocs., L.L.C.*, 711 F.3d 68 (2d Cir. 2013).....................13, 32, 33

*Gronowski v. Spencer*, 424 F.3d 285 (2d Cir. 2005) ...................................................................26

*Gross v. Symantec Corp.*, 2012 WL 3116158 (N.D. Cal. July 31, 2012)...............................35, 36

*Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 277 F. Supp. 2d 269 (S.D.N.Y. 2003) ...................35

*Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 331 F. Supp. 3d 221 (S.D.N.Y. 2018) ................................................................................. 30

*Hanover 3201 Realty, LLC v. Vill. Supermarkets, Inc.*, 806 F.3d 162 (3d Cir. 2015) ................................................................................................. 18

*Hibbs v. Winn*, 542 U.S. 88 (2004) ............................................................. 23

*In re Elysium Health-Chromadex Litig.*, 354 F. Supp. 3d 330 (S.D.N.Y. 2019) .................... 18, 19

*In re GSE Bonds Antitrust Litig.*, __ F. Supp. 3d __, 2019 WL 4071070 (S.D.N.Y. Aug. 29, 2019) ..................................................................................... 14, 15

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 383 F. Supp. 3d 187 (S.D.N.Y. 2019) ...................................................................... 8, 19

*In re Sling Media Slingbox Advert. Litig.*, 202 F. Supp. 3d 352 (S.D.N.Y. 2016) ................ 33, 34

*Ingels v. Westwood One Broad. Servs., Inc.*, 28 Cal. Rptr. 3d 933 (Cal. Ct. App. 2005) ................................................................................................. 36

*Int'l Longshore & Warehouse Union v. ICTSI Or., Inc.*, 863 F.3d 1178 (9th Cir. 2017), *cert denied*, 138 S. Ct. 1262 (2018) ............................................. 18

*JMK USA Enters., Inc. v. Glob. Mail, Inc.*, 2010 WL 11404591 (C.D. Cal. May 28, 2010) ................................................................................................ 36

*John Wiley & Sons, Inc. v. Shumacher*, 2010 WL 103886 (S.D.N.Y. Jan. 4, 2010) ................ 37

*Kamchi v. Weissman*, 125 A.D. 3d 142 (N.Y. App. Div. 2014) ........................................ 27

*Kirch v. Liberty Media Corp.*, 449 F.3d 388 (2d Cir. 2006) ........................................ 27, 28

*Kramer v. Pollock-Krasner Found.*, 890 F. Supp. 250 (S.D.N.Y. 1995) ............................ 27, 33

*Krantz v. BT Visual Images, L.L.C.*, 107 Cal. Rptr. 2d 209 (Cal. Ct. App. 4th 2001), *as modified* (May 22, 2001) ................................................................ 36

*Lava Records, LLC v. Amurao*, 354 F. App'x 461 (2d Cir. 2009) .................................... 37

*LiveUniverse, Inc. v. MySpace, Inc.*, 304 F. App'x 554 (9th Cir. 2008) ........................... 36

*LLM Bar Exam, LLC v. Barbri, Inc.*, 271 F. Supp. 3d 547 (S.D.N.Y. 2017), *aff'd per curiam*, 922 F.3d 136 (2d Cir. 2019) ...................................................... 16

*Lokai Holdings LLC v. Twin Tiger USA LLC*, 306 F. Supp. 3d 629 (S.D.N.Y. 2018) .................................................................................... 34, 35

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ................................................................7, 8, 12

*Marotte v. City of New York*, 2019 WL 1533304 (S.D.N.Y. Feb. 7, 2019), *and report and recommendation adopted*, 2019 WL 1033798 (S.D.N.Y. Mar. 5, 2019) ............................................................................................................................12

*Mathirampuzha v. Potter*, 548 F.3d 70 (2d Cir. 2008) ....................................................11

*Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129 (2d Cir. 2013) .....................7, 14

*Music Ctr. S.N.C. Di Luciano Pisoni & C. v. Prestini Musical Instruments Corp.*, 874 F. Supp. 543 (E.D.N.Y. 1995) ..........................................................................32

*N.F.L. v. Insight Telecomms. Corp.*, 158 F. Supp. 2d 124 (D. Mass. 2001)...................21

*Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580 (C.D. Cal. 2008)............................35

*Perez v. B. Braun Med., Inc.*, 2018 WL 2316334 (S.D.N.Y. May 9, 2018)...................34

*Pfizer Inc. v. Sachs*, 652 F. Supp. 2d 512 (S.D.N.Y. 2009).........................................34

*Piccoli A/S v. Calvin Klein Jeanswear Co.*, 19 F. Supp. 2d 157 (S.D.N.Y. 1998)......................29

*Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117 (2d Cir. 2007) ............................13

*Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus.*, 508 U.S. 49 (1993) .................18, 19

*Radiancy, Inc. v. Viatek Consumer Prods. Grp.*, 138 F. Supp. 3d 303 (S.D.N.Y. 2014) ......................................................................................................................18, 21

*Schaffer v. Clinton*, 240 F.3d 878 (10th Cir. 2001) ......................................................12

*Sharma v. Skaarup Ship Mgmt. Corp.*, 699 F. Supp. 440 (S.D.N.Y. 1988), *aff'd*, 916 F.2d 820 (2d Cir. 1990).....................................................................................28

*Shetiwy v. Midland Credit Mgmt.*, 980 F. Supp. 2d 461 (S.D.N.Y. 2013) ...................19

*Singh v. NYCTL 2009-A Tr.*, 2016 WL 3962009 (S.D.N.Y. July 20, 2016), *aff'd*, 683 F. App'x 76 (2d Cir. 2017) .............................................................................31

*Sola Elec. Co. v. Jefferson Elec. Co.*, 317 U.S. 173 (1942).........................................26

*Sonterra Capital Master Fund Ltd. v. Credit Suisse Grp. AG*, 277 F. Supp. 3d 521 (S.D.N.Y. 2017)...............................................................................................12, 16

*Standfacts Credit Servs., Inc. v. Experian Info. Sols., Inc.*, 405 F. Supp. 2d 1141, 1148 (C.D. Cal. 2005)............................................................................................35

*Starr v. Sony BMG Music Entm't*, 592 F.3d 314 (2d Cir. 2010) ...................................16

*Tasini v. AOL, Inc.*, 851 F. Supp. 2d 734 (S.D.N.Y.), *aff'd*, 505 F. App'x 45 (2d Cir. 2012) ..............................................................................................34

*Transhorn, Ltd. v. United Techs. Corp. (In re Elevator Antitrust Litig.)*, 502 F.3d 47 (2d Cir. 2007)..........................................................................8, 9, 10, 15

*United States v. Apple, Inc.*, 791 F.3d 290 (2d Cir. 2015) ..............................................14

*United States v. Gonzales*, 520 U.S. 1 (1997)................................................................23

*WPIX, Inc. v. ivi, Inc.*, 765 F. Supp. 2d 594 (S.D.N.Y. 2011), *aff'd*, 691 F.3d 275 (2d Cir. 2012)...................................................................................20, 21

*Zdenek Marek v. Old Navy (Apparel) Inc.*, 348 F. Supp. 2d 275 (S.D.N.Y. 2004)......................29

## CONSTITUTIONAL PROVISIONS, STATUTES, LEGISLATIVE MATERIALS, REGULATIONS, AND RULES

17 U.S.C. § 106(4) ..............................................................................................4

17 U.S.C. § 111(a)(5)....................................................................................... passim

47 C.F.R. pt. 73 ...............................................................................................10

Fed. R. Civ. P. 12(b)(1).........................................................................................7

Fed. R. Civ. P. 12(b)(6).........................................................................................7

H.R. Rep. 90-83 (1967)........................................................................................22

H.R. Rep. 94-1476 (1976).....................................................................................22

Cal. Bus. & Prof. Code § 17200 (West 2019) ............................................................35

N.Y. Gen. Bus. Law § 340(1) (McKinney 2019) .......................................................32

N.Y. Gen. Bus. Law § 349 (McKinney 2019)...............................................31, 33, 34

N.Y. Not-For-Profit Corp. Law § 720-a (McKinney 2019) ...................................21, 26

## OTHER AUTHORITIES

4 *William F. Patry on Copyright* § 14:71 (West 2017) ..................................................22

FCC News Release, "Broadcast Station Totals as of September 30, 2019" (Oct. 2, 2019), https://docs.fcc.gov/public/attachments/DOC-359976A1.pdf ....................................10

## INTRODUCTION

In *American Broadcast Companies, Inc. v. Aereo, Inc.*, 573 U.S. 431, 436, 446-47 (2014), the United States Supreme Court upheld the principle that the retransmission over the internet of copyrighted content that was originally broadcast for free over the air requires a license, rejecting efforts to circumvent Congress's clear intent to protect copyright holders.

Like Aereo, Defendants David Goodfriend and Sports Fans Coalition NY, Inc. (SFCNY) (collectively, "Locast") operate a service that publicly performs copyrighted content originally broadcast over the air by retransmitting it over the internet.  According to published interviews, Defendant Mr. Goodfriend, a lobbyist, designed Locast as a "thought experiment" to test the limits of *Aereo*, with every expectation that he would find himself in litigation with the plaintiff television companies that invest in the copyrighted content broadcast over their networks. Edmund Lee, *Locast, a Free App Streaming Network TV, Would Love to Get Sued*, N.Y. Times (Jan. 13, 2019), https://www.nytimes.com/2019/01/31/business/locast-streaming-free-network-tv.html.  Locast claimed to be exempt from the principles of copyright law confirmed by *Aereo* because of an exemption to the Copyright Act, 17 U.S.C. § 111(a)(5), and publicly invited this lawsuit.  *Id.*  Plaintiffs/Counterclaim Defendants ("the Broadcast Companies")[1] brought this copyright case to challenge Locast's ongoing unauthorized retransmission of their copyrighted programming in television markets covering nearly 40 million TV homes.

---

[1] Plaintiffs/Counterclaim Defendants American Broadcasting Companies, Inc., Disney Enterprises, Inc., Twentieth Century Fox Film Corporation, CBS Broadcasting Inc., CBS Studios Inc., Fox Television Stations, LLC, Fox Broadcasting Company, LLC, NBCUniversal Media, LLC, Universal Television LLC, and Open 4 Business Productions, LLC, including their affiliated companies, create, acquire, and provide television programming.  For shorthand, they are referred to herein as "the Broadcast Companies."

1

Locast responded to the Complaint with 188 paragraphs of Counterclaims accusing the Broadcast Companies of unlawfully conspiring with one another in three ways:  by purposefully limiting access to their broadcast signals; by threatening potential Locast supporters; and by seeking to intimidate Locast by filing the Complaint, which Locast has not moved to dismiss but nevertheless characterizes as a sham so objectively baseless that it falls outside the broad protection of *Noerr-Pennington* immunity.

The Broadcast Companies file this motion to dismiss in order to maintain the focus of this litigation on whether Locast fits the statutory exemption it has invoked, or is instead engaged in a wholesale violation of the Copyright Act.  This motion rests on Locast's own characterization of the facts in its Answer and Counterclaims, and on settled principles of law.

Locast's various conspiracy theories do not state a legal claim.  First, even if Locast's conclusory allegations of a conspiracy among the Broadcast Companies to restrict access to broadcast television were well pleaded, Locast has no standing to challenge the strength of television stations' broadcast signals; not only is the question of each station's coverage a matter committed by law to the Federal Communications Commission (FCC), but Locast, according to its own Counterclaims, would benefit from the alleged deficiencies in broadcast coverage, as this purportedly provides a niche for Locast to fill with its internet-based service.  Nor does Locast have standing to challenge the retransmission consent fees paid by pay-TV firms that were allegedly inflated by the signal-strength conspiracy; again, according to its Counterclaims, Locast by law has no obligation to and does not pay for the right to retransmit broadcast content. As the Answer concedes, Locast's financial patrons in the pay-TV industry do pay such fees, but they are not before the Court.

Nor do the allegations that potential partners of Locast have been intimidated by unidentified actors state a plausible claim of conspiracy.  Indeed, there is no allegation that any particular Broadcast Company conspired to say anything to any potential business partner of Locast, let alone a plausible allegation of concerted action, the touchstone of a Sherman Act Section 1 claim.  Each of the Broadcast Companies would have had every reason on its own to object to Locast's wholesale violations of its copyrights, and there is no basis for inferring a conspiracy.

Finally, Locast's allegation that this copyright infringement action is objectively baseless is not even remotely plausible.  The "extremely limited" exception to the *Noerr-Pennington* doctrine for "sham" litigation, *Doron Precision Sys., Inc. v. FAAC, Inc.*, 423 F. Supp. 2d 173, 192 n.17 (S.D.N.Y. 2006), has no place where, as the pleadings themselves reveal, Locast does not satisfy multiple elements of the statutory exemption it invokes.  Locast publicly anticipated this challenge to its effort to end-run *Aereo*, where the same counsel pleaded from the start that the Broadcast Companies' ultimately successful enforcement of their statutory rights was also copyright "misuse."  Aereo's Am. Answer & Countercl. 7, *Am. Broad. Cos., Inc. v. Aereo, Inc.*, No. 12-01540 (S.D.N.Y. Apr. 2, 2012), ECF No. 29.  The notion that this challenge to the latest effort to circumvent the Copyright Act is sham litigation is not credible.

Locast's Counterclaims are nothing more than an attempt to shift focus from Locast's wholesale infringement of the Broadcast Companies' copyrights.  Notwithstanding its public assertions that it expected this copyright suit and was eager to mount its defense, Locast has responded with antitrust, unfair competition, and tortious interference claims that are patently defective as a matter of law and designed to generate discovery burdens.

For these and the reasons explained below, these Counterclaims should be dismissed.

**BACKGROUND**

A.      **Locast Retransmits the Broadcast Companies' Copyrighted Programming Without a License.**

By Locast's own admission, the legality of its entire business rests on whether Locast satisfies a specific exemption in the Copyright Act.

The Broadcast Companies or their affiliated entities create, acquire, and provide copyrighted television programming that is broadcast to the public for free over-the-air viewing. For a variety of reasons, however, most viewers choose to access this copyrighted programming through secondary transmissions made by third party pay-TV providers, even where the content could be received over the air for free.  *See* Countercl. ¶ 41.  Locast admits that the Copyright Act requires pay-TV providers to have a license to publicly perform the Broadcast Companies' copyrighted television programming by retransmitting it to subscribers.  *See* Countercl. ¶ 45; 17 U.S.C. § 106(4).  Locast admits that it retransmits over-the-air broadcast signals carrying the Broadcast Companies' copyrighted programming over the internet without license from or payment to the Broadcast Companies or their affiliates.  *See* Answer ¶¶ 3, 7, 12(i), 12(v), 41, 56. Locast admits that its registered users access its retransmissions of the Broadcast Companies' copyrighted programming "through their internet-connected devices, including television sets, laptops, smartphones, and tablets."  *See* Answer ¶ 7.  Locast admits that its retransmissions are currently available in thirteen cities and Locast intends to expand to additional cities in the United States.  Answer ¶¶ 6, 48.  And Locast acknowledges, as it must, that in passing the 1976 Copyright Act, Congress legislatively overruled Supreme Court precedent involving early cable-TV systems and provided that the retransmission of copyrighted content over the air constitutes copyright infringement absent coverage by a private or statutory license or a specific statutory exemption. *See* Countercl.  ¶¶ 43-44.  In light of the Copyright Act and other legislation, Locast

acknowledges that other parties—including cable, satellite, and streaming services—"must obtain a license or retransmission consent right [from the Broadcast Companies] to retransmit over-the-air broadcast content to subscribers." Countercl. ¶ 94.

Locast's defense, such as it is, rests on the proposition that it can retransmit broadcast signals carrying the Broadcast Companies' copyrighted programming without authorization and without infringing the Broadcast Companies' copyrights because SFCNY meets the requirements of the Copyright Act exemption at 17 U.S.C. § 111(a)(5). *See* Answer ¶¶ 3, 4, 7, 12, 43, 45, 48, 50, 67, 68, 74; Countercl. ¶¶ 7, 95.

### B.    The Broadcast Companies File a Complaint and Locast Files Counterclaims.

On July 31, 2019, the Broadcast Companies filed suit against Mr. Goodfriend and SFCNY for copyright infringement based on Locast's unauthorized retransmission of the Broadcast Companies' copyrighted works over the internet. Compl. ¶¶ 70-80.

The Complaint addressed why Locast's copyright infringement is not immunized by the affirmative defense of the 17 U.S.C. § 111(a)(5) exemption, listing examples of Locast's failure to satisfy multiple elements of the exemption. Compl. ¶¶ 4-12, 45-59. Locast chose not to move to dismiss the Broadcast Companies' copyright infringement claim. Rather, on September 27, 2019, Locast filed its Answer and Counterclaims accusing the Broadcast Companies of conspiring to restrain trade in violation of Section 1 of the Sherman Act (Count 1) and the Donnelly Act (Count II), deceptive business practices in violation of New York General Business Law Section 349 (Count III), unfair and unlawful competition in violation of California Business and Professional Code Section 17200 (Counts IV and V), and tortious interference with prospective economic advantage (Count VI). Locast's Counterclaims are premised on three alleged conspiracies by the Broadcast Companies.

### 1. Locast Alleges Conspiracy To Limit "Practical Access" to Signals.

First, in a set of paragraphs devoid of any specific allegations about any of the Broadcast Companies, Locast alleges that the Broadcast Companies entered into a conspiracy in unspecified ways to "limit practical access" to over-the-air broadcasts by broadcasting signals with insufficient strength. *See* Countercl. ¶¶ 129-34. Locast claims that unnamed equipment vendors told some other unnamed individual that some unidentified broadcasters (among the hundreds of independent broadcasters in the United States) could purchase better equipment but choose not to, and that broadcasters could operate "translator stations of their own to better cover markets with adequate signals, but in many cases choose not to." Countercl. ¶ 131. The purpose of the broadcast signal-strength conspiracy is, according to Locast, to create the need for pay-TV services, such as cable, satellite, and streaming firms, to fill the coverage gap for viewers, which then requires the pay-TV services to pay retransmission consent fees to broadcasters. Countercl. ¶ 129. Locast does not explain which of the hundreds of broadcasters across the country are participants in the alleged conspiracy.[2]

### 2. Locast Alleges Conspiracy To Make Exclusionary Threats.

Locast alleges that the Broadcast Companies conspired and campaigned "to undermine Defendants' business dealings and chill financial support among potential donors." Answer 3. Locast reports that an unidentified third-party executive "implied" that the industry would "take

---

[2] Just as at the time the Copyright Act was passed, local communities enjoy the benefits of "translator" services that operate not by retransmitting broadcast signals over the internet but by boosting over-the-air broadcast signals to expand their reach—all with the support and consent of broadcast stations. *See, e.g.*, FAQs, Blue Mountain Translator District, Oregon, https://bmtd.org/faqs (last visited Oct. 27, 2019); Homepage, Okanagon TV District, Washington, http://www.tvdistrict1.org (last visited Oct. 27, 2019).

on" supporters of Locast, Countercl. ¶ 145, and that a potential business associate stopped returning Mr. Goodfriend's telephone calls after the Broadcast Companies filed suit, Countercl. ¶149.  Locast does not allege that the Broadcast Companies acted in concert to interfere with any third-party relationships.  Nor of course does Locast allege that it was surprised that any particular copyright holder or broadcast executive took exception to its activity; as Locast publicly stated, it expected to be sued.  Lee, *supra* p. 1.

### 3.  Locast Alleges Conspiracy To Bring Sham Litigation.

Locast does identify one instance of joint and concerted action by the Broadcast Companies:  the filing of this very copyright-infringement action, which Locast has not moved to dismiss.  Nevertheless, Locast alleges that this is a "sham" copyright infringement suit filed "to restrain trade" in violation of the Sherman Act.  *See* Countercl. ¶¶ 135-43.

## <u>ARGUMENT</u>

The Broadcast Companies bring this motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) as to Locast's allegations of a supposed signal-strength conspiracy and under Rule 12(b)(6) as to that claim and the rest of the Counterclaims.  Under Rule 12(b)(1), this Court must dismiss a complaint that does not allege an injury as required under Article III to establish this Court's subject-matter jurisdiction.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).  Under Rule 12(b)(6), the Court must dismiss a complaint that does not provide "'enough facts to state a claim to relief that is plausible on its face.'"  *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Locast fails to plead any injury arising out of the Broadcast Companies' alleged conspiracy to limit signal strength and does not allege sufficient facts to state any of its federal or state Counterclaims.

## I.     LOCAST FAILS TO STATE A CLAIM UNDER THE SHERMAN ACT.

"Antitrust claims in particular must be reviewed carefully at the pleading stage." *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 383 F. Supp. 3d 187, 218 (S.D.N.Y. 2019). As the Supreme Court has emphasized in the Sherman Act context, "it is only by taking care to require allegations that reach the level suggesting conspiracy that we can hope to avoid the potentially enormous expense of discovery in cases with no reasonably founded hope that the discovery process will reveal relevant evidence to support a § 1 claim." *Twombly*, 550 U.S. at 559 (quotation omitted). Pleading rules do not require elaborate factual details, but neither do they "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Based on the admissions in Locast's Answer and Counterclaims and well-settled principles of law, this Court can make quick work of these purported antitrust claims, and focus this litigation on whether Locast has a statutory defense to building an entire business on copyright infringement.

First, SFCNY and Mr. Goodfriend lack standing to bring a Section 1 claim based on their vague allegations regarding the Broadcast Companies' supposed efforts to limit signal strength, either under Article III of the U.S. Constitution or under federal antitrust law. *Lujan*, 504 U.S. at 560-66; *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 436 (2d Cir. 2005). In addition, Locast's signal-strength conspiracy allegations fail to state a claim and thus fail under Rule 12(b)(6).

Locast's remaining Section 1 allegations fare no better: Locast does not even purport to allege direct evidence of an agreement among the Broadcast Companies to intimidate Locast and its supporters, nor does it adequately plead circumstantial evidence of a "plausible" conspiracy. *Transhorn, Ltd. v. United Techs. Corp.* (*In re Elevator Antitrust Litig.*), 502 F.3d 47, 50 (2d Cir.

2007) (quoting *Twombly*, 550 U.S. at 547).  Each and every copyright holder whose content was

pirated by Locast would have had its own reason to object to anyone who would listen.  And

Locast's allegations do not come close to suggesting that this lawsuit falls within the "extremely

limited" exception to the *Noerr-Pennington* doctrine for objectively baseless "sham" litigation; it

is Locast that has the burden of proving that its operations fall within a statutory exemption

under the Copyright Act.

> ### A.     The "Signal Strength" Conspiracy Allegations Fail To State a Claim.

In seeking to create its own lawsuit out of the copyright infringement action filed by the

Broadcast Companies, Locast purports to take on the entire legal and business structure of pay-

TV.  In a pitch best made to Congress or the FCC (where, as he admits, Locast's founder

performs his day job as a lobbyist, Countercl. ¶ 85), Locast alleges that the Broadcast Companies

conspired with one another to under-deliver on their obligations to deliver adequate free-to-air

broadcast signals, all to create a foundation for pay-TV platforms that, under federal law, must

pay for the right to retransmit copyrighted broadcast content.  Countercl. ¶¶ 155-56.

None of this screed belongs in a civil case under the Sherman Act, and certainly not one

brought by Locast.

Locast's allegations that the Broadcast Companies "colluded to limit practical access to

the over-the-air signals," Countercl. ¶ 130, are so conclusory and factually deficient that they fail

to plead what the Broadcast Companies actually did, much less support an inference of a

conspiracy.  Locast asserts only that the Broadcast Companies "could" purchase better

equipment and add translator stations to boost broadcast signals, Countercl. ¶ 131, but these

"theoretical possibilities" provide no basis whatsoever for inferring that the Broadcast

Companies individually sought to limit signal strength, let alone that they conspired to do so.  *In*

*re Elevator Antitrust Litig.*, 502 F.3d at 50; *see also Cenedella v. Metro. Museum of Art*, 348 F. Supp. 3d 346, 359 (S.D.N.Y. 2018) (dismissing complaint devoid of basic facts "indicating who agreed with whom, to what, and when" as insufficient to allege agreement to violate antitrust laws).

Even if Locast had offered facts to support its vague speculations, "this Court is not the appropriate forum" for airing its policy grievances about what kind of coverage practices best serve "the public interest." *Erdman Techs. Corp. v. US Sprint Commc'ns Co.*, 1992 WL 77540, at *3 (S.D.N.Y. Apr. 9, 1992) (quotation omitted); Countercl. ¶ 156.  The FCC prescribes precise operating parameters for over-the-air television stations, including those owned and operated by the Broadcast Companies or their affiliates, to allow more than 1,700 full power television stations to operate within a limited spectrum band in the U.S. without interfering with each other or with other licensed radiofrequency-based services.[3]  These parameters include highly complex antenna system designs that specify the type and location of the station's radiating antenna, how high the antenna is mounted on the transmission tower, the output and effective radiated power of the transmitter, and other parameters that determine each station's unique coverage contour and ensure interference-free operation.  *See* 47 C.F.R. pt. 73.  Further, the FCC closely monitors and enforces compliance with such parameters.  Against this backdrop, for this Court to assess whether, as Locast alleges, Countercl. ¶ 131, the Broadcast Companies engaged in practices to limit over-the-air signal strength requires wading into matters of FCC expertise and discretion and risks rulings inconsistent with FCC policy.  The question of the Broadcast Companies'

---

[3] *See* FCC News Release, "Broadcast Station Totals as of September 30, 2019" (Oct. 2, 2019), https://docs.fcc.gov/public/attachments/DOC-359976A1.pdf.

alleged failure to maximize signal strength implicates issues governed by a regulatory scheme "within the special competence" of the FCC, and the primary jurisdiction doctrine would apply. *Mathirampuzha v. Potter*, 548 F.3d 70, 83-84 (2d Cir. 2008) (quotation omitted); *see also Ellis v. Tribune Television Co.*, 443 F.3d 71, 81 (2d Cir. 2006) (district court erred in not dismissing or staying action and referring broadcasting licensure question to the FCC).

This Court need not even reach the question of whether it can hear a challenge to the adequacy of the Broadcast Companies' equipment purchases or broadcast signal strength, however, because according to Locast's own pleadings, it is *not injured* by the alleged signal-strength conspiracy; rather, it is a *beneficiary* of that purported conspiracy. Indeed, according to Locast, the alleged deficiency in the Broadcast Companies' broadcast signal is the entire reason Locast exists.[4]  Countercl.  ¶¶ 52, 63 (Locast's "public service" is to "correct" the problem created by signal-strength deficiency).  The purpose and effect of the alleged signal-strength conspiracy—to allow Broadcast Companies to profit from selling retransmission rights to pay-TV providers—is of no legal moment to Locast because, as Locast admits, *Locast does not pay to retransmit the content the Broadcast Companies pay to acquire, develop and produce*. Countercl. ¶¶ 45, 95 (pay-television providers such as cable and satellite companies must pay for retransmission consent, but Locast—under its legal theory—does not need to).  Quite apart from

---

[4] To be clear, this is Locast's characterization of the services it provides as set forth in its Counterclaim.  As explained in the Complaint, the Broadcast Companies do not agree that Locast exists to "enhance[e] signals for those plagued by tall buildings or otherwise unable to receive broadcast television."  Compl. ¶ 46.  Rather, Locast openly "promotes itself to users who already have access to broadcast television" in order to undermine the rationale for retransmission consent.  *Id.*  This motion, of course, does not ask the Court to resolve whether Locast is a public service or a strategic play of its pay-TV patrons, and instead rests on Locast's admissions and pleadings and the application of settled principles of law.

whether this Court should be hearing challenges to broadcast signal strength, Locast has no constitutional or antitrust standing to bring such a claim.

Article III requires a plaintiff to demonstrate (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision. *Lujan*, 504 U.S. at 560-61. These are "indispensable elements" of a plaintiff's case. *Id.*

Locast cannot satisfy Article III standing because its own pleadings demonstrate that the alleged signal-strength conspiracy does not cause it any "injury in fact." *Sonterra Capital Master Fund Ltd. v. Credit Suisse Grp. AG*, 277 F. Supp. 3d 521, 544 (S.D.N.Y. 2017). Locast's entire business model depends upon the alleged service gaps that it alleges the Broadcast Companies intentionally create. *See* Countercl. ¶¶ 4, 46 ("Locast serves to extend the reach of, and ease of access to, local over-the-air broadcast signals"). This precludes Article III standing, as "[t]here is no injury-in-fact where a plaintiff benefits from the illegal conduct it is challenging." *See, e.g.*, *Marotte v. City of New York*, 2019 WL 1533304, at *6 (S.D.N.Y. Feb. 7, 2019), *and report and recommendation adopted*, 2019 WL 1033798 (S.D.N.Y. Mar. 5, 2019) (citing *Schaffer v. Clinton*, 240 F.3d 878, 884-85 (10th Cir. 2001)) (no Article III standing to challenge cost-of-living allowance that *increased* plaintiff's pay).

Nor of course did Locast feel the financial impact of this alleged conspiracy—the supposedly inflated retransmission consent fees paid by cable, satellite and streaming providers. Countercl. ¶ 4. Locast, according to its pleadings, does not need to pay these fees because it operates under an exemption to the requirements of the Copyright Act. Countercl. ¶¶ 45, 95.

In addition to Article III standing, private litigants must have "antitrust standing" to bring a claim under the Sherman Act, *Daniel*, 428 F.3d at 436, which requires (1) "a showing of a

special kind" of injury and (2) that the litigant is an "efficient enforcer" of the claim because, among other things, it is in a "worse position as a consequence of the defendant's conduct," *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (quotation omitted); *Gatt Commc'ns, Inc. v. PMC Assocs., L.L.C.*, 711 F.3d 68, 76 (2d Cir. 2013) (quotation omitted). Again, the Broadcast Companies' supposed conduct did not place Locast in a "worse position." *Arista Records LLC v. Lime Grp.*, 532 F. Supp. 2d 556, 570 (S.D.N.Y. 2007) (quoting *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 337 (1990)) (no antitrust standing where alleged conduct would harm consumers but plaintiff "would suffer no injury and indeed 'stood to gain from any conspiracy to raise the market price'").

Nor does Mr. Goodfriend have standing of any kind to press any of the conspiracy allegations contained in Locast's Counterclaims. "Merely derivative injuries sustained by employees, officers, stockholders, and creditors of an injured company do not constitute antitrust injury sufficient to confer antitrust standing." *G.K.A. Beverage Corp. v. Honickman*, 55 F.3d 762, 766 (2d Cir. 1995) (quotation omitted) (collecting cases). As the president of Locast, Mr. Goodfriend's entire business depends on the alleged limitations of broadcast television. He too would be a beneficiary of the alleged conspiracy of which he complains. He would not be an "efficient enforcer" of a signal strength conspiracy claim, even if this Court were to delve into whether the Broadcast Companies are purchasing sufficiently powerful equipment to meet their public obligations under the Communications Act.

The Section 1 claim based on the signal strength conspiracy should be dismissed; Locast lacks standing under Article III and the Sherman Act and has failed to state a claim.

**B.     The "Exclusionary Threats" Conspiracy Allegations Fail To State a Claim.**

Locast, which publicly invited a copyright infringement claim, was surely not surprised that some believed that the question of whether it was permissible to capture broadcast signals and publicly perform the copyrighted programming by retransmitting it to subscribers without a license had been settled by the Supreme Court in *Aereo*.  In any case, to plead a plausible claim of a Section 1 conspiracy, Locast must do more than point to instances where someone somewhere asserted that Locast was violating the Copyright Act.  *See Twombly*, 550 U.S. at 547.

Unilateral conduct is not actionable under Section 1 of the Sherman Act.  *Id.* at 554.  To meet the *Twombly* standard and plead a claim under Section 1, Locast must assert facts to support the inference that the Broadcast Companies entered into the alleged agreements with "a conscious commitment to a common scheme designed to achieve an unlawful objective."  *United States v. Apple, Inc.*, 791 F.3d 290, 313, 315 (2d Cir. 2015) (quotation omitted).  It may do so by asserting either "direct evidence that the defendants entered into an agreement in violation of the antitrust laws" or circumstantial evidence of parallel conduct supported by "plus factors" that give rise to the inference of an agreement.  *Citigroup, Inc.*, 709 F.3d at 136.

Locast does not even purport to allege direct evidence of an unlawful agreement. Without direct "smoking gun" evidence, *In re GSE Bonds Antitrust Litig.*, __ F. Supp. 3d __, 2019 WL 4071070, at *4 (S.D.N.Y. Aug. 29, 2019) (quotation omitted), Locast is required to allege circumstantial evidence consisting of parallel conduct and plus factors, but Locast alleges neither.  At best, Locast sets forth conclusory allegations that someone associated with a broadcaster responded to Locast's decision to test the limits of *Aereo* with statements that are consistent with unilateral decision-making and provide no support for the notion of conspiracy—

14

any individual copyright holder would take offense at the wholesale infringement of its copyrights by unauthorized retransmissions in markets covering nearly 40 million homes.

As to parallel conduct, Locast fails to allege that *any* of the Broadcast Companies even levied an exclusionary threat, much less that multiple Broadcast Companies acted synchronously. Although Locast alludes to episodes where a "broadcast industry representative," "one broadcast owner and another broadcast network," and "negotiators" allegedly made negative comments about Locast or expressed displeasure about its copyright infringement, Countercl. ¶¶ 146-48, Locast offers no information to suggest that any particular Broadcast Company or their employees were responsible for these comments. This deficiency prevents Locast from alleging that particular Broadcast Companies acted in parallel. *See, e.g., In re Elevator Antitrust Litig.*, 502 F.3d at 50 (affirming dismissal of antitrust claim where complaint lacked "any specification of any particular activities by any particular defendant") (quotation omitted); *In re GSE Bonds Antitrust Litig.*, 2019 WL 4071070, at *8 (finding plaintiffs "do not plausibly suggest that the particular defendants named in this suit were part of that conspiracy").

Locast alleges that *after* the Broadcast Companies filed their complaint, Nielsen discontinued its "active discussions" with SFCNY to measure Locast viewership," Countercl. ¶ 149, and that RCN Corporation indicated it was not interested in donating to SFCNY, Countercl. ¶ 150. Nothing in these allegations suggests that the Broadcast Companies did anything other than avail themselves of the right to seek relief in this Court. There is no suggestion of any concerted activity or reaching out to Nielsen or RCN by any, let alone all, the Broadcast Companies acting in concert.

Even if Locast had successfully pleaded that the Broadcast Companies engaged in parallel conduct, Locast would be required to establish "plus factors" that tend to suggest an agreement rather than independent decision-making. *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010).  Plus factors recognized by the courts in this Circuit include "evidence that shows that the parallel acts were against the apparent individual economic self-interest of the alleged conspirators," *Sonterra Capital Master Fund Ltd.*, 277 F. Supp. 3d at 552.  The alleged fact that one or more broadcasters may have taken exception to Locast's "thought experiment" is at best "unsurprising," and not evidence of a conspiracy but of "independent responses to common stimuli," *LLM Bar Exam, LLC v. Barbri, Inc.*, 271 F. Supp. 3d 547, 580 (S.D.N.Y. 2017) (quotation omitted), *aff'd per curiam*, 922 F.3d 136 (2d Cir. 2019).

Counterclaim Exhibit 3 is a Locast program guide inviting subscribers to choose from any or all of each Broadcast Company's copyrighted programming (as well as that of other broadcasters), ranging from entertainment programming to sports events—all of it unlicensed and all of it, by Locast's admission, calculated to undermine the rationale for the retransmission consent fees paid by satellite, cable and streaming services.  Countercl. ¶¶ 4, 7.  The guide is a full menu of each Broadcast Company's copyrighted content and catalog of infringement.  There are "obvious alternative explanation[s]" to an inference of a conspiracy for any Broadcast Company's alleged hostility to an entity that is engaged in massive copyright violations.  *See Arista Records LLC*, 532 F. Supp. 2d at 578 (quotation omitted).  Locast does not and cannot plead that the Broadcast Companies' alleged parallel exclusionary acts were "against the apparent individual economic self-interest" of the Broadcast Companies.  *Cenedella*, 348 F. Supp. 3d at 359.  To the contrary, taking Locast's allegations as true, the obvious alternative

explanation for the alleged conspiracy is that Plaintiffs were individually motivated to respond to Locast's systematic infringing conduct.

Copyright owners who make massive investments to acquire, develop and produce copyrighted content, and broadcasters who license that valuable content, can be expected to take exception when that content is stolen and disseminated without a license, consent, or payment. *See* Countercl. ¶ 103 (noting the Broadcast Companies' development of unique content).  It was and is in each Broadcast Company's economic and legal interest to object to the infringement. *See Twombly*, 550 U.S. at 554 (parallel conduct insufficient to show Section 1 conspiracy if it is "'just as much in line with a wide swath of rational and competitive business strategy unilaterally prompted by common perceptions of the market'"); *Ashcroft v. Iqbal*, 556 U.S. 662, 696 (2009) (quoting *Twombly*, 550 U.S. at 567) (claim inadequately pleaded where alleged conduct is consistent with or "more likely explained by, lawful, un-choreographed free-market behavior").

Locast has failed to plead a plausible conspiracy under Sherman Act Section 1 to make threats or intimidate business partners, and otherwise failed to state a claim.

### C. The "Sham Litigation" Allegations Fail To State a Claim.

The third alleged "conspiracy" is this copyright infringement lawsuit itself.  This claim is barred by the *Noerr-Pennington* doctrine.  Locast attempts to avoid this well-established doctrine by pleading that this suit falls within the doctrine's "extremely limited" exception for "objectively baseless," sham litigation.  *Doron Precision Sys. v. FAAC, Inc.*, 423 F. Supp. 2d 173, 192 n.17 (S.D.N.Y. 2006) (quotation omitted).  The Broadcast Companies' copyright-infringement lawsuit against Locast is strongly supported by the facts (including admissions already in the pleadings) and the law (including the Supreme Court's decision in *Aereo*) and is not remotely close to anything that could be described as "objectively baseless."

*Noerr-Pennington* immunizes petitioning activities, such as the Broadcast Companies' filing of this copyright infringement lawsuit, from antitrust liability.  *See AstraZeneca AB v. Mylan Labs., Inc.*, 2010 WL 2079722, at *3 (S.D.N.Y. May 19, 2010) (citing *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510-11 (1972)), *aff'd per curiam*, 412 F. App'x 297 (Fed. Cir. 2011).  The "extremely limited" exception to *Noerr-Pennington* immunity exists for "sham" lawsuits that are both "(i) 'objectively baseless,' i.e., 'no reasonable litigant could realistically expect success on the merits'; and (ii) 'an attempt to interfere *directly* with the business relationships of a competitor through the use of the governmental *process*—as opposed to the *outcome* of that process—as an anticompetitive weapon.'"  *Id.* (quoting *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus.*, 508 U.S. 49, 62 (1993))[5]; *see also Bio-Tech. Gen. Corp. v. Genentech, Inc.*, 886 F. Supp. 377, 381 (S.D.N.Y. 1995), *aff'd*, 267 F.3d 1325 (Fed. Cir. 2001).  This exception is "construed narrowly," *In re Elysium Health-Chromadex Litig.*, 354 F. Supp. 3d 330, 336 (S.D.N.Y. 2019), and the federal courts "properly place[] a heavy thumb on the scale in favor of the [counterclaim-]defendant."  *Id.* (quoting *Hanover 3201 Realty, LLC v. Vill. Supermarkets, Inc.*, 806 F.3d 162, 180 (3d Cir. 2015)).

"[A] suit is not objectively meritless if it is 'arguably warranted by existing law or at the very least [is] based on an objectively good faith argument for the extension, modification, or reversal of existing law.'"  *Int'l Longshore & Warehouse Union v. ICTSI Or., Inc.*, 863 F.3d

---

[5] Where a lawsuit is not objectively baseless, as is the case here, any subjective intent in filing the suit is irrelevant.  *See Radiancy, Inc. v. Viatek Consumer Prods. Grp.*, 138 F. Supp. 3d 303, 326 (S.D.N.Y. 2014) ("Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation" (quoting *Columbia Pictures*, 508 U.S. at 60)) (dismissing sham litigation allegation).

1178, 1188 (9th Cir. 2017) (quoting *Columbia Pictures*, 508 U.S. at 60 (citing Fed. R. Civ. P.

11)), *cert denied*, 138 S. Ct. 1262 (2018).  Accordingly, suits are not objectively baseless where

they are "arguably warranted" by existing law.  *See, e.g.*, *AstraZeneca AB*, 2010 WL 2079722, at

*4 (patent lawsuit not objectively baseless, even where Plaintiff eventually lost at trial); *In re

Elysium Health-Chromadex Litig.*, 354 F. Supp. 3d 330 (S.D.N.Y. 2019).[6]

If a counterclaim does not plausibly plead that the complaint is "objectively baseless," the

counterclaim alleging "sham" litigation must be dismissed.  *See, e.g.*, *Agfa Corp. v. United Mktg.

Grp., Inc.*, 2003 WL 21555087, at *3 (S.D.N.Y. July 10, 2003) (dismissing counterclaim where

allegations of sham litigation insufficient); *see also AstraZeneca*, 2010 WL 2079722, at *3; *Bio-

Tech. Gen. Corp.*, 886 F. Supp. at 381; *DIRECTV, Inc. v. Rayborn*, 2003 WL 23200248, at *6

(W.D. Mich. Oct. 20, 2003) (dismissing counterclaim where allegations failed to adequately

explain why suit was objectively baseless).

At this motion to dismiss stage on Defendants' Counterclaims, the Court is not called

upon to decide whether the Broadcast Companies will prevail in their copyright suit.  The issue

here is simply whether Locast's antitrust Counterclaims plausibly allege that the underlying

copyright suit somehow is so objectively baseless as to fall within the extremely limited "sham

litigation" exception to *Noerr-Pennington* immunity.  The language of the Copyright Act, the

relevant legislative history, and *Aereo* dispose of this question.

---

[6] In contrast, courts have found that the sham litigation exception applies where the conduct at
issue has been truly abusive.  *See, e.g.*, *In re Keurig Green Mountain Single-Serve Coffee
Antitrust Litig.*, 383 F. Supp. 3d 187, 231 (S.D.N.Y. 2019) (sham litigation sufficiently alleged
where patents in patent litigation could not conceivably be asserted to cover accused product);
*Shetiwy v. Midland Credit Mgmt.*, 980 F. Supp. 2d 461, 475 (S.D.N.Y. 2013) (debt buyer
defendants' alleged practice of using fraudulent and deceptive affirmations to obtain default
judgments against plaintiffs, including false attorney affirmations, constituted a sham).

In its 2014 decision in *Aereo*, the United States Supreme Court ruled that the defendant Aereo infringed the plaintiffs' exclusive right to publicly perform copyrighted content by capturing the copyrighted content that was broadcast free over the air and retransmitting it over the internet without a license.  That is, by Locast's admission, precisely what Locast does: it captures copyrighted content broadcast over the air by the Broadcast Companies and then retransmits that content over the internet to subscribers—without a license.  *See* Answer ¶¶ 3, 7. The plaintiffs in *Aereo* included most of the Broadcast Companies here.  In addition to *Aereo,* the Broadcast Companies have succeeded in several other actions against parties like Locast that retransmit their broadcast television content over the Internet without authorization.  *See, e.g.*, *CBS Broad. Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 104 (2d Cir. 2016); *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 288 (2d Cir. 2012); *Fox Television Stations, Inc. v. Aereokiller, LLC*, 851 F.3d 1002, 1015 (9th Cir. 2017).

As the Court will observe, Locast does not cite a case holding that an internet service that retransmits copyrighted programming can fall within the protection of Section 111(a)(5).  That's because there are no such cases.  With no precedent in hand, on what basis does Locast claim that it is not engaged in what would otherwise be wholesale copyright infringement, let alone that the Broadcast Companies are violating the antitrust laws by even bringing this copyright case?

Locast's charge that this copyright lawsuit is "objectively baseless" rests on its untested defense that it is subject to a limited exemption to copyright liability under Section 111(a)(5) because SFCNY is a "non-profit" for purposes of Section 111(a)(5), *see* Countercl. ¶¶ 137-39;

and that New York Not-For-Profit Corporation Law (NPCL) Section 720-a protects Mr.

Goodfriend from federal copyright liability, *see* Countercl. ¶ 140.[7]

Neither allegation suffices to bring Locast within Section 111(a)(5), let alone supports the

notion that this lawsuit is "objectively baseless."

Section 111 exemptions like this one are affirmative defenses to copyright infringement,

whose burden of proof rests with Locast. *See WPIX, Inc. v. ivi, Inc.*, 765 F. Supp. 2d 594, 601

(S.D.N.Y. 2011), *aff'd*, 691 F.3d 275 (2d Cir. 2012) (explaining that Section 111(a)(3), the

passive carrier defense, like fair use, is an affirmative defense); *see also N.F.L. v. Insight*

*Telecomms. Corp.*, 158 F. Supp. 2d 124, 126 (D. Mass. 2001) (same).

Section 111(a)(5) provides a limited exemption to the Broadcast Companies' exclusive

right to retransmit copyrighted content where

> the secondary transmission is not made by a cable system but is made by a
> governmental body, or other nonprofit organization, without any purpose of direct
> or indirect commercial advantage, and without charge to the recipients of the
> secondary transmission other than assessments necessary to defray the actual and
> reasonable costs of maintaining and operating the secondary transmission service.

17 U.S.C. § 111(a)(5).

---

[7] Locast also suggests that the suit is a sham because the Broadcast Companies waited until July 2019 to file it. *See* Countercl. ¶ 136. Locast does not argue that the statute of limitations has expired. The Broadcast Companies' decision to not initiate litigation until July to combat Locast's misguided attempt to argue for a loophole in basic copyright law does not speak to the issue of objective baselessness. A copyright owner need not sue an infringer immediately, especially where (as happens in this field) the infringer may cease its operations on its own. *See Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 866 (9th Cir. 2017); *Am. Broad. Cos., Inc. v. Aereo, Inc.*, 874 F. Supp. 2d 373, 401 (S.D.N.Y. 2012), *aff'd sub nom. WNET, Thirteen v. Aereo, Inc.*, 712 F.3d 676 (2d Cir. 2013), *rev'd and remanded sub nom. Am. Broad. Cos., Inc. v. Aereo, Inc.*, 573 U.S. 431 (2014). In any event, the Broadcast Companies' subjective intent is irrelevant because this suit is not objectively baseless. *See Radiancy*, 138 F. Supp. 3d at 326.

In light of the numerous separate required elements of Section 111(a)(5), SFCNY's claimed status as a 501(c)(3) nonprofit obviously does not dispose of the question whether Locast can meet its burden of falling within this exemption.  *See* Countercl. ¶¶ 137-39.

We list below a few examples among the many reasons why Locast cannot meet its burden to satisfy the exemption.

First, the exemption's plain language demonstrates that it applies to inherently localized services, not internet retransmitters like Locast.  Section 111(a)(5) speaks of "a governmental body[] or other nonprofit" that cannot charge for the retransmitted content *other than* by levying "assessments" on the "recipients" of the secondary transmission service.  When Congress introduced this "assessments" language into the exemption, it used this term to mean "general community assessments or tax funds," inherently local levies, used to support a geographically-constrained "cooperative or other nonprofit service" that operated a "nonprofit 'translator[]' or 'booster[].'"  H.R. Rep. 90-83 at 53-54 (1967) ("1967 House Report").

The legislative history confirms that Section 111(a)(5) exempts the "operations of nonprofit 'translators' or 'boosters,' which do nothing more than amplify broadcast signals and retransmit them to everyone in an area for free reception."  H.R. Rep. 94-1476 at 92 (1976) ("1976 House Report").  As one copyright treatise explains, Section 111(a)(5) "is designed to cover older, noncable services such as translators and boosters used by nonprofit organizations and governmental entities to supply television programming to rural areas."  4 *William F. Patry on Copyright* § 14:71 (West 2017).  Even today, translators and boosters continue to operate by amplifying broadcast signals, not by retransmitting them over the internet. *See* note 2 *supra*.

Locast recognizes that the language and the legislative history of Section 111(a)(5) pose a significant problem for its defense because services such as "translators" boost or enhance

broadcast signals to a local audience, they do not retransmit them over the internet.  Locast tries to patch this hole by pleading in its Counterclaims that it is a "digital translator," Countercl. ¶ 52. But that term is not found in Section 111(a)(5).  The law is clear that one cannot make the jump from broadcast transmission (or boosting local broadcast transmission, as Section 111(a)(5) contemplates) to internet retransmission without tripping over the exclusive rights of copyright holders under the Copyright Act; not even the defendant in *Aereo* questioned that basic principle. Simply calling oneself "digital" does not immunize the retransmission of copyrighted programming.  Thus, one reason Locast is unable to meet its burden is that it is invoking an exemption designed for local services that continue to boost or enhance local broadcast signals, not a business that operates all over the world over the internet.

Second, Congress made clear that simply filing as a 501(c)(3) does not suffice to qualify for the exemption.  Rather, Congress mandated that the entity operate "without any purpose of direct or indirect commercial advantage."  The "commercial advantage" constraint cannot be satisfied simply by an organization's filing as a nonprofit; otherwise there would be no need for this separate requirement.  *See Hibbs v. Winn*, 542 U.S. 88, 101 (2004) ("A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.") (quotation omitted).  And, the prohibition of "any" purpose of "direct or indirect" commercial advantage confirms that this additional limitation was meant to be broad.  *United States v. Gonzales*, 520 U.S. 1, 5 (1997) ("word 'any' has expansive meaning").

The Complaint alleges a wide range of direct and indirect commercial advantages pursued by SFCNY and Mr. Goodfriend through the operation of Locast, for Locast itself and for its patrons.  Locast distributes its service nationwide through apps afforded by Locast's pay-TV

patrons at DISH and AT&T.  Compl. ¶¶ 8,12, 51.  It gathers valuable viewer data through its operations.  Compl. ¶¶ 12, 51.  By providing copyrighted broadcast programming to DISH and AT&T subscribers, Locast has helped those companies attempt to undermine the rationale of paying for retransmission consent, while receiving the same companies' financial support, Compl. ¶¶ 8-12, 14, 51-59 (former DISH executive provided Locast's seed money; AT&T made a $500,000 "donation").  And by helping DISH in its effort to undermine the rationale of paying retransmission consent fees, Mr. Goodfriend is serving the interests of his own lobbying client, which has rewarded him with substantial fees over the years.  Compl. ¶¶ 9, 12, 52, 57.  These are just some of the direct and indirect commercial advantages Locast provides.  Compl. ¶¶ 52-63.

All this is not only alleged in the Complaint, but much of it has been admitted in the Answer.  *See, e.g.*, Answer ¶ 3 (admitting that Mr. Goodfriend founded SFCNY, that SFCNY operates Locast, and that Locast retransmits local over-the-air broadcast signals over the internet), ¶ 6 (admitting Locast retransmits signals from 13 DMAs), ¶ 9 (admitting Mr. Goodfriend's consulting for DISH), ¶ 12 (admitting collecting viewer data through operation of Locast), ¶¶ 10, 150 (admitting $500,000 donation from AT&T and solicitation of $750,000 donation from RCN).  Locast's legal position appears to be that, because it claims to be a 501(c)(3) entity, that is the end of the analysis of whether it has met its burden to qualify for the statutory exemption.  That is demonstrably false, without any basis in the text of the statute or the legislative history.  As the Complaint demonstrates (and the Answer confirms), Locast is operating for the commercial benefit of itself (securing distribution and data), its founder (through his lobbying fees because Locast is serving the strategic interests of his clients), and its financial patrons.

When Locast asserts that the Complaint is so "objectively baseless" as to qualify within a narrow exception to the *Noerr-Pennington* doctrine, it does so in the face of the fact that:

(a) Locast is plainly violating the law unless it can meet its burden of proving that it comes within a narrow statutory exemption—the only party here with a burden to meet is Locast;

(b) no one has successfully defended an internet service, as opposed to a true over-the-air broadcast "booster" service, as falling within the statutory exemption on which Locast relies, and in the face of *Aereo*, it is not surprising that no one has even tried—the quoted phrase "digital translator" found in the Counterclaims at paragraph 52 is a lawyer's concoction, and does not exist in the statute passed by Congress;

(c) Locast is not proceeding by way of community "assessments" as contemplated by Section 111(a)(5); it is hounding its individual subscribers for donations, Compl. ¶¶ 12, 62;

(d) notwithstanding the broad prohibition against "any purpose" of "direct or indirect commercial advantage," Locast is securing nationwide distribution of its app and six-figure capital contributions for itself from pay-TV interests in exchange for helping those interests avoid paying for retransmission consent, Compl. ¶¶ 8-12, 14, 51-59.

The party with the burden of proof, the party which is ignoring statutory language that it cannot satisfy, the party unable to cite a single case precedent that would support its business model as legal, is Locast.  Locast simply has no basis to file Counterclaims alleging that a pleading questioning whether it is operating within an untested exemption to the Copyright Act is "objectively baseless," and itself a violation of the Sherman Act.  Here, the only party flying in the face of the statutory language, the legislative history, and settled authority is Locast.

Nor is there any merit to the allegation that suing Mr. Goodfriend in his personal capacity is objectively baseless in light of a New York state statute.  *See* Countercl. ¶ 140.

25

A state-law defense such as New York NPCL Section 720-a may not be raised to defeat a federal copyright claim.  *See Design Basics, LLC v. Chelsea Lumber Co.*, 2013 WL 3471142, at *4 (E.D. Mich. July 10, 2013) ("the benefits provided in the Copyright Act may not be limited or denied by a state statute").  Under the Supremacy Clause of the U.S. Constitution, U.S. Const. art. VI, it is a basic principle that a *state law* defense cannot defeat a *federal law* cause of action. "It is familiar doctrine that the prohibition of a federal statute may not be set at naught, or it[s] benefits denied, by state statutes or state common law rules."  *Sola Elec. Co. v. Jefferson Elec. Co.*, 317 U.S. 173, 176 (1942).  Accordingly, Section 720-a of New York's NPCL cannot immunize Mr. Goodfriend from a *federal* Copyright Act claim.  *See Dushane v. Leeds Hose Co. #1 Inc.*, 2016 WL 9415489, at *12 (N.D.N.Y. Feb. 22, 2016) (Section 720-a could not "'preempt or otherwise erode'" federal section 1983 cause of action and "'state law may not be used to immunize conduct violative'" of section 1983) (quoting *Gronowski v. Spencer*, 424 F.3d 285, 297 (2d Cir. 2005)).

The application of this defense fails for an additional reason: Section 720-a, which is often invoked for state tort law claims, does not absolve conduct that constituted  "gross negligence or was intended to cause the resulting harm."  NPCL § 720-a.  The effort to test the limits of *Aereo* was not accidental; Mr. Goodfriend formed Locast to undermine the retransmission consent regime that he lobbies against.  Here, there is no question that Mr. Goodfriend *intended* to undermine the Broadcast Companies' ability to charge for consent to the retransmission of copyrighted programming.  Locast's Counterclaims are filled with attacks on the entire legal and business structure supporting retransmission consent, and boast that Locast serves to undermine this model.  *See, e.g.*, Answer 2-4; Countercl. ¶¶ 1-7, 36-53.  This is another reason why this state statute cannot provide a defense to Mr. Goodfriend's federal copyright

infringement.  *Kamchi v. Weissman*, 125 A.D. 3d 142, 160-62 (N.Y. App. Div. 2014) (Section 720-a does not apply to intentional conduct).

Again, the issue for today is not whether Locast can mount a defense, but merely whether the Complaint challenging whether Locast can meet its burden to qualify for the statutory exemption is objectively baseless.  That is an easy question to answer.

None of the three conspiracies alleged in the Counterclaims—to withhold broadcast signals, to threaten Locast's partners, or to bring sham litigation—survives scrutiny.  The Section 1 claim should be dismissed.

## II.    LOCAST FAILS TO STATE A TORTIOUS INTERFERENCE CLAIM.

A claim of tortious interference with prospective economic advantage is "very difficult to sustain."  *See Kramer v. Pollock-Krasner Found.*, 890 F. Supp. 250, 258 (S.D.N.Y. 1995) (dismissing tortious interference with prospective business relationships claim).  Under New York law, Locast must allege that "'(1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship.'"  *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 400 (2d Cir. 2006) (quoting *Carvel Corp. v. Noonan*, 350 F.3d 6, 17 (2d Cir. 2003), *certified question answered*, 818 N.E. 2d 1100 (N.Y 2004)).  Locast's vague and conclusory tortious interference allegations do not come close to stating a plausible claim.

### A.    Locast Fails To Allege the Broadcast Companies Acted Solely Out of Malice or Used Improper Means.

Locast's claim for tortious interference with prospective economic advantage fails for multiple reasons, *see infra* Section II.B, but most obviously, Locast fails to allege that Plaintiffs acted solely out of malice, or used dishonest, unfair, or improper means.  *See Kirch*, 449 F.3d at

400; *see also Sharma v. Skaarup Ship Mgmt. Corp.*, 699 F. Supp. 440, 447 (S.D.N.Y.

1988), *aff'd*, 916 F.2d 820 (2d Cir. 1990) (dismissing tortious interference with prospective

relations claim where plaintiffs failed to allege wrongful means and defendants' actions were

motivated, at least in part, by business advantage).  Locast makes the conclusory allegation that

the Broadcast Companies "acted with the sole purpose of harming SFCNY," *see* Countercl. ¶

187, but Locast does not allege a single fact supporting that conclusion.  In fact, Locast alleges

the exact opposite, that the Broadcast Companies were acting to advance their own competing

interests.  *See, e.g.*, Countercl. ¶ 1 ("These Counterclaims arise from the Broadcast Companies'

unlawful and collusive efforts to stifle competition in the retransmission of over-the-air

broadcasts and to entrench the interests of the four largest television networks and their stations

at the expense of consumers."); ¶ 12 ("[B]roadcasters perceive Locast as a threat to their business

interests.  As a result, they have taken deliberate and coordinated unlawful steps to attack and

eliminate the Locast service, including […] threatening retaliation and baseless litigation against

current and potential Locast donors, supporters, and third-party vendors to undermine Locast's

ability to raise revenue and operate as a going concern.").  If the Broadcast Companies' alleged

interference was intended, even in part, to advance their own interests, as Locast alleged it was,

then Plaintiffs were not acting solely to harm Locast.  *See Carvel Corp. v. Noonan*, 818 N.E.2d

1100, 1103 (N.Y. 2004).

By the same token, Locast fails to allege that the Broadcast Companies "used dishonest,

unfair, or improper means."  *See Kirch*, 449 F.3d at 400.  In all but the most egregious

circumstances, "dishonest, unfair, or improper means" must amount to a crime or an independent

tort.  *See Carvel*, 350 F. 3d at 17, 19.  Once again, the heart of Locast's state law claims is that

the Broadcast Companies filed a copyright claim to protect their economic interests, a lawsuit

that Locast anticipated and invited.  Locast does not allege that the Broadcast Companies have committed a crime, and the Broadcast Companies' conduct does not amount to an independent tort for all of the reasons that Locast's antitrust claims fail.

**B.      Locast Fails To Allege Plaintiffs Interfered Directly with a Third Party.**

Locast also fails to allege that the Broadcast Companies interfered with a third party business relationship directly; "that is, [that the Broadcast Companies] . . . direct[ed] some activities towards the third party and convince[d] the third party not to enter into a business relationship with [Locast]."  *See Fonar Corp. v. Magnetic Resonance Plus, Inc.*, 957 F. Supp. 477, 482 (S.D.N.Y. 1997); *Black Radio Network, Inc. v. NYNEX Corp.*, 2000 WL 64874, at *4 (S.D.N.Y. 2000) (dismissing for failure "to plead the requisite element of  intentional interference with business relations with a third party, because the complaint allege[d] only indirect, rather than direct interference"); *Piccoli A/S v. Calvin Klein Jeanswear Co.*, 19 F. Supp. 2d 157, 167 (S.D.N.Y. 1998) (same).  The Broadcast Companies' alleged "sham litigation" cannot give rise to a claim for tortious interference with prospective economic advantage because that alleged "sham litigation" was filed against Locast, not a third party.  *See Piccoli A/S*, 19 F. Supp. 2d at 167.

Locast's only allegations involving third parties, Countercl. ¶¶ 145-50, fail to assert that the Broadcast Companies knew of those specific third-party relationships or *did anything* directed at those third parties to interfere with the relationships.  Failure to plead those essential elements warrants dismissal.  *See Zdenek Marek v. Old Navy (Apparel) Inc.*, 348 F. Supp. 2d 275, 280-81, 280 n.3 (S.D.N.Y. 2004) (dismissing claim for failure to allege defendant's knowledge of third party relationships or that defendant actively took any steps to interfere with any potential transactions); *Burns Jackson Miller Summit & Spitzer v. Lindner*, 88 A.D. 2d 50,

71-72 (N.Y. App. Div. 1982), *aff'd*, 451 N.E.2d. 459 (N.Y. 1983) (dismissing conclusory tortious interference with business allegations that did not specify defendants' knowledge of and interference with a specific relationship).[8]

## III.  LOCAST'S REMAINING STATE LAW CLAIMS MUST ALSO BE DISMISSED.

Locast's Counterclaims include a number of dependent state law claims premised upon its meritless Sherman Act claims.  Locast's Donnelly Act claim (Count II), its Deceptive Practices Act claim (Count III), and one of its Unfair Competition claims (Count IV) repackage the same three categories of alleged anticompetitive conduct—(1) limiting practical access to broadcast signals, (2) exclusionary threats, and (3) sham litigation.  *See* Countercl. ¶¶ 164-79.  Its remaining Unfair Competition claim (Count V) is premised on the tortious interference claim and a vague reference to "copyright misuse," which is not a claim but a defense.  *See id.* ¶¶ 180-83.

Each of these counts suffers from fatal flaws, flowing from the fact that Locast has failed to adequately allege the underlying conduct.  These state law counts fail for substantially similar reasons as the federal antitrust claims, and also suffer from additional defects, identified herein, and should be dismissed.

---

[8] Locast fails to state a claim for tortious interference with prospective economic advantage with regard to T-Mobile, Mediacom, an unspecified TV provider, and YouTubeTV, *see* Countercl. ¶¶ 145-48, for the additional reason that its fails to allege that it had a reasonable probability of entering into a business relationship with any of those third-parties.  *See Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 331 F. Supp. 3d 221, 239 (S.D.N.Y. 2018); *BDCM Fund Adviser, L.L.C. v. Zenni*, 103 A.D. 3d 475, 477-78 (N.Y. App. Div. 2013) (dismissing vague and conclusory allegation of reasonable probability of a business relationship).

### A.   *Noerr-Pennington* Forecloses the State Law Claims Predicated on "Sham Litigation."

The *Noerr-Pennington* doctrine protects the filing of the Broadcast Companies' lawsuit from liability, and as discussed *supra* Section I.C, the narrow sham exception cannot apply here—after all, this copyright lawsuit is far from "objectively baseless." But *Noerr-Pennington* immunity is not limited to Locast's Sherman Act claims. The doctrine extends to Locast's state law counts, foreclosing any liability based on conduct arising from any alleged sham litigation. Locast relies upon sham litigation allegations for its Donnelly Act claim (Count II), its Deceptive Practices Act claim (Count III), and its first Unfair Competition claim (Count IV), *see* Countercl. ¶¶ 164-79, but *Noerr-Pennington* prevents it from doing so. "The Second Circuit has recognized that because an important policy behind the *Noerr-Pennington* doctrine is the need to protect the right of the people to participate in the political process, the doctrine is an application of the First Amendment. Therefore, it is relevant outside the context of antitrust actions," including to state law claims. *Friends of Rockland Shelter Animals, Inc. v. Mullen*, 313 F. Supp. 2d 339, 343 (S.D.N.Y. 2004) (quotation omitted).

Accordingly, the *Noerr-Pennington* doctrine forecloses Locast's sham litigation claim as to New York's Deceptive Practices Act. *See Singh v. NYCTL 2009-A Tr.*, 2016 WL 3962009, at *5 (S.D.N.Y. July 20, 2016), *aff'd*, 683 F. App'x 76 (2d Cir. 2017) (collecting cases and explaining that *Noerr-Pennington* applies to the DPA, N.Y. Gen. Bus. Law § 349). It precludes Locast's California Unfair Competition Law claim to the extent it is premised on sham litigation. *See Breville Pty Ltd. v. Storebound LLC*, 2013 WL 1758742, at *8 (N.D. Cal. Apr. 24, 2013) (*Noerr-Pennington* immunity applies to UCL claim, which "rises and falls on the strength of [a] claim of 'sham litigation.'"). It prevents Locast from sustaining its claim of tortious interference

with prospective business advantage based on sham litigation.  *See Friends of Rockland Shelter Animals*, 313 F. Supp. 2d at 343 (*Noerr-Pennington* applies to tortious interference with a prospective business advantage).  The same reasoning also applies to its New York Donnelly Act claim.  *See Chladek v. Verizon N.Y. Inc.*, 2003 WL 21305347, at *2 n.1 (S.D.N.Y. June 6, 2003), *aff'd*, 96 F. App'x 19 (2d Cir. 2004) (applying *Noerr Pennington* to both Sherman Act and Donnelly Act claims); *see also Music Ctr. S.N.C. Di Luciano Pisoni & C. v. Prestini Musical Instruments Corp.*, 874 F. Supp. 543, 555 (E.D.N.Y. 1995) (*Noerr-Pennington* must apply to Donnelly Act for same reasons it applies to Sherman Act).

Accordingly, Locast's state law claims premised on its "sham litigation" allegations fail as a matter of law.

## B.    The Donnelly Act Claim Fails for the Same Reasons as the Sherman Act Claim.

Locast alleges a Donnelly Act claim (Count II), incorporating the same allegations as its Sherman Act claim.  *See* Countercl. ¶¶ 164-66.  New York's Donnelly Act prohibits "[e]very contract, agreement, arrangement or combination whereby . . . competition . . . may be restrained."  N.Y. Gen. Bus. Law § 340(1) (McKinney 2019).  The Donnelly Act was modelled after the federal Sherman Act and should generally be construed consistent with federal precedent concerning the Sherman Act.  *Gatt Commc'ns, Inc. v. PMC Assocs., L.L.C.*, 711 F.3d 68, 81 (2d Cir. 2013).  After Locast's sham litigation claim is removed, all that remains of Locast's alleged state law antitrust conduct is that which turns on (1) limiting practical access to broadcast signals and (2) so-called exclusionary threats.  A claim premised on each of these categories of conduct is fatally flawed for all of the reasons described *supra* Part I, and accordingly, the Donnelly Act claim should be dismissed for all of the same reasons.  *See Doron*

*Precision Sys., Inc. v. FAAC, Inc.*, 423 F. Supp. 2d 173, 193 (S.D.N.Y. 2006) (Donnelly Act claim dismissed where Sherman Act claim based on same allegations was inadequately pleaded); *Gatt Commc'ns*, 711 F.3d at 81-82 (affirming dismissal of Donnelly Act claims for same reason as Sherman Act claims for want of antitrust standing); *see also Kramer*, 890 F. Supp. at 254 (analyzing Donnelly Act and Sherman Act claims together "[b]ecause the New York Court of Appeals has held that the Donnelly Act was modelled on the Sherman Act and should be construed in light of federal precedent").

### C. Locast Fails To State a Claim Under the N.Y. Deceptive Practices Act.

Locast's third counterclaim count alleges a violation of New York's Deceptive Practices Act (DPA), N.Y. Gen. Bus. Law § 349.  A plaintiff asserting this cause of action must adequately plead that "(1) the defendant has engaged in an act or practice that is deceptive or misleading in a material way; (2) the plaintiff has suffered injury by reason thereof; and (3) the deceptive act or practice is consumer oriented."  *In re Sling Media Slingbox Advert. Litig.*, 202 F. Supp. 3d 352, 359 (S.D.N.Y. 2016) (quotation omitted).  Locast has failed to adequately allege each of these elements.  The Counterclaims' DPA count incorporates Locast's antitrust claims, alleging that through purported threats, this litigation, and alleged limitation of practical access to signals, the Broadcast Companies do not aim to enforce their rights but instead seek to deter consumers from engaging in business with SFCNY and Mr. Goodfriend.  *See* Countercl. ¶¶ 167-71.  Not only are these five paragraphs untethered from the rest of the Complaint, but Locast has entirely failed to plead a DPA claim.

#### 1. Locast Fails To Allege Deceptive or Materially Misleading Conduct as to Consumers.

The DPA is oriented towards protecting consumers from deceptive or materially misleading conduct.  Accordingly, a required element of a DPA claim is that the alleged conduct

be "materially misleading" for consumers.  Courts dismiss DPA claims where these allegations are missing, as is the case here.  *See Tasini v. AOL, Inc.*, 851 F. Supp. 2d 734, 745 (S.D.N.Y.), *aff'd*, 505 F. App'x 45 (2d Cir. 2012); *see also In re Sling Media Slingbox Advert. Litig.*, 202 F. Supp. 3d at 359.  Locast does not even attempt to identify a materially misleading act or deceptive conduct for consumers, and accordingly, this claim fails.  *See Perez v. B. Braun Med., Inc.*, 2018 WL 2316334, at *6 (S.D.N.Y. May 9, 2018); *Dunham v. Covidien LP*, 2019 WL 2461806, at *5 (S.D.N.Y. May 22, 2019).

**2.  Locast Has Not Been Injured by Alleged Limitation of "Practical Access" to Signals.**

Locast's DPA claim is also deficient to the extent it is based on the allegation that the Broadcast Companies limit practical access to broadcast television signals.  A private-party claimant, such as Locast, must have suffered an injury because of the allegedly deceptive act it identifies.  *See* N.Y. Gen. Bus. Law § 349(h).  Locast has not shown that; in fact, it only stands to benefit from the Broadcast Companies' alleged limitation of "practical access" to signals.  *See supra* pp. 2, 12.  Courts dismiss DPA claims where there is no injury flowing to the claimant from the allegedly deceptive conduct.  *In re Sling Media Slingbox Advert. Litig.*, 202 F. Supp. 3d at 361; *Pfizer Inc. v. Sachs*, 652 F. Supp. 2d 512, 526 (S.D.N.Y. 2009).  This Court should do the same.

**3.  The Alleged "Exclusionary Threats" Are Not Consumer-Oriented.**

Finally, it is unsurprising that a statute oriented towards protecting consumers from deceptive conduct would require "consumer-oriented" conduct to be actionable.  *See Lokai Holdings LLC v. Twin Tiger USA LLC*, 306 F. Supp. 3d 629, 642 (S.D.N.Y. 2018).  Here, the alleged exclusionary threats involve potential relationships with other businesses, not consumers.

34

*See* Countercl. ¶¶ 144-50.  That is insufficient.  *See Lokai Holdings LLC*, 306 F. Supp. 3d at 642;

*Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 277 F. Supp. 2d 269, 274 (S.D.N.Y. 2003).

     **D.**     **Locast Fails To State a Claim for Unfair Competition Under California Law.**

Locast alleges that the Broadcast Companies' conduct violates California's Unfair

Competition Law (UCL), which prohibits "any unlawful, unfair or fraudulent business act or

practice."  Cal. Bus. & Prof. Code § 17200.  Locast alleges two separate UCL claims—(1) that

the Broadcast Companies' alleged anticompetitive conduct constitutes unfair competition and

(2) that the Broadcast Companies' alleged tortious inference and "copyright misuse" constitute

unlawful competition.  Locast has not shown it can even assert a claim here under California law.

On the merits, because the underlying claims discussed above fail, so too must each of these

UCL claims.

     **1.**     **Locast Fails To Allege Facts Sufficient to Invoke California's Unfair Competition Law.**

As a threshold matter, under the appropriate choice of law rules, California's UCL cannot

apply to the conduct Locast has alleged.  Even assuming without deciding that California's

unfair competition law applies, Locast has failed to allege facts sufficient to invoke the UCL,

which "does not apply to actions occurring outside of California that injure non-residents."

*Standfacts Credit Servs., Inc. v. Experian Info. Sols., Inc.*, 405 F. Supp. 2d 1141, 1148 (C.D. Cal.

2005).  Locast has not alleged that any conduct occurred in California, and the "extraterritorial

application of the UCL is improper where non-residents of California raise claims based on

conduct that allegedly occurred outside of the state."  *Parkinson v. Hyundai Motor Am.*, 258

F.R.D. 580, 598 (C.D. Cal. 2008).  Alleging, as Locast has, that certain Broadcast Companies are

"headquartered" in California "is not enough to create a plausible inference that the unlawful

conduct emanated from that location." *Gross v. Symantec Corp.*, 2012 WL 3116158, at *7 (N.D. Cal. July 31, 2012).

> ### 2.   The UCL Claim Based on the Sherman Act Claim Fails for the Same Reasons.

Locast's first UCL claim of "unfair" business practices is premised on its antitrust allegations, *see* Countercl. ¶¶172-79 (Count IV), so it must be dismissed because the antitrust claims all fail.  "'Where the same conduct is alleged to support both a plaintiff's federal antitrust claims and state-law unfair competition claim, a finding that the conduct is not an antitrust violation precludes a finding of unfair competition.'"  *Disney Enters., Inc. v. VidAngel, Inc.*, 2017 WL 6883685, at *8-9 (C.D. Cal. Aug. 10, 2017) (quoting *LiveUniverse, Inc. v. MySpace, Inc.*, 304 F. App'x 554, 557-58 (9th Cir. 2008)) (dismissing UCL claim); *City of San Jose v. Office of Comm'r of Baseball*, 776 F.3d 686, 691 (9th Cir. 2015) (same).  The same is true here.

> ### 3.   The UCL Claim Premised on Tortious Interference Fails for the Same Reasons.

Similarly, Locast's second UCL claim, based on tortious interference and a conclusory mention of copyright misuse, *see* Countercl. ¶¶ 180-83 (Count V), must also be dismissed because there is no merit to either underlying claim—indeed, copyright misuse is not even a recognized claim; it is a defense.  If the tortious interference fails, so too must the UCL claim based upon it.  *See Krantz v. BT Visual Images, L.L.C.*, 107 Cal. Rptr. 2d 209, 219-20 (Cal. Ct. App. 4th 2001), *as modified* (May 22, 2001) (viability of UCL claim "stand[s] or fall[s]" with the underlying claim); *see also Ingels v. Westwood One Broad. Servs., Inc.*, 28 Cal. Rptr. 3d 933, 938 (Cal. Ct. App. 2005) (dismissing UCL claim where there is "no 'unlawful' act upon which to base the derivative Unfair Competition claim" (brackets omitted)); *JMK USA Enters., Inc. v. Glob. Mail, Inc.*, 2010 WL 11404591, at *3 (C.D. Cal. May 28, 2010) (dismissing UCL claim where underlying conduct of tortious interference with contract was not adequately pleaded).

### 4. Defendants' Conclusory Mention of Copyright Misuse Is Insufficient.

Locast's second UCL count vaguely refers to "copyright misuse" without explanation, *see* Countercl. ¶ 182, but because copyright misuse is not a cause of action, a UCL claim premised upon it must fail.  "[T]he Second Circuit has made clear that copyright misuse is a defense to an infringement claim *not* an independent cause of action for damages." *John Wiley & Sons, Inc. v. Shumacher*, 2010 WL 103886, at *3 (S.D.N.Y. Jan. 4, 2010) (quotation omitted) (emphasis in original) (citing *Lava Records, LLC v. Amurao*, 354 F. App'x 461, 463 (2d Cir. 2009)) (dismissing copyright misuse claim).

Because the underlying copyright misuse claim cannot be sustained, the UCL claim based on it must be dismissed.  *See Adobe Sys. Inc. v. Norwood*, 2011 WL 2650945, at *6 (N.D. Cal. July 6, 2011) (dismissing UCL claim to extent premised on copyright misuse claim).

### CONCLUSION

For the foregoing reasons, the Broadcast Companies respectfully request that this Court grant their motion and dismiss all of Locast's Counterclaims with prejudice.

Dated:  October 28, 2019                     Respectfully submitted,


                                             /s/ Gerson A. Zweifach

                                             Gerson A. Zweifach
                                             Thomas G. Hentoff (*pro hac vice*)
                                             Joseph M. Terry (*pro hac vice*)

                                             WILLIAMS & CONNOLLY LLP
                                             725 Twelfth Street, N.W.
                                             Washington, DC 20005

                                             650 Fifth Avenue
                                             Suite 1500

37

New York, NY 10019

Tel: (202) 434-5000
Fax: (202) 434-5029
gzweifach@wc.com
thentoff@wc.com
jterry@wc.com

*Attorneys for All Plaintiffs/Counterclaim Defendants*

Paul D. Clement (*pro hac vice*)
Erin E. Murphy (*pro hac vice*)

KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004

Tel: (202) 389-5000
Fax: (202) 389-5200
paul.clement@kirkland.com
erin.murphy@kirkland.com

*Attorneys for Plaintiffs/Counterclaim Defendants Fox Television Stations, LLC and Fox Broadcasting Company, LLC*