LAW OFFICES
# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

GERSON A. ZWEIFACH
(202) 434-5534
gzweifach@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

April 23, 2021

**VIA ECF**

The Honorable Louis L. Stanton
United States District Judge
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007

  Re: *American Broadcasting Companies, Inc., v. Goodfriend*, No. 19-cv-7136-LLS

Dear Judge Stanton:

  We represent the Plaintiffs in the above-captioned matter. Under the Court's Scheduling Order, opening summary judgment motions are due May 6, 2021. Pursuant to Your Honor's Individual Practices, we write to request a pre-motion conference concerning Plaintiffs' anticipated motion for summary judgment rejecting Defendants' affirmative defense that their operation of the unauthorized Locast internet television service is excused from copyright infringement liability because of a limited exemption found in 17 U.S.C. § 111(a)(5).

  That defense fails as a matter of law for three independent reasons. *First*, as a threshold matter, the exemption is limited to localized transmissions and thus does not extend to Defendants' inherently global internet transmissions. *Second*, given the myriad ways Defendants have gained or attempted to gain commercial advantages from operating their unauthorized service—including by competing against Plaintiffs' licensees in the market for television over the internet—they cannot prove that they make transmissions "without any purpose of direct or indirect commercial advantage." *Id*. § 111(a)(5). *Third*, Defendants do not qualify for the exemption because they impose "charges" on users, and those charges are neither "assessments" nor "necessary" to defray the costs of operating their service. *Id*. Although courts have yet to interpret the Section 111(a)(5) exemption, the Court should grant summary judgment for Plaintiffs on these grounds based on the plain text, basic principles of statutory interpretation and copyright law, and the undisputed facts.

  Plaintiffs are broadcasting companies and affiliated companies that invest billions of dollars creating and acquiring copyrighted television programs. Plaintiffs broadcast these programs to the public over the air through owned or affiliated stations. Under the Copyright Act of 1976, Plaintiffs have the exclusive right to publicly perform their copyrighted works, which includes transmitting them to the public. 17 U.S.C. §§ 101, 106(4).

WILLIAMS & CONNOLLY LLP
April 23, 2021
Page 2

Defendants, Sports Fans Coalition NY, Inc. ("SFCNY") and its founder, David R. Goodfriend, operate an internet streaming television service called Locast. Locast captures over-the-air broadcast signals, modifies them, and transmits them over the internet to users that supply valuable personal information to Locast via its registration process. Locast neither pays for nor obtains consent to transmit copyright owners' copyrighted programs.

Like many for-profit companies, Locast employs a "freemium" business model: it offers "free" services interrupted by its own advertisements and then charges users monthly fees to upgrade to uninterrupted services. Specifically, following an introductory period, Locast interrupts a user's television stream every 15 minutes on a given channel with an advertisement asking the user to pay $5 per month (which Locast labels a "donation."). If the user does not agree to pay the monthly charge, he or she is sent back to Locast's program guide and must navigate back to the channel he or she was watching. If, however, the user pays, he or she receives uninterrupted service for the month or a pro-rated portion thereof.

In 2019, Plaintiffs sued Defendants for infringing their public-performance rights. In response, Defendants asserted an affirmative defense under 17 U.S.C. § 111(a)(5). That section provides a narrow exemption from liability for "[c]ertain secondary transmissions" of primary transmissions. *Id.* § 111(a). Specifically it exempts a secondary transmission that "is not made by a cable system but is made by a governmental body, or other nonprofit organization, without any purpose of direct or indirect commercial advantage, and without charge to the recipients of the secondary transmission other than assessments necessary to defray the actual and reasonable costs of maintaining and operating the secondary transmission service." *Id.* § 111(a)(5).

The Court should grant summary judgment rejecting this affirmative defense, on which Defendants bear the burden of proof. Congress designed Section 111(a)(5) to exempt "translators" or "boosters" that operate on a "completely nonprofit basis" and "do nothing more than amplify broadcast signals and retransmit them to everyone in an area for free reception." H.R. Rep. 94-1476, at 92 (1976). To qualify for the exemption, a nonprofit must meet certain strict requirements, each of which reflects the nature of broadcast translators and boosters. Here, no reasonable jury could conclude that Defendants can prove three of these necessary elements.

*First*, Section 111(a)(5) applies only to *localized* media like broadcast translators and boosters that serve viewers in an immediate vicinity—not to services like the internet that have *global* reach. By its terms, Section 111(a)(5) is limited to "[c]ertain secondary transmissions." And like other provisions in Section 111, the exemption defines qualifying transmissions in "location-sensitive language." *Fox Television Stations, Inc. v. Aereokiller, LLC*, 851 F.3d 1002, 1013 (9th Cir. 2017) (interpreting cable compulsory-license provisions). For example, Section 111(a)(5) prohibits any charge to "recipients" of a transmission, other than certain "assessments." An "assessment" (often called a local or special assessment) is a charge on persons or property in a *limited area* to pay for a local improvement. *See, e.g.*, *Illinois Cent. R. Co. v. City of Decatur*, 147 U.S. 190, 197-98 (1893). The exemption thus contemplates that recipients of a qualifying transmission will be in the same limited area, showing that it does not extend to global transmissions. And this conclusion makes sense. In enacting Section 111(a)(5), Congress balanced the need to protect copyright owners' rights against the interest in extending broadcast signals to certain areas served only by translators or boosters. It would upset that balance to apply

WILLIAMS & CONNOLLY LLP

April 23, 2021
Page 3

the exemption to services that "retransmit works across the globe instantaneously" and thus pose "a more serious threat" to copyrighted works. *Aereokiller*, 851 F.3d at 1011.

Here, there is no genuine dispute that Locast's internet-based service has global reach. It is no answer for Defendants to argue that Locast uses "geo-fencing" technology to limit its transmissions to particular markets. Even if Locast's geo-fencing technology were error-free and immune to circumvention (it is not), the fact that Locast uses it only underscores that its service is *not* inherently localized. *See Filmon X, LLC v. Window to the World Commc'ns, Inc.*, 2016 WL 1161276, at *13 (N.D. Ill. Mar. 23, 2016). Locast, therefore, falls outside the exemption.

*Second,* even if Locast fell within the scope of the exemption, Defendants cannot prove that they make secondary transmissions "without *any* purpose of direct or indirect commercial advantage." 17 U.S.C. § 111(a)(5) (emphasis added). That SFCNY claims to be a nonprofit is irrelevant. The commercial-advantage clause is a distinct requirement, separate and apart from the requirement that the transmitting entity be a governmental body or nonprofit. And that additional requirement is strict; it forbids making secondary transmissions with "any" commercial purpose (no matter how tangential), whether "direct" or "indirect."

Here, Defendants cannot prove they meet this demanding standard. As courts recognize in the context of examining commercial use as part of a fair-use analysis, 17 U.S.C. § 107(1), a nonprofit acts commercially when it exploits copyrighted material to attract new members who may donate to the organization. *See Worldwide Church of God v. Phila. Church of God, Inc.*, 227 F.3d 1110, 1118 (9th Cir. 2000). By Locast's own account, that is precisely what it does. It makes secondary transmissions to attract new members from whom it solicits monetary "donations" in exchange for uninterrupted service. No reasonable juror could conclude that Locast engages in this conduct with no purpose of commercial advantage. That Locast claims its "ultimate purposes" are charitable "can make no difference." *See Assoc. Music Pubs. v. Debs Mem'l Radio Fund*, 141 F.2d 852, 855 (2d Cir. 1944) (applying analogous "for profit" language of 1909 Copyright Act).

And that purpose of commercial advantage is only the tip of the iceberg. Locast has leveraged its unauthorized internet television service for a number of other commercial purposes—including enhancing its name recognition and that of its founder, collecting valuable data, and conferring benefits on pay-television companies that support Locast. Any one of these purposes suffices to show that Locast does not make secondary transmissions without "any" purpose of "direct or indirect commercial advantage." 17 U.S.C. § 111(a)(5).

*Third*, Locast violates the additional requirement that, to qualify for the exemption, a nonprofit may not impose any "charge" on recipients, "other than assessments necessary to defray the actual and reasonable costs of maintaining and operating the secondary transmission service." 17 U.S.C. § 111(a)(5). Although Locast calls the amounts it extracts from users "donations," courts "look beyond mere formal labels and consider the substance of the transaction." *Fourth Floor Music v. Highfill*, 1986 WL 10883, at *4 (W.D. Mo. June 3, 1986), *aff'd* 831 F.2d 300 (8th Cir. 1987). Here, the substance of the transaction is clear: Locast demands users pay a monthly fee in exchange for uninterrupted services. Thus, there is no genuine dispute that it imposes "charges." And those charges neither are "assessments" (which are community-based charges), nor are they "necessary" to defray the costs of maintaining and operating Locast's service.

WILLIAMS & CONNOLLY LLP
April 23, 2021
Page 4

                        Sincerely,

                        Gerson A. Zweifach

cc:    All Counsel of Record via ECF