ORIGINAL

MEMO ENDORSED

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED 4/26/21

**orrick**

April 23, 2021

*Via ECF*

*Each party may file its motion, according to the schedule, without further ado.*

*Louis L. Stanton*
*4/26/21*

The Honorable Louis L. Stanton
United States District Judge
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007-1312

Orrick, Herrington & Sutcliffe LLP
222 Berkeley Street
Suite 2000
Boston, MA 02116-3740

+1 617 880 1800
orrick.com

R. David Hosp

E dhosp@orrick.com
D +1 617 880 1886
F +1 617 880 1801

Re: **American Broadcasting Companies, Inc. et al. v. David R. Goodfriend et al., No. 19-cv-7136-LLS**

Dear Judge Stanton:

We represent Defendants and Counterclaim-Plaintiffs David R. Goodfriend ("Mr. Goodfriend") and Sports Fans Coalition NY, Inc. ("SFCNY") (together, "Defendants") in the above-referenced matter. Pursuant to Rule 2A of Your Honor's Individual Rules, we write to request a pre-motion conference concerning Defendants' anticipated motion for summary judgment of no infringement. We note that a schedule for summary judgment briefing has already been set by the Court in this matter and that opening briefs are due on May 6, 2021. Dkt. No. 99.

Plaintiffs allege that Defendants violate their copyrights in the public performance of their audiovisual works because SFCNY makes secondary transmissions of Plaintiffs' free over-the-air broadcasts. SFCNY's secondary transmissions, however, are expressly exempted from copyright liability under Section 111(a)(5) of the Copyright Act, which provides that retransmissions do not infringe copyright if:

(1) they are "secondary transmission[s];"
(2) "not made by a cable system;"
(3) "made by a . . . nonprofit organization;"
(4) "without any purpose of direct or indirect commercial advantage;" and
(5) "without charge to the recipients other than assessments necessary to defray the actual and reasonable costs of operating the service."

U.S.C. § 111(a)(5). There is no genuine dispute of material fact that Defendants' transmissions meet each of these conditions.

First, Defendants' transmissions are secondary transmissions according to settled law. While Plaintiffs argue that there are technical differences between the method of retransmission used by traditional terrestrial translators and the method of retransmission used by SFCNY, the

1



Supreme Court has held that the definition of public performance as applied in Section 111 of the Copyright Act is technologically agnostic. *Am. Broad. Cos., Inc. v. Aereo, Inc.*, 573 U.S. 431, 451 (2014) ("Insofar as there are differences [between Aereo's practices and CATV systems], those differences concern not the nature of the service that Aereo provides so much as the technological manner in which it provides the service. We conclude that those differences are not adequate to place Aereo's activities outside the scope of the Act."). Moreover, Plaintiffs are wrong insofar as many of the technological steps involved in the Locast retransmissions are also made by traditional translators. In any event, *none* of the technological distinctions Plaintiffs rely on are found in Section 111 – their distinctions are irrelevant to its application.

Second, Plaintiffs concede that Locast is not a cable system, as they must. Plfs. Resp. to Interrogatories at No. 8 ("Plaintiffs do not contend in this case that Sports Fans Coalition NY, Inc. is a 'cable system' as that phrase is used in 17 U.S.C. § 111(a)(5)"). Indeed, Plaintiffs have advocated repeatedly in the past that services that stream programming over the Internet do not qualify as cable companies for purposes of Copyright and Federal Communications law. *See, e.g.*, Pl.'s Opp. To Mot. for Summ. Adjudication, *Fox Television Stations, Inc. v. FilmON x LLC*, 150 F. Supp. 3d 1 (D.D.C. 2015) (arguing that "internet retransmission services are not 'cable systems'"); Br. of Appellants, *Fox Television Stations, Inc. v. Aereo Killer LLC*, No. 15-56420 (9th Cir. 2016) ("An Internet-based retransmission service such as FilmOn X does not meet the Act's definition of a 'cable system' and therefore is ineligible for the Section 111 license.").

Third, there is no factual dispute that SFCNY is a 501(c)(3) charitable non-profit organization in good standing under Federal and New York law. Plaintiffs argue that SFCNY should not be treated as a nonprofit under 111(a)(5) because it is a "sham" formed for commercial purposes, but this is really an argument directed toward the fourth factor. Plaintiffs have not challenged SFCNY's 501(c)(3) status as a factual matter.

Fourth, there is no genuine issue of fact that SFCNY has no purpose of direct or indirect commercial advantage. The is no evidentiary support for a contrary state of mind, i.e., "purpose." And, no evidence of any commercial advantage. No one owns SFCNY. It pays no dividends, no distributions, and no salaries. It pays typical, market prices for its costs, such as physical space, equipment, technical upkeep, and internet access. And it defrays those costs by seeking and accepting donations, including donations from viewers, for the actual and reasonable costs of maintaining and operating the secondary transmission service. Plaintiffs cannot dispute any of these facts. Instead, Plaintiffs invent two novel arguments to claim that SFCNY has a purpose of direct or indirect commercial advantage. First, Plaintiffs assert that because SFCNY engages in commercial *activity* (e.g., by using vendors, entering into negotiations with for-profit entities, and attempting to raise revenue over and above what it spends) it by definition has a commercial purpose. Second, Plaintiffs assert that SFCNY is a "sham" that is really intended to benefit Dish and AT&T, and other pay-TV platforms by increasing their leverage in retransmission consent negotiations. Neither contention is supported by any evidence.



Plaintiffs' position that commercial activity and attempts to generate excess revenue equate to a "commercial purpose" is contrary to the law. When evaluating whether a 501(c)(3) charitable nonprofit has a commercial purpose outside of the eight exclusive purposes enumerated in the statute, courts do not equate commercial activity with commercial "purpose," instead recognizing that most nonprofits engage in commercial activities in order to further their charitable mission. An impermissible commercial purpose is found only where the commercial activity is not directed toward or related to accomplishing the charitable mission. In this case, Plaintiffs have admitted that all of the funds raised by the activities they assert are "commercial" in nature have been used exclusively to advance SFCNY's mission: providing greater accessibility to the over-the-air television signals through the operation of its Locast service.

Nor is there evidence sufficient to raise a factual question concerning Plaintiffs' invented claim that the purpose of Locast was to aid Dish, AT&T, and other pay-TV providers. Plaintiffs have been unable to quantify or identify any specific impact on retransmission consent negotiations. Even if they could, the bulk of the evidence shows that the Locast service likely harms pay-TV platforms because it encourages cord-cutting, which Plaintiffs admit harms companies like Dish and AT&T. The undisputed evidence shows that Mr. Goodfriend never consulted with multichannel video programming distributors ("MVPDs") in launching SFCNY, was never asked to start SFCNY, and no MVPD provided any funding for the first year and a half of its operation, notwithstanding Mr. Goodfriend's solicitation of MVPDs (as well as broadcasters and private foundations) for support. Plaintiffs' claims are nothing more than irrelevant accusations without evidentiary support, insufficient to raise a legitimate question of fact.

Finally, there is no legitimate factual dispute that SFCNY does not charge assessments. There is no dispute that SFCNY does not charge its users, and any donations are voluntary. Plaintiffs assert that SFCNY charges assessments because unless a user donates five dollars a month, SFCNY periodically interrupts the programming stream to request a donation. But nonprofit auditors have examined the system and determined that it can still be used for free, such that any payments made by users are appropriately categorized as donations. Plaintiffs offer no evidence to the contrary. And more than half of Locast's active users (and more than 90% of its members) use the system without making donations. Moreover, even if the donations were to be characterized as "assessments," there is no dispute that SFCNY is channeling all of the money collected into the reasonable and actual cost of operating the system—including improvements to technology and expansion of markets to reach a greater amount of the public.

For all these reasons, there can be no legitimate dispute that SFCNY's Locast's transmissions fall squarely under the exemption from copyright liability provided in 501(c)(3).

Respectfully submitted,
/s/ R. David Hosp
R. David Hosp

CC: All counsel of record via ECF