## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

AMERICAN BROADCASTING
COMPANIES, INC., DISNEY
ENTERPRISES, INC., TWENTIETH
CENTURY FOX FILM CORPORATION,
CBS BROADCASTING INC., CBS STUDIOS
INC., FOX TELEVISION STATIONS, LLC,
FOX BROADCASTING COMPANY, LLC,
NBCUNIVERSAL MEDIA, LLC,
UNIVERSAL TELEVISION LLC, and OPEN
4 BUSINESS PRODUCTIONS, LLC,

     *Plaintiffs and Counterclaim-Defendants*,

     v.

DAVID R. GOODFRIEND and SPORTS
FANS COALITION NY, INC.,

     *Defendants and Counterclaim-Plaintiffs*.

Case No.:  19-cv-7136-LLS

**ORAL ARGUMENT REQUESTED**

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
## DAVID R. GOODFRIEND'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................1

STATEMENT OF FACTS ......................................................................................3

LEGAL STANDARD...........................................................................................8

ARGUMENT ....................................................................................................9

   I.   There Is No Genuine Dispute That Mr. Goodfriend Serves as a Director, Officer, Key Person, or Trustee of SFCNY ......................................................10

   II.   There is No Genuine Dispute That SFCNY is an Organization Described in Section 501(c)(3) of the United States Internal Revenue Code .........................................11

   III.   There Is No Dispute That Mr. Goodfriend Has Served in His Roles as Chairman, President, Treasurer, and Board Member as a Volunteer, Without Compensation ..........................................................................................11

   IV.   There Is No Genuine Dispute That Mr. Goodfriend Was Acting within the Scope of His Responsibility at All Relevant Times and Liability Would be Solely Based on Mr. Goodfriend's Conduct in Execution of His Office as Chairman, President, Treasurer, and Board Member ..........................................15

   V.   There Is No Genuine Dispute That Mr. Goodfriend's Conduct Did Not Constitute Gross Negligence, Willful or Criminal Misconduct, Reckless Misconduct, or a Conscious, Flagrant Indifference to the Rights or Safety of the Plaintiffs and Was Not Intended to Cause Harm ..........................................16

CONCLUSION..................................................................................................19

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)................................................................................9

*Waschle ex rel. Birkhold-Waschle v. Winter Sports, Inc.*,
   127 F. Supp. 3d 1090 (D. Mont. 2015)...............................................11, 12, 16, 19

*Branch v. Ogilvy & Mathew, Inc.*,
   772 F. Supp. 1359 (S.D.N.Y. 1991).................................................. 16-17

*Bryant v. Maffucci*,
   923 F.2d 979 (2d Cir. 1991)....................................................................9

*Catanzaro v. Weiden*,
   140 F.3d 91 (2d Cir. 1998)......................................................................8

*Feiner & Co. v. Turner Entertainment Co.*,
   No. 96 Civ. 1472(RO), 1997 WL 603447 (S.D.N.Y. Sept. 30, 1997)....................17

*Foti v. Gerlach*,
   No. CV 06-4152, 2008 WL 11505956 (D.S.D. May 1, 2008) ............................ 12, 16, 19-20

*Hearst Corp. v. Stark*,
   639 F. Supp. 970 (N.D. Cal. 1986) ........................................................17

*Hickory Grove Music v. Andrews*,
   749 F. Supp. 1031 (D. Mont. 1990)......................................................18

*Hope v. Congregation Shaaray Tefila Glens Falls New York*,
   64 Misc. 3d 1233(A), 117 N.Y.S.3d 810, slip op. (N.Y. Sup. Ct. Aug. 26,
   2019) .........................................................................................12, 20

*Kaye v. Storm King Sch.*,
   No. 11 CV 3369 VB, 2015 WL 5460107 (S.D.N.Y. June 8, 2015) ......................20

*Knight v. United States Fire Ins. Co.*,
   804 F.2d 9 (2d Cir. 1986).......................................................................9

*LuxSoma LLC v. Leg Resource, Inc.*,
   289 F. Supp. 3d 514 (S.D.N.Y. 2018)................................................8, 9

*Princeton Univ. Press v. Michigan Document Services, Inc.*,
   99 F.3d 1381 (6th Cir. 1996), cert. denied, 520 U.S. 1156 (1997)........................17

*Scanlon v. Kessler*,
    11 F. Supp. 2d 444 (S.D.N.Y. 1998)........................................................................15

**Statutes**

17 U.S.C. § 111(a)(5).................................................................................... 1, 2-3, 6

42 U.S.C. § 14501(a) ...........................................................................................9

42 U.S.C. § 14503(a) ...................................................................................9, 15, 19

42 U.S.C. § 14505(6) ......................................................................................12, 15

New York Not-For-Profit Corporation Law § 720-a ......................... 9-10, 11, 12, 15, 19

**Other Authorities**

Fed. R. Civ. P. 56(a) ...........................................................................................8

H.R. Rep. No. 105-101, pt. 1 (1997)......................................................................9

Melville B Nimmer & David Nimmer, 4 Nimmer on Copyright § 14.04 (2021)..........................18

Defendant David R. Goodfriend ("Defendant" or "Mr. Goodfriend") respectfully submits this Memorandum of Law in Support of his Motion for Summary Judgment seeking a finding of statutory immunity from liability and dismissal of all claims pursuant to the federal Volunteer Protection Act and the New York Not-For-Profit Corporation Law § 720-a.

## PRELIMINARY STATEMENT

Both the Volunteer Protection Act and Section 720-a were adopted to prevent the risk of personal liability from dissuading people to volunteer for public interest organizations.  At their core, they provide an exemption from personal liability for those who serve as officers or employees of nonprofit corporations as long as they are not paid, are acting in the role of their duties for the organization, and did not willfully or recklessly cause the harm in question.  There are no disputed material facts on this issue and Mr. Goodfriend should be dismissed from the action.

Congress has made clear that it is in the public interest for nonprofit corporations to increase the availability of the receipt of over-the-air broadcast programming for the American public.  17 U.S.C. § 111(a)(5).  The American public has the right to access the programming that is broadcast by those granted free licenses by the federal government to use the public airwaves. The problem is, not everyone can access the signals that carry that programming.  Tall buildings, bad weather, cell towers, mountains, valleys, and even trees can interfere with the over-the-air signal, leaving millions of American consumers without access to free, local weather, news, and emergency information, and undermining Congress' longstanding goal of providing free, ubiquitous, local programming through our nation's federally licensed broadcast television system.

Mr. Goodfriend founded SFCNY to try to solve this public interest problem.  Mr. Goodfriend has a decades-long history of public service and commitment to consumer advocacy.

He has served as Deputy Staff Secretary to President Bill Clinton; professional staff member to Congressional committees chaired by Senator Herb Kohl (D-WI) and Charles B. Rangel (D-NY); and Media Legal Advisor to FCC Commissioner Susan Ness.   Statement of Material Facts ("SOMF") at ¶¶ 3-6.  Mr. Goodfriend formerly served as Vice President of Law and Public Policy at DISH, leaving that position over a decade ago to join a small consulting and public-policy advocacy firm founded by his wife, serving a variety of clients including labor unions, independent television programmers, technology startups, and satellite television and broadband providers.  *Id.* at ¶¶ 7-11.  Mr. Goodfriend also founded "Sports Fans Coalition," a non-profit organization that petitioned the FCC to end the "Sports Blackout Rule," a decades-old rule that blacked out a team's home games in its local market if tickets did not sell out.  *Id.* at ¶¶ 12-13.  Sports Fans Coalition took on the NFL, MLB, NHL, and NBA and, as a direct result of the organization's advocacy, won a victory for consumers when the FCC voted unanimously to eliminate the Sports Blackout Rule. *Id.* at ¶ 13.

Throughout his many years of experience in public advocacy, particularly in the communications industry, Mr. Goodfriend has been aware that many American consumers lack quality access to the television broadcast signals they are entitled to receive.  *Id.* at ¶ 14.  So, Mr. Goodfriend launched Locast: a public service operated by Sports Fans Coalition NY, Inc. ("SFCNY"), a 501(c)(3) non-profit corporation, which provides access to local television broadcast signals over the internet in 32 markets.  *Id.* at ¶ 14.   Mr. Goodfriend currently serves as the unpaid Chairman of SFCNY and is an unpaid member of the Board of Directors.  *Id.* at ¶¶ 28-29,  32-34.

Under the unambiguous language of 17 U.S.C. § 111(a)(5), it "is not an infringement of copyright" when a "non-profit organization" makes a secondary transmission of a performance of

a copyrighted work, "without any purpose of direct or indirect commercial advantage, and without charge to the recipients of the secondary transmission other than assessments necessary to defray the actual and reasonable costs of maintaining and operating the secondary transmission service." Locast fits squarely within this statute—indeed, it was formed expressly to comply with the statutory requirements. Despite this, plaintiffs sued not just Locast, but also Mr. Goodfriend in his individual capacity. This motion only concerns whether Mr. Goodfriend is a proper defendant. He is not.

Plaintiffs' claims against Mr. Goodfriend are impermissible as a matter of law. Mr. Goodfriend is entitled to immunity from liability under both (i) the federal Volunteer Protection Act (VPA) and (ii) the New York Not-For-Profit Corporation Law § 720-a ("§ 720-a").

## STATEMENT OF FACTS

SFCNY was incorporated in the State of New York on September 8, 2017 as a charitable organization under Section 201 of the Not-For-Profit Corporation law. SOMF at ¶ 15. SFCNY's mission is to provide "a public service by offering local, over-the-air broadcast programming via the internet to anyone located within such local stations' market (designed market area.)." SOMF at ¶ 19. SFCNY applied for and received recognition of exemption under § 501(c)(3) of the Internal Revenue Code. SOMF at ¶¶ 16-17. When the Internal Revenue Service ("IRS") issued its tax determination confirming SFCNY's status as a tax-exempt public charity under § 501(c)(3) of the Internal Revenue Code, it applied the determination retroactively, establishing September 8, 2017 as the effective date of exemption. SOMF at ¶ 18.

Mr. Goodfriend began serving as the Chairman, President, Treasurer, and a Board Member of SFCNY since its launch in 2017 and currently serves as Chairman and Member of the Board. SOMF at ¶¶ 28-29. His duties include supervising and managing SFCNY's affairs. SOMF at ¶

30.  All of Mr. Goodfriend's conduct with respect to SFCNY and the Locast service has been within the scope of his duties as Chairman, President, Treasurer, and Board Member of SFCNY. SOMF at ¶ 31.  SFCNY has two other members on its Board—Gigi Sohn and Habiba Alcindor. SOMF at ¶ 21.  Gigi Sohn has devoted her career to serving the public interest, including founding the nonprofit advocacy organization Public Knowledge, serving as the Executive Director of the nonprofit law firm Media Access Project, and serving as a Special Counsel to FCC Chairman Tom Wheeler.  SOMF at ¶¶ 22-25.  Habiba Alcindor is a writer, producer, dramatist, director, and social justice activist who has written on topics such as equality, education, sports, and the media, and has advocated for expanding access to media, particularly with respect to sports.  SOMF at ¶ 26.

Public filings, including SFCNY's Form 1023 (*i.e.*, its 501(c)(3) application) and tax returns filed under penalty of perjury,[1] show that Mr. Goodfriend has never received a salary or any other compensation for services performed on behalf of SFCNY.  SOMF at ¶¶ 32-34; *see also* Ex. 8 at ¶¶ 10, 28 (Rebuttal Expert Report of Thomas J. Raffa ("Raffa Rebuttal Report")):

| | | | |
|---|---|---|---|
| 13 | Grants and similar amounts paid (Part IX, column (A), lines 1-3) | 0. | 0. |
| 14 | Benefits paid to or for members (Part IX, column (A), line 4) | 0. | 0. |
| 15 | Salaries, other compensation, employee benefits (Part IX, column (A), lines 5-10) | 0. | 0. |
| 16a | Professional fundraising fees (Part IX, column (A), line 11e) | 0. | 0. |
| b | Total fundraising expenses (Part IX, column (D), line 25) ▶ | 0. | | |

**Ex. 4 (2019 Form 990)**

---

[1] SOMF at ¶ 43; Ex. 4 (2019 Form 990) at SFCNY-000061210 ("Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete," signed by David Goodfriend); Ex. 6 (2018 Form 990-EZ) at SFCNY-000058578 ("Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete," signed by David Goodfriend).

| | | | |
|---|---|---|---|
| 10 | Grants and similar amounts paid (list in Schedule O) | 10 | |
| 11 | Benefits paid to or for members | 11 | |
| 12 | Salaries, other compensation, and employee benefits | 12 | |
| 13 | Professional fees and other payments to independent contractors | 13 | 537,442. |
| 14 | Occupancy, rent, utilities, and maintenance | 14 | 88,732. |
| 15 | Printing, publications, postage, and shipping | 15 | |

*(left margin label: Expenses)*

**Ex. 6 (2018 Form 990-EZ)**

**Part V** **Compensation and Other Financial Arrangements With Your Officers, Directors, Trustees, Employees, and Independent Contractors**

1a List the names, titles, and mailing addresses of all of your officers, directors, and trustees. For each person listed, state their total annual **compensation**, or proposed compensation, for all services to the organization, whether as an officer, employee, or other position. Use actual figures, if available. Enter "none" if no compensation is or will be paid. If additional space is needed, attach a separate sheet. Refer to the instructions for information on what to include as compensation.

| Name | Title | Mailing address | Compensation amount (annual actual or estimated) |
|---|---|---|---|
| Please see attached. | | | |

| | |
|---|---|
| **Name** | David Goodfriend |
| **Title** | Director; President; Treasurer |
| **Mailing Address** | 3075 Veterans Highway, Suite 131, Ronkonkoma, NY 11779 |
| **Compensation** | None. |

| | | | | |
|---|---|---|---|---|
| 17 | Compensation of officers, directors, and trustees | 0 | 0 | 0 |
| 18 | Other salaries and wages | 0 | 0 | 0 |
| 19 | Interest expense | 0 | 0 | 0 |

*(left margin label: Expenses)*

**Ex. 2 (Form 1023)**

Mr. Goodfriend has also never received any in-kind payments for any services performed on behalf of SFCNY.  SOMF at ¶ 33; *see also* Ex. 8 ¶¶ 10, 28 (Rebuttal Expert Report of Thomas J. Raffa); Ex. 7 (Expert Report of Thomas J. Raffa ("Raffa Report")) at ¶ 29 (confirming that there was "no evidence of funds being paid directly to [SFCNY's board members] in their capacity as officers or directors of SFCNY").  No third party has paid Mr. Goodfriend or any entity related to SFCNY any compensation—either monetary or in-kind—for any activities related to SFCNY or Locast. SOMF at ¶¶ 32-42.

In 2019 and 2020, GRF CPAs & Advisors ("GRF CPAs") performed audits of SFCNY's

financial statements for, respectively, the 2019 and 2020 financial years using generally accepted accounting principles.  SOMF at ¶ 36, 38.  Neither the auditors nor SFCNY's 2019 federal Form 990 disclosed any parties related to SFCNY.  SOMF at ¶ 37, 39, 40; *see also* Ex. 7 (Raffa Report) at ¶ 29 ("we saw no evidence of funds being paid to these individuals [including Mr. Goodfriend] through related entities as confirmed by the auditors that disclosed no related parties in the audited statement and in the federal Form 990"):

| SCHEDULE R (Form 990) | | Related Organizations and Unrelated Partnerships | | | OMB No. 1545-0047 |
|---|---|---|---|---|---|
| | | ▶ Complete if the organization answered "Yes" on Form 990, Part IV, line 33, 34, 35b, 36, or 37. ▶ Attach to Form 990. | | | 2019 |
| Department of the Treasury Internal Revenue Service | | ▶ Go to www.irs.gov/Form990 for instructions and the latest information. | | | Open to Public Inspection |
| Name of the organization | SPORTS FANS COALITION NY, INC. | | | Employer identification number | 82-3111352 |

**Part I  Identification of Disregarded Entities.** Complete if the organization answered "Yes" on Form 990, Part IV, line 33.

| (a) Name, address, and EIN (if applicable) of disregarded entity | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Total income | (e) End-of-year assets | (f) Direct controlling entity |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**Ex. 4 (2019 Form 990)**

SFCNY would be required to report any benefits to related parties in its federal Form 990.  SOMF at ¶ 42; Ex. 8 (Rebuttal Expert Report of Thomas J. Raffa) at ¶ 10; Ex. 5 (Instructions for Form 990) ("Lines 33–34. The organization is required to report on Schedule R (Form 990) certain information regarding ownership or control of, and transactions with, its disregarded entities and tax-exempt and taxable related organizations.").

Mr. Goodfriend launched and has operated Locast under the good faith belief that Locast's secondary transmissions were expressly allowed by 17 U.S.C. § 111(a)(5).  SOMF at ¶ 45.  Mr. Goodfriend's belief that Locast's activities were lawful, falling within the unambiguous language

6

of § 111(a)(5), and in pursuit of the public interest, is well-documented.  *Id.*; Ex. 2 (Form 1023) at SFCNY-000086988 ("As a nonprofit organization operating a non-cable translator system to retransmit local broadcast signals, SFCNY falls under the exception to secondary transmission copyright infringement and thus fulfills a public purpose expressly approved by Congressional action"); *see also*:

- "[T]he law clearly is on our side. We meticulously designed Locast to fit within the letter and spirit of the statute." SOMF at ¶ 45; Ex. 15 (https://www.nexttv.com/news/the-five-spot-david-goodfriend).

- "The Copyright Act of 1976 is clearly on our side, and we believe we will win . . . The law allows for nonprofits to retransmit local TV channels and to ask for donations to help cover costs. Locast clearly meets these guidelines." SOMF at ¶ 45; Ex. 16 (https://www.globenewswire.com/en/news-release/2021/01/19/2160732/0/en/Locast-surpasses-2-3-million-users-seeking-to-stream-their-local-TV-channels-for-free.html).

- "We've been very careful to adhere to the letter and the spirit of the law." SOMF at ¶ 45; Ex. 17 (https://www.wsj.com/articles/streaming-service-challenges-broadcasters-with-free-tv-feeds-11561986187).

- "Congress Authorized a Service Like Locast." SOMF at ¶ 45; Ex. 18 (https://www.locast.org/news/about/).

- "Apparently, some very good lawyers concluded what we've always known: Locast is legal . . . the lawyers who wrote this White Paper agree with every other lawyer we ever consulted about Locast. Copyright law (17 U.S.C. 111(a)(5)) and judicial precedent allow a non-profit to retransmit a local broadcast signal over the Internet, as Locast does." SOMF at ¶ 45; Ex. 19 (https://www.locast.org/news/press-releases/locast-white-paper/).

- "The legal underpinnings of [Locast's] service have been thoroughly vetted and well publicized.  Not a single stakeholder has asserted to Locast that our operations are outside the scope of the Copyright Act." SOMF at ¶ 45; Ex. 14 at SFCNY-000007909 (Open Society Foundation Grant Application).

Mr. Goodfriend's belief that Locast's activities were lawful was only underscored when—eighteen months after Locast's launch—neither SFCNY nor Mr. Goodfriend had received any cease-and-desist letters, phone calls, or any other communication from any of the Plaintiffs or any other broadcaster suggesting that SFCNY's activities were unlawful.  SOMF at ¶¶ 48-49.  This inaction

reinforced Mr. Goodfriend's belief that § 111(a)(5)'s language was unambiguous and SFCNY's activities fell within the statute's ambit.  SOMF at ¶ 50; *see also*:

- "Late last year, I spoke to you about the non-profit digital translator service I was launching . . .We are expressly operating under 17 U.S.C. 111(a)(5), which by its terms authorizes non-profits that are not cable operators to retransmit local broadcast signals . . . The broadcasters have said nothing.  No lawsuit, no cease-and-desist letter, not even a phone call.  They are very aware of what we are doing but, I believe, see that we are operating under applicable copyright law and have done our due diligence.  We also have heard from independent local broadcasters who support what we're doing, so that also might explain why the broadcasters have not sought to block us."  SOMF at ¶ 50; Ex. 22 (SFCNY-000042549).

- "At the very outset, they were convinced that we had the right arguments, and I think time has proven that is a widely shared view. I think if copyright holders felt that we were in flagrant violation of the law, they would have sued us by now." SOMF at ¶ 50; Ex. 20 (https://www.spglobal.com/marketintelligence/en/news-insights/trending/82_enplx5zqr7glmm90hmg2).

- "The project is grounded in law that says a governmental or nonprofit organization may retransmit a broadcast signal . . . Broadcasters are pretty quick to file litigation if they think someone doing something illegal with their signals, and no broadcaster has sued us. We've actually had many broadcasters say they want to help us." SOMF at ¶ 50; Ex. 21 (https://www.mercurynews.com/2019/06/24/cord-cutters-get-another-choice-with-tv-streamer-locast/).

Mr. Goodfriend's good faith belief that Locast's activities were lawful and the language of § 111(a)(5) gave him the confidence to continue working on behalf of SFCNY, despite the possibility that broadcasters might sue SFCNY in an effort to shut down Locast.  SOMF at ¶ 47.

## LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also LuxSoma LLC v. Leg Resource, Inc.*, 289 F. Supp. 3d 514, 521 (S.D.N.Y. 2018).[2] A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the

---

[2] Unless otherwise indicated, all internal citations and quotations have been omitted and all emphasis has been added.

nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" only if it would "affect the outcome of the suit."  *Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998).  A nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts."  *LuxSoma LLC*, 289 F. Supp. 3d at 521.  "Metaphysical doubt," conjecture, or surmise concerning the facts are not sufficient to avoid summary judgment.  *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)); *Knight v. United States Fire Ins. Co.*, 804 F.2d 9 (2d Cir. 1986).

## ARGUMENT

The VPA was enacted to encourage volunteerism and protect volunteers, preventing the "potential for liability" from deterring "the willingness of volunteers to offer their services."  *See* Volunteer Protection Act, 42 U.S.C. § 14501(a) (1997) (finding that the "as a result [of potential liability's deterrent effect], many nonprofit public and private organizations . . . [were] adversely affected by the withdrawal of volunteers from boards of directors and service in other capacities."); *see also* H.R. Rep. No. 105-101, pt. 1, at 5-6 (1997) ("the potential for unwarranted lawsuits creates an atmosphere where too many people are pointing the fingers and too few remain willing to offer a helping hand.").  The VPA establishes immunity from liability for (1) any volunteer; (2) for a nonprofit organization or governmental entity; (3) acting within the scope of his responsibilities at the time of the act or omission; when (4) the harm was not caused by willful or criminal misconduct, gross negligence, reckless misconduct, or a conscious flagrant indifference to the rights or safety of the individual harmed by the volunteer.  42 U.S.C. § 14503(a).

The New York state statute (§ 720-a) similarly establishes personal immunity where a defendant (1) served as a director, officer, key person, or trustee (2) of a corporation, association, organization, or trust described in section 501(c)(3) of the internal revenue code (3) without

compensation, (4) that liability would be solely based on conduct in the execution of such office, and (5) that conduct did not constitute gross negligence and was not intended to cause resulting harm to the person asserting such liability.  N.Y. Not-for-Profit Corp. Law § 720-a (McKinney 2019).

None of the relevant, material facts as to Mr. Goodfriend's immunity from liability is in genuine dispute.  First, SFCNY is a tax-exempt non-profit charitable organization under United States Internal Revenue Code Section 501(c)(3), incorporated under the Not-For-Profit Corporation Law of the State of New York.  Second, Mr. Goodfriend has served as the Chairman, President, and/or Treasurer of SFCNY and a member of the Board of Directors of SFCNY in a volunteer capacity.   Third, there can be no genuine dispute that Mr. Goodfriend's alleged conduct at issue in the case is based solely on his execution of his roles as an uncompensated director and officer and that he was acting within the scope of his responsibilities as the Chairman, President, and/or Treasurer, and a Board Member of SFCNY at the time of the acts alleged in the Complaint. Finally, there cannot be a genuine dispute that Mr. Goodfriend's alleged conduct was not willful, reckless, grossly negligence, or consciously, flagrantly indifferent to individual rights, or that Mr. Goodfriend intended to cause any harm to Plaintiffs.  Therefore, Mr. Goodfriend is entitled to summary judgment as a matter of law.

## I.    There Is No Genuine Dispute That Mr. Goodfriend Serves as a Director, Officer, Key Person, or Trustee of SFCNY

Mr. Goodfriend indisputably served as the President and Treasurer of SFCNY and is currently its Chairman and a member of the Board of Directors of SFCNY.  Indeed, in their Complaint, Plaintiffs concede that Mr. Goodfriend is "a director and officer of SFCNY."  Dkt. No. 81, Am. Compl. at ¶ 30.  There can be no genuine dispute that Mr. Goodfriend served as a director, officer, key person, or trustee of SFCNY within the meaning of § 720-a.

## II.     There is No Genuine Dispute That SFCNY is an Organization Described in Section 501(c)(3) of the United States Internal Revenue Code

The VPA defines "nonprofit organization" as "any organization which is described in section 501(c)(3) of Title 26 and exempt from tax under section 501(a) of such title," or "any not-for-profit organization which is organized and conducted for public benefit and operated primarily for charitable, civic, educational, religious, welfare, or health purposes." § 14505(4); *see also* § 720-a (providing for immunity for those who served without compensation as a director, officer, key person or trustee of "a corporate, association, organization or trust described in section 501(c)(3) of the United States internal revenue code"). SFCNY is incorporated under the Not-For-Profit Corporation Law of the State of New York. SOMF at ¶ 15; *see also* Dkt. No. 81, Am. Compl. at ¶ 28 (noting that SFCNY "is incorporated as . . . a charitable organization under the laws of the State of New York"); Ex. 9 (Nachtwey Report) at 4 ("SFCNY is organized as a New York nonprofit organization"). The Internal Revenue Service ("IRS") has confirmed SFCNY's status as a tax-exempt public charity under § 501(c)(3) of the Internal Revenue Code. SOMF at ¶ 17; Ex. 3 (IRS Tax Determination Letter). SFCNY's status as a nonprofit organization within the meaning of the VPA and § 720-a is therefore well-established and cannot be disputed. *See Waschle ex rel. Birkhold-Waschle v. Winter Sports, Inc.*, 127 F. Supp. 3d 1090, 1096 (D. Mont. 2015) (deciding that "[t]here is no dispute that at the time of the incident [the organization] was a § 501(c)(3) organization," citing to the organization's Form 990).

## III.    There Is No Dispute That Mr. Goodfriend Has Served in His Roles as Chairman, President, Treasurer, and Board Member as a Volunteer, Without Compensation

There can be no genuine dispute that Mr. Goodfriend has served as the Chairman, President and Treasurer of SFCNY and a member of the Board of Directors of SFCNY in a volunteer capacity. Under the VPA, a "volunteer" is an individual performing services for a nonprofit organization or a governmental entity who does not receive either (1) "compensation (other than

reasonable reimbursement or allowance for expenses actually incurred;" or (2) "any thing of value in lieu of compensation, in excess of $500 per year, and such term includes a volunteer serving as a director, officer, trustee, or direct service volunteer." 42 U.S.C. § 14505(6); *Waschle*, 127 F. Supp. 3d at 1094 ("[a]n individual generally qualifies as a 'volunteer' if he is not compensated."); *see also* § 720-a (extending immunity to those who "serv[e] without compensation"); *Hope v. Congregation Shaaray Tefila Glens Falls New York*, 64 Misc. 3d 1233(A), 117 N.Y.S.3d 810, slip op. at 2 (N.Y. Sup. Ct. Aug. 26, 2019) (determining that defendants met their initial burden, based in part on director's affidavit stating that he had served as a director and president without compensation, and granting motion for summary judgment on the basis of § 720-a).

The fact that Mr. Goodfriend is unpaid is both publicly available and evident in the financial records Mr. Goodfriend has produced in this litigation. SFCNY's Form 1023 and its 2018 and 2019 tax returns show that Mr. Goodfriend is an unpaid volunteer, receiving no salary or other compensation from SFCNY. SOMF at ¶¶ 32-34.[3] His volunteer status cannot reasonably be disputed. *Id.; see Foti v. Gerlach*, No. CV 06-4152, 2008 WL 11505956, at *7 (D.S.D. May 1, 2008) (determining that defendants "met the requirements for immunity under the Volunteer Protection Act" and were entitled to summary judgment and citing to defendants' deposition testimony stating that they were volunteers and received no compensation for services performed).

Before any discovery had taken place in this litigation, Plaintiffs argued that Mr. Goodfriend did not qualify as a volunteer. Dkt. No. 36 at 3. Plaintiffs claimed that (1) a portion of Mr. Goodfriend's salary at Sports Fans Coalition should be imputed to his work for SFCNY and (2) the payment he receives as a DISH Network lobbyist was a subject for discovery. *Id.*

---

[3] The 2020 Form 990 is in the process of being prepared, but there have been no material changes from 2019 with respect to SFCNY's officers or directors receiving income or other compensation from SFCNY or the existence of any parties related to SFCNY. SOMF at ¶ 41.

Plaintiffs have now had ample opportunity for such discovery, which has instead established that Mr. Goodfriend has received no salary for his work for SFCNY; he receives no fees, no payments, no in-kind contributions, or any other form of direct or indirect compensation from SFCNY or any related entity.  SOMF at ¶ 32-35; *see also* Ex. 8 (Raffa Rebuttal Report) at ¶ 28.

Indeed, the plaintiffs' expert witness, Mr. Nachtwey, conceded that after reviewing all relevant financial documents from SFCNY and Mr. Goodfriend's business records, he was unable to point to any evidence that Mr. Goodfriend has received such compensation.  SOMF at ¶ 32; Ex. 9 (Nachtwey Report) at 43, n.198 ("I have not seen evidence that Goodfriend has, as of the date of this report, received cash payments from Locast"); Ex. 13 (Nachtwey Depo. Tr.) at 99:22-100:3 ("I've seen that [Mr. Goodfriend] has not yet received any payments from Locast").  Instead, unable to find any evidence of direct or indirect payments, Mr. Nachtwey tried to salvage Plaintiffs' case against Mr. Goodfriend by offering the unfounded opinion that Mr. Goodfriend had accrued $2.1 to $3.5 million in "private benefit" based on his hypothetical estimate of Locast's enterprise value and Mr. Goodfriend's control of Locast.[4]  Ex. 9 (Nachtwey Report) at 63.

But this theory of "gain" is false and illusory.  Not only does it fail to address the controlling (and undisputed) fact that Mr. Goodfriend received no compensation in the past, it invents a hypothetical future gain.  It is based on the false presumption that Mr. Goodfriend could use his

---

[4] *See* Ex. 8 (Raffa Rebuttal Report) at ¶ 28 (explaining that "[t]o say that $2.1 million to $3.5 million in Private Benefit value has accrued to Mr. Goodfriend is an unfounded and completely false statement, and indeed Mr. Nachtwey provides no underlying support for this number other than simply stating (also without basis for the calculation) that he estimates Mr. Goodfriend's control to be 6-10% of Locast's value.  In addition, I have seen no evidence of non-financial Private Benefit inuring to Mr. Goodfriend.").  In his deposition, Mr. Nachtwey confirmed that Mr. Goodfriend had not received any payments "from Locast," and merely supposed that there was "a possibility" that he would receive payments, admitting "that whether or not that will come to pass, I don't know."  Ex. 13 (Nachtwey Depo. Tr.) at 104:10-14.

"control" over the nonprofit (despite the presence of other directors) to improperly divert resources to himself at some later date.  Federal and state law prohibit such actions, including the inurement of any benefit to anyone in Mr. Goodfriend's position, and Plaintiffs admit that Mr. Goodfriend has never engaged in such wrongdoing.  *See* SOMF at ¶ 32; Ex. 7 (Raffa Report) at ¶ 29 (explaining that "excessive compensation or paying more than fair market value for good[s] or services from a related party is prohibited and may subject the nonprofit to intermediate sanctions"); Ex. 8 (Raffa Rebuttal Report) at ¶ 34 (explaining that examples of abuse include when "a part of a 501(c)(3) organization's net earnings inure to the benefit of any individual or if the organization engaged in an excess benefit transaction with a person having substantial influence over the organization," and stating that there was "no such evidence of this or any similar untoward activities within SFCNY or with or for Mr. Goodfriend");  Ex. 9 (Nachtwey Report) at 43, n.198 Ex. 13 (Nachtwey Depo. Tr.) at 99:22-100:3.  Indeed, when pressed to identify any legal manner in which Mr. Goodfriend might "realize" the value attributed to the company through his position at SFCNY, Plaintiffs' expert was unable articulate a single way in which that could be done without violating the law.  Ex. 13 (Nachtwey Depo. Tr.) at 96:22-97:8 (testifying that he was not aware of any circumstance where "lawyers have structured a deal to allow for the disposition of the assets of a 501(c)(3) in order to inure financial benefit to a principal of that entity").  Allegations that Mr. Goodfriend theoretically might be willing to break the law in the future with no factual bases are arguably libelous and certainly not sufficient to raise a genuine dispute.

Moreover, the plaintiffs cannot establish a basis for imputing Mr. Goodfriend's salary from Sports Fans Coalition to his work at SFCNY, because there is none.  Sports Fans Coalition and SFCNY are completely separate incorporated nonprofit organizations and there is no intermingling of their finances.  SOMF at ¶ 44.  The independent auditors who audited SFCNY's financial

statements twice—once in 2019 and again in 2020—and prepared its 2019 tax filings did not disclose any parties related to SFCNY.  SOMF at ¶¶ 36-40; Ex. 10 (2019 Auditor's Report); Ex. 11 (2020 Auditor's Report); Ex. 4 (2019 Form 990) at SFCNY-000061241.  SFCNY would be required to disclose related entities in its federal Form 990.  SOMF at ¶ 42; Ex. 8 (Raffa Rebuttal Report) at ¶ 10; Ex. 4 (2019 Form 990) at SFCNY-000061241; Ex. 5 (Instructions for Form 990) at 14.  This confirms that Mr. Goodfriend has not received any compensation for his services on behalf of SFCNY through any related entities.  Ex. 7 (Raffa Report) at ¶¶ 28-29.

Plaintiffs have not presented any evidence that Mr. Goodfriend has received any monetary compensation or thing of value for his volunteer services, and the evidence establishes that he has not.  Therefore, there can be no genuine dispute that Mr. Goodfriend is a volunteer under 42 U.S.C. § 14505(6) and has served in his roles at SFCNY without compensation under § 720-a.

**IV.   There Is No Genuine Dispute That Mr. Goodfriend Was Acting within the Scope of His Responsibility at All Relevant Times and Liability Would be Solely Based on Mr. Goodfriend's Conduct in Execution of His Office as Chairman, President, Treasurer, and Board Member**

It is undisputed that Mr. Goodfriend's alleged conduct at issue in the case is based solely on his execution of his roles as an uncompensated director and officer and that he was acting within the scope of his responsibilities as the Chairman, President, Treasurer, and Board Member of SFCNY at the time of the acts alleged in the Complaint.  SOMF at ¶ 31.  Plaintiffs have not asserted otherwise in their Complaint.  *See, e.g.*, Dkt. No. 81, Am. Compl. at ¶¶ 40, 52, 64, 66, 76, 77.  Therefore, there can be no genuine dispute on this issue.  42 U.S.C. § 14503(a)(1); § 720-a; *see also Scanlon v. Kessler*, 11 F. Supp. 2d 444, 448 (S.D.N.Y. 1998) (finding that only the organization, "and not the individual defendants," was liable on the basis of §720-a, and concluding that "the individual defendants were acting within the scope of their authority, as members of the board of directors . . . when the [allegedly infringing] photographs were posted on

the Internet site, since posting photographs on GMSMA's Internet site was an activity undertaken to further the organization and its objectives."); *Waschle*, 127 F. Supp. 2d at 1096 (complaint "itself allege[d] that the [defendants] were acting in the course and scope of their capacity as volunteers…when the…alleged misfeasance occurred").

## V.  There Is No Genuine Dispute That Mr. Goodfriend's Conduct Did Not Constitute Gross Negligence, Willful or Criminal Misconduct, Reckless Misconduct, or a Conscious, Flagrant Indifference to the Rights or Safety of the Plaintiffs and Was Not Intended to Cause Harm

Finally, there cannot be a genuine dispute that Mr. Goodfriend's alleged conduct was not willful, reckless, grossly negligence, or consciously, flagrantly indifferent to individual rights. Nor did Mr. Goodfriend intend to cause any harm to Plaintiffs.  In fact, the record in this case and Mr. Goodfriend's public statements show that Mr. Goodfriend has always believed that Locast's activities were expressly allowed by 17 U.S.C. § 111(a)(5).

The Complaint does not allege recklessness, gross negligence, or conscious, flagrant indifference to individual rights.  *See generally* Dkt. No. 81, Am. Compl.  The Plaintiffs allege that "Defendants' acts of infringement are willful, in disregard of Plaintiffs' rights," but have presented no evidence to support this bare allegation.  Dkt. No. 81, Am. Compl. at ¶ 78.  Plaintiff must offer evidence of willful misconduct to establish a genuine issue of material fact—"[b]elief and speculation" is not enough.  *See, e.g., Foti*, 2008 WL 11505956 at *7; *see also Waschle*, 127 F. Supp. 3d at 1097.

Under the Copyright Act, infringement is not "willful" where the defendant has a reasonable, good faith belief that its actions were not infringing.  *See, e.g., Branch v. Ogilvy & Mathew, Inc.*, 772 F. Supp. 1359, 1364 (S.D.N.Y. 1991) (explaining that "[o]ne defense to an allegation of willfulness is the defendant's reasonable and good faith belief that its actions do not

constitute copyright infringement" and finding that defendant "held a reasonable and good faith belief that its actions did not infringe plaintiff [sic] copyright").

This case presents an issue of first impression, and the language of § 111(a)(5) is unambiguous. There can be no genuine dispute that Mr. Goodfriend has held a reasonable, good faith belief that SFCNY's actions did not infringe any copyrights because its actions were expressly designed to comply with Section 111(a)(5) and serve the public good. SOMF at ¶ 45; *See e.g.,* Ex. 19 ("some very good lawyers concluded what we've always known: Locast is legal . . . the lawyers who wrote this White Paper agree with every other lawyer we ever consulted about Locast. Copyright law (17 U.S.C. 111(a)(5)) and judicial precedent allow a non-profit to retransmit a local broadcast signal over the Internet, as Locast does.").

Therefore, there is no genuine dispute that Mr. Goodfriend's actions were not willful. *See, e.g.*, *Princeton Univ. Press v. Michigan Document Services, Inc.,* 99 F.3d 1381, 1392 (6th Cir. 1996), cert. denied, 520 U.S. 1156 (1997) (remanding case for reconsideration of statutory damages because defendant's belief that its activities constituted fair use was not "so unreasonable as to bespeak willfulness");[5] *Feiner & Co. v. Turner Entertainment Co.*, No. 96 Civ. 1472(RO), 1997 WL 603447, at *3 (S.D.N.Y. Sept. 30, 1997) (declining to find willful infringement on motion for summary judgment because the court was not "persuaded that [defendant] did not act in the good faith, if erroneous, belief that the release freed it from complying with" notice and fee

---

[5] In *Princeton Univ. Press*, defendant created and sold course packs to college students without obtaining permission from publishers, even though defendant's attorney informed him that the conduct was "risky." *Id.* at 1384. On appeal, the Sixth Circuit determined that defendant's actions were not willful. *Id.* at 1391. The court acknowledged that "[f]air use is one of the most unsettled areas of the law," and, given the "potential for reasonable disagreement" over the scope of the fair use doctrine, the defendant had a reasonable good faith belief that his conduct constituted fair use. *Id.* at 1392.

requirements);[6] *see also* Melville B Nimmer & David Nimmer, 4 Nimmer on Copyright § 14.04 (2021) ("one who has been notified that his conduct constitutes copyright infringement, but who reasonably and in good faith believes the contrary, is not 'willful' for these purposes.").

Plaintiffs' own behavior underscores the reasonableness of Mr. Goodfriend's interpretation of § 111(a)(5) and lack of willful misconduct.  For eighteen months after Mr. Goodfriend launched Locast, he did not receive a cease-and-desist letter from Plaintiffs or any other broadcaster; he did not receive a phone call, e-mail, or other communication from Plaintiffs or any other broadcaster claiming that SFCNY's actions were unlawful.  SOMF at ¶¶ 48-49.  Mr. Goodfriend reasonably concluded from Plaintiffs' own actions (or lack thereof) that his interpretation of § 111(a)(5) was reasonable and SFCNY's activities were lawful.  SOMF at ¶ 50; Ex. 22 (SFCNY-000042549) ("The broadcasters . . . are very aware of what we are doing but, I believe, see that we are operating under applicable copyright law and have done our due diligence.");     Ex. 20 (https://www.spglobal.com/marketintelligence/en/news-insights/trending/82_enplx5zqr7glmm90hmg2) ("I think if copyright holders felt that we were in flagrant violation of the law, they would have sued us by now"); Ex. 21 (https://www.mercurynews.com/2019/06/24/cord-cutters-get-another-choice-with-tv-streamer-locast/) ("The project is grounded in law that says a governmental or nonprofit organization may

---

[6] *See also Hickory Grove Music v. Andrews*, 749 F. Supp. 1031, 1039 (D. Mont. 1990) (court was "reluctant" to find defendants' infringement willful despite fact that plaintiffs called, wrote and visited defendants to advise them of the need "to obtain a license to play musical compositions" because defendants "maintained a good faith belief that they had a right to play their sound system," and one defendant even "went to the public library on her own initiative to investigate her legal obligation to obtain a license, and she left convinced that they qualified as a small commercial establishment"); *Hearst Corp. v. Stark*, 639 F. Supp. 970, 980 (N.D. Cal. 1986) (declining to find willfulness on summary judgment for defendant's importation of books into the United States in violation of Section 602 of the Copyright Act when the "case raise[d] questions of first impression").

retransmit a broadcast signal . . . Broadcasters are pretty quick to file litigation if they think someone doing something illegal with their signals, and no broadcaster has sued us.").

Despite the fact that Mr. Goodfriend has always believed that Locast's activities were lawful and that the language of § 111(a)(5) was unambiguous, he knew that would not prevent broadcasting companies from trying to shut down Locast. SOMF ¶ 46. Mr. Goodfriend knew that being right about the meaning of the law and its parameters would not be enough to prevent a lawsuit. *Id.* Nevertheless, it has been his continuing belief that his position is in the right that has compelled Mr. Goodfriend to continue his work on behalf of SFCNY despite the risk that major broadcasting companies would do whatever it took (including asserting meritless individual claims against him) to prevent Locast from continuing its work. *Id.* at ¶ 47.

As demonstrated by his public statements, Mr. Goodfriend has always held the reasonable, good faith belief that Locast's activities fall under the clear exemption established under § 111(a)(5). There can therefore be no genuine dispute that Mr. Goodfriend's alleged conduct was not willful, reckless, grossly negligence, or consciously, flagrantly indifferent to individual rights under 42 U.S.C. § 14503(a)(3) or § 720-a. *See, e.g., Foti,* 2008 WL 11505956 at *7 (finding no genuine issue regarding whether defendants "acted with willful or criminal misconduct, gross negligence, reckless misconduct, or a conscious, flagrant indifference to the rights or safety of Plaintiffs" where "[t]here is no inference in the record that [defendants] thought they were doing something wrong" and plaintiffs "allege legal conclusions but no facts").

<u>CONCLUSION</u>

There is no genuine issue as to any material fact, and Mr. Goodfriend is entitled to judgment as a matter of law under both the VPA and §720-a. *See, e.g., Foti*, 2008 WL 11505956, at *7 (granting individual defendants' motions for summary judgment because they were entitled to

immunity under the VPA, and determining that plaintiff's "belief[s] and speculation" were not sufficient to prevent summary judgment); *Waschle*, 127 F. Supp. 3d at 1093-94 (granting motion for summary judgment as to ordinary negligence claims because defendants were volunteers immunized from liability under the VPA and a state statute governing immunity for nonprofit volunteers); *Kaye v. Storm King Sch.*, No. 11 CV 3369 VB, 2015 WL 5460107, at *18 (S.D.N.Y. June 8, 2015) (granting summary judgment and dismissing the plaintiffs' claims against individual trustees based on § 720-a where nothing in the record suggested that the defendant trustees intended to cause harm to the plaintiffs, held a reckless disregard for, or "failed to exercise even slight diligence with respect to the plaintiffs' rights"); *Hope v. Congregation Shaaray Tefila Glens Falls New York*, 64 Misc. 3d 1233(A), 117 N.Y.S.3d 810, slip op. at 2 (N.Y. Sup. Ct. Aug. 26, 2019) (granting motion for summary judgment and dismissing claim against individual defendants under §720-a).

The VPA and § 720-a were enacted for this exact purpose: ensuring that the threat of liability does not deter individuals like Mr. Goodfriend from offering their services on behalf of a public good. Accordingly, Defendant David Goodfriend respectfully requests that the Court grant his motion for summary judgment of immunity from liability.

Dated: May 6, 2021                                       Respectfully submitted,


                                                        */s/ R. David Hosp*
                                                        R. David Hosp
                                                        Mark S. Puzella (admitted pro hac vice)
                                                        Sheryl Koval Garko (admitted pro hac vice)
                                                        Caroline K. Simons
                                                        Laura B. Najemy (admitted pro hac vice)
                                                        ORRICK, HERRINGTON & SUTCLIFFE LLP
                                                        222 Berkeley Street, Suite 2000
                                                        Boston, MA 02116

Tel: (617) 880-1800
dhosp@orrick.com
mpuzella@orrick.com
sgarko@orrick.com
csimons@orrick.com
lnajemy@orrick.com

Elizabeth E. Brenckman
Lindsay Rindskopf
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142
Tel: (212) 506-5000
ebrenckman@orrick.com
lrindskopf@orrick.com

Shane D. Anderson (admitted pro hac vice)
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Tel: (213) 629-2020
sanderson@orrick.com

Erin M.B. Leach (admitted pro hac vice)
ORRICK, HERRINGTON & SUTCLIFFE LLP
2050 Main St. Suite 1100
Irvine, CA 92614
Tel: (949) 567-6700
eleach@orrick.com

Mitchell L. Stoltz
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA  94109
Tel: (415) 436-9333
mitch@eff.org

*Counsel for Defendants and Counterclaim-Plaintiffs David R. Goodfriend and Sports Fans Coalition NY, Inc.*