## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN BROADCASTING COMPANIES, INC., DISNEY ENTERPRISES, INC., TWENTIETH CENTURY FOX FILM CORPORATION, CBS BROADCASTING INC., CBS STUDIOS INC., FOX TELEVISION STATIONS, LLC, FOX BROADCASTING COMPANY, LLC, NBCUNIVERSAL MEDIA, LLC, UNIVERSAL TELEVISION LLC, and OPEN 4 BUSINESS PRODUCTIONS, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> DAVID R. GOODFRIEND and SPORTS FANS COALITION NY, INC., <br><br> Defendants. | No. 19-cv-7136-LLS |

**PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFFS'
STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF
<u>THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 56.1 of the Local Civil Rules of the United States District Court for the Southern District of New York, Plaintiffs submit these objections and replies to Defendants' Response to Plaintiffs' Statement of Undisputed Material Facts ("Defendants' Response").

Defendants raise no genuine dispute as to any material fact in Plaintiffs' Statement of Undisputed Material Facts. While Defendants assert that certain facts are "disputed," nowhere do they raise a genuine dispute. Instead, Defendants attempt to manufacture disputes of fact where none exist through unsupported denials, including reliance on their own amended answer instead of admissible evidence,[1] citing to additional but not inconsistent "facts,"[2] offering their own characterizations and arguments,[3] and adding "context" that does nothing to controvert Plaintiffs' Statement of Undisputed Material Facts.[4] None of that can create a disputed issue of fact. *See Garvey v. Town of Clarkstown, N.Y.*, 2018 WL 1026379, at *1 n.2 (S.D.N.Y. Feb. 22, 2018) (deeming admitted responses in which a party "(1) adds additional facts, (2) quibbles with [opposing party's] characterization of the fact, (3) argues a fact is immaterial to resolution of the motion for summary judgment, or (4) makes legal arguments" or where the party "'denies' a fact in form" but "does not actually controvert the fact in substance"); *Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) (recognizing that response to 56.1 statement was deficient where a party "improperly interject[ed] arguments and/or immaterial facts" or "speak[s] past [opposing party's] asserted facts without specifically controverting those same facts"); *Hartley v. Rubio*, 785 F. Supp. 2d 165, 170 n.1

---

[1] *See, e.g.*, Defendants' Responses to Paragraphs 10, 11, and 12.

[2] *See, e.g.*, Defendants' Responses to Paragraphs 24, 43, and 70.

[3] *See, e.g.*, Defendants' Responses to Paragraphs 8, 31, and 49.

[4] *See, e.g.*, Defendants' Responses to Paragraphs 22, 59, and 74.

(S.D.N.Y. 2011) (courts may reject  as "insufficient" "conclusory or non-responsive objections," "objections that omit citations to admissible evidence," and "responses that simply advocate for a different spin on otherwise uncontroverted facts"); *Lava Trading Inc. v. Hartford Fire Ins. Co.*, 365 F. Supp. 2d 434, 444 (S.D.N.Y. 2005) ("[C]haracterization and conclusory description do not create triable issue of fact.").

Under Local Rule 56.1, Defendants, as the responding party, are required to **specifically** controvert the material facts set forth in an opposing party's statement pursuant to Local Rule 56.1(a) with citations to evidence which would be admissible.  Local Civ. R. 56.1(b)-(d).  The Southern District of New York adopted Local Rule 56.1(d) for a reason, namely "to supply the Courts with an accurate factual record" and "to prohibit parties from taking . . . misleading and unfair 'shortcuts' (i.e. unsupported denials)."  *Omnipoint Commc'ns, Inc. v. City of White Plains*, 175 F. Supp. 2d 697, 700 (S.D.N.Y. 2001), *rev'd on other grounds*, 430 F.3d 529 (2d Cir. 2005)*.* A response pursuant to Local Rule 56.1(b)-(d) should not contain argument or narrative in an effort to "spin" the impact of the admissions a party is required to make.  *Goldstick v. The Hartford, Inc.*, 2002 WL 1906029, at *1 (S.D.N.Y. Aug. 19, 2002) (finding that a party's Rule 56.1 Statement failed to comply with the rule because the party "add[ed] argumentative and often lengthy narrative in almost every case[,] the object of which is to 'spin' the impact of the admissions [the party] has been compelled to make"); *U.S. Info. Sys., Inc. v. Int'l Bhd. of Elec. Workers Local Union No. 3*, 2006 WL 2136249, at *3 (S.D.N.Y. Aug. 1, 2006) ("'*Rule 56.1 statements are not argument.  They should contain factual assertions with citation to the record.  They should not contain conclusions . . .* ' A non-moving party cannot create a factual dispute merely by denying a movant party's factual statement; rather, the non-moving party must identify controverting evidence for the court. . . . [The party] cannot evade the impact of accepting a fact by adding legal argument to their

counterstatements.") (emphasis in original and internal citations omitted).

Defendants' Response, as noted above, fail to adhere to these requirements, and instead, manufactures disputes that merely serve to distract from the real issues in the litigation. Courts are free to disregard such denials. *See Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 74 (2d Cir. 2001) ("Where, as here, the record does not support the assertions in a Local Rule 56.1 statement, those assertions should be disregarded and the record reviewed independently."); *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 314-15 (2d Cir. 2008) (responses that use the word "disputed" but do not demonstrate that the dispute is genuine cannot defeat summary judgment); *Omnipoint,* 175 F. Supp. 2d at 700 ("The Court is permitted to disregard such general denials when not supported by citations or if cited materials do not support factual assertions."); *Watt v. N.Y. Botanical Garden*, 2000 WL 193626, at *1 n.1 (S.D.N.Y. Feb. 16, 2000) (noting that court has the discretion to deem material facts set forth in support of party's summary judgment motion admitted where the statements are not controverted or where the cited materials do not support the factual statements). The Court should disregard these immaterial purported disputes and adopt the facts set forth in the referenced paragraphs as undisputed for purposes of Plaintiffs' Motion for Partial Summary Judgment.

Plaintiffs set forth below their specific objections and replies to Defendants' Response. By not addressing all of the alleged facts asserted by Defendants (except to identify why those facts are not material to Plaintiffs' Motion), Plaintiffs do not concede that such allegations are accurate or that the documents or testimony cited by Defendants are admissible. Plaintiffs reserve their right to dispute any and all supposed facts asserted by Defendants in Defendants' Response, and

to challenge the admissibility of documents and testimony cited by Defendants at the

appropriate time.[5]

<div align="center">

**PLAINTIFFS' SPECIFIC OBJECTIONS AND
REPLIES TO DEFENDANTS' RESPONSE**

</div>

1.      Plaintiffs are American Broadcasting Companies, Inc., Disney Enterprises, Inc., Twentieth Century Fox Film Corporation, CBS Broadcasting Inc., CBS Studios Inc., Fox Television Stations, LLC, Fox Broadcasting Company, LLC, NBCUniversal Media, LLC, Universal Television LLC, and Open 4 Business Productions, LLC. Ex. 1 (ECF No. 88 ("Amended Answer"), at 1).

**RESPONSE:  Undisputed**.

**REPLY TO RESPONSE TO PARAGRAPH 2:**  Given Defendants' Response, the Court

should adopt this fact as undisputed for purposes of this motion.

### I.      Goodfriend Founds Locast.

2.      One of the "legislative priorities" of DISH Network ("DISH") is "seeking retransmission consent reform." Ex. 2 (Blum Dep. 27:2-5).

**RESPONSE: Immaterial**. Defendants state that Paragraph 2 is immaterial because the statement therein does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion for Partial Summary Judgment ("Plaintiffs' Motion") as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act.  *See Parks v. Lebhar-Friedman, Inc.*, No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 2:** Defendants do not dispute the statement in

Paragraph 2.  They assert, however, that the statement is "immaterial" because it "does not provide

a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to

whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act."  But under

---

[5] For clarity, the footnotes included in Defendants' Response are omitted from this Reply 56.1 Statement.

<div align="center">4</div>

Section 111(a)(5), secondary transmissions must be made "without any purpose of direct or indirect commercial advantage." 17 U.S.C. § 111(a)(5). This contention, however, ignores that Mr. Goodfriend, as Defendants admit in their Responses to Paragraphs 3 and 4, is a former DISH employee and current paid DISH lobbyist/consultant on retransmission consent issues, which is one of DISH's legislative priorities, and that DISH has benefited from Locast's existence in its retransmission consent negotiations, *see infra* Section III.A. Thus, Defendants' contention that DISH's agenda regarding retransmission consent reform is immaterial ignores both the record of evidence in this case and the requirements of Section 111(a)(5). This statement, together with the statements in Paragraphs 3-4, 7-8, and 29-53, are material because they collectively show that Locast makes secondary transmissions, at least in part, to benefit and obtain benefits from pay-television providers.

3.      Defendant David Goodfriend formerly served as a vice president of DISH. Ex. 3 (Goodfriend Dep. 23:5-8). In that role, he lobbied on DISH's behalf regarding the issue of retransmission consent. Ex. 3 (Goodfriend Dep. 37:20-38:16); Ex. 2 (Blum Dep. 36:4-11).

**RESPONSE: Disputed as drafted, and immaterial.** Defendants do not dispute the general contents Paragraph 3 but further state that Mr. Goodfriend's position at DISH (for a period of approximately seven years ending in 2009 belongs within the context of Mr. Goodfriend's long career in government, and more specifically as his career developed, communications policy. *See* Defs.' Statement of Material Facts, ECF No. 125 ("Defs.' SOMF") ¶¶ 4-15. Mr. Goodfriend worked as a staff member to Congressional committees chaired by Senator Herb Kohl (D-WI) and Charles B. Rangel (D-NY) in 1990-1993 and Deputy Staff Secretary for President Bill Clinton in 1998 and 1999. *Id.* at ¶¶ 5-6. Mr. Goodfriend then worked in various roles at the Federal Communications Commission ("FCC"), including as Media Legal Advisor to Commissioner Susan Ness. *Id.* at ¶ 7. At the FCC, Mr. Goodfriend was directly involved in the transition to digital TV broadcasting, and he worked on proposed policies like the "signal replication" requirement policy attempting to ensure broadcasters' digital broadcasts covered exactly the same geographic area as the analog "Grade B" contour area. *Id.* at ¶¶ 8-9. After working with the FCC, Mr. Goodfriend spent seven years working at DISH Network. *Id.* at ¶¶ 13-15. Then, he joined Emmer Consulting, where Mr. Goodfriend has represented various players in the communications policy field, including Communications Workers of America, independent television producers and distributors, technology startups, and satellite television and broadband providers. *Id.* at ¶¶ 16-17. Defendants state that Paragraph 3 is immaterial because the statement therein does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether

SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act.  *See Parks v. Lebhar-Friedman, Inc.,* No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 3:**  Defendants' Response does not dispute the statements in Paragraph 3.  Instead, Defendants' Response "improperly interject[s] arguments and/or immaterial facts in response to facts asserted" by Plaintiffs, and is entitled to no weight.  *See Baity*, 51 F. Supp. 3d at 418.  These additional immaterial facts about Mr. Goodfriend's career in the government and at Emmer Consulting are from Paragraphs 4-17 of Defendants' Statement of Material Facts.  Plaintiffs thus adopt herein their Responses to Paragraphs 4-17 in Plaintiffs' Response to Defendants' Statement of Material Facts and Counterstatement of Additional Facts ("Plaintiffs' Response"), ECF No. 154.

Defendants also assert that the statement in Paragraph 3 is "immaterial" because it "does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act."  But under Section 111(a)(5), secondary transmissions must be made "without any purpose of direct or indirect commercial advantage."  17 U.S.C. § 111(a)(5). This contention, however, ignores that Mr. Goodfriend, as Defendants admit in their Responses to Paragraphs 3 and 4, is a former DISH employee and current paid DISH lobbyist/consultant on retransmission consent issues, which is one of DISH's legislative priorities, and that DISH has benefited from Locast's existence in its retransmission consent negotiations, *see infra* Section III.A.  Thus, Defendants' contention that the statement in Paragraph 3 is immaterial ignores both the record in this case and the requirements of Section 111(a)(5).  This statement, together with the statements in Paragraphs 2, 4, 7-8, and 29-53, are material because they collectively show that Locast makes secondary transmissions, at least in part, to benefit and obtain benefits from pay-television providers.

4.       Before leaving DISH in 2008, ███████████████████
█████████████████████████████████████████
█████████████████████ Goodfriend continues to serve as a consultant
and lobbyist to DISH to this day. Ex. 1 (Am. Answer, at ¶ 12); Ex. 3 (Goodfriend Dep. 63:3-7,
84:13-101:21); Ex. 2 (Blum Dep. 19:14-18, 35:20-22).

**RESPONSE: Disputed in part, and immaterial.** Defendants dispute the first sentence of
Paragraph 4 because it mischaracterizes the nature of Mr. Goodfriend's testimony by failing to
specify that Mr. Goodfriend's retransmission consent lobbying work contemplated in the
agreement related to the Satellite Home Viewer Extension and Reauthorization Act, not necessarily
retransmission consent issues generally as Plaintiffs' statement implies. *See* Pls.' Ex. 3,
(Goodfriend Dep. Tr.) 61:12-22. Defendants further state that both sentences of Paragraph 4 are
immaterial because the statements therein do not provide a basis for the Court to rule in favor of
either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls
within Section 111(a)(5) of the Copyright Act. *See Parks v. Lebhar-Friedman, Inc.*, No. CIVA 04-
7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are
"immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment
even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 4:**  Defendants do not dispute that before leaving

DISH in 2008, Mr. Goodfriend signed an agreement to serve as a consultant to DISH, and

continues to serve as a paid consultant and lobbyist to DISH.  Instead, Defendants claim that

Plaintiffs "fail[] to specify that Mr. Goodfriend's retransmission consent lobbying work

contemplated in the agreement related to the Satellite Home Viewer Extension and Reauthorization

Act [(the "Act")], not necessarily retransmission consent issues generally as Plaintiffs' statement

implies."  However, Mr. Goodfriend did not testify that his retransmission consent lobbying work

was limited to that Act; rather, he testified, as Plaintiffs wrote in Paragraph 4, that "the intent in

the Consulting Agreement was indeed to have me focus on, ***among other things, retransmission***

***consent reform.***"  Zweifach Decl., Ex. 3 (Goodfriend Dep.) at 61:13-16 (emphasis added).[6]

Moreover, Defendants do not dispute that one of the "legislative priorities" of DISH is "seeking

---

[6] The exhibits referenced herein as "Zweifach Decl., Ex. __" refer to the exhibits described in
and attached to the declarations of Gerson A. Zweifach, dated May 6, 2021 and June 4, 2021
(ECF No. 126 and 155).

retransmission consent reform." *See* Defendants' Response to Paragraph 2. ████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████[7]

They also assert that the statements are "immaterial" because they "do not provide a basis to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act." But under Section 111(a)(5), secondary transmissions must be made "without any purpose of direct or indirect commercial advantage." 17 U.S.C. § 111(a)(5). This contention, however, ignores that Mr. Goodfriend, as Defendants admit in their Responses to Paragraphs 3 and 4, is a former DISH employee and current paid DISH lobbyist/consultant on retransmission consent issues, which is one of DISH's legislative priorities, and that DISH has benefited from Locast's existence in its retransmission consent negotiations, *see infra* Section III.A. Thus, Defendants' contention that the statement in Paragraph 4 is immaterial ignores both the record of evidence in this case and the requirements of Section 111(a)(5). This statement, together with the statements in Paragraphs 2-3, 7-8, and 29-53, are material because they collectively show that Locast makes secondary transmissions, at least in part, to benefit and obtain benefits from pay-television providers.

5.    In 2017, Goodfriend founded Sports Fans Coalition New York ("SFCNY"), which is organized as a New York nonprofit. Ex. 1 (Amended Answer, at ¶ 3); Ex. 3 (Goodfriend Dep. 76:4-10).

---

[7] The exhibits referenced herein as "Terry Decl., Ex. __" refer to the exhibits described in and attached to the declaration of Joseph M. Terry, dated June 4, 2021 (ECF No. 145).

**RESPONSE: Undisputed.** Defendants do not dispute that Mr. Goodfriend founded SFCNY and obtained New York nonprofit certification. Defendants further state that SFCNY is also recognized by the Internal Revenue Service as a 501(c)(3) corporation. *See* Defs.' Ex. 37 (IRS 501(c)(3) Tax Determination Letter); *see also* Defs.' SOMF ¶ 62.

**REPLY TO RESPONSE TO PARAGRAPH 5:** Given Defendants' Response, the Court should adopt this fact as undisputed for purposes of this motion. Defendants' additional fact that "SFCNY is also recognized by the Internal Revenue Service as a 501(c)(3) corporation" is immaterial and entitled to no weight. *See Baity*, 51 F. Supp. 3d. at 418. That additional fact is also disputed for the reasons outlined in Plaintiffs' Response to Paragraph 62 and adopted in this Reply. Finally, the statements within Defendants' Exhibit 37 are hearsay within hearsay, and thus inadmissible.

6.     In January 2018, Goodfriend, through SFCNY, launched an internet television streaming service called Locast. Ex. 3 (Goodfriend Dep. 113:14); Ex. 1 (Am. Answer, at ¶ 3).

**RESPONSE: Disputed in part**. Defendants do not dispute that SFCNY launched the Locast service in January 2018. Defendants dispute the remaining statements in Paragraph 6 because it misstates the character of the Locast service and who offers the Locast service. *See* Defs.' Ex. 36 (SFCNY Form 1023) SFCNY-000086985-87; Defs.' Answer to Am. Compl. ("Am. Answer"), ECF No. 88 ¶¶ 3-4.

**REPLY TO RESPONSE TO PARAGRAPH 6:** Defendants' dispute is unfounded. Defendants claim that Plaintiffs "misstate[] the character of the Locast service" by describing Locast as an "internet television streaming service." In support of their argument, Defendants cite to pages of SFCNY's Form 1023, which describes Locast as an "online" "streaming service" "provid[ing] television consumers . . . with access to local broadcasting." Defs.' Ex. 36 at SFCNY-000086985.[8] In other words, the very statement that Defendants cite in support of their argument states that Locast is an internet television streaming service, as Plaintiffs described. In addition, Paragraph 6 does not state who offers the Locast service; it only states that Mr. Goodfriend, through SFCNY, launched Locast, so Defendants' dispute is inapposite. Thus, the Court should adopt this fact as undisputed for purposes of this motion. Furthermore, the statements within Defendants' Exhibit 36 are hearsay within hearsay, and thus inadmissible.

---

[8] The exhibits referenced herein as "Defs.' Ex. __" refer to the Exhibits described in and attached to the declaration of Laura B. Najemy, dated May 6, 2021 (ECF No. 131).

7.      Michael Kelly, a former DISH executive, provided Locast's initial funding through a $2 million line of credit, and took on an "operational role" at Locast. Ex. 5 (Kelly Dep. 20:14-16, 34:17-19, 65:6-16, 71:22-72:5).

**RESPONSE: Disputed in part and immaterial.** Defendants dispute Paragraph 7 because it misstates who the loan provider is and the identity of the loan recipient. Locast is not an entity, but a service provided by SFCNY. Am. Answer, ECF No. 88 ¶ 3. SFCNY received its initial funding through a $2 million line of credit provided by an entity owned by Michael Kelly, not Michael Kelly individually. *See* Pls.' Ex. 3 (Goodfriend Dep. Tr.) 122:19-123:2; Defs.' Ex. 6 (Rebuttal Expert Report of Thomas J. Raffa) ¶ 98; Defs.' Ex. 64 (Loan Agreement). Defendants further dispute Plaintiffs' vague statement that Michael Kelly took an "operational role" at Locast—Defendants state that Mr. Kelly was *asked* to serve an operational role in Locast, but actually only ever gave Locast advice, and never held any formal position at SFCNY. Declaration of David Goodfriend in Support of Defendants' Opposition to Plaintiffs' Motion for Partial Summary Judgment ("Goodfriend Opp. Decl.") at ¶ 10, filed herewith. Defendants state that Paragraph 7 is immaterial because the statement therein does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act. *See Parks v. Lebhar-Friedman, Inc.,* No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 7:** Defendants do not dispute that Mr. Kelly is a former DISH executive who testified that he provided Locast's initial funding through a $2 million line of credit, and took on an "operational role" at Locast. The remainder of Defendants' Response, which "adds argumentative and . . . lengthy narrative . . . the object of which is to 'spin' the impact of the admissions [Defendants have] been compelled to make," is not appropriate, and is entitled to no weight. *See Goldstick*, 2002 WL 1906029, at *1. Indeed, the "disputes" that Defendants have manufactured should be disregarded for many other reasons, including the following:

First, Defendants' Response, such as in response to Paragraph 7, repeatedly manufactures disputes by asserting, as one of its objections to Plaintiffs' Statement of Undisputed Material Facts, that "Locast is not an entity, but a service provided by SFCNY," even though Plaintiffs' Memorandum of Law in support of Plaintiffs' Motion for Partial Summary Judgment notes that "Locast" is in reference to Defendants Sports Fans Coalition NY, Inc. and its founder, David

Goodfriend.  ECF No. 119 at 1.  The Court thus should disregard this unfounded dispute.  Defendants also inappropriately cite to their amended answer to support their assertion that "Locast is not an entity, but a service provided by SFCNY."  Defendants "rely on the naked allegations of their unverified answer" instead of "proffer[ing] . . . any evidence," but "[d]efendants' bare assertions [in their amended answer] cannot defeat a motion for summary judgment."  *Slavenburg Corp. v. Cohen*, 1986 WL 13467, at *3 (S.D.N.Y. Nov. 20, 1986).[9]

Second, Defendants argue that SFCNY's initial funding was from "an entity owned by Michael Kelly" and "not Michael Kelly individually."  To support this assertion, Defendants use Mr. Goodfriend's testimony and deliberately ignore Mr. Kelly's testimony that he set up the entity that he owned to "advance funds" to SFCNY and that he was the "lender."  Zweifach Decl., Ex. 95 (Kelly Dep.) at 58:8-22, 37:11-16;  *see also* Zweifach Decl., Ex. 5 (Kelly Dep.) at 65:11-13 (testifying that the entity was "through which [Mr. Kelly] made the loan" to SFCNY).  In other words, Mr. Kelly provided the funds that were then loaned to SFCNY through an entity that Mr. Kelly owned.

Third, Defendants contend that Plaintiffs' statement that Mr. Kelly took on an "operational role" is "vague."  Defendants make this vagueness argument even though Plaintiffs quoted Mr. Kelly's testimony, in which he testified that Mr. Goodfriend asked him to have an "operational role" and that he agreed to be involved in SFCNY's operations.  Zweifach Decl., Ex. 95 (Kelly Dep.) at 34:17-35:11.  Defendants' related assertion that Mr. Kelly "never held any formal position at SFCNY" is irrelevant, as Plaintiffs did not state that Mr. Kelly ever held a "formal position" at SFCNY.  Altogether, Defendants attempt to imply that Mr. Kelly only provided "advice" to Mr. Goodfriend and SFCNY and thus downplay Mr. Kelly's role.  To support this assertion, Defendants rely on one paragraph of Mr. Goodfriend's declaration, but ignore Mr. Kelly's testimony, emails

---

[9] In contrast, Plaintiffs may use statements from Defendants' amended answer as an opposing party's statement.  *See* Fed. R. Evid. 801(c).

between Mr. Goodfriend and Mr. Kelly, as well as other statements in the same declaration from Mr. Goodfriend. For example, Defendants' assertion ignores Mr. Kelly's testimony that he was "involved in [SFCNY's] financing issues . . . not just as a lender, but as a person who was looking for additional financing to go into the business" and he was "involved in business strategy" with Mr. Goodfriend. Zweifach Decl., Ex. 95 (Kelly Dep.) at 37:11-20. In fact, emails between Mr. Kelly and Mr. Goodfriend further show that Mr. Kelly provided far beyond "advice" to Mr. Goodfriend and SFCNY. For example, in Exhibit 19 to Mr. Goodfriend's deposition, Mr. Goodfriend provided Mr. Kelly with Mr. Goodfriend's "suggestion" on SFCNY's finances—not the other way around. Zweifach Decl., Ex. 88 (Goodfriend Ex. 19). In fact, in that same exhibit, Mr. Goodfriend, after being criticized by Mr. Kelly for providing an inaccurate forecast, told Mr. Kelly, "Fire me. Please. It's right there in your [loan] contract." *Id.* Mr. Kelly responded that he had loaned "the money in good faith. I expect everyone to do their jobs," and asked Mr. Goodfriend to "do your job." *Id.* Mr. Kelly also directed Mr. Goodfriend to "provide the variance analysis" Mr. Kelly requested, which Mr. Goodfriend then addressed in the following email. Zweifach Decl., Ex. 89 (Goodfriend Ex. 66). These documents, as well as many others in this case's record, show that Mr. Kelly often was directing Mr. Goodfriend in SFCNY's affairs, especially in regard to finances. In addition, as Mr. Goodfriend himself testified at his deposition, both he and Mr. Kelly provided input to Mr. Landers for Locast's pro forma financial models. Zweifach Decl., Ex. 99 (Goodfriend Dep.) at 134:10-17; 179:3-6; 180:8-18; 181:8-13; 181:21-182:3; *see also* Goodfriend Opp. Decl. ¶ 11 ("In 2019 and 2020, Michael Kelly and I provided various assumptions to Scott Landers and asked him to create a series of different financial projections we planned to use to help secure debt financing.").[10]

---

[10] Citations to "Goodfriend Opp. Decl." is in reference to the Declaration of David R. Goodfriend in support of Defendants' Opposition to Plaintiffs' Motion for Partial Summary Judgment, ECF No. 141.

Fourth, Defendants' cited evidence does not support their assertion. The statements within Defendants' Exhibit 64 are hearsay within hearsay, and thus inadmissible. Unsworn expert reports, such as Defendants' Exhibit 6, also are inadmissible to support a fact on summary judgment. Fed. R. Civ. P. 56(c)(4) (requiring factual evidence be presented by way of a sworn declaration); *Berk v. St. Vincent's Hosp. & Medical Ctr.*, 380 F. Supp. 2d 334, 352-53 (S.D.N.Y 2005) ("Courts in this Circuit have uniformly held that unsworn expert reports do not satisfy the admissibility requirements of Fed. R. Civ. P. 56(e), and cannot be used to defeat a summary judgment motion without additional affidavit support.") (internal citations and quotations omitted).

Finally, Defendants also assert that the statement is "immaterial" because it "does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act." But under Section 111(a)(5), secondary transmissions must be made "without any purpose of direct or indirect commercial advantage." 17 U.S.C. § 111(a)(5). This contention, however, ignores that Mr. Kelly, after making the loan to SFCNY, became involved in SFCNY's affairs, including in outlining ways to obtain revenues from Locast users and pay-television companies. Thus, Defendants' contention that the statement in Paragraph 7 is immaterial ignores both the record of evidence in this case and the requirements of Section 111(a)(5). This statement, together with the statements in Paragraphs 2-4, 8, and 29-53, are material because they collectively show that Locast makes secondary transmissions, at least in part, to benefit and obtain benefits from pay-television providers.

8.    Scott Landers is a former DISH employee and owner of the Jaybird Group. Ex. 6 (Landers Dep. 17:16-18, 23:9-10). He is Locast's acting chief technology officer and chief operating officer. *Id.* at 68:13-18.

**RESPONSE:  Disputed in part  and immaterial.**   Defendants do not dispute that Mr. Landers was employed by DISH, but Defendants state that Mr. Landers's employment with DISH ended almost twenty years before this litigation began.   Pls.' Ex. 6 (Landers Dep. Tr.) 24:20-22.  Defendants further state that Mr. Landers has not performed any services on behalf of DISH since he stopped working at the company. Goodfriend Opp. Decl. at ¶ 25. Defendants further dispute the characterization of Mr. Landers' involvement in this matter—Locast is not an entity, but a service provided by SFCNY. Am. Answer, ECF No. 88 ¶ 3. Defendants dispute Plaintiffs' characterization of Mr. Landers's position at SFCNY; while Mr. Landers has been described in that manner by others, Jaybird Group is a third-party technology vendor and Mr. Landers does not officially hold the titles of "Chief Technology Officer" or "Chief Operating Officer." Pls.' Ex. 6 (Landers Dep. Tr.) 17:13-18, 68:13-18. Defendants further state that Paragraph 8 is immaterial because the statements therein do not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act. *See Parks v. Lebhar-Friedman, Inc.*, No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 8:** Defendants do not dispute that Mr. Landers is a former DISH employee and owner of the Jaybird Group, nor that he testified that he is Locast's acting chief technology officer and chief operating officer. The remainder of Defendants' Response, which "adds argumentative and . . . lengthy narrative . . . the object of which is to 'spin' the impact of the admissions [Defendants have] been compelled to make," is not appropriate, and is entitled to no weight.  *See Goldstick*, 2002 WL 1906029, at *1.  Indeed, the "disputes" that Defendants have manufactured should be disregarded for many other reasons, including the following:

First, Defendants' additional fact that "Mr. Landers has not performed any services on behalf of DISH since he stopped working at the company" is immaterial and unsupported.  Mr. Goodfriend's declaration, which Defendants cite to support this assertion, caveats that "[a]s far as [**Mr. Goodfriend** is] aware, [Mr. Landers] has not performed any services for DISH since he

stopped working at the company approximately twenty years ago."  Goodfriend Opp. Decl. at ¶ 25.

Second, Defendants also argue that Mr. Landers "does not officially hold the titles of 'Chief Technology Officer' or 'Chief Operating Officer,'" but the excerpts of Mr. Landers' deposition testimony that Defendants cite to do not support that assertion.  In fact, Mr. Landers testified that **Mr. Goodfriend** described Mr. Landers as acting chief technology officer and chief operating officer, including when "dealing with commercial entities who want to understand the role that [Mr. Landers was] filling." Zweifach Decl., Ex. 94 (Landers Dep.) at 68:13-69:14.  In other words, "when [Mr. Landers] and Mr. Goodfriend were making representations at times to potential counter-parties, [they] would both represent that [Mr. Landers is] the acting [chief technology officer] and chief operation[s] officer." *Id.* at 69:16-21.

Third, Plaintiffs adopt herein their Reply to Defendants' unfounded assertion that "Locast is not an entity, but a service provided by SFCNY" that is laid out in full in Plaintiffs' Reply to Paragraph 7.

Finally, Defendants also assert that the statement is "immaterial" because it "does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act."  But under Section 111(a)(5), secondary transmissions must be made "without any purpose of direct or indirect commercial advantage."  17 U.S.C. § 111(a)(5).  This contention, however, ignores that Mr. Landers, in his role at SFCNY, drafted business plans and other financial documents for obtaining revenues from Locast users and pay-television companies.  Thus, Defendants' contention that the statement in Paragraph 8 is immaterial ignores both the record of evidence in this case and the requirements of Section 111(a)(5).  This statement, together with the statements in Paragraphs 2-4, 7, and 29-53, are material because they collectively show that Locast makes

secondary transmissions, at least in part, to benefit and obtain benefits from pay-television providers.

9.    Scott Larson is a former DISH employee and the president of eCreek Solutions Group, a vendor that handles Locast's customer service issues. Ex. 7 (Falkowski Dep. 27:10-14, 34:22-35:15, 43:12-14).

**RESPONSE: Disputed in part and immaterial.** Locast is not an entity, but a service provided by SFCNY. Am. Answer, ECF No. 88 ¶ 3. Defendants state that Paragraph 9 is immaterial because the statement therein does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act. *See Parks v. Lebhar-Friedman, Inc.*, No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 9:**  Defendants do not dispute that Mr. Larson is a former DISH employee and the president of eCreek Solutions Group, a vendor that handles Locast's customer service issues.  Instead, Defendants argue that the statement is "immaterial" because it "does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act."  But under Section 111(a)(5), secondary transmissions must be made "without charge to the recipients of the secondary transmission other than assessments necessary to defray the actual and reasonable costs of maintaining and operating the secondary transmission service." 17 U.S.C. § 111(a)(5).  This contention, however, ignores that eCreek, in its services for SFCNY, interfaced with Locast users who had complaints about geolocation, ad interruption, and fee issues. Thus, this statement, together with the statements in Paragraphs 64-75, are material because they collectively show that although Locast offers a "free" service frequently interrupted by its own advertisements, it charges what Locast calls "donations" but what Locast's users and insiders have acknowledged and called  subscription fees for uninterrupted services.

Plaintiffs also adopt herein their Reply to Defendants' unfounded assertion that "Locast is not an entity, but a service provided by SFCNY" that is laid out in full in Plaintiffs' Reply to Paragraph 7.

## II.    Locast Transmits Broadcast Signals Containing Plaintiffs' Copyrighted Programming Over The Internet Without Authorization.

### A. Locast Captures Television Broadcast Signals Without Broadcasters' Consent.

10.    In January 2018, Locast started capturing broadcast television signals in New York City, and transmitting them over the internet. Ex. 8 (Hess Ex. 18). These signals include those from Plaintiffs' broadcast stations that contain Plaintiffs' copyrighted programming. Ex. 1 (Am. Answer, at ¶¶ 6, 12, 75); Ex. 9 (Locast.org Live Channel Guide for New York).

**RESPONSE: Disputed in part.** Locast is not an entity, but a service provided by SFCNY. Am. Answer, ECF No. 88 ¶ 3. Defendants do not dispute that in January 2018, SFCNY began making secondary transmissions of over-the-air ("OTA") broadcast signals over the Internet, receivable within the New York City designated market area ("DMA"), that carried, among other programming, some of Plaintiffs' copyrighted works. Defendants dispute the remaining characterizations of the Locast service contained in Paragraph 10. *See* Am. Answer, ECF No. 88 ¶¶ 12, 75 (denying Plaintiffs' same allegations and characterizations of the Locast service).

**REPLY TO RESPONSE TO PARAGRAPH 10:**  It is unclear what, if anything, Defendants dispute to in their Response to Paragraph 10.  Regardless, the Court should disregard Defendants' Response because it inappropriately cites to Defendants' amended answer to support their assertions.  Defendants thus "rely on the naked allegations of their unverified answer" instead of "proffer[ing] . . . any evidence," but "[d]efendants' bare assertions [in their amended answer] cannot defeat a motion for summary judgment." *Slavenburg*, 1986 WL 13467, at *3.  On this basis alone, Defendants' statement should not be considered by this Court in deciding Plaintiffs' motion for partial summary judgment. *See* SDNY Local Civil Rule 56.1(d) (requiring that every statement must be supported by a "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)").

Plaintiffs also adopt herein their Reply to Defendants' unfounded assertion that "Locast is not an entity, but a service provided by SFCNY" that is laid out in full in Plaintiffs' Reply to Paragraph 7.

11.    At the time this lawsuit was filed in July 2019, Locast captured broadcast television signals from 13 designated market areas and transmitted them over the internet, including signals from Plaintiffs' broadcast stations and that contained Plaintiffs' copyrighted programming. Ex. 1 (Am. Answer, at ¶¶ 6, 12, 75); Ex. 9 (Locast.org Live Channel Guide for New York).

**RESPONSE: Disputed in part.** Locast is not an entity, but a service provided by SFCNY. Am. Answer, ECF No. 88 ¶ 3. Defendants do not dispute that in July 2019, through the Locast service SFCNY was making secondary transmissions of OTA broadcast signals over the Internet, receivable within 13 DMAs in the country, that carried, among other programming, some of Plaintiffs' copyrighted works. Defendants dispute the remaining characterizations of the Locast service contained in Paragraph 11. *See* Am. Answer, ECF No. 88 ¶¶ 12, 75 (denying Plaintiffs' same allegations and characterizations of the Locast service).

**REPLY TO RESPONSE TO PARAGRAPH 11:** It is unclear what, if anything, Defendants dispute in their Response to Paragraph 11. Regardless, the Court should disregard Defendants' Response because it inappropriately cites to Defendants' amended answer to support their assertions. Defendants thus "rely on the naked allegations of their unverified answer" instead of "proffer[ing] . . . any evidence," but "[d]efendants' bare assertions [in their amended answer] cannot defeat a motion for summary judgment." *Slavenburg*, 1986 WL 13467, at *3. On this basis alone, Defendants' statement should not be considered by this Court in deciding Plaintiffs' motion for partial summary judgment. *See* SDNY Local Civil Rule 56.1(d) (requiring that every statement must be supported by a "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)").

Plaintiffs also adopt herein their Reply to Defendants' unfounded assertion that "Locast is not an entity, but a service provided by SFCNY" that is laid out in full in Plaintiffs' Reply to Paragraph 7.

12.        As of May 2021, Locast captures broadcast television signals from 32 "designated market areas" ("DMA") in the United States, including signals from a number of Plaintiffs' broadcast stations and that contain Plaintiffs' copyrighted programming. Ex. 10 (Locast Press Release re: 32nd Market); Ex. 1 (Am. Answer, at ¶¶ 6, 12, 75); Ex. 9 (Locast.org Live Channel Guide for New York). Registered users can view those broadcasts through the Locast application, which can be accessed on smart phones, tablets, and certain pay-television platforms, including DISH and AT&T's DirecTV. Ex. 10 (Locast Press Release re: 32nd Market).

**RESPONSE: Disputed in part.** Locast is not an entity, but a service provided by SFCNY. Am. Answer, ECF No. 88 ¶ 3.  Defendants do not dispute that as of May 2021, SFCNY made secondary transmissions of OTA broadcast signals over the Internet, receivable in 32 DMAs in the country, that carry, among other programming, some of Plaintiffs' copyrighted works. Defendants dispute the remaining characterizations of the Locast service in the first sentence of Paragraph 12. *See* Am. Answer, ECF No. 88 ¶¶ 12, 75 (denying Plaintiffs' same characterizations). Defendants do not dispute that users of the Locast service are able to view these secondary transmissions through the Locast application on their smart phones, tablets, or certain Pay-TV platforms; however, Defendants further state that such access is restricted to the DMA in which the user is located using geofencing technology. *See* Defs.' SOMF ¶ 53.

**REPLY TO RESPONSE TO PARAGRAPH 12:**  It is unclear what, if anything, Defendants dispute in their Response to Paragraph 12.  Regardless, the Court should disregard the first and third sentences of Defendants' Response because they inappropriately cite to Defendants' amended answer to support their assertions.  Defendants thus "rely on the naked allegations of their unverified answer" instead of "proffer[ing] . . . any evidence," but "[d]efendants' bare assertions [in their amended answer] cannot defeat a motion for summary judgment." *Slavenburg*, 1986 WL 13467, at *3.  On this basis alone, Defendants' statement should not be considered by this Court in deciding Plaintiffs' motion for partial summary judgment. *See* SDNY Local Civil Rule 56.1(d) (requiring that every statement must be supported by a "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)").

Defendants' additional fact that "such access is restricted to the DMA in which the user is located using geofencing technology" is disputed for the reasons outlined in Plaintiffs' Response to Paragraph 53 and also adopted in this Reply.

Plaintiffs also adopt herein their Reply to Defendants' unfounded assertion that "Locast is not an entity, but a service provided by SFCNY" that is laid out in full in Plaintiffs' Reply to Paragraph 7.

13.     Locast has not undertaken any analysis to determine the number of people in those areas that are not able to receive free over-the-air broadcast signals. Ex. 3 (Goodfriend Dep. 135:18-136:1); Ex. 6 (Landers Dep. 270:1-7). On June 21, 2019, Brian Hess emailed Goodfriend, Kelly, and Landers that Goodfriend "asked that I map out the next few markets that we could light up. I put together an excel spreadsheet which factors in market size, NFL teams, and Political salience (how many members does a market have on either judiciary or commerce committees)." Ex. 11 (Hess Ex. 22). The next day, Goodfriend responded to Michael Kelly and Scott Landers that "[t]his is worth you looking over because it confirms what we've been discussing for possible next markets. This overlays the political element, namely which markets are home to Members of Congress on Judiciary or Commerce Committees (Judiciary is more important to us due to copyright) and/or leadership. We treated market size as by far the most important variable, then added political points and NFL teams." *Id.*

**RESPONSE: Disputed in part, and immaterial.** Locast is not an entity, but a service provided by SFCNY. Am. Answer, ECF No. 88 ¶ 3. Defendants do not dispute that they have not undertaken a technological analysis to determine the number of people in particular areas that are not able to receive free OTA broadcast signals but dispute that they have not undertaken "any" analysis related to this issue. Specifically, because reception issues impact every DMA, SFCNY primarily considers the size of each DMA in launching the Locast service into new markets, and generally launches in larger markets where larger populations result in greater numbers of the public having difficulties with reception. Goodfriend Opp. Decl. at ¶ 6. In addition, Locast originally launched in the New York City DMA because reception problems caused by tall buildings in Manhattan, and distance issues in geographies like Long Island are well known and documented. *Id.* In addition, in multiple instances, where particular issues of geography or interference increasing the impact of reception issues have been brought to SFCNY's attention, and donations were offered that could be used to offset infrastructure costs in launching in a particular market, SFCNY has taken those issues into consideration when launching new markets. Pls.' Ex. 3 (Goodfriend Dep. Tr.) 155:21-156:10; Goodfriend Opp. Decl. at ¶ 7. Defendants further state that, in anticipation of attempts by Plaintiffs to influence lawmakers to alter existing law to prevent the Locast service from benefitting the public, SFCNY has considered the location of congressional districts of certain committee members reside, though any such consideration has not ultimately had a significant impact on market launches. Goodfriend Opp. Decl. at ¶ 7. Further answering, Defendants do not dispute that the documents cited in Paragraph 13 include the statements quoted by Plaintiffs; however, Defendants state that each of the quoted statements should be read in the full context of the document in which it has been excerpted. *See* Pls.' Ex. 3 (Goodfriend Dep. Tr.); Pls.' Ex. 6 (Landers Dep. Tr.); Pls.' Ex. 11 (Hess Ex. 22). Defendants state that Paragraph 13 is immaterial because the statement therein does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act. *See Parks v. Lebhar-Friedman, Inc.,*

No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 13:**    Defendants' Response, including their additional facts, is immaterial, unsupported, and unfounded for many reasons, including those listed below, and "adds argumentative and . . . lengthy narrative . . . the object of which is to 'spin' the impact of the admissions [Defendants have] been compelled to make," which is not appropriate and is entitled to no weight. *See Goldstick*, 2002 WL 1906029, at *1.

Defendants argue that while Plaintiffs' statement that Defendants have "not undertaken a technological analysis to determine the number of people in particular areas that are not able to receive free OTA broadcast signals" is accurate, it is inaccurate to state that "they have not undertaken 'any' analysis related to this issue." In support of their response, Defendants cite to Mr. Goodfriend's declaration and an excerpt of Mr. Goodfriend's deposition testimony, even though neither of those documents support Defendants' assertion that Defendants conducted "any" analysis. Instead, those documents only talk about **considerations** Defendants make in launching into new markets. Furthermore, even if Mr. Goodfriend's declaration did state that Defendants had undertaken analysis related to this issue, which would contradict Mr. Goodfriend's deposition testimony that he did not "have data or any analytical studies that showed what percentage of the Locast users . . . cannot get a free-to-air signal," Zweifach Decl., Ex. 3 (Goodfriend Dep.) at 135:18- 136:1, the Court should disregard it since "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony," *Haves v. New York City Dep't of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996).

The third sentence of Defendants' Response, supported solely by a citation to Mr.

Goodfriend's declaration, should not be considered by this Court in deciding Plaintiffs' motion for summary judgment. *See* SDNY Local Civil Rule 56.1(d) (requiring that every statement must be supported by a "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)"). Mr. Goodfriend's declaration merely repeats the proposition in the third sentence of Defendants' Response without citation to any admissible evidence. Goodfriend Opp. Decl. at ¶ 6. Neither Mr. Goodfriend, in his declaration, nor Defendants provide any admissible evidence to support their claims in the third sentence of Defendants' Response. In particular, Defendants have not provided any evidence to support their assertion that reception issues impact every DMA and that thus, larger markets, which have larger populations, have greater numbers of the public who have reception issues. Defendants thus cannot dispute Plaintiffs' statement that "Locast has not undertaken any analysis to determine the number of people in those areas that are not able to receive free over-the-air broadcast signals" since Defendants' Response is baseless conjecture.

The fourth sentence of Defendants' Response, also supported solely by a citation to Mr. Goodfriend's declaration, likewise should not considered by this Court in deciding Plaintiffs' motion for summary judgment. *See* SDNY Local Civil Rule 56.1(d). First, Mr. Goodfriend's declaration does not even state that the claimed "reception problems" are "well known," as Defendants claim. Second, Mr. Goodfriend's declaration again merely repeats the proposition in the fourth sentence of Defendants' Response without citation to any admissible evidence. Goodfriend Opp. Decl. at ¶ 6. Thus, neither Mr. Goodfriend, in his declaration, nor Defendants provide any evidence to support their claims in the fourth sentence of Defendants' Response.

The fifth sentence of Defendants' Response, supported by a citation to Mr. Goodfriend's deposition and Mr. Goodfriend's declaration, similarly should not considered by this Court in deciding Plaintiffs' motion for summary judgment. *See* SDNY Local Civil Rule 56.1(d). First,

the cited excerpt of Mr. Goodfriend's deposition testimony does not support the fifth sentence of Defendants' Response. In particular, nowhere in the cited excerpt does it state that "particular issues of geography or interference increasing the impact of reception issues have been brought to SFCNY's attention" or that SFCNY took that "issue" into consideration when launching new markets. Zweifach Decl., Ex. 3 (Goodfriend Dep.) at 155:21-156:10. The cited excerpt does support Defendants' assertion that where "donations" were offered to offset infrastructure costs in launching in a particular market, SFCNY took that into consideration when launching new markets. *Id.* Second, Mr. Goodfriend's declaration again merely repeats the proposition in the fourth sentence of Defendants' Response without citation to any admissible evidence. Goodfriend Opp. Decl. at ¶ 7. Thus, neither Mr. Goodfriend, in his declaration or deposition testimony excerpt, nor Defendants provide any evidence to support their claims in the fifth sentence of Defendants' Response.

Defendants, while admitting that Plaintiffs accurately quoted the statements in the documents cited in Paragraph 13, contend that "each of the statements should be read in the full context of the document in which it has been excerpted." Defendants thus imply that the quoted statements were taken out of context, but do not explain how so in any way. The Court thus should disregard this baseless and vague contention. "[A] dispute over the characterization of certain basic facts and over other extraneous issues" is not sufficient to create a genuine dispute of material fact. *See B.U.S.A. Corp.* v. *Ecogloves, Inc.*, 2009 WL 3076042, at *1 n.2 (S.D.N.Y. Sept. 28, 2009).

Plaintiffs also adopt herein their Reply to Defendants' unfounded assertion that "Locast is not an entity, but a service provided by SFCNY" that is laid out in full in Plaintiffs' Reply to Paragraph 7.

Finally, Defendants assert that the statements in Paragraph 13 are "immaterial" because they "do[] not provide a basis to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act." But in Section 111(a)(5), Congress carved out a narrow exemption for translators and boosters that do "nothing more than amplify broadcast signals and retransmit them to everyone in an area for free reception." H.R. Rep. 94-1476, at 92 (1976). The narrow purpose of the exemption was to permit nonprofits or governmental bodies to "supply television programing to rural areas" that have trouble receiving broadcasts. 4 *Patry on Copyright* § 14:71. This statement, together with the statements in Paragraphs 15-17, are material because they collectively show that unlike a booster or translator, internet transmission services, such as Locast, are not aimed at extending broadcasts to communities that have difficulty receiving over-the-air signals, and instead, Locast retransmits broadcasts over the internet to its registered users, regardless of whether they are able to receive over-the-air signals.

14.    Locast does not obtain consent from Plaintiffs' broadcast stations to retransmit their signals. Ex. 1 (Amended Answer, at ¶ 3).

**RESPONSE: Disputed as stated.** Locast is not an entity, but a service provided by SFCNY. Am. Answer, ECF No. 88 ¶ 3. Defendants dispute Paragraph 14 because the evidence cited does not support the statement, as required by Local Rule 56.1. Paragraph 3 of Defendants' Amended Answer states that "Defendants deny that any permission or payment is required for SFCNY to retransmit local over-the-air broadcasts to the public in their respective DMAs because SFCNY is a 501(c)(3) non-profit organization that meets the requirements of 17 U.S.C. Sec. 111(a)(5)." Am. Answer, ECF No. 88 ¶ 3. As such, Defendants dispute that Paragraph 14 is "followed by citation to evidence which would be admissible." Local Civ. R. 56.1(d); *see also* Fed. R. Civ. P. 56(c).

**REPLY TO RESPONSE TO PARAGRAPH 14:** Defendants do not dispute that neither SFCNY nor Locast obtain consent from Plaintiffs' broadcast stations to retransmit their signals. They only dispute that their statement in their amended answer supports the statement in paragraph 14, even

though their amended answer is in response to Plaintiffs' allegations in their amended complaint that "Locast neither obtains Plaintiffs' permission nor pays for its exploitation of Plaintiffs' exclusive rights to publicly perform their copyrighted content.  Instead, Locast simply takes Plaintiffs' copyrighted content and retransmits it to its registered users at will over the internet," ECF No. 81 ¶ 3.  Defendants' statement in their amended answer, thus, does support Plaintiffs' statement in Paragraph 14.

Plaintiffs also adopt herein their Reply to Defendants' unfounded assertion that "Locast is not an entity, but a service provided by SFCNY" that is laid out in full in Plaintiffs' Reply to Paragraph 7.

15.    Locast transmits broadcasts to its registered users, regardless of whether they are able to receive over-the-air signals using over-the-air television antennas. Ex. 1 (Amended Answer, at ¶ 12); Ex. 12 (Jones Decl. ¶¶ 17-21).

**RESPONSE:  Disputed as stated, and immaterial.**  Locast is not an entity, but a service provided by SFCNY. Am. Answer, ECF No. 88 ¶ 3. Defendants do not dispute that, within each DMA, like traditional translators, SFCNY makes its retransmissions available to members of the general public, some of whom can access the original OTA signals using OTA television antennas and some of whom cannot. Defs.' Ex. 9 (Expert Report of Paul Horowitz) ¶ 87; Defs.' SOMF ¶¶ 51, 56.  Defendants dispute Plaintiffs' reliance on Paragraph 12 of the Amended Answer for this assertion because it does not mention or discuss its registered users' ability to receive OTA signals; since this is not discussed, this paragraph cannot support this assertion.  *See* Am. Answer, ECF No. 88 ¶ 12. Defendants state that Paragraph 15 is immaterial because the statement therein does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act. *See Parks v. Lebhar-Friedman, Inc.,* No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 15:**  Defendants do not dispute that SFCNY transmits broadcasts to its registered users regardless of whether they are able to receive over-the-air signals using over-the air television antennas.  While Defendants challenge Plaintiffs' citation of Defendants' amended answer, they do not challenge Plaintiffs' citation of the Jones Declaration.

Thus, the Court should adopt this fact as undisputed for purposes of this motion.

Defendants also dispute that their statement in their amended answer supports the statement in paragraph 15. The statement in the amended answer, as noted above, is not the only cited support for Paragraph 15, and in conjunction with the cited Jones Declaration, support the statement in Paragraph 15.

Defendants rely on unsworn expert reports, such as Defendants' Exhibit 9, which are inadmissible to support a fact on summary judgment. Fed. R. Civ. P. 56(c)(4) (requiring factual evidence be presented by way of a sworn declaration); *Berk.*, 380 F. Supp. 2d at 352-53 ("Courts in this Circuit have uniformly held that unsworn expert reports do not satisfy the admissibility requirements of Fed. R. Civ. P. 56(e), and cannot be used to defeat a summary judgment motion without additional affidavit support.") (internal citations and quotations omitted). In addition, Plaintiffs dispute Defendants' additional assertions in the second sentence of Defendants' Response, which is supported by Paragraphs 51 and 56 of Defendants' Statement of Material Facts, for the reasons outlined in Plaintiffs' Response to Paragraph 51 and 56 and adopted in this Reply.

Plaintiffs also adopt herein their Reply to Defendants' unfounded assertion that "Locast is not an entity, but a service provided by SFCNY" that is laid out in full in Plaintiffs' Reply to Paragraph 7.

Finally, Defendants assert that the statements in Paragraph 15 are "immaterial" because they "do not provide a basis to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act." But in Section 111(a)(5), Congress carved out a narrow exemption for translators and boosters that do "nothing more than amplify broadcast signals and retransmit them to everyone in an area for free reception." H.R. Rep. 94-1476, at 92 (1976). The narrow purpose of the exemption was to permit

nonprofits or governmental bodies to "supply television programing to rural areas" that have trouble receiving broadcasts.  4 *Patry on Copyright* § 14:71.  This statement, together with the statements in Paragraphs 13, 16, and 17, are material because they collectively show that unlike a booster or translator, internet transmission services, such as Locast, are not aimed at extending broadcasts to communities that have difficulty receiving over-the-air signals, and instead, Locast retransmits broadcasts over the internet to its registered users, regardless of whether they are able to receive over-the-air signals.

16.    Many broadcasters provide news and informational programming on their own websites or mobile applications. Ex. 13 (Eisenach Dep. 105:16-106:4).

**RESPONSE: Disputed as stated and immaterial.** Defendants do not dispute that a number of broadcasters have websites or mobile applications where they provide some of their programming and content. Defendants dispute the remaining characterizations in Paragraph 16 on the basis that they are vague and ambiguous, ignoring the reality that not all broadcasters' news and informational programming is offered via the methods listed in Paragraph 16. Opp. Ex. 4 (Schwartzman Dep. Tr.) at 212:5-20, 214:11-15. Defendants further state that Plaintiffs' statement ignores the additional and unique benefit the Locast service provides in addition to simply being able to watch television online, for which these broadcasters' websites and applications are not substitutes. *Id.* at 215:18-216:9.  Defendants state that Paragraph 16 is immaterial because the statement therein does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act. *See Parks v. Lebhar-Friedman, Inc.,* No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 16:**  Defendants' dispute, lodged in the second sentence of Defendants' Response to Paragraph 16, is baseless, as Defendants fail to cite to the portions of Mr. Schwartzman's testimony in which he admits that he did not "have any basis to disagree with" the conclusion by Plaintiffs' expert, outlined in his expert report, that "out of the total of 199 stations carried by Locast that broadcast local news, 189, or 95 percent of them,

simulcast all of their news programs over their websites." Opp. Ex.[11] 4 (Schwartzman Dep. Tr.) at 214:18-215:5; *see also id.* at 214:2-5 (admitting that he had not "looked at it recently, but, as of some time ago, before [he] started preparing this report").

The additional assertion that Defendants offer in the third sentence is immaterial and does not dispute that the material fact offered by Plaintiffs: Many broadcasters provide news and informational programming on their own websites or mobile applications. Instead, Defendants' assertion "improperly interject[s] arguments and/or immaterial facts in response to facts asserted" by Plaintiffs, and is entitled to no weight. *See Baity*, 51 F. Supp. 3d at 418.

Defendants also assert that the statement in Paragraph 16 is "immaterial" because it "does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act." But in Section 111(a)(5), Congress carved out a narrow exemption for translators and boosters that do "nothing more than amplify broadcast signals and retransmit them to everyone in an area for free reception." H.R. Rep. 94-1476, at 92 (1976). The narrow purpose of the exemption was to permit nonprofits or governmental bodies to "supply television programing to rural areas" that have trouble receiving broadcasts. 4 *Patry on Copyright* § 14:71. This statement, together with the statements in Paragraphs 13, 15, and 17, are material because they collectively show that unlike a booster or translator, internet transmission services, such as Locast, are not aimed at extending broadcasts to communities that have difficulty receiving over-the-air signals, and instead, Locast retransmits broadcasts over the internet to its registered users, regardless of whether they are able to receive over-the-air signals.

---

[11] The exhibits referenced herein as "Opp. Ex. __" refer to the Exhibits described in and attached to the declaration of Laura B. Najemy dated June 4, 2021. ECF No. 142.

17.      Many broadcasters also license internet distribution through services like YouTube TV and Hulu+ Live TV. Ex. 13 (Eisenach Dep. 83:2-7, 308:1-10).

**RESPONSE: Immaterial.** Defendants state that Paragraph 17 is immaterial because the statement therein does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act. *See Parks v. Lebhar-Friedman, Inc.*, No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 17:**  Defendants do not dispute the statement in

Paragraph 17.  They assert, however, that the statement is "immaterial" because it "does not

provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion

as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act."  But

under Section 111(a)(5), secondary transmissions must be made "without any purpose of direct or

indirect commercial advantage."  17 U.S.C. § 111(a)(5).  Thus, this statement, together with the

statements in Paragraphs 54-56, are material because they collectively show that Locast acts for a

commercial purpose by exploiting copyrighted works to gain a competitive advantage over

streaming services, like Hulu + Live TV or YouTube TV, that pay licensing fees to retransmit

copyrighted programming.  Furthermore, these statements together show that Locast  acts with a

purpose of commercial advantage because it unfairly competes with licensed streaming companies

in the internet market, and thus underscores that it has nothing in common with the wholly

noncommercial translators and boosters that Section 111(a)(5) covers.  In addition, in Section

111(a)(5), Congress carved out a narrow exemption for translators and boosters that do "nothing

more than amplify broadcast signals and retransmit them to everyone in an area for free reception."

H.R. Rep. 94-1476, at 92 (1976). The narrow purpose of the exemption was to permit nonprofits

or governmental bodies to "supply television programing to rural areas" that have trouble receiving

broadcasts. 4 *Patry on Copyright* § 14:71. This statement, together with the statements in

Paragraphs 13, 15, and 16, are material because they collectively show that unlike a booster or translator, internet transmission services, such as Locast, are not aimed at extending broadcasts to communities that have difficulty receiving over-the-air signals, and instead, Locast retransmits broadcasts over the internet to its registered users, regardless of whether they are able to receive over-the-air signals.

### B.  Locast's Internet Service Is Available Globally.

18.    Locast transmits broadcast signals over the internet. Ex. 1 (Amended Answer, at ¶ 12).

**RESPONSE:  Disputed as stated and immaterial.**  Locast is not an entity, but a service provided by SFCNY. Am. Answer, ECF No. 88 ¶ 3. Defendants do not dispute that SFCNY retransmits broadcast signals over the Internet, but dispute Plaintiffs' reliance on Paragraph 12 of the Amended Answer to support this point. Paragraph 12 of Defendants' Amended Answer states: "Defendants deny that SFCNY departs from the activities of a booster of broadcast signals, except insofar as the signals are not relayed by over-the-air signals." *Id.* at ¶ 12. This paragraph does not support the Plaintiffs' assertion that SFCNY transmits broadcast signals over the Internet; it merely states that the Locast service's signals are not relayed over-the-air.  Thus, Defendants state that Paragraph 18 is without support in violation of the local rules. *See* L.R. 56.1(d). Defendants state that Paragraph 18 is immaterial because the statement therein does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act.  *See Parks v. Lebhar-Friedman, Inc.*, No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 18:**  Defendants' dispute regarding Plaintiffs' reliance on Paragraph 12 of the amended answer is incorrect.  Defendants only quote the first sentence of Paragraph 12, and fail to cite part (i) of Paragraph 12, which states, "Defendants admit that in any given local DMA that Locast serves, SFCNY functions by capturing the over-the-air signals, transcoding the signals into digital formats viewable on internet-connected devices, and then ***streaming the signals over the internet*** to registered users at the users' requests on internet-connected devices located within the local market." Zweifach Decl., Ex. 1 (Amended Answer, at

¶ 12) (emphasis added).  As such, that "dispute" should be disregarded.[12]

Plaintiffs also adopt herein their Reply to Defendants' unfounded assertion that "Locast is not an entity, but a service provided by SFCNY" that is laid out in full in Plaintiffs' Reply to Paragraph 7.

Defendants also assert that this statement is "immaterial" because it "does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act."  But Section 111(a)(5) applies only to local transmission services, not internet services, which are inherently global in reach, such as Locast.  This statement, together with the statement in Paragraphs 18-24, collectively show that Locast fails this requirement because they show that Locast's internet service is not localized.

19.    The internet is "an inherently global communications network that allows for data transmission from any Internet-connected computer to any other Internet-connected computer, regardless of those computers' locations." Ex. 14 (Foster Decl. ¶ 8).

**RESPONSE: Disputed and immaterial.** While Defendants do not dispute that the Internet may be "an inherently global communications network," Defendants dispute that Locast signals can be received by ***any*** Internet computer regardless of its location.  Further responding, Defendants state that the Locast service employs geofencing, which limits the broadcast signals which a particular user may receive based on where that user is located. Defs.' SOMF ¶ 53. Defendants further state that Paragraph 19 is immaterial because the statement therein does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act. *See Parks v. Lebhar-Friedman, Inc.*, No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed"). Defendants further dispute

---

[12] Furthermore, Defendants elsewhere in Defendants' Response admitted that SFCNY makes transmission of over-the-air broadcast signals over the internet.  *See, e.g.*, Defendants' Response ¶ 10 ("Defendants do not dispute that in January 2018, SFCNY began making secondary transmissions of over-the-air ("OTA") broadcast signals over the Internet"); *id.* ¶ 11 ("through the Locast service SFCNY was making secondary transmissions of OTA broadcast signals over the Internet"); *id.* ¶ 12 ("SFCNY made secondary transmissions of OTA broadcast signals over the Internet").

Plaintiffs' statement as vague and ambiguous because it does not account for the methods available to limit access between computers, such as geofencing, which the Locast service uses to limit user access to their locality. *See* Defs.' SOMF ¶ 53.

**REPLY TO RESPONSE TO PARAGRAPH 19:**  Defendants dispute that "Locast signals can be received by any Internet computer regardless of its location," but fail to provide any "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  Local Civ. R. 56.1.  On that basis, the Court should strike that portion of the first sentence of Defendants' Response.

Plaintiffs also dispute Defendants' additional assertions in the second sentence of Defendants' Response, which are supported by Paragraph 53 of Defendants' Statement of Material Facts, for the reasons outlined in Plaintiffs' Response to Paragraph 53 and adopted in this Reply.

Defendants also assert that this statement is "immaterial" because it "does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act."  But Section 111(a)(5) applies only to local transmission services, not internet services, which are inherently global in reach, such as Locast.  This statement, together with statements in Paragraphs 18 and 19-24, collectively show that Locast fails this requirement because they show that Locast's internet service is not localized.

20.    "The inherently global nature of the Internet means that Locast can receive requests for its programming from anyone: from users in a DMA different from that for which programming is requested, from users in a DMA for which the Locast service is not available, or from users in other countries." Ex. 14 (Foster Decl. ¶ 9).

**RESPONSE:  Disputed and immaterial.**  Locast is not an entity, but a service provided by SFCNY.  Am. Answer, ECF No. 88 ¶ 3. Defendants dispute Plaintiffs' allegations and characterizations of the Locast service in Paragraph 20. Further responding, Defendants state that the Locast service employs geofencing, which limits the broadcast signals which a particular user may receive based on where that user is located. Defs.' SOMF ¶ 53. In other words, a particular Locast user is only able to receive the OTA broadcast signals available in the DMA in

which he or she is located. *Id.* Defendants further state that Paragraph 20 is immaterial because the statement therein does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act. *See Parks v. Lebhar-Friedman, Inc.*, No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed"). Defendants further dispute Plaintiffs' statement as vague and unambiguous because it does not account for the methods available to limit access between computers, such as geofencing, which the Locast service uses to limit user access to their locality. *See* Defs.' SOMF ¶ 53.

**REPLY TO RESPONSE TO PARAGRAPH 20:**  Defendants dispute "Plaintiffs' allegations and characterizations of the Locast service in Paragraph 20," but fail to provide any "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." Local Civ. R. 56.1. On that basis, the Court should strike that portion of the second sentence of Defendants' Response.

Plaintiffs also dispute Defendants' additional assertions in the second and third sentences of Defendants' Response, which are supported by Paragraph 53 of Defendants' Statement of Material Facts, for the reasons outlined in Plaintiffs' Response to Paragraph 53 and adopted in this Reply. In addition, Plaintiffs adopt herein their Reply to Defendants' unfounded assertion that "Locast is not an entity, but a service provided by SFCNY" that is laid out in full in Plaintiffs' Reply to Paragraph 7.

Defendants also assert that this statement is "immaterial" because it "does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act." But Section 111(a)(5) applies only to local transmission services, not internet services, which are inherently global in reach, such as Locast. This statement, together with statements in Paragraphs 18-19 and 21-24, collectively show that Locast fails this requirement because they show that Locast's internet service is not localized.

21.     Locast employs geofencing technology in an effort to limit its transmissions to particular markets. Ex. 6 (Landers Dep. 129:10-130:20).

**RESPONSE: Disputed and immaterial.** Locast is not an entity, but a service provided by SFCNY. Am. Answer, ECF No. 88 ¶ 3. Defendants further state that Paragraph 21 is immaterial because the statement therein does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act. *See Parks v. Lebhar-Friedman, Inc.*, No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 21:** Defendants do not dispute that Locast employs geofencing technology in an effort to limit its transmissions to particular markets.

Plaintiffs adopt herein their Reply to Defendants' unfounded assertion that "Locast is not an entity, but a service provided by SFCNY" that is laid out in full in Plaintiffs' Reply to Paragraph 7.

Defendants also assert that this statement is "immaterial" because it "does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act." But Section 111(a)(5) applies only to local transmission services, not internet services, which are inherently global in reach, such as Locast. This statement, together with statements in Paragraphs 18-20 and 22-24, collectively show that Locast fails this requirement because they show that Locast's internet service is not localized.

22.     Landers testified that geo-fencing is "an imprecise tool." Ex. 6 (Landers Dep. 134:1-4).

**RESPONSE: Disputed in part and immaterial.** Defendants do not dispute that Mr. Landers testified that geo-fencing is "an imprecise tool." However, Defendants dispute Plaintiffs' characterization of Mr. Landers's testimony and reliance thereon, as it mischaracterizes Mr. Landers's testimony by omitting the surrounding, necessary, context. In particular, Mr. Landers testified that he "ha[d] not observed users actively violating [the Locast geolocation system]." Pls.' Ex. 6 (Landers Dep. Tr.) 136:11-12. Defendants further state that Mr. Landers also testified that because the geolocation technology is "designed to block a user if we can't affirmatively confirm that they are in the DMA," the Locast service has "tend[ed] to fail on the negative side," meaning

that it has more often blocked viewers who actually reside within the DMA. Opp. Ex. 2 (Landers Dep. Tr.) at 166:11-18. Mr. Landers further testified that he was "not aware of any failures of [the Locast] service to allow people outside the DMA to get access to the stream" and he did not believe it would be accurate to say that the geolocation service frequently misidentified users' locations. *Id.* at 164:14-19, 167:4-6. Plaintiffs' failure to include these portions of Mr. Landers' testimony is misleading because it omits the necessary and important context that any imprecision in the Locast geolocation tool pertains to users within the DMA not being able to access the stream, **not** users outside a certain DMA circumventing the geolocation tool to access that DMA's programming. Defendants further state that Paragraph 22 is immaterial because the statement therein does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act. *See Parks v. Lebhar-Friedman, Inc.*, No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 22:** Defendants provide other citations to Mr. Landers' testimony, but none of it disputes the fact that Mr. Landers testified that geo-fencing is "an imprecise tool." Instead, Defendants purport to "dispute" a "characterization" they perceive from the factual statements in Paragraph 22. "[A] dispute over the characterization of certain basic facts and over other extraneous issues" is not sufficient to create a genuine dispute of material fact. *See B.U.S.A.*, 2009 WL 3076042, at *1 n.2. The remainder of Defendants' Response, which "adds argumentative and . . . lengthy narrative . . . the object of which is to 'spin' the impact of the admissions [Defendants have] been compelled to make," is not appropriate, and is entitled to no weight. *See Goldstick*, 2002 WL 1906029, at *1.

Defendants also failed to provide important context in their citation of Mr. Landers' testimony. For example, in the third sentence, Mr. Landers testified that he had "not observed users actively violating" geolocation (which Defendants cite), but that "the service can only detect what the geolocation [is] being provided by the end point" (which Defendants do not cite). Zweifach Decl., Ex. 6 (Landers Dep.) at 136:6-15. In other words, Mr. Landers did not observe users actively violating Locast's geolocation because users who are violating Locast's geolocation mask their actual locations (for example, with a virtual private network (VPN), as Mr. Landers

testified, *id.* at 138:3-11) with locations that are covered by Locast's service, which Locast cannot detect.

Finally, Defendants assert that this statement is "immaterial" because it "does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act."  But Section 111(a)(5) applies only to local transmission services, not internet services, which are inherently global in reach, such as Locast.  This statement, together with statements in Paragraphs 18-21 and 23-24, collectively show that Locast fails this requirement because they show that Locast's internet service is not localized.

23.    Users can circumvent Locast's geo-fencing technology, allowing them to watch broadcast stations from other markets. Ex. 6 (Landers Dep. 138:3-11); Ex. 14 (Foster Decl. ¶ 12).

**RESPONSE: Disputed and immaterial.** Locast is not an entity, but a service provided by SFCNY. Am. Answer, ECF No. 88 ¶ 3. Defendants dispute Plaintiffs' characterization of Mr. Landers's testimony. Mr. Landers testified that he "ha[d] not observed [Locast] users actively violating [the Locast geolocation system]," which directly contradicts the implication made in Plaintiffs' assertion in Paragraph 23. Pls.' Ex. 6 (Landers Dep. Tr.) 136:11-12.  Defendants further state that Paragraph 23 is immaterial because the statement therein does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act. *See Parks v. Lebhar-Friedman, Inc.*, No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 23:** Defendants do not dispute that Mr. Landers testified that users can circumvent Locast's geo-fencing technology, allowing them to watch broadcast stations from other markets, nor do they have any objections to the Foster Declaration supporting the statement in Paragraph 23.  Instead, Defendants purport to "dispute" a "characterization" they perceive from the factual statements in Paragraph 23.  "[A] dispute over the characterization of certain basic facts and over other extraneous issues" is not sufficient to

create a genuine dispute of material fact.  *See B.U.S.A.*, 2009 WL 3076042, at *1 n.2.  The remainder of Defendants' Response, which "adds argumentative and . . . lengthy narrative . . . the object of which is to 'spin' the impact of the admissions [Defendants have] been compelled to make," is not appropriate, and is entitled to no weight.  *See Goldstick*, 2002 WL 1906029, at *1.

Defendants also failed to provide important context in their citation of Mr. Landers' testimony.  For example, in the third sentence, Mr. Landers testified that he had "not observed users actively violating" geolocation (which Defendants cite), but that "the service can only detect what the geolocation [is] being provided by the end point" (which Defendants do not cite).  Zweifach Decl., Ex. 6 (Landers Dep.) at 136:6-15.  In other words, Mr. Landers did not observe users actively violating Locast's geolocation because users who are violating Locast's geolocation mask their actual locations (for example, with a virtual private network (VPN), as Mr. Landers testified, *id.* at 138:3-11) with locations that are covered by Locast's service, which Locast cannot detect.

Plaintiffs also adopt herein their Reply to Defendants' unfounded assertion that "Locast is not an entity, but a service provided by SFCNY" that is laid out in full in Plaintiffs' Reply to Paragraph 7.

Finally, Defendants assert that this statement is "immaterial" because it "does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act."  But Section 111(a)(5) applies only to local transmission services, not internet services, which are inherently global in reach, such as Locast.  This statement, together with statements in Paragraphs 18-22 and 24, collectively show that Locast fails this requirement because they show that Locast's internet service is not localized.

24.    Locast's geo-fencing system produces geolocation errors, leading users to complain they are receiving broadcasts from cities in which they are not located. Ex. 7 (Falkowski Dep. 105:2-107:12); Ex. 15 (Falkowski Ex. 10); Ex. 16 (Falkowski Ex. 36); Ex. 14 (Foster Decl. ¶¶ 1112).

**RESPONSE: Disputed as stated, and immaterial.** Locast is not an entity, but a service provided by SFCNY. Am. Answer, ECF No. 88 ¶ 3. Defendants dispute Plaintiffs' characterization of Locast's geofencing system because it ignores testimony that contradicts the contents of Paragraph 24. Defendants state that Mr. Landers testified that he has "not observed users actively violation [Locast's geolocation services]." Plf.' Ex. 6 (Landers Dep. Tr.) 136:11-12. Mr. Goodfriend also testified that Locast "block[s] [users in DMAs not currently served by Locast] from getting an out-of-market signal because [Locast] geofence[s] all local broadcast signals to their market of origin." Opp. Ex. 1 (Goodfriend Dep. Tr.) at 262:22-263:9. Defendants state that Paragraph 24 is immaterial because the statement therein does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act. *See Parks v. Lebhar-Friedman, Inc.*, No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 24:** Defendants do not dispute that the documents cited in Paragraph 24 support Plaintiffs' statement that Locast's geo-fencing system produces geolocation errors, leading users to complain they are receiving broadcasts from cities in which they are not located. Instead, Defendants purport to "dispute" a "characterization" they perceive from the factual statements in Paragraph 24. "[A] dispute over the characterization of certain basic facts and over other extraneous issues" is not sufficient to create a genuine dispute of material fact. *See B.U.S.A.*, 2009 WL 3076042, at *1 n.2. The remainder of Defendants' Response, which "adds argumentative and . . . lengthy narrative . . . the object of which is to 'spin' the impact of the admissions [Defendants have] been compelled to make," is not appropriate, and is entitled to no weight. *See Goldstick*, 2002 WL 1906029, at *1.

The deposition testimony that Defendants cite to either omits important context or is not contradictory to the statement in Paragraph 24. For example, in the third sentence of Defendants' Response, Mr. Landers testified that he had "not observed users actively violating" geolocation

(which Defendants cite), but that "the service can only detect what the geolocation [is] being provided by the end point" (which Defendants do not cite). Zweifach Decl., Ex. 6 (Landers Dep.) at 136:6-15. In other words, Mr. Landers did not observe users actively violating Locast's geolocation because users who are violating Locast's geolocation mask their actual locations (for example, with a virtual private network (VPN), as Mr. Landers testified, *id.* at 138:3-11) with locations that are covered by Locast's service, which Locast cannot detect. Defendants' citation to Mr. Goodfriend's deposition testimony also should be ignored because it is not contradictory to the statement in Paragraph 24: Mr. Goodfriend only testifies that Locast has geofencing technology to block users; he does not testify that Locast's geofencing technology does not have geolocation errors.

Plaintiffs also adopt herein their Reply to Defendants' unfounded assertion that "Locast is not an entity, but a service provided by SFCNY" that is laid out in full in Plaintiffs' Reply to Paragraph 7.

Finally, Defendants assert that this statement is "immaterial" because it "does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act." But Section 111(a)(5) applies only to local transmission services, not internet services, which are inherently global in reach, such as Locast. This statement, together with statements in Paragraphs 18-23, collectively show that Locast fails this requirement because they show that Locast's internet service is not localized.

## C. Locast Alters Broadcast Signals Without Consent of Originating Stations.

25.    Locast alters broadcast signals in several ways, and does so without the consent of originating stations. Ex. 12 (Jones Decl. ¶¶ 3-16).

**RESPONSE:  Disputed as stated, and immaterial.**  Locast is not an entity, but a service provided by SFCNY.  Am. Answer, ECF No. 88 ¶ 3.  Defendants do not dispute that the Locast service alters broadcast signals; however, Defendants dispute that the signals are altered in any material way that is perceivable to a user. Defs.' Ex. 9 (Expert Report of Paul Horowitz) ¶¶ 44, 46. Defendants also dispute Plaintiffs' contention in Paragraph 25 on the basis that it is unsupported by record evidence, as required by the local rules. L.R. 56.1(d). Specifically, Plaintiffs' citation to the Declaration of Nigel Jones at ¶¶ 3-16 provides no support for the assertion that Locast alters the signals "without the consent of originating stations."  *See* Pls.' Ex. 12 (Jones Decl.) ¶¶ 3-16. Defendants  further state that Paragraph 25 is immaterial because the statement therein does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act.  *See Parks v. Lebhar-Friedman, Inc.*, No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 25:**  Defendants do not dispute that Locast alters broadcast signals in several ways.  They also incorrectly dispute that Plaintiffs' statement in Paragraph 25  that Locast alters the signals "without the consent of originating stations" is unsupported.  In Paragraph 7 of the Jones Declaration, Mr. Jones states that his rebuttal report is adopted and incorporated in his declaration by reference.  Zweifach Decl., Ex. 12 (Jones Decl.) ¶ 7.  And on page 6 of Mr. Jones's rebuttal report, he notes that under 47 CFR 74.790(e), "[a] digital TV translator station shall not retransmit the programs and signals of any TV broadcast or DTV broadcast station(s) without the prior written consent of such station(s)," and that "Locast does not receive any such consent from the broadcaster Plaintiffs in this matter."  Zweifach Decl., Ex. 12 (Jones Decl.) at Ex. 3 at 6.

Plaintiffs also adopt herein their Reply to Defendants' unfounded assertion that "Locast is not an entity, but a service provided by SFCNY" that is laid out in full in Plaintiffs' Reply to Paragraph 7.

Moreover, Defendants' cited evidence in support of their assertions are inadmissible. Unsworn expert reports, such as Defendants' Exhibit 9, are inadmissible to support a fact on summary judgment.  Fed. R. Civ. P. 56(c)(4) (requiring factual evidence be presented by way of a

sworn declaration); *Berk.*, 380 F. Supp. 2d at 352-53 ("Courts in this Circuit have uniformly held

that unsworn expert reports do not satisfy the admissibility requirements of Fed. R. Civ. P. 56(e),

and cannot be used to defeat a summary judgment motion without additional affidavit support.")

(internal citations and quotations omitted).

      Finally, Defendants assert that this statement is "immaterial" because it "does not provide

a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to

whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act."   But the

kinds of "secondary transmissions" that fall within Section 111(a)(5) are constrained by the fact

that Congress enacted the exemption to cover translators and boosters that "do nothing more than

amplify broadcast signals and retransmit them." H.R. Rep. 94-1476, at 92 (1976).  This statement,

together with statements in Paragraphs 26-28, collectively show that Locast does not qualify for

the Section 111(a)(5) exemption because it significantly alters broadcast signals beyond anything

that either traditional or modern translators do, by, among other things, degrading picture quality,

reducing sound quality, and removing entire channels, all without the consent of the originating

station.

      26.      Locast separates the channels included in original broadcast signals, called sub-channels, and may discard some of them. Ex. 12 (Jones Decl. ¶ 3).

     **RESPONSE: Disputed in part, and immaterial.** Locast is not an entity, but a service provided by SFCNY. Am. Answer, ECF No. 88 ¶ 3. Defendants do not dispute that the Locast service does not retransmit all sub-channels, and further state that this is common among licensed translators. Defs.' Ex. 10 (Rebuttal Expert Report of Paul Horowitz) ¶ 11 ("[L]icensed translators do not include the full suite of sub-channels in their retransmitted broadcasts, as seen for example in the Summit County channel lineup."). Defendants further state that Paragraph 26 is immaterial because the statement therein does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act. *See Parks v. Lebhar-Friedman, Inc.*, No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 26:**  Defendants do not dispute that Locast separates the channels included in original broadcast signals, and may discard some of them. Instead, Defendants argue that such behavior is "common" among licensed translators.  Plaintiffs dispute Defendants' characterization of "common," and Dr. Horowitz's rebuttal expert report does not support Defendants' additional assertion.  Dr. Horowitz does not state that such behavior is "common," and in fact, only provides one example of a translator that does so. Defs.' Ex. 10 (Rebuttal Expert Report of Paul Horowitz) ¶ 11.  Furthermore, even if licensed translators did make such changes to the signal, their changes, as *licensed* translators, are approved by broadcasters (unlike Locast, which does not have a license), and therefore not dependent upon Section 111(a)(5).  Finally, whether or not this behavior is "common" is immaterial and does not contradict Plaintiffs' statement in Paragraph 26.

Moreover, Defendants rely on an unsworn expert report, Defendants' Exhibit 10, which is inadmissible to support a fact on summary judgment.  Fed. R. Civ. P. 56(c)(4) (requiring factual evidence be presented by way of a sworn declaration); *Berk.*, 380 F. Supp. 2d at 352-53 ("Courts in this Circuit have uniformly held that unsworn expert reports do not satisfy the admissibility requirements of Fed. R. Civ. P. 56(e), and cannot be used to defeat a summary judgment motion without additional affidavit support.") (internal citations and quotations omitted).

Plaintiffs also adopt herein their Reply to Defendants' unfounded assertion that "Locast is not an entity, but a service provided by SFCNY" that is laid out in full in Plaintiffs' Reply to Paragraph 7.

Finally, Defendants assert that this statement is "immaterial" because it "does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act."  But the

kinds of "secondary transmissions" that fall within Section 111(a)(5) are constrained by the fact that Congress enacted the exemption to cover translators and boosters that "do nothing more than amplify broadcast signals and retransmit them." H.R. Rep. 94-1476, at 92 (1976).  This statement, together with statements in Paragraphs 25 and 27-28, collectively show that Locast does not qualify for the Section 111(a)(5) exemption because it significantly alters broadcast signals beyond anything that either traditional or modern translators do, by, among other things, degrading picture quality, reducing sound quality, and removing entire channels, all without the consent of the originating station.

27.     Locast performs a process called transrating, which copies and converts video into different resolution streams. Ex. 12 (Jones Decl. ¶ 5). Locast's "lower resolution  streams necessarily result in a large amount of video data in the [over-the-air] signal being discarded." Ex. 12 (Jones Decl. ¶ 5).

**RESPONSE: Disputed in part, and immaterial.** Locast is not an entity, but a service provided by SFCNY. Am. Answer, ECF No. 88 ¶ 3. Defendants do not generally dispute the statements contained in Paragraph 27; however, Defendants state that that the Locast service does not make "copies," but merely buffers the digital signal to facilitate transmission. Defs.' Ex. 9 (Expert Report of Paul Horowitz) ¶¶ 78-86. Defendants further state that this is common among licensed translators, and such changes are generally not perceivable by individual users. Defendants further state that Paragraph 27 is immaterial because the statements therein do not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act.  *See Parks v. Lebhar-Friedman, Inc.*, No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 27:**  Defendants do not dispute that Locast performs a process called transrating, and that its lower resolution streams necessarily result in a large amount of video data in the over-the-air signal being discarded.  Instead, Defendants argue that such behavior is "common" among licensed translators.  Plaintiffs dispute Defendants' characterization of "common," and Defendants do not provide any "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)" in support of its assertion in

the third sentence.  Local Civ. R. 56.1(d).  On that basis, the Court should strike the third sentence

of Defendants' Response. Furthermore, even if licensed translators did make such changes to the

signal, their changes, as *licensed* translators, are approved by broadcasters (unlike Locast, which

does not have a license).

Moreover, Defendants rely on an unsworn expert report, Defendants' Exhibit 9, which is

inadmissible to support a fact on summary judgment.  Fed. R. Civ. P. 56(c)(4) (requiring factual

evidence be presented by way of a sworn declaration); *Berk.*, 380 F. Supp. 2d at 352-53 ("Courts

in this Circuit have uniformly held that unsworn expert reports do not satisfy the admissibility

requirements of Fed. R. Civ. P. 56(e), and cannot be used to defeat a summary judgment motion

without additional affidavit support.") (internal citations and quotations omitted).

Plaintiffs also adopt herein their Reply to Defendants' unfounded assertion that "Locast is not

an entity, but a service provided by SFCNY" that is laid out in full in Plaintiffs' Reply to

Paragraph 7.

Finally, Defendants assert that this statement is "immaterial" because it "does not provide

a basis to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's

Locast service falls within Section 111(a)(5) of the Copyright Act."  But the kinds of "secondary

transmissions" that fall within Section 111(a)(5) are constrained by the fact that Congress enacted

the exemption to cover translators and boosters that "do nothing more than amplify broadcast

signals and retransmit them." H.R. Rep. 94-1476, at 92 (1976).  This statement, together with

statements in Paragraphs 25-26 and 28, show that Locast does not qualify for the Section 111(a)(5)

exemption because it significantly alters broadcast signals beyond anything that either traditional

or modern translators do, by, among other things, degrading picture quality, reducing sound

quality, and removing entire channels, all without the consent of the originating station.

28.        Locast also changes the audio portion of the signal, which "results in a loss of audio information and hence a degradation of the audio quality." Ex. 12 (Jones Decl. ¶ 6).

**RESPONSE: Disputed in part, and immaterial.** Locast is not an entity, but a service provided by SFCNY. Am. Answer, ECF No. 88 ¶ 3. Defendants do not generally dispute the statements contained in Paragraph 28; however, Defendants state that the Locast service retransmits the audio in stereo, not surround sound. Defs.' Ex. 9 (Expert Report of Paul Horowitz) ¶ 21; Opp. Ex. 11 (Horowitz Dep. Tr.) 105:4-19. Defendants further state that this is common among licensed translators. Such changes are generally not perceivable by individual users. Defendants state that Paragraph 28 is immaterial because the statement therein does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act. *See Parks v. Lebhar-Friedman, Inc.*, No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 28:** Defendants do not dispute that Locast changes the audio portion of the signal, which results in a loss of audio information and hence a degradation of the audio quality.  Instead, Defendants assert that Locast "retransmits the audio in stereo, not surround sound," which does not contradict Plaintiffs' statement in Paragraph 28.  In fact, in Dr. Horowitz's deposition testimony that Defendants cite, Dr. Horowitz testified that his "findings confirmed what Mr. Jones said" regarding "audio conversion."  Opp. Ex. 11 (Horowitz Dep.) 105:8-12.  Defendants also argue that such behavior is "common" among licensed translators. Plaintiffs dispute Defendants' characterization of "common," and Defendants do not provide any "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)" in support of its assertion in the third and fourth sentences.  Local Civ. R. 56.1(d).  On that basis, the Court should strike the third sentence of Defendants' Response.  Furthermore, even if licensed translators did make such changes to the signal, their changes, as *licensed* translators, are approved by broadcasters (unlike Locast, which does not have a license).

Plaintiffs adopt herein their Reply to Defendants' unfounded assertion that "Locast is not an entity, but a service provided by SFCNY" that is laid out in full in Plaintiffs' Reply to Paragraph 7.

45

Moreover, Defendants rely on an unsworn expert report, Defendants' Exhibit 9, which is inadmissible to support a fact on summary judgment. Fed. R. Civ. P. 56(c)(4) (requiring factual evidence be presented by way of a sworn declaration); *Berk.*, 380 F. Supp. 2d at 352-53 ("Courts in this Circuit have uniformly held that unsworn expert reports do not satisfy the admissibility requirements of Fed. R. Civ. P. 56(e), and cannot be used to defeat a summary judgment motion without additional affidavit support.") (internal citations and quotations omitted).

Finally, Defendants assert that this statement is "immaterial" because it "does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act." But the kinds of "secondary transmissions" that fall within Section 111(a)(5) are constrained by the fact that Congress enacted the exemption to cover translators and boosters that "do nothing more than amplify broadcast signals and retransmit them." H.R. Rep. 94-1476, at 92 (1976). This statement, together with statements in Paragraphs 25-27, collectively show that Locast does not qualify for the Section 111(a)(5) exemption because it significantly alters broadcast signals beyond anything that either traditional or modern translators do, by, among other things, degrading picture quality, reducing sound quality, and removing entire channels, all without the consent of the originating station.

### III.    Locast's Finances

#### A.  Locast and Pay-TV Providers

29.    Pay-TV provider DISH prefers that its "subscribers view broadcast programming on [its pay-TV] system rather than free-to-air." Ex. 2 (Blum Dep. 32:13-16).

**RESPONSE: Immaterial.** Defendants state that Paragraph 29 is immaterial because the statement therein does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act. *See Parks v. Lebhar-Friedman, Inc.*, No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 29:**  Defendants do not dispute the statement in Paragraph 29.  They assert, however, that the statement is "immaterial" because it "does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act."  But under Section 111(a)(5), secondary transmissions must be made "without any purpose of direct or indirect commercial advantage."  17 U.S.C. § 111(a)(5).  Locast has asserted that it serves a public purpose in all of its work, by making broadcast television programming available to those who cannot receive a free to air signal, but in fact in its dealings with pay-television providers like DISH, it provides access to Plaintiffs' programming to businesses that have no interest in encouraging free to air viewing of programming, and instead leverage the Locast stream for commercial benefits (keeping subscribers), while reciprocating with free nationwide distribution to Locast (and more users from whom to extract fees).  *See infra* ¶ 53.  Defendants' contention that the statement in Paragraph 29 is immaterial ignores both the record of evidence in this case and the requirements of Section 111(a)(5).  This statement, together with the statements in Paragraphs 2-4, 7-8, and 30-53, are material because they show that Locast makes secondary transmissions, at least in part, to benefit and obtain benefits from pay-television providers.

30.     If retransmission consent negotiations break down, a cable or satellite provider may lose the right to retransmit certain broadcast stations, and their subscribers will be unable to watch those broadcast stations through their subscription services. Ex. 2 (Blum Dep. 121:7-122:10). Such a "blackout" can lead to discontent among subscribers, who may cancel their pay-television services altogether. Ex. 17 (Ross Dep. 23:19-24:2); Ex. 2 (Blum Dep. 85:12-88:16).

**RESPONSE:  Immaterial.**  Defendants state that Paragraph 30 is immaterial because the statements therein do not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act. *See Parks v. Lebhar-Friedman, Inc.*, No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 30:**  Defendants do not dispute the statements in

Paragraph 30.  They assert, however, that the statements are "immaterial" because they "do not

provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion

as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act."  But

under Section 111(a)(5), secondary transmissions must be made "without any purpose of direct or

indirect commercial advantage." 17 U.S.C. § 111(a)(5).  Defendants' contention that the statement

in Paragraph 30 is immaterial ignores both the record of evidence in this case and the requirements

of Section 111(a)(5).  Thus, this statement, together with the statements in Paragraphs 2-4, 7-8, 29,

and 31-53, are material because they collectively show that Locast makes secondary transmissions,

at least in part, to benefit and obtain benefits from pay-television providers.

31.     On January 15, 2018, days after Locast launched, Goodfriend wrote in an email that pay-television providers would "flock to use [Locast] if a blackout threatens." Ex. 18 (Hess Ex. 8).

**RESPONSE:  Disputed as stated, and immaterial.**  Locast is not an entity, but a service provided by SFCNY. Am. Answer, ECF No. 88 ¶ 3. Defendants do not dispute that Mr. Goodfriend wrote the statement quoted in Paragraph 31; however, Defendants state that Mr. Goodfriend's statement must be read in the full context of the exhibit from which it was excerpted. *See* Pls.' Ex. 18 (Hess Ex. 8). Further responding, Defendants state that while Mr. Goodfriend may have anticipated that Pay-TV providers would have "flock[ed] to [Locast]" in the event of a blackout,

the record evidence does not indicate that his belief came to fruition. Opp. Ex. 6 (Blum Dep. Tr.) at 89:19- 90:10, 270:4-20; Opp. Ex. 7 (Tyrer Dep. Tr.) at 128:12-129:3; Goodfriend Decl., ECF No. 129 ¶ 53.  Defendants further state that Paragraph 31 is immaterial because the statement therein does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act. *See Parks v. Lebhar-Friedman, Inc.*, No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 31:**  Defendants, while admitting that Plaintiffs accurately quoted that Mr. Goodfriend wrote in an email that pay-television providers would "flock to use [Locast] if a blackout threatens," contend that his "statement must be read in the full context of the exhibit from which it was excerpted."  Defendants thus imply that the quoted statement was taken out of context, but do not explain how so in any way.  The Court thus should disregard this baseless and vague contention.  "[A] dispute over the characterization of certain basic facts and over other extraneous issues" is not sufficient to create a genuine dispute of material fact.  *See B.U.S.A.*, 2009 WL 3076042, at *1 n.2.

The remainder of Defendants' Response, which "adds argumentative and . . . lengthy narrative . . . the object of which is to 'spin' the impact of the admissions [Defendants have] been compelled to make," is not appropriate, and is entitled to no weight.  *See Goldstick*, 2002 WL 1906029, at *1.  Defendants assert that "the record evidence does not indicate that [Mr. Goodfriend's] belief came to fruition," which is false and irrelevant.  First, the two pay-television providers Defendants rely on in support of their assertion, AT&T and DISH, both implemented Locast into their systems, and both have directed their users to use Locast in the event of a blackout.  *See* Plaintiffs' Statement of Material Facts, ECF No. 122 ¶¶ 35-47.  There is record evidence showing that pay-television providers have "flocked" to Locast, particularly in the context of blackouts.  Second, none of the cited evidence supports Defendants' assertion.  The excerpts of Mr. Tyrer and Mr. Blum's testimony is regarding their knowledge of what effect Locast has had

on retransmission negotiations, not regarding whether or not their respective pay-television provider employers have "flocked" to Locast. Mr. Goodfriend's declaration likewise is inapposite. Rather than testifying that pay-television providers did not "flock" to Locast, he claims that he "believe[s] that Locast is potentially harmful to MVPDs because it encourages users to cut the cord." ECF No. 129 (Goodfriend Decl.) ¶ 53. Mr. Goodfriend also claims that during a DISH blackout and an AT&T blackout, he "made public comments urging consumers to drop their MVPD subscriptions (i.e., 'cut the cord') and use Locast to view their local broadcast channels." *Id.* Mr. Goodfriend does not cite to any admissible evidence in support of his admission, and indeed, any citations to his "public comments" would be excluded as hearsay. Finally, this additional assertion is immaterial, as Mr. Goodfriend's statement shows that his purpose for launching Locast was to create commercial advantage for pay-television providers, who in turn, would also benefit Mr. Goodfriend and SFCNY, in contravention of Section 111(a)(5)'s requirement that secondary transmissions must be made "without any purpose of direct or indirect commercial advantage." 17 U.S.C. § 111(a)(5); *see also* Zweifach Decl., Ex. 62 (Goodfriend Ex. 20) at SFCNY-000044164 (Mr. Goodfriend writing to the board of Sports Fans Coalition, his advocacy group, that pay-television interests would support Locast's effort to "magnif[y]" the law).

Plaintiffs also adopt herein their Reply to Defendants' unfounded assertion that "Locast is not an entity, but a service provided by SFCNY" that is laid out in full in Plaintiffs' Reply to Paragraph 7.

Finally, Defendants assert that the statement is "immaterial" because it "does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act." But under

Section 111(a)(5), secondary transmissions must be made "without any purpose of direct or indirect commercial advantage." 17 U.S.C. § 111(a)(5). Thus, this statement, together with the statements in Paragraphs 2-4, 7-8, 29-30, and 32-53, are material because they collectively show that Locast makes secondary transmissions, at least in part, to benefit and obtain benefits from pay-television providers.

32.    On January 10, 2019, after about a year of Locast being operational, Goodfriend wrote in an email to Kelly that "[i]f I cannot secure a substantial commitment by any MVPD by the end of February, we either: a) announce a shut down and begin the non-profit equivalent of bankruptcy, or b) announce a sharply reduced operation, perhaps just NYC." Ex. 19 (Kelly Ex. 23, at SFCNY-000048578). Goodfriend added, "I can say we'll charge all of them an API fee. And/Or they can make a charitable contribution, if they prefer. Based on the answers I get (hopefully at least one 'yes') to those conversations next week, I'll convey that news to Verizon, AT&T, and DISH. I'll say no freeloaders." *Id.*; Ex. 3 (Goodfriend Dep. 250:6-17) ("I believe I told Mr. Kelly that if anyone puts a link to Locast on their website or uses Locast as . . . an individual without contributing, they are freeloading").

**RESPONSE: Disputed as stated, and immaterial.** Locast is not an entity, but a service provided by SFCNY. Am. Answer, ECF No. 88 ¶ 3. Defendants do not dispute that Mr. Goodfriend wrote the statements quoted in Paragraph 32; however, Defendants state that Mr. Goodfriend's statement must be read in the full context of the exhibit from which it was excerpted. *See* Pls.' Ex. 19 (Kelly Ex. 23). Further responding, Defendants state that Paragraph 32 is immaterial because the statements therein do not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act. *See Parks v. Lebhar-Friedman, Inc.*, No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 32:** Defendants, while admitting that Plaintiffs accurately quoted the statements by Mr. Goodfriend in Paragraph 32, contend that his "statements must be read in the full context of the exhibit from which it was excerpted." Defendants thus imply that the quoted statements were taken out of context, but do not explain how so in any way. The Court thus should disregard this baseless and vague contention. "[A] dispute over the characterization of certain basic facts and over other extraneous issues" is not sufficient to create

a genuine dispute of material fact. *See B.U.S.A.*, 2009 WL 3076042, at *1 n.2. Furthermore, Defendants do not and cannot contend with the quotation of Mr. Goodfriend's deposition testimony.

Plaintiffs also adopt herein their Reply to Defendants' unfounded assertion that "Locast is not an entity, but a service provided by SFCNY" that is laid out in full in Plaintiffs' Reply to Paragraph 7.

Finally, Defendants assert that the statements are "immaterial" because they "do not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act." But under Section 111(a)(5), secondary transmissions must be made "without any purpose of direct or indirect commercial advantage." 17 U.S.C. § 111(a)(5). Thus, this statement, together with the statements in Paragraphs 2-4, 7-8, 29-31, and 33-53, are material because they collectively show that Locast makes secondary transmissions, at least in part, to benefit and obtain benefits from pay-television providers.

33.      On January 16, 2019, Goodfriend informed SFCNY's board that the organization "face[d] a material risk of exhausting its ability to draw down funds from its lender and will have to wind down." Ex. 20 (GRF0000564). On the same day, the SFCNY board authorized various "fundraising activities," including "[m]embership assessments" and "[d]irect contributions from corporations, foundations, other organizations, or individual benefactors," such as "[c]ash contributions." *Id*. The board also authorized "[i]ntellectual property licensing fees." *Id.*

**RESPONSE: Disputed as stated, and immaterial.** Defendants do not dispute that Mr. Goodfriend wrote the statements quoted in Paragraph 33; however, Defendants state that Mr. Goodfriend's statements must be read in the full context of the exhibit from which it was excerpted. *See* Pls.' Ex. 20 (GRF0000564). Further answering, Defendants state that Paragraph 33 is immaterial because the statements therein do not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act. *See Parks v. Lebhar-Friedman, Inc.*, No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 33:** Defendants, while admitting that Plaintiffs

accurately quoted the statements by Mr. Goodfriend in Paragraph 33, contend that his "statements

must be read in the full context of the exhibit from which it was excerpted." Defendants thus

imply that the quoted statements were taken out of context, but do not explain how so in any way.

The Court thus should disregard this baseless and vague contention. "[A] dispute over the

characterization of certain basic facts and over other extraneous issues" is not sufficient to create

a genuine dispute of material fact. *See B.U.S.A.*, 2009 WL 3076042, at *1 n.2.

They assert, however, that the statements are "immaterial" because they "do not provide a

basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to

whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act." But under

Section 111(a)(5), secondary transmissions must be made "without any purpose of direct or

indirect commercial advantage." 17 U.S.C. § 111(a)(5). Thus, this statement, together with the

statements in Paragraphs 2-4, 7-8, 29-32, and 34-53, are material because they collectively show

that Locast makes secondary transmissions, at least in part, to benefit and obtain benefits from

pay-television providers.

34.        In the event of a blackout, pay-television providers can direct subscribers to
Locast to watch broadcast stations otherwise unavailable on their platform. Ex. 17 (Ross Dep.
48:16-19); Ex. 2 (Blum Dep. 88:5-16).

**RESPONSE: Disputed in part, as stated, and immaterial.** Locast is not an entity, but a
service provided by SFCNY. Am. Answer, ECF No. 88 ¶ 3. Plaintiffs only cite testimony from
DISH Network and AT&T representatives to support this assertion. Defendants do not dispute the
assertion as it relates to these companies, but dispute Plaintiffs' vague application of testimony
related specifically to DISH Network and AT&T to "pay-television providers" more broadly. *See*
Pls.' Ex. 2 (Blum Dep. Tr.) 88:5-16 (testifying that Locast is one of a number of "alternatives" that
DISH may recommend to consumers to prevent churn); Pls.' Ex. 17 (Ross Dep. Tr.) 48:16-
19 (testifying regarding his personal belief that Locast "among many alternatives" could help to
"prevent churning" of DIRECTV customers); *see also* Opp. Ex. 7 (Tyrer Dep. Tr.) 204:6-19
(testifying that Locast was "one alternative" that AT&T could suggest to consumers). Defendants

state that Paragraph 34 is immaterial because the statement therein does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act.  *See Parks v. Lebhar-Friedman, Inc.*, No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at \*4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 34:**  Defendants do not dispute that AT&T and DISH, two pay-television providers, can direct subscribers to Locast to watch broadcast stations otherwise unavailable on their platform, in the event of a blackout, but contend that this assertion cannot be applied more broadly to other pay-television providers.  But none of the documents Defendants cite actually supports their assertion, since they are all testimony from AT&T and DISH employees about their respective company's ability to refer their subscribers to Locast. Thus, Defendants fail to provide any "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  Local Civ. R. 56.1(d).  On that basis, the Court should strike the third sentence of Defendants' Response.

Plaintiffs also adopt herein their Reply to Defendants' unfounded assertion that "Locast is not an entity, but a service provided by SFCNY" that is laid out in full in Plaintiffs' Reply to Paragraph 7.

Finally, Defendants assert that the statement is "immaterial" because it "does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act."  But under Section 111(a)(5), secondary transmissions must be made "without any purpose of direct or indirect commercial advantage."  17 U.S.C. § 111(a)(5).  Thus, this statement, together with the statements in Paragraphs 2-4, 7-8, 29-33, and 34-53, are material because they collectively show that Locast makes secondary transmissions, at least in part, to benefit and obtain benefits from pay-television providers.

35.    Locast is a "tool" that pay-TV providers find "helpful for content negotiations." Ex. 17 (Ross Dep. 48:12-19, 101:21-102:5); Ex. 13 (Eisenach Dep. 158:9-161:14). Locast "prevent[s] customers from churning." Ex. 17 (Ross Dep. 48:19). The availability of Locast also "help[ed] AT&T's bargaining position in [retransmission consent] negotiations." Ex. 17 (Ross Dep. 49:5- 50:2).

**RESPONSE: Disputed in part, as stated, and immaterial.** There is no evidence in the record that the availability of the Locast service impacted the material terms of any retransmission consent negotiation, ███████████████████████████████████████████████████ ██████████████████████████████████████████ Opp. Ex. 9 (Orlando Dep. Tr.) at 190:19-191:9, 205:15-206:2.  Plaintiffs only cite testimony from an AT&T representative to support this assertion. Defendants do not dispute the quotations of excerpted testimony provided by a witness on behalf of AT&T, but dispute Plaintiffs' vague application of this testimony to "pay-television providers" more broadly.  Defendants further dispute the first sentence of Paragraph 35 because  it mischaracterizes Stephen Ross's testimony. Mr. Ross testified that "Locast, among any  other alternatives, is a tool that . . . prevent[s] customers from churning." Pls.' Ex. 17 (Ross Dep. Tr.) 48:16-19. Then, over fifty pages of testimony later, Mr. Ross stated the existence of Locast *could* be a "good thing" for AT&T in retransmission negotiations in terms of price.  *Id.* at 102:4-5 (emphasis added). Plaintiffs' selective citation to and characterization of Mr. Ross's testimony is misleading because it conflates these two unrelated pieces of testimony, *and* it attributes this testimony to be true for pay-TV providers more broadly when Mr. Ross was testifying specifically about AT&T. Defendants further state that Paragraph 35 is immaterial because the statement therein does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act. *See Parks v. Lebhar-Friedman, Inc.*, No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 35:**    Defendants' Response, which "adds

argumentative and . . . lengthy narrative . . . the object of which is to 'spin' the impact of the

admissions [Defendants have] been compelled to make," is not appropriate, and is entitled to no

weight. *See Goldstick*, 2002 WL 1906029, at *1.  Specifically, Defendants' disputes are wrong,

baseless, and irrelevant for many reasons, including the following.  Defendants emphasize that

Plaintiffs' witnesses did not "quantify" the impact that the availability of Locast had on

retransmission consent negotiations, yet failed to include that those witnesses testified that Locast

had a real impact on retransmission consent negotiations.  For example, during negotiations with

one broadcaster, ██████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████████████████ Defendants' assertion implies the

need to exactly quantify the effect of harm to Plaintiffs, which is unnecessary since Plaintiffs seek

only statutory damages.  Furthermore, Defendants inaccurately claim that Plaintiffs only cited

testimony from an AT&T representative to support the statement in Paragraph 35; Plaintiffs also

cited the testimony of Dr. Jeffrey Eisenach.

Defendants also contend that this assertion cannot be applied more broadly to other pay-

television providers, but fail to provide any "citation to evidence which would be admissible, set

forth as required by Fed. R. Civ. P. 56(c)."  Local Civ. R. 56.1(d).  On that basis, the Court should

strike the third sentence of Defendants' Response.

Defendants dispute the first sentence of Paragraph 35 by arguing that Mr. Ross's testimony

is mischaracterized and "conflates . . . two unrelated pieces of testimony" because one part is from

page 48 of Mr. Ross's deposition testimony and the other part is from pages 101 and 102 of Mr.

Ross's testimony.  Defendants are wrong.  Both of the quoted portions of Mr. Ross's testimony in

the first sentence are from page 48 of Mr. Ross's testimony; Plaintiffs cited to pages 101 and 102

as further evidence in support of that statement.  Thus, there was no "conflation" since the quoted

language is from the same page of Mr. Ross's testimony.

Finally, Defendants assert that the statement is "immaterial" because it "does not provide

a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to

whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act."  But under

Section 111(a)(5), secondary transmissions must be made "without any purpose of direct or indirect commercial advantage." 17 U.S.C. § 111(a)(5).  Thus, this statement, together with the statements in Paragraphs  2-4, 7-8, 29-34, and 36-53, are material because they collectively show that Locast makes secondary transmissions, at least in part, to benefit and obtain benefits from pay-television providers.

36.     DISH paid an outside vendor to integrate Locast's application into its Hopper platform. Ex. 21 (Sadler Dep. 39:1-9; 41:17-42:5).

**RESPONSE: Immaterial.** Defendants do not dispute that DISH paid an outside vendor to integrate Locast's application into its Hopper platform. However, further responding, Defendants state that Paragraph 36 is immaterial because the statement therein does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act.  *See Parks v. Lebhar-Friedman, Inc.*, No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 36:**  Defendants do not dispute the statement in Paragraph 36.  They assert, however, that the statement is "immaterial" because it "does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act."  But under Section 111(a)(5), secondary transmissions must be made "without any purpose of direct or indirect commercial advantage." 17 U.S.C. § 111(a)(5).  Thus, this statement, together with the statements in Paragraphs 2-4, 7-8, 29-36, and 37-53, are material because they collectively show that Locast makes secondary transmissions, at least in part, to benefit and obtain benefits from pay-television providers.

37.

**RESPONSE: Disputed in part, and immaterial.**



Defendants further state that Paragraph 37 is immaterial because the statements therein do not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act. *See Parks v. Lebhar-Friedman, Inc.*, No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 37:**  Defendants do not dispute ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Instead, Defendants' Response attempts to "add[] argumentative and . . . lengthy narrative . . . the object of which is to 'spin' the impact of the admissions [Defendants have] been compelled to make," which is not appropriate, and is entitled to no weight. *See Goldstick*, 2002 WL 1906029, at *1.  Defendants argue that ▮▮▮

Defendants also assert that the statements are "immaterial" because they "do not provide a basis to for the Court rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act."  But under Section 111(a)(5), secondary transmissions must be made "without any purpose of direct or indirect commercial advantage."  17 U.S.C. § 111(a)(5).  Thus, this statement, together with the statements in Paragraphs 2-4, 7-8, 29-36, and 38-53, are material because they collectively show

that Locast makes secondary transmissions, at least in part, to benefit and obtain benefits from pay-television providers.

38.    In anticipation of a blackout involving broadcaster Tegna, DISH "accelerate[d] [its] testing of the Locast app because [DISH] would have had an additional core of customers that were interested in the . . . Locast app, more so than they normally would have been." Ex. 21 (Sadler Dep. 85:1-7); Ex. 23 (Sadler Ex. 7); ███ and 25 (███████ 36).

**RESPONSE:  Disputed as stated, and immaterial.**  Defendants do not dispute that Mr. Sadler's testimony included the statement quoted in Paragraph 38; however, further responding, Defendants state that Mr. Sadler's testimony must be read in context.  In particular, when asked whether the dispute with Tegna caused DISH to accelerate its development and integration of the Locast application for the Hopper, Mr. Sadler testified that the dispute **did not** cause DISH to accelerate the development of the application. Pls.' Ex. 21 (Sadler Dep. Tr.) 85:18-86:2. Defendants further state that Paragraph 17 is immaterial because the statements therein do not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act.  *See Parks v. Lebhar-Friedman, Inc.*, No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 38:**  Defendants' additional fact regarding Mr. Sadler's testimony is contravened later in his testimony after he was shown various emails around the time of the Tegna blackout and corresponding Locast launch.  Specifically, Mr. Sadler testified that around November 30, 2018, the Locast app was "in [DISH's] beta cycles" and that they "were not getting the amount of feedback from [DISH's] testing that [DISH] would have liked to fully validate and fully flesh out any issues in the app."  Zweifach Decl., Ex. 100 (Sadler Dep.) at 92:16-94:16.  Mr. Sadler also testified that on November 30, 2018, the Tegna expiration began, and that the Locast app was pushed to DISH's customers "overnight."  *Id.* at 103:7-104:13; *see also id.* at 106:6-8.  Importantly, he testified that "***without the Tegna expiration that night*** [on November 30, 2018], ***it was a good chance DISH would not have pushed Locast out that night.***  Maybe would have waited until the next week or the week after."  *Id.* at 104:8-13 (emphasis added). Furthermore, Mr. Sadler testified that on December 4, 2018, Dish "removed" Locast, which was

the "same day" the Tegna dispute ended. *Id.* at 106:16-107:4; *see also* 107:10-21. DISH did not

then launch the Locast app again until "the first or second week of January." *Id.* at 108:6-10. In

other words, after Mr. Sadler was presented with various emails around November 30, 2018, he

then testified that the Locast application, which was only in its beta version and was not fully

validated, was pushed out to DISH's customers overnight with the Tegna expiration, and removed

the same day the Tegna dispute ended. Then, it was not launched to DISH's customers until about

a month later.

Defendants also assert that the statement is "immaterial" because it "do[es] not provide a

basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to

whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act." But under

Section 111(a)(5), secondary transmissions must be made "without any purpose of direct or

indirect commercial advantage." 17 U.S.C. § 111(a)(5). Thus, this statement, together with the

statements in Paragraphs 2-4, 7-8, 29-37, and 38-53, are material because they collectively show

that Locast makes secondary transmissions, at least in part, to benefit and obtain benefits from

pay-television providers.

39.        When its retransmission consent negotiations with Nexstar failed in 2020 and
DISH dropped Nexstar-owned television stations from its satellite system, DISH referred its
subscribers to Locast to obtain access to those stations. Ex. 2 (Blum Dep. 186:5-187:11).

**RESPONSE: Disputed in part, and immaterial.** Defendants do not dispute that DISH
referred its subscribers to Locast to obtain access to stations unavailable during retransmission
consent negotiations, but otherwise dispute Plaintiffs' assertions in Paragraph 39 because they
mischaracterize the testimony of DISH's representative to the extent that they ignore that this
testimony related to a document which stated that Locast was among a variety of possible methods
for obtaining access to OTA channels during retransmission negotiations, such as OTA antennas,
the NFL App, Yahoo Sports App, CBS All Access, and Amazon Prime Video. *See* Opp. Ex. 6
(Blum Ex. 40). Defendants state that Paragraph 39 is immaterial because the statement therein
does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs'
Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act.
*See Parks v. Lebhar-Friedman, Inc.*, No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4

(S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 39:**  Defendants do not dispute Mr. Blum's testimony, but instead argue that Locast was "among a variety of possible methods for obtaining access to OTA channels during retransmission negotiations."  Defendants' assertion is irrelevant, as it does not contradict Plaintiffs' statement that DISH referred its subscribers to Locast to obtain access to certain stations.  Instead, Defendants' Response "adds argumentative and . . . lengthy narrative . . . the object of which is to 'spin' the impact of the admissions [Defendants have] been compelled to make," which is not appropriate, and is entitled to no weight.  *See Goldstick*, 2002 WL 1906029, at *1.

Defendants also assert that the statement is "immaterial" because it "does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act."  But under Section 111(a)(5), secondary transmissions must be made "without any purpose of direct or indirect commercial advantage."  17 U.S.C. § 111(a)(5).  Thus, this statement, together with the statements in Paragraphs 2-4, 7-8, 29-38, and 40-53, are material because they collectively show that Locast makes secondary transmissions, at least in part, to benefit and obtain benefits from pay-television providers.

40.    AT&T owns DirectTV. Ex. 26 (Tyrer Dep. 33:7). ████████████

████████████████████████████████████████████████

**RESPONSE: Immaterial.** Defendants state that Paragraph 40 is immaterial because the statements therein do not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act. *See Parks v. Lebhar-Friedman, Inc.*, No. CIVA 04-7133 DCP KNF, 2008 WL

3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 40:**  Defendants do not dispute the statements in Paragraph 40.  They assert, however, that the statements are "immaterial" because they "do not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act."  But under Section 111(a)(5), secondary transmissions must be made "without any purpose of direct or indirect commercial advantage."  17 U.S.C. § 111(a)(5).  Thus, this statement, together with the statements in Paragraphs 2-4, 7-8, 29-39, and 41-53, are material because they collectively show that Locast makes secondary transmissions, at least in part, to benefit and obtain benefits from pay-television providers.

41.    Stephen Ross was Lead Manager for Product Marketing at DirecTV. Ex. 17 (Ross Dep. 13:2-7, 15:9-14). Ross acknowledged that AT&T "prioritize[d] or task[ed] internal resources of $2 million for the Locast app." Ex. 17 (Ross Dep. 107:17-21).

**RESPONSE: Undisputed and immaterial.** Defendants state that Paragraph 41 is immaterial because the statements therein do not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act. *See Parks v. Lebhar-Friedman, Inc.*, No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 41:**  Defendants admit that the statements in Paragraph 41 are undisputed.  They assert, however, that the statements are "immaterial" because they "do not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act."  But under Section 111(a)(5), secondary transmissions must be made "without any purpose of direct or indirect commercial advantage."  17 U.S.C. § 111(a)(5).  Thus, this

statement, together with the statements in Paragraphs 2-4, 7-8, 29-40, and 42-53, are material because they collectively show that Locast makes secondary transmissions, at least in part, to benefit and obtain benefits from pay-television providers.

42.     On May 30, 2019, AT&T "added the Locast interactive app to its DIRECTV and U-verse receivers." Ex. 28 (Ross Ex. 8).

**RESPONSE: Undisputed and immaterial.** Defendants state that Paragraph 42 is immaterial because the statement therein does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act. *See Parks v. Lebhar-Friedman, Inc.*, No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 42:**  Defendants admit that the statement in Paragraph 42 is undisputed.  They assert, however, that the statement is "immaterial" because it "does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act."  But under Section 111(a)(5), secondary transmissions must be made "without any purpose of direct or indirect commercial advantage."  17 U.S.C. § 111(a)(5).  Thus, this statement, together with the statements in Paragraphs 2-4, 7-8, 29-41, and 43-53, are material because they collectively show that Locast makes secondary transmissions, at least in part, to benefit and obtain benefits from pay-television providers.

43.     On June 27, 2019, AT&T stated in a press release that it was "donating $500,000 to non-profit advocacy group Sports Fans Coalition NY (SFCNY), which operates the Locast public service app that offers users access to local broadcast TV stations via the Internet." Ex. 28 (Ross Ex. 8).

**RESPONSE: Disputed as stated, and immaterial.** Defendants generally do not dispute the assertions made in Paragraph 43; however, Defendants dispute Plaintiffs' omission of additional context contained within the press release because such omission inherently mischaracterizes the nature of the press release. Further responding, Defendants state the sentence

immediately after the portion quoted in Paragraph 43 reads: "This donation will support SFCNY's mission to make free broadcast content available to consumers and offer them more choice." Pls.' Ex. 28 (Ross Ex. 8). Such additional context is necessary to fully understand the nature and purpose of the donation made by AT&T to SFCNY. Defendants further state that Paragraph 43 is immaterial because the statement therein does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act. *See Parks v. Lebhar-Friedman, Inc.*, No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 43:** Defendants, while not disputing that Plaintiffs accurately quoted the document cited in Paragraph 13, contend that the statement needs to include the sentence following the sentence Plaintiffs quoted. This assertion, however, does not contradict Plaintiffs' statement in Paragraph 43. Defendants' Response, which "adds argumentative and . . . lengthy narrative . . . the object of which is to 'spin' the impact of the admissions [Defendants have] been compelled to make," is not appropriate, and is entitled to no weight. *See Goldstick*, 2002 WL 1906029, at *1.

Defendants also assert that the statement is "immaterial" because it "does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act." But under Section 111(a)(5), secondary transmissions must be made "without any purpose of direct or indirect commercial advantage." 17 U.S.C. § 111(a)(5). Thus, this statement, together with the statements in Paragraphs 2-4, 7-8, 29-42, and 44-53, are material because they collectively show that Locast makes secondary transmissions, at least in part, to benefit and obtain benefits from pay-television providers.

44.        AT&T characterizes its June 2019 "Donation" to Locast as a "business decision authorized by AT&T businesspeople." Ex. 29 (Tyrer Ex. 17).

**RESPONSE: Disputed as stated, and immaterial.** Defendants do not dispute that AT&T

64

made a donation to SFCNY.  Defendants dispute that AT&T has publicly characterized its donation as a "business decision authorized by AT&T businesspeople," in light of the testimony from Thomas Tyrer that he was not sure whether it was a business decision or whether it was authorized by business people.  Opp. Ex. 7 (Tyrer Dep. Tr.) at 210:9-17.  Defendants further dispute Plaintiffs' use of quotation marks around the word donation, to the extent it suggests that AT&T's donation was something other than a donation, when there is no evidence to support that implication. Defendants state that Paragraph 44 is immaterial because the statement therein does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act.  *See Parks v. Lebhar-Friedman, Inc.*, No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 44:**  Defendants do not dispute that AT&T has characterized its June 2019 "Donation" to Locast as a "business decision authorized by AT&T businesspeople."  Instead, Defendants' Response, which "adds argumentative and . . . lengthy narrative . . . the object of which is to 'spin' the impact of the admissions [Defendants have] been compelled to make," is not appropriate, and is entitled to no weight. *See Goldstick*, 2002 WL 1906029, at *1.  Defendants dispute that AT&T has "***publicly*** characterized" AT&T's payment as a "business decision authorized by business people," even though Plaintiffs did not state in Paragraph 44 that AT&T's characterization was a "public" characterization.  In other words, Defendants' dispute is irrelevant and fails to contradict Plaintiffs' statement in Paragraph 44. Regarding Defendants' dispute of Plaintiffs' usage of quotation marks around the word "donation," Plaintiffs were quoting the AT&T letter, which capitalized "donation" (which is why Plaintiffs also did so in Paragraph 44).  Furthermore, Defendants are incorrect in stating that "there is no evidence to support [the] implication" that "AT&T's donation was something other than a donation" as AT&T itself admitted that it was a "business decision authorized by AT&T businesspeople," Zweifach Decl., Ex. 29 (Tyrer Ex. 17), and ████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

[REDACTED]                              Defendants also assert that the statement is "immaterial"

because it "does not provide a basis for the Court to rule in favor of either party in connection with

Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the

Copyright Act." But under Section 111(a)(5), secondary transmissions must be made "without

any purpose of direct or indirect commercial advantage." 17 U.S.C. § 111(a)(5). Thus, this

statement, together with the statements in Paragraphs 2-4, 7-8, 29-43, and 45-53, are material

because they collectively show that Locast makes secondary transmissions, at least in part, to

benefit and obtain benefits from pay-television providers.

45.    Thomas Tyrer is a consultant to AT&T on content negotiations. Ex. 26 (Tyrer Dep. 30:10-19). [REDACTED]

**RESPONSE: Disputed in part, and immaterial.** Defendants do not dispute that Thomas Tyrer is a consultant to AT&T. Defendants do not dispute that AT&T made a donation to SFCNY. [REDACTED] *See* Pls.' Ex. 26 (Tyrer Dep. Tr.) 187:10-19 (testifying that he was not sure whether the document was ever publicly disclosed). [REDACTED] Defs.' Ex. 36 (SFCNY Form 1023). Defendants further state that Paragraph 45 is immaterial because the statements therein do not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act. *See Parks v. Lebhar-Friedman, Inc.*, No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 45:** Defendants do not dispute that Mr. Tyrer is a

consultant to AT&T on content negotiations [REDACTED]

[REDACTED]

████████████████████████████████    Instead, Defendants' Response, which "adds argumentative and . . . lengthy narrative . . . the object of which is to 'spin' the impact of the admissions [Defendants have] been compelled to make," is not appropriate, and is entitled to no weight. *See Goldstick*, 2002 WL 1906029, at *1. ███████████████████████

█████████████████████████████████████████████████████████████████

███████████████████████████    In other words, Defendants' dispute is irrelevant and fails to contradict Plaintiffs' statement in Paragraph 45. █████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████    Furthermore, Defendants' cited evidence does not support their assertion, as the statements within Defendants Exhibit 36 are hearsay within hearsay, and thus inadmissible.

Defendants also assert that the statements are "immaterial" because they "do not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act." But under Section 111(a)(5), secondary transmissions must be made "without any purpose of direct or indirect commercial advantage." 17 U.S.C. § 111(a)(5). Thus, this statement, together with the statements in Paragraphs 2-4, 7-8, 29-44, and 46-53, are material because they collectively show that Locast makes secondary transmissions, at least in part, to benefit and obtain benefits from pay-television providers.

46.    On June 27, 2019, Stephen Ross was sent an email regarding AT&T's "interesting donation" to Locast. Ex. 31 (Ross Ex. 7). On that same day, Ross responded: "Yea, this press release has been in the works for a while. Its [sic] meant to give us some leverage during our Retrans negotiations." Ex. 31 (Ross Ex. 7); Ex. 17 (Ross Dep. 98:18-102:5).

**RESPONSE:  Disputed as stated, and immaterial.**  Locast is not an entity, but a service provided by SFCNY. Am. Answer, ECF No. 88 ¶ 3. Defendants do not dispute that the documents cited include the statements quoted in Paragraph 46; however, further responding, Defendants state that Thomas Tyrer testified, as a 30(b)(6) representative for AT&T, that AT&T did not experience any leverage during retransmission negotiations as a result of the existence of the Locast service. Opp. Ex. 7 (Tyrer Dep. Tr.) at 79:14-80:1 (when asked whether "from AT&T's perspective," "Locast provide[d] leverage to AT&T in the retransmission consent negotiations with CBS in 2019," Mr. Tyrer testified "I would say: No"). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ pp. Ex. 9 (Orlando Dep. Tr.) at 190:19-191:9, 205:15-206:2 Defendants further state that Paragraph 46 is immaterial because the statements therein do not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act. *See Parks v. Lebhar-Friedman, Inc.*, No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 46:**  Defendants do not dispute Mr. Ross's statements that are quoted in Paragraph 46, but argue that Mr. Tyrer testified that "AT&T did not experience any leverage during retransmission negotiations as a result of the existence of the Locast service."  Defendants' Response, which "adds argumentative and . . . lengthy narrative . . . the object of which is to 'spin' the impact of the admissions [Defendants have] been compelled to make," is not appropriate, and is entitled to no weight. *See Goldstick*, 2002 WL 1906029, at *1. Defendants also critically omit that Mr. Tyrer explained, specifically regarding Mr. Ross's email, "the characterization of 'gives us some leverage during retrans negotiations' . . . [is] not a matter of AT&T having more leverage.  It's CBS, in this case, having less leverage."  Zweifach Decl., Ex. 97 (Tyrer Dep.) at 242:5-10.  In other words, though Mr. Tyrer testified that it is "not a matter of AT&T having more leverage," he testified to the equivalent—that CBS, as a result of Locast's existence, had *less* leverage in its retransmission consent negotiations with AT&T.

Defendants emphasize that Plaintiffs witnesses did not "quantify" the impact that the availability of Locast had on retransmission consent negotiations, yet failed to include that those

witnesses testified that Locast had a real impact on retransmission consent negotiations. █

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

Defendants' assertion implies the need to exactly quantify the effect of harm to Plaintiffs, which is unnecessary since Plaintiffs seek statutory damages.

Plaintiffs also adopt herein their Reply to Defendants' unfounded assertion that "Locast is not an entity, but a service provided by SFCNY" that is laid out in full in Plaintiffs' Reply to Paragraph 7.

Finally, Defendants assert that the statements are "immaterial" because they "do not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act."  But under Section 111(a)(5), secondary transmissions must be made "without any purpose of direct or indirect commercial advantage."  17 U.S.C. § 111(a)(5).  Thus, this statement, together with the statements in Paragraphs 2-4, 7-8, 29-45 and 47-53, are material because they collectively show that Locast makes secondary transmissions, at least in part, to benefit and obtain benefits from pay-television providers.

47.     On December 4, 2020, during a dispute with broadcaster Tegna, AT&T sent a letter to television stations stating that "[f]ortunately, many of our Houston customers who have a DIRECTV Genie or U-verse internet-connected receiver can still watch Sunday's game by simply clicking the right arrow on their remote control, choosing the Locast app from their interactive TV menu, and following the onscreen prompts." Ex. 32 (Tyrer Ex. 25).

**RESPONSE: Disputed as stated, and immaterial.** Defendants do not dispute that Plaintiffs' Exhibit 32 includes the statement quoted in Paragraph 47; however, further responding, Defendants state that this selective quotation is misleading and mischaracterizes the record because it omits necessary context that impacts the interpretation of this statement. Defendants state that earlier in this document, AT&T's Executive Vice President and Chief Content Officer wrote that AT&T believed "no public interest [is] served by KHOU . . . deliberately blacking out KHOU and intentionally inconveniencing thousands of Houston homes that are ardent Texas fans." Pls.' Ex. 32 (Tyrer Ex. 25). Defendants state that this context is crucial to understanding that AT&T's implementation of the Locast system was done with the intention of benefiting the public by providing them with programming they might otherwise not be able to access. Defendants further state that Paragraph 47 is immaterial because the statements therein do not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act. *See Parks v. Lebhar-Friedman, Inc.*, No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 47:** Defendants, while not disputing the statement in Exhibit 25 of Mr. Tyrer's deposition, argue that an additional statement in the press release shows that AT&T implemented Locast to benefit the public. But the statute denies the exemption to a party acting for "any" purpose of direct or indirect commercial advantage, and so the possibility that AT&T was paying Locast for some other purposes does not create a dispute. As Mr. Ross testified, Locast is a "tool" that pay-television providers find "helpful for content negotiations," and "prevent[s] customers from churning." Ex. 17 (Ross Dep.) at 48:12-19, 101:21-102:5); *id.* at 49:5-50:2 (the availability of Locast also "help[ed] AT&T's bargaining position in [retransmission consent] negotiations."). Indeed, Defendants purport to "dispute" an "interpretation" they perceive from the factual statements in Paragraph 1, but "a dispute over the characterization of certain basic facts and over other extraneous issues" is not sufficient to create a genuine dispute of material fact. *See B.U.S.A.*, 2009 WL 3076042, at *1 n.2.

Defendants also assert that the statement is "immaterial" because it "do not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act." But under Section

111(a)(5), secondary transmissions must be made "without any purpose of direct or indirect commercial advantage." 17 U.S.C. § 111(a)(5). Thus, this statement, together with the statements in Paragraphs 2-4, 7-8, 29-46, and 48-53, are material because they collectively show that Locast makes secondary transmissions, at least in part, to benefit and obtain benefits from pay-television providers.

48. █████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
███████████████

**RESPONSE: Undisputed and immaterial.** Defendants state that Paragraph 48 is immaterial because the statement therein does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act. *See Parks v. Lebhar-Friedman, Inc.*, No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 48:** Defendants admit that the statement in Paragraph 48 is undisputed. They assert, however, that the statement is "immaterial" because it "does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act." But under Section 111(a)(5), secondary transmissions must be made "without any purpose of direct or indirect commercial advantage." 17 U.S.C. § 111(a)(5). Thus, this statement, together with the statements in Paragraphs 2-4, 7-8, 29-47, and 49-53, are material because they collectively show that Locast makes secondary transmissions, at least in part, to benefit and obtain benefits from pay-television providers.

49. Locast charges launch fees of $50,000 per market. Ex. 3 (Goodfriend Dep. 121:19- 122:1, 161:3-6).

**RESPONSE: Disputed in part, and immaterial.** Locast is not an entity, but a service provided by SFCNY. Am. Answer, ECF No. 88 ¶ 3. SFCNY does not charge any launch fees and no longer accepts donations from private parties to launch the Locast service in particular markets. Goodfriend Opp. Decl. at ¶ 8. SFCNY has accepted in-kind contributions related to the placement of antenna and necessary computer servers and has recently partnered with a local public utility in rural Tennessee to help launch in markets where OTA reception is particularly ineffective. *Id.* Defendants further dispute Plaintiffs' characterization of Mr. Goodfriend's testimony. Defendants state that Mr. Goodfriend testified that the $50,000 amount was the "cost of a contribution to help [Locast] defray the costs of launching in a small market." Pls.' Ex. 3 (Goodfriend Dep. Tr.) 161:3-6. Plaintiffs' statement ignores this necessary context, and thus is misleading and not helpful to the trier of fact. Defendants further state that Paragraph 49 is immaterial because the statement therein does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act. *See Parks v. Lebhar-Friedman, Inc.*, No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 49:** Defendants' Response, which "adds argumentative and . . . lengthy narrative . . . the object of which is to 'spin' the impact of the admissions [Defendants have] been compelled to make," is not appropriate, and is entitled to no weight. *See Goldstick*, 2002 WL 1906029, at *1. Indeed, Defendants' assertion is unsupported by admissible evidence, and fails to create a dispute of fact. *See e.g.*, *Meredith Corp.* v. *SESAC LLC*, 1 F. Supp. 3d 180, 186 n.3 (S.D.N.Y. 2014) (taking factual statements as established where the responding party's "responses consist[ed] of improper argument or recitations of different facts" and where the responding party has "not cited an evidentiary basis to contest a factually supported statement").

Defendants' contention in the second sentence should not be considered by this Court in deciding Plaintiffs' motion for partial summary judgment. *See* SDNY Local Civil Rule 56.1(d) (requiring that every statement must be supported by a "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)"). Mr. Goodfriend's declaration merely repeats the proposition in paragraph 49 without citation to any admissible evidence. Furthermore,

even though Mr. Goodfriend, during his deposition, first testified that he did not "think [he] ever used the term launch fees," Zweifach Decl., Ex. 3 (Goodfriend Dep.) at 173:12-13, he was then shown Exhibit 66 to his Deposition, which showed that he had done so, and Mr. Goodfriend then testified that he did in fact "discuss[] launch fees" with Mr. Kelly, *id.* at 175:7-10.  *See also* 121:19-122:1 (Mr. Goodfriend also testified earlier in his deposition that he had "discuss[ed] with [the SFCNY] board whether [he] would charge launch fees.").  Defendants also selectively quote Mr. Goodfriend's testimony.  For example, in quoting that Mr. Goodfriend testified that the $50,00 amount was the "cost of a contribution to help [Locast] defray the costs of launching a small market," Zweifach Decl., Ex. 3 (Goodfriend Dep.) at 161:3-6, Defendants omit that Mr. Goodfriend, in the same answer first said that:

> For the small markets that we felt we could not afford to launch using our own existing revenue stream, we tried to come up with a number that accurately reflected a per market launch cost to [Locast], a number that included all the different categories of costs that go into launching a new market.  And to come up with a number that we could standardize, so we could say to every single market that ***wanted to move up in line***, this is the cost of a contribution to help us defray ***the costs of launching*** a small market, that number that we came up with was $50,000 per market.

Zweifach Decl., Ex. 3 (Goodfriend Dep.) at 160:16-161:6 (emphasis added).  Mr. Goodfriend, in being asked about launch fees, also testified that "[i]t did come to pass that we launched Puerto Rico earlier than we would have absent a contribution to help defray the launch costs, and in the case of Puerto Rico, the donor was Liberty Cable Puerto Rico."  Zweifach Decl., Ex. 3 (Goodfriend Dep.) at 176:15-19.  This context thus shows that SFCNY did charge launch fees of $50,000 per market, which, if paid, would not simply "defray the costs of launching in a small market," as Defendants claim, but importantly, would accelerate the launch of a market (as it did for the markets in South Dakota and Puerto Rico).

Defendants also additionally assert that SFCNY "has recently partnered with a local public

utility in rural Tennessee to help launch in markets where OTA reception is particularly ineffective." Defendants have not provided Plaintiffs with any discovery regarding this new fact, and regardless, this sole fact is immaterial to Plaintiffs' motion for partial summary judgment.

Plaintiffs also adopt herein their Reply to Defendants' unfounded assertion that "Locast is not an entity, but a service provided by SFCNY" that is laid out in full in Plaintiffs' Reply to Paragraph 7.

Finally, Defendants assert that the statement is "immaterial" because it "does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act." But under Section 111(a)(5), secondary transmissions must be made "without any purpose of direct or indirect commercial advantage." 17 U.S.C. § 111(a)(5). Thus, this statement, together with the statements in Paragraphs 2-4, 7-8, 29-48, and 50-53, are material because they collectively show that Locast makes secondary transmissions, at least in part, to benefit and obtain benefits from pay-television providers.

50.        Liberty Cablevision of Puerto Rico, a cable company, paid Locast $50,000, called a "donation," after which Locast launched in Puerto Rico. Ex. 36 (Kelly Ex. 15, at SFCNY-000070818); Ex. 3 (Goodfriend Dep. 176:16-19).

**RESPONSE: Disputed in part, and immaterial.** Locast is not an entity, but a service provided by SFCNY. Am. Answer, ECF No. 88 ¶ 3. Defendants do not dispute that Liberty Cablevision of Puerto Rico is a cable company. Defendants do not dispute that Liberty Cablevision of Puerto Rico made a $50,000 donation to SFCNY. Defendants otherwise dispute Plaintiffs' characterization of the $50,000 that Locast received from Liberty—in particular Plaintiffs' use of quotation marks around the word "donation"—to the extent it suggests that this amount was anything other than a donation. Liberty Cablevision of Puerto Rico ***donated*** $50,000 to SFCNY. Defs.' Ex. 50 (Liberty Cablevision of Puerto Rico Donation Agreement). Defendants further state that Paragraph 50 is immaterial because the statement therein does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act. *See Parks v. Lebhar-Friedman, Inc.*, No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for

summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 50:**  Defendants do not dispute the statement in Paragraph 50, except the use of quotation marks around the word "donation."  But Mr. Goodfriend, in being asked about launch fees, also testified that "[i]t did come to pass that we launched Puerto Rico earlier than we would have absent a contribution to help defray the launch costs, and in the case of Puerto Rico, the donor was Liberty Cable Puerto Rico."  Zweifach Decl., Ex. 3 (Goodfriend Dep.) at 176:15-19.  This context thus shows that SFCNY charged launch fees of $50,000 per market, which, after it was paid, resulted in the launch of Locast in Puerto Rico.

Plaintiffs also adopt herein their Reply to Defendants' unfounded assertion that "Locast is not an entity, but a service provided by SFCNY" that is laid out in full in Plaintiffs' Reply to Paragraph 7.

Defendants also assert that the statement is "immaterial" because it "does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act."  But under Section 111(a)(5), secondary transmissions must be made "without any purpose of direct or indirect commercial advantage."  17 U.S.C. § 111(a)(5).  Thus, this statement, together with the statements in Paragraphs 2-4, 7-8, 29-49, and 51-53, are material because they collectively show that Locast makes secondary transmissions, at least in part, to benefit and obtain benefits from pay-television providers.

51.        Promotion and Advancement of Local Opportunities ("PALO"), a South Dakota organization funded by cable operators, paid Locast $100,000, called a "donation," after which Locast launched in Sioux Falls, and Rapid City, South Dakota. Ex. 37 (Kelly Ex. 13, at SFCNY-000046688); Ex. 3 (Goodfriend Dep. 152:4-153:2, 159:9-15, 163:10-13).

**RESPONSE: Disputed in part, and immaterial.** Locast is not an entity, but a service provided by SFCNY. Am. Answer, ECF No. 88 ¶ 3. Defendants do not dispute that PALO is a

South Dakota nonprofit organization funded by cable companies. Defendants do not dispute that SFCNY received a $100,000 donation from PALO. Defendants dispute Plaintiffs' characterization of the $100,000 that Locast received from PALO—in particular Plaintiffs' use of quotation marks around the word "donation"—to the extent it suggests that this amount was anything other than a donation.   PALO ***donated*** $100,000 to SFCNY. Defs.' Ex. 49 (PALO Donation Pledge Acknowledgment Letter). Defendants further state that Paragraph 51 is immaterial because the statement therein does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act. *See Parks v. Lebhar-Friedman, Inc.*, No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 51:**  Defendants do not dispute the statement in

Paragraph 51, except the use of quotation marks around the word "donation."  But regarding

PALO's "donation" of $100,000, Mr. Goodfriend testified that:

> For the small markets that we felt we could not afford to launch using our own existing revenue stream, we tried to come up with a number that accurately reflected a per market launch cost to [Locast], a number that included all the different categories of costs that go into launching a new market.  And to come up with a number that we could standardize, so we could say to every single market that wanted to move up in line, this is the cost of a contribution to help us defray the costs of launching a small market, that number that we came up with was $50,000 per market.  So to answer your question, a hundred thousand dollars is $50,000 times two because there were two small local markets in South Dakota launched.

Zweifach Decl., Ex. 3 (Goodfriend Dep.) at 160:16-161:10.  And Mr. Goodfriend's testimony

followed upon his dialogue with Mr. Kelly about charging launch fees, Zweifach Decl., Ex. 89

(Goodfriend Ex. 66) ("we also agreed that we can increase the per market lunch [sic] fee to

$250k"), even as Mr. Landers wrote in his business plan, that revenue, such as "[u]ser

subscriptions" would be "call[ed] . . . a donation like the PBS guys do," Pls.' Ex. 49 (Landers Ex.

17).  This context thus shows that SFCNY charged launch fees of $50,000 per market, which, after

it was paid, accelerated the launch of Locast in South Dakota.

Plaintiffs also adopt herein their Reply to Defendants' unfounded assertion that "Locast is not

an entity, but a service provided by SFCNY" that is laid out in full in Plaintiffs' Reply to

Paragraph 7.

Finally, Defendants assert that the statement is "immaterial" because it "does not provide

a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to

whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act."  But under

Section 111(a)(5), secondary transmissions must be made "without any purpose of direct or

indirect commercial advantage."  17 U.S.C. § 111(a)(5).  Thus, this statement, together with the

statements in Paragraphs 2-4, 7-8, 29-50, and 52-53, are material because they collectively show

that Locast makes secondary transmissions, at least in part, to benefit and obtain benefits from

pay-television providers.


52.    DISH offers a streaming service called Sling TV, which does not carry local
broadcast channels. Ex. 2 (Blum Dep. 96:21-97:2, 99:9-21).

**RESPONSE:  Disputed in part, and immaterial.**  Defendants do not dispute that DISH
offers Sling TV as a streaming service.  Defendants dispute that the evidence cited by Plaintiffs
supports the claim that Sling TV does not carry local broadcast channels: Mr. Blum's full
testimony on this point was that "Sling does not have, to the best of [his] recollection, local
channels on the service, except for a few markets that are from the owned and operated
broadcasters.  Generally, Sling does not have locals." Pls.' Ex. 2 (Blum Dep. Tr.) 99:16-21.
Therefore, Plaintiffs' assertion that Sling TV does not carry local broadcast channels without any
limitation is inappropriate based on the evidence cited. Defendants do not dispute the remainder
of Paragraph 52; however, further responding, Defendants state that the facts asserted in Paragraph
52 are immaterial because they do not provide a basis for the Court to rule in favor of either party
in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section
111(a)(5) of the Copyright Act. *See Parks v. Lebhar-Friedman, Inc.*, No. CIVA 04-7133 DCP
KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial"
if they "do not provide any basis to rule in favor of either party for summary judgment even if they
are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 52:** Defendants' sole dispute is whether Mr. Blum's statement about what Sling "generally" does can be used to describe what Sling does. This wording dispute does not genuinely dispute the statements in Paragraph 52. "[A] dispute over the characterization of certain basic facts and over other extraneous issues" is not sufficient to create a genuine dispute of material fact. *See B.U.S.A.*, 2009 WL 3076042, at *1 n.2.

They also assert that the statements are "immaterial" because they "do not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act." But under Section 111(a)(5), secondary transmissions must be made "without any purpose of direct or indirect commercial advantage." 17 U.S.C. § 111(a)(5). Thus, this statement, together with the statements in Paragraphs 2-4, 7-8, 29-51, and 53, are material because they collectively show that Locast makes secondary transmissions, at least in part, to benefit and obtain benefits from pay-television providers.

53.    Locast provides benefits to streaming services that do not carry broadcast content. Ex. 13 (Eisenach Dep. 307:21-308:21). DISH (with Locast's permission) integrated Locast into Sling's TV channel guide, allowing subscribers to watch broadcast channels alongside Sling's offerings. Exs. 39 and 40 (Blum Exs. 67, 68); *see* https://www.sling.com (promoting Locast- integrated channel guide). This allows DISH to avoid paying licensing fees relating to Sling. Ex. 13 (Eisenach Dep. 307:21-308:15). Regarding Sling, Goodfriend wrote DISH, "There seems to be a disconnect between my request for support and your request for permission to use Locast in promotions that would help Sling." Ex. 39 (Blum Ex. 67).

**RESPONSE: Disputed in part, and immaterial.** Locast is not an entity, but a service provided by SFCNY. Am. Answer, ECF No. 88 ¶ 3. Defendants do not dispute that Mr. Goodfriend wrote an email to individuals at DISH containing the quoted language cited from Plaintiffs' Exhibit 39; however, Defendants state that such statements must be read in the full context of the document from which the sentence was excerpted. *See* Pls.' Ex. 39 (Blum Ex. 67). Defendants dispute that Locast "provides benefits" to any streaming services and note that Plaintiffs' sole support for this assertion is the testimony of their own expert. Defendants further state that Paragraph 53 is immaterial because the statements contained therein do not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act. *See Parks v. Lebhar-Friedman, Inc.*, No.

CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 53:**    Defendants do not genuinely dispute the statements in Paragraph 53. Defendants, while admitting that Plaintiffs accurately quoted Mr. Goodfriend, argue that the "statements must be read in the full context of the document from which the sentence was excerpted." Defendants thus imply that the quoted statements were taken out of context, but do not explain how so in any way. The Court thus should disregard this baseless and vague contention. "[A] dispute over the characterization of certain basic facts and over other extraneous issues" is not sufficient to create a genuine dispute of material fact. *See B.U.S.A.*, 2009 WL 3076042, at *1 n.2.

Defendants also argue that Plaintiffs' sole support for Plaintiffs' statement that Locast provides benefits to streaming services that do not carry broadcast content is Dr. Eisenach's testimony. Defendants, however, do not dispute the underlying fact, nor do they argue that Plaintiff's support is inadmissible (which would be wrong). They also do not provide any evidence to the contrary, even though "each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." Local Civ. R. 56.1(d). Furthermore, that statement is not solely supported by Dr. Eisenach's testimony. For example, Mr. Goodfriend stated that DISH was "request[ing] for permission to use Locast in promotions that would help Sling." Zweifach Decl., Ex. 39 (Blum Ex. 67). Mr. Goodfriend's statement alone shows that Mr. Goodfriend recognized that the inclusion of Locast (which later happened) would benefit Sling, which is a streaming service that does not carry broadcast content.

Plaintiffs also adopt herein their Reply to Defendants' unfounded assertion that "Locast is not

an entity, but a service provided by SFCNY" that is laid out in full in Plaintiffs' Reply to Paragraph 7.

Finally, Defendants assert that the statement is "immaterial" because it "do not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act." But under Section 111(a)(5), secondary transmissions must be made "without any purpose of direct or indirect commercial advantage." 17 U.S.C. § 111(a)(5). Thus, this statement, together with the statements in Paragraphs 2-4, 7-8, and 29-52, are material because they collectively show that Locast makes secondary transmissions, at least in part, to benefit and obtain benefits from pay-television providers.

## B. Locast and Other Streaming Services

54.     Locast "target[s]" users of for-profit streaming services, like Hulu + Live TV, that retransmit broadcast stations. Ex. 5 (Kelly Dep. 271:22-272:2); Ex. 13 (Eisenach Dep. 296:19-297:3).

**RESPONSE:  Disputed as stated, and immaterial.**  Locast is not an entity, but a service provided by SFCNY. Am. Answer, ECF No. 88 ¶ 3. Defendants do not dispute that Mr. Kelly testified that he wrote an email in which he suggested that Locast ***could*** target "Hulu followers and users and make them aware that Locast exists and may be an option for them." Pls.' Ex. 5 (Kelly Dep. Tr.) 271:20-272:2. To the extent the assertions in Paragraph 54 are meant to suggest that Locast competes with for-profit streaming services, like Hulu, Defendants dispute that the cited evidence supports such assertions. Further answering, even if Defendants were to compete with for-profit streaming services, it would not change the fact that SFCNY is a registered 501(c)(3) nonprofit organization whose purpose is to provide access to OTA broadcast signals to those who are otherwise unable to receive such signals. *See* Defs.' Ex. 36 (SFCNY Form 1023); Defs.' Ex. 37 (IRS 501(c)(3) Tax Determination Letter); Defs.' Ex. 39 (2018 SFCNY Form 990); Defs.' Ex. 38 (2019 SFCNY Form 990). Defendants further state that Paragraph 54 is immaterial because the statement contained therein does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act. *See Parks v. Lebhar-Friedman, Inc.*, No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 54:**  Defendants do not dispute that Plaintiffs accurately quoted Mr. Kelly's testimony, nor do they contest Dr. Eisenach's supporting testimony. Instead, they argue that the cited evidence does not support a suggestion that "Locast competes with for-profit streaming services, like Hulu."  "[A] dispute over the characterization of certain basic facts and over other extraneous issues" is not sufficient to create a genuine dispute of material fact. *See B.U.S.A.*, 2009 WL 3076042, at *1 n.2.  Furthermore, Defendants fail to point out how the cited evidence does not support the "suggestion," and their position is incorrect, as the cited testimony from Dr. Eisenach states that "Locast . . . by the advertising campaign it undertook against Hulu, another [vMVPD] in the commercial marketplace for [vMVPD] services, is competing . . . in the market for [vMVPD] services."  Zweifach Decl., Ex. 13 (Eisenach Dep.) at 296:19-297:3.  Furthermore, Mr. Landers testified, when asked about Mr. Kelly's email, that "we were looking for [Hulu] users who were frustrated with access to everything to pay for local broadcast TV.  And we wanted to make sure that they knew there was an alternative [Locast] out there."  Zweifach Decl., Ex. 6 (Landers Dep.) at 296:16-22.  In other words, Mr. Landers admitted that Locast was competing with Hulu for Hulu's users.

As to Defendants' additional assertion that "SFCNY is a registered 501(c)(3) nonprofit organization whose purpose is to provide access to OTA broadcast signals to those who are otherwise unable to receive such signals," Plaintiffs dispute this immaterial assertion for the reasons outlined in Plaintiffs' Response to Paragraphs 62, 65, 66, and 67, and also adopted in this Reply.  Furthermore, this statement should not be considered by this Court in deciding Defendants' motion for summary judgment.  *See* SDNY Local Civil Rule 56.1(d) (requiring that every statement must be supported by a "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)").  The statements within Defendants' Exhibits 36, 37, 38, and

39 are hearsay within hearsay, and thus inadmissible.

Plaintiffs also adopt herein their Reply to Defendants' unfounded assertion that "Locast is not an entity, but a service provided by SFCNY" that is laid out in full in Plaintiffs' Reply to Paragraph 7.

Finally, Defendants assert that the statement is "immaterial" because it "does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act." But under Section 111(a)(5), secondary transmissions must be made "without any purpose of direct or indirect commercial advantage." 17 U.S.C. § 111(a)(5). Thus, this statement, together with the statements in Paragraphs 17 and 55-56, are material because they collectively show that Locast acts for a commercial purpose by exploiting copyrighted works to gain a competitive advantage over streaming services, like Hulu + Live TV or YouTube TV, that pay licensing fees to retransmit copyrighted programming. Furthermore, these statements together show that Locast acts with a purpose of commercial advantage because it unfairly competes with licensed streaming companies in the internet market, and thus underscores that it has nothing in common with the wholly noncommercial translators and boosters that Section 111(a)(5) covers.

55.        On November 15, 2019, Kelly wrote in an email to Landers that "Hulu is rain [sic] their prices by 20% ($10). How do you suggest we target HUKU [sic] users?" Ex. 41 (Landers Ex. 24, at JYBRD0050290). Landers responded that same day that, "[w]e can target keywords in ad sense, Bryce may be able to Target Hulu followers in Facebook and we can run Roku ads with an anti-Hulu rate increase message." *Id.*   On November 16, Kelly wrote that they "added 3 campaigns yesterday: Hulu+ Cost, Hulu+ Price, Hulu+ live+ TV." *Id.* at JYBRD0050288.  As Landers put it, Locast wanted to make sure Hulu users knew "there was an alternative out there." Ex. 6 (Landers Dep. 296:11-22).

**RESPONSE:  Disputed as stated, and immaterial.**  Locast is not an entity, but a service provided by SFCNY. Am. Answer, ECF No. 88 ¶ 3. Defendants do not dispute the contents of the documents cited by Plaintiffs in Paragraph 55. To the extent the assertions in Paragraph 55 are meant to suggest that Locast competes with for-profit streaming services, like Hulu, Defendants

dispute that the cited evidence supports such assertions. Further answering, even if Defendants were to compete with for-profit streaming services, it would not change the fact that SFCNY is a registered 501(c)(3) nonprofit organization whose purpose is to provide access to OTA broadcast signals to those who are otherwise unable to receive such signals. *See* Defs.' Ex. 36 (SFCNY Form 1023); Defs.' Ex. 37 (IRS 501(c)(3) Tax Determination Letter); Defs.' Ex. 39 (2018 SFCNY Form 990); Defs.' Ex. 38 (2019 SFCNY Form 990). Defendants further state that Paragraph 55 is immaterial because the statements contained therein do not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act. *See Parks v. Lebhar-Friedman, Inc.*, No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 55:** Defendants do not dispute that Plaintiffs accurately quoted the documents or Mr. Landers' deposition testimony in Paragraph 55. They argue that the cited evidence does not support a suggestion that "Locast competes with for-profit streaming services, like Hulu." "[A] dispute over the characterization of certain basic facts and over other extraneous issues" is not sufficient to create a genuine dispute of material fact. *See B.U.S.A.*, 2009 WL 3076042, at *1 n.2. Defendants also fail to point out how the cited evidence does not support the "suggest[ion] that Locast competes with for-profit streaming services." And Defendants are incorrect. Mr. Landers testified, when asked about Mr. Kelly's email, that "we were looking for [Hulu] users who were frustrated with access to everything to pay for local broadcast TV. And we wanted to make sure that they knew there was an alternative [Locast] out there." Zweifach Decl., Ex. 6 (Landers Dep.) at 296:16-22. In other words, Mr. Landers admitted that Locast was competing with Hulu for Hulu's users. Furthermore, Dr. Eisenach testified that "Locast . . . by the advertising campaign it undertook against Hulu, another [vMVPD] in the commercial marketplace for [vMVPD] services, is competing . . . in the market for [vMVPD] services." Zweifach Decl., Ex. 13 (Eisenach Dep.) at 296:19-297:3.

Plaintiffs also adopt herein their Reply to Defendants' unfounded assertion that "Locast is not an entity, but a service provided by SFCNY" that is laid out in Plaintiffs' Reply to Paragraph 7.

Finally, Defendants assert that the statements are "immaterial" because they "do not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act." But under Section 111(a)(5), secondary transmissions must be made "without any purpose of direct or indirect commercial advantage." 17 U.S.C. § 111(a)(5). Thus, this statement, together with the statements in Paragraphs 17, 54, and 56 are material because they collectively show that Locast acts for a commercial purpose by exploiting copyrighted works to gain a competitive advantage over streaming services, like Hulu + Live TV or YouTube TV, that pay licensing fees to retransmit copyrighted programming. Furthermore, these statements together show that Locast acts with a purpose of commercial advantage because it unfairly competes with licensed streaming companies in the internet market, and thus underscores that it has nothing in common with the wholly noncommercial translators and boosters that Section 111(a)(5) covers.

56.     Unlike Hulu Live + TV, Locast does not pay for the right to transmit broadcasts. Ex. 1 (Amended Answer ¶ 3); Ex. 13 (Eisenach Dep. 308:2-5).

**RESPONSE: Disputed as stated, and immaterial.** Locast is not an entity, but a service provided by SFCNY. Am. Answer, ECF No. 88 ¶ 3. Defendants state that the citations Plaintiffs provide for Paragraph 56 do not support the statement. Paragraph 3 of Defendants' Amended Answer states that "Defendants deny that any permission or payment is required for SFCNY to retransmit local over-the-air broadcasts to the public in their respective DMAs because SFCNY is a 501(c)(3) non-profit organization that meets the requirements of 17 U.S.C. Sec. 111(a)(5)." *Id.* Moreover, the portion of Dr. Eisenach's testimony cited by Plaintiffs does not refer to the Locast service at all. Thus, Defendants dispute that Paragraph 56 is "followed by citation to evidence which would be admissible." Local Civ. R. 56.1; *see also* Fed. R.Civ. P. 56(c). Defendants further state that Paragraph 56 is immaterial because the statement contained therein does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act. *See Parks v. Lebhar- Friedman, Inc.*, No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 56:**  Defendants dispute that their statement in their amended answer supports the statement in paragraph 56, even though their amended answer is in response to Plaintiffs' allegations in their amended complaint that "Locast neither obtains Plaintiffs' permission nor pays for its exploitation of Plaintiffs' exclusive rights to publicly perform their copyrighted content.  Instead, Locast simply takes Plaintiffs' copyrighted content and retransmits it to its registered users at will over the internet," ECF No. 81 ¶ 3.  Defendants' statement in their amended answer, thus, does support Plaintiffs' statement in Paragraph 56.  As to Dr. Eisenach's deposition testimony, that testimony was cited to support Plaintiffs' statement that Hulu Live + TV does pay for the right to transmit broadcast.  Defendants' dispute regarding Dr. Eisenach's testimony thus is inapposite.

Plaintiffs also adopt herein their Reply to Defendants' unfounded assertion that "Locast is not an entity, but a service provided by SFCNY" that is laid out in full in Plaintiffs' Reply to Paragraph 7.

Finally, Defendants assert that the statement is "immaterial" because it "does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act."  But under Section 111(a)(5), secondary transmissions must be made "without any purpose of direct or indirect commercial advantage."  17 U.S.C. § 111(a)(5).  Thus, this statement, together with the statements in Paragraphs 17, 54, and 55, are material because they collectively show that Locast acts for a commercial purpose by exploiting copyrighted works to gain a competitive advantage over streaming services, like Hulu + Live TV or YouTube TV, that pay licensing fees to retransmit copyrighted programming.  Furthermore, these statements together show that Locast acts with a purpose of commercial advantage because it unfairly competes with licensed streaming companies

in the internet market, and thus underscores that it has nothing in common with the wholly noncommercial translators and boosters that Section 111(a)(5) covers.

### C.  Locast and Data-Collection

57.    To register for Locast, users must provide Locast with their email addresses, which Locast collects. Ex. 3 (Goodfriend Dep. 279:14-280:5); Ex. 1 (Amended Answer ¶ 12).

**RESPONSE:  Disputed as stated, and immaterial.**  Locast is not an entity, but a service provided by SFCNY. Am. Answer, ECF No. 88 ¶ 3. Defendants do not dispute that SFCNY maintains the email addresses for Locast users, but dispute that the documents Plaintiffs reference support the assertion that Locast users must provide their email addresses in order to register for the service. Defendants further state that Paragraph 57 is immaterial because the statement contained therein does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act. *See Parks v. Lebhar-Friedman, Inc.*, No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 57:**  Defendants do not dispute that Locast users must provide Locast with their email addresses to register for Locast, and that Locast collects the users' email addresses; Defendants only dispute that the documents Plaintiffs reference support the statement in Paragraph 57, and fail to provide any documents to the contrary, as required under Local Civil Rule 56.1.  But Mr. Goodfriend testified that Locast "capture[s]" "the e-mail address and sometimes the credit card information of a user."  Zweifach Decl., Ex. 3 (Goodfriend Dep.) at 279:14-280:5.  And Defendants' amended answer "admit[s] that SFCNY maintains the email addresses for Locast users."  Pls.' Ex. 1 (Amended Answer ¶ 12).

Plaintiffs also adopt herein their Reply to Defendants' unfounded assertion that "Locast is not an entity, but a service provided by SFCNY" that is laid out in full in Plaintiffs' Reply to Paragraph 7.

Finally, Defendants assert that the statement is "immaterial" because it "does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to

whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act."  But under

Section 111(a)(5), secondary transmissions must be made "without any purpose of direct or

indirect commercial advantage."  17 U.S.C. § 111(a)(5).  Thus, this statement, together with the

statements in Paragraphs 58 and 59 are material because they collectively show that Locast acts

for a purpose of commercial advantage by exploiting copyrighted works to collect valuable data.


58.        Locast tracks viewership data, allowing it to see "how many people are watching
a . . . broadcast TV station in a particular market at any given moment." Ex. 3 (Goodfriend Dep.
284:8-20). In a March 29, 2019 email, Goodfriend wrote to Kelly that a Nielsen employee said
"Nielsen . . . would see great value in Locast" because Locast could "offer data regarding cord-
cutters and cord-nevers who are hard to measure." Ex. 42 (SFCNY-000007474).

**RESPONSE: Disputed in part, and immaterial.** Locast is not an entity, but a service
provided by SFCNY. Am. Answer, ECF No. 88 ¶ 3. Defendants do not dispute that SFCNY is
able to see how many people are watching a broadcast station in a particular market at any given
moment. Pls.' Ex. 3 (Goodfriend Dep. Tr.) 284:13-20. Defendants dispute that Locast tracks
viewership data or uses the information it has access to for anything "other than just out of pure
curiosity." *Id.* Defendants dispute that the evidence cited in support of the second sentence in
Paragraph 58 would be admissible in Court, as it contains hearsay statements in violation of the
local and federal rules. L.R. 56.1(d); Fed. R. Civ. P. 56(c). Defendants further state that Paragraph
58 is immaterial because the statements contained therein do not provide a basis for the Court to
rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast
service falls within Section 111(a)(5) of the Copyright Act. *See Parks v. Lebhar-Friedman, Inc.*,
No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1
statements are "immaterial" if they "do not provide any basis to rule in favor of either party for
summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 58:**  Defendants do not dispute that SFCNY can

see how many people are watching a broadcast station in a particular market at any given moment,

but dispute that Locast "uses the information it has access to for anything

"other than just out of pure curiosity."  That is contradicted by the email cited in Paragraph 58, as

well as in other documents in the record.  For example, as noted in Paragraph 59, Mr. Goodfriend

wrote to executives at Apollo Global Management, LLC regarding a "Locast collaboration,"

including "better monetizing the online audience through dynamic ad-insertion," "better monetizing

the existing and online audiences through superior online/digital back-end analytics of your Locast-enabled viewers," and "exploring how a for-profit entity working with Locast could play a role in facilitating success." Zweifach Decl., Ex. 43 (Sobel Ex. 5). On another occasion, Mr. Goodfriend wrote to Apollo executives that, "as I said at the outset, I really think we could collaborate on Locast—friend, not foe—for the monetization of cord-cutter/cord-never eyeballs." Zweifach Decl., Ex. 93 (Sobel Ex. 8).

Defendants' assertion that Plaintiffs' citation to Mr. Goodfriend's statement in an email is inadmissible hearsay is incorrect, as it is admissible as an opposing party's statement. Fed. R. Evid. 801(c).

Plaintiffs also adopt herein their Reply to Defendants' unfounded assertion that "Locast is not an entity, but a service provided by SFCNY" that is laid out in full in Plaintiffs' Reply to Paragraph 7.

Finally, Defendants assert that the statements are "immaterial" because they "do not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act." But under Section 111(a)(5), secondary transmissions must be made "without any purpose of direct or indirect commercial advantage." 17 U.S.C. § 111(a)(5). Thus, this statement, together with the statements in Paragraphs 57 and 59, are material because they collectively show that Locast acts for a purpose of commercial advantage by exploiting copyrighted works to collect valuable data.

59.    On April 5, 2019, Goodfriend wrote to executives at Apollo Global Management, LLC regarding a "Locast collaboration," including "better monetizing the online audience through dynamic ad-insertion," "better monetizing the existing and online audiences through superior online/digital back-end analytics of your Locast-enabled viewers," and "exploring how a for-profit entity working with Locast could play a role in facilitating success." Ex. 43 (Sobel Ex. 5).

**RESPONSE: Disputed as stated, and immaterial.** Defendants do not dispute that the quoted language in Paragraph 59 was included in an email Mr. Goodfriend sent to executives at Apollo on April 5, 2019. However, further answering, Defendants state that these statements must be read in the full context of the communication from which they were excerpted and dispute Plaintiffs' failure to quote the remaining context of Mr. Goodfriend's email. Mr. Goodfriend listed five different ways in which "Locast could enhance [Apollo's] current and future local broadcast stations' reach and success . . . All of this, of course, subject to our preserving the non-profit status of Locast, under both the Internal Revenue Code and the Copyright Act." Pls.' Ex. 43 (Sobel Ex. 5). Plaintiffs' failure to include this necessary context thus misleadingly presents Mr. Goodfriend's statements. Defendants further state that Paragraph 59 is immaterial because the statements contained therein do not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act. *See Parks v. Lebhar-Friedman, Inc.*, No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 59:** Defendants do not dispute Mr. Goodfriend's

statements in Paragraph 59. Instead, they add other statements from the email—none of which

contradicts the statements in Paragraph 59. Defendants' suggestion that Mr. Goodfriend's

statement regarding "preserving the non-profit status of Locast" is material also is incorrect for the

reasons outlined in Plaintiffs' Response to Paragraphs 62, 65, 66, and 67, and also adopted in this

Reply. Furthermore, on another occasion, Mr. Goodfriend wrote to Apollo executives that, "as I said

at the outset, I really think we could collaborate on Locast—friend, not foe—for the monetization of

cord-cutter/cord-never eyeballs." Zweifach Decl., Ex. 93 (Sobel Ex. 8). Nowhere in this email did

Mr. Goodfriend include any statements regarding SFCNY's "non-profit status."

Defendants also assert that the statement is "immaterial" because it "do not provide a basis

for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether

SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act." But under Section

111(a)(5), secondary transmissions must be made "without any purpose of direct or indirect

commercial advantage." 17 U.S.C. § 111(a)(5). Thus, this statement, together with the statements

in Paragraphs 57 and 58, are material because they collectively show that Locast acts for a purpose

of commercial advantage by exploiting copyrighted works to collect valuable data.

### D. Locast and "Notoriety and Publicity"

60.      Apollo Global Management, LLC ("Apollo") is an "alternative asset manager" that "manage[s] basically through three strategies, real estate, private equity and credit." Ex. 44 (Sobel Dep. 15:2-9).

**RESPONSE: Immaterial.** Defendants state that Paragraph 60 is immaterial because the statement therein does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act. *See Parks v. Lebhar-Friedman, Inc.*, No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 60:** Defendants do not dispute the statement in

Paragraph 60. They assert, however, that the statement is "immaterial" because it "does not

provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion

as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act." But

under Section 111(a)(5), secondary transmissions must be made "without any purpose of direct or

indirect commercial advantage." 17 U.S.C. § 111(a)(5). Thus, this statement, together with the

statements in Paragraphs 61, 62, and 63, are material because they collectively show that Locast

acts for a purpose of commercial advantage by exploiting copyrighted works to increase its name

"recognition" and that of its founder.

61.      On April 5, 2019, Goodfriend wrote to Apollo executives in an email that he and his consulting team were "putting together a presentation for you" regarding expanding opposition to a corporate merger. Ex. 43 (Sobel Ex. 5).

**RESPONSE: Disputed and immaterial.** Defendants dispute Plaintiffs' characterization of the context of this email, which refers to work Mr. Goodfriend was doing on behalf of Emmer Consulting and is completely unrelated to the Locast service. Goodfriend Opp. Decl. at ¶ 23. As such, Defendants state that Paragraph 61 is immaterial because the statement therein does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act. *See*

*Parks v. Lebhar-Friedman, Inc.*, No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 61:** Defendants do not dispute the statement in Paragraph 61. They assert, however, that the statement is "immaterial" because it "does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act." But under Section 111(a)(5), secondary transmissions must be made "without any purpose of direct or indirect commercial advantage." 17 U.S.C. § 111(a)(5). Thus, this statement, together with the statements in Paragraphs 60, 62, and 63, are material because they collectively show that Locast acts for a purpose of commercial advantage by exploiting copyrighted works to increase its name "recognition" and that of its founder.

62.      Goodfriend told Apollo that an infringement suit "would bring notoriety and publicity to [Locast]." Ex. 44 (Sobel Dep. 124:5-16).

**RESPONSE: Immaterial.** Defendants state that Paragraph 62 is immaterial because the statement therein does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act. *See Parks v. Lebhar-Friedman, Inc.*, No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 62:** Defendants do not dispute the statement in Paragraph 62. They assert, however, that the statement is "immaterial" because it "does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act." But under Section 111(a)(5), secondary transmissions must be made "without any purpose of direct or indirect commercial advantage." 17 U.S.C. § 111(a)(5). Thus, this statement, together with the statements in Paragraphs 60, 61, and 63, are material because they collectively show that Locast

acts for a purpose of commercial advantage by exploiting copyrighted works to increase its name "recognition" and that of its founder.

63.     On January 18, 2018, Goodfriend wrote "if we lose in court, I haven't lost much and probably gain reputation as a fearless badass. Major, major figures have reached out to me with a quiet 'attaboy.' . . . Even if all my clients went away, projects like [Locast] put me in a position to go a number of different directions. I could go around the country and raise money for a new venture. I could merge my practice with a digital grassroots advocacy firm. Lots of options." Ex. 45 (SFCNY-000027948).

RESPONSE: Immaterial. Defendants state that Paragraph 63 is immaterial because the statements therein do not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act. *See Parks v. Lebhar-Friedman, Inc.*, No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed"). Answering further, Defendants state that the email quoted is an email from David Goodfriend to his mother. *See* Pls.' Ex. 45 (SFCNY-000027948).

REPLY TO RESPONSE TO PARAGRAPH 63:  Defendants do not dispute the statement in Paragraph 63.  They assert, however, that the statements are "immaterial" because they "do not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act."  But under Section 111(a)(5), secondary transmissions must be made "without any purpose of direct or indirect commercial advantage."  17 U.S.C. § 111(a)(5).  Thus, this statement, together with the statements in Paragraphs 60, 61, and 62, are material because they collectively show that Locast acts for a purpose of commercial advantage by exploiting copyrighted works to increase its name "recognition" and that of its founder.

E.     Locast and User "Donations"

64.     In an August 2, 2018 press release, Locast stated that it "is available for free but asks users to make a donation to the non-profit in order to maintain operations." Ex. 8 (Hess Ex. 18). On January 9, 2019, Kelly wrote that as to "Users," "Locast will begin assessing a $5/mo. membership fee and $50/year.  There will be a dual feed (i) promos to run every 30 minutes for

non-contributors and (ii) uninterrupted service for members." Ex. 19 (Kelly Ex. 23).

  **RESPONSE: Disputed in part, and immaterial.** Locast is not an entity, but a service provided by SFCNY. Am. Answer, ECF No. 88 ¶ 3. Defendants do not dispute that Locast is available for free to all potential users and that it seeks donations from users in an amount of $5 per month. *See* Defs.' SOMF ¶ 152; Pls.' Ex. 3 (Goodfriend Dep. Tr.) 167:6-17. Further answering, Locast disputes the assertions made in Paragraph 64 to the extent that they may be read to suggest that Locast employs a fee for service model. Defendants further state that Paragraph 64 is immaterial because the statement therein does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act. *See Parks v. Lebhar-Friedman, Inc.*, No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 64:** Defendants do not dispute that Plaintiffs accurately quoted each of the documents in Paragraph 64. Instead, Defendants dispute the statements in Paragraph 64 "to the extent that they may be read to suggest that Locast employs a fee for service model." "[A] dispute over the characterization of certain basic facts and over other extraneous issues" is not sufficient to create a genuine dispute of material fact. *See B.U.S.A.*, 2009 WL 3076042, at *1 n.2. Furthermore, Defendants provide no reasons for why these documents cannot be used to support that Locast employs a fee for service model, and provides no "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." Local Civ. R. 56.1.

  Plaintiffs also dispute Defendants' additional assertions in the second sentence of Defendants' Response, which are supported by Paragraph 152 of Defendants' Statement of Material Facts, for the reasons outlined in Plaintiffs' Response to Paragraph 152 and adopted in this Reply.

  Plaintiffs also adopt herein their Reply to Defendants' unfounded assertion that "Locast is not an entity, but a service provided by SFCNY" that is laid out in full in Plaintiffs' Reply to Paragraph 7.

  Finally, Defendants assert that the statement is "immaterial" because it "does not provide

a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act." But under Section 111(a)(5), secondary transmissions must be made "without charge to the recipients of the secondary transmission other than assessments necessary to defray the actual and reasonable costs of maintaining and operating the secondary transmission service." 17 U.S.C. § 111(a)(5). Thus, this statement, together with the statements in Paragraphs 9 and 65-75, are material because they collectively show that although Locast offers a "free" service frequently interrupted by its own advertisements, it charges what Locast calls "donations" but what Locast's users and insiders have acknowledged and called subscription fees for uninterrupted services.

65.    Some internet streaming services like Hulu provide users with free services interrupted by advertisements but require users to pay for advertisement-free services. Ex. 46 (Martin Dep. 167:3-9) (Locast expert discussing streaming services that charge for "higher tier" services with "no ads").

**RESPONSE: Disputed and immaterial.** Defendants dispute that Hulu provides users with free streaming services beyond a limited free trial period. *See, e.g.*, Opp. Ex. 12 (https://help.hulu.com/s/article/free-trials) (offering free trial periods for different lengths dependent upon the subscription plan a user signs up for); Opp. Ex. 13 (https://help.hulu.com/s/article/how-much-does-hulu-cost#plans) (detailing Hulu's various subscription plans). Defendants further dispute that the record evidence cited by Plaintiffs supports the statement contained in Paragraph 65. Rather, Mr. Martin's testimony explains that there are different tiers of paid subscription plans on streaming services like Hulu—but that all plans require some payment. Pls.' Ex. 46 (Martin Dep. Tr.) 167:5-9. Defendants further state that Paragraph 65 is immaterial because the statements therein do not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act. *See Parks v. Lebhar-Friedman, Inc.*, No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 65:** Defendants do not dispute that some internet streaming services provide users with free services interrupted by advertisements but require users to pay for advertisement-free services, but instead, dispute that Hulu does so. However, the

documents Defendants cite show that Hulu offers a version of Hulu with ads for free; Defendants'

additional assertion that the period that a user receives Hulu with ads for free is limited by a trial

period is immaterial and does not contradict Plaintiffs' statement in Paragraph 65.  Furthermore,

Defendants inaccurately claim that Mr. Martin testified that "all such plans [from Hulu] require

some payment."  Instead, Mr. Martin testified that "Hulu has ads," and that he can "pay a higher

tier on Hulu for the service of Hulu that has no ads," Zweifach Decl., Ex. 46 (Martin Dep.) at

167:5-9; he did not testify that all Hulu plans require payment.

Defendants also assert that the statements are "immaterial" because they "do not provide a

basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to

whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act."  But under

Section 111(a)(5), secondary transmissions must be made "without charge to the recipients of the

secondary transmission other than assessments necessary to defray the actual and reasonable costs

of maintaining and operating the secondary transmission service."  17 U.S.C. § 111(a)(5).  Thus,

this statement, together with the statements in Paragraphs 9, 64, and 66-75, are material because

they collectively show that although Locast offers a "free" service frequently interrupted by its

own advertisements, it charges what Locast calls "donations" but what Locast's users and insiders

have acknowledged and called subscription fees for uninterrupted services.

66.    After registering, a new user can watch broadcast television over the service without interruption for one hour (or, during some periods, 24 hours), which Locast calls the "free trial period." Ex. 3 (Goodfriend Dep. 141:12-142:2); Ex. 6 (Landers Dep. 220:6-12). During these interruptions, Locast completely cuts off the stream, meaning the user misses television programing. Ex. 7 (Falkowski Dep. 111:6-11).

**RESPONSE: Disputed in part, and immaterial.** Locast is not an entity, but a service provided by SFCNY. Am. Answer, ECF No. 88 ¶ 3. Defendants do not dispute that SFCNY offers a one hour or a twenty-four hour interruption-free period for users. Defendants do not dispute that the Locast service stops a user's broadcast stream and displays a donation request at 15-minute

increments, for some users who do not choose to donate. Further responding, Defendants dispute that all users experience "interruptions" in their television program viewing. Some users may request that the service stop displaying the donation requests based on their financial circumstances and are still able to watch uninterrupted television on the Locast service. *See* Defs.' Ex. 32 (EC_00013437); Goodfriend Decl., ECF No. 129 ¶ 41. Locast also provides uninterrupted service to certain categories of individuals without donations, including first responders and military personnel. *Id.*; Goodfriend Opp. Decl. at ¶¶ 17-18. Other users may change the channel often enough that they never or seldom encounter a donation request. Pls.' Ex. 6 (Landers Dep. Tr.) 213:19-22; Goodfriend Decl., ECF No. 129 ¶ 40. Defendants further state that Paragraph 66 is immaterial because the statement therein does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act. *See Parks v. Lebhar-Friedman, Inc.*, No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 66:** Defendants do not dispute that after registering, a new user can watch broadcast television over the service without interruption for one hour, which Locast calls the "free trial period," and that during these interruptions, Locast completely cuts off the stream, meaning the user misses television programing. Instead, Defendants' Response "adds argumentative and . . . lengthy narrative . . . the object of which is to 'spin' the impact of the admissions [Defendants have] been compelled to make," which is not appropriate, and is entitled to no weight. *See Goldstick*, 2002 WL 1906029, at *1. The remainder of Defendants' Response, which "adds argumentative and . . . lengthy narrative . . . the object of which is to 'spin' the impact of the admissions [Defendants have] been compelled to make," also is not appropriate, and is entitled to no weight. *See Goldstick*, 2002 WL 1906029, at *1. Defendants dispute that "***all*** users" experience such interruptions because they either "change the channel often enough that they never or seldom encounter a donation request" or because the users have requested waivers because of their financial circumstances or because they are first responders or military personnel. Defendants, however, omit that users have only been able to request such waivers on three occasions (in March 2020, Zweifach Decl., Ex. 92 (SFCNY-

000067556); in May 2020, Zweifach Decl., Ex. 91 (SFCNY-000066395); and around September 2020, Zweifach Decl., Ex. 96 (Falkowski Dep.) at 274:16-19) related to the COVID-19 pandemic and California wildfires before Defendants launched the Locast Cares program, which is a "limited offer," this year, Zweifach Decl., Ex. 67.  In other words, for the first two years of Locast's launch, Locast did not make any such exceptions.  Furthermore, these payment waivers do not contradict the fact that there are Locast users who are not able to receive the waivers who thus are receiving interruptions, having their streams cut, and because of the interruptions and stream cutting, missing television programming.  Mr. Goodfriend's declaration also does not support Defendants' assertion in the seventh sentence, as Mr. Goodfriend only notes that "Locast requests donations by terminating the broadcast stream, playing a fifteen-second video requesting donations, and returning the user to the Locast program guide from which they can restart the broadcast stream or choose another channel," and the fifteen-minute timer resets to zero every time a user changes the channel, but says nothing regarding Defendants' contention that some users may change the channel often enough that they never or seldom encounter a donation request.  ECF No. 129 (Goodfriend Decl.)  ¶ 40.

Plaintiffs also adopt herein their Reply to Defendants' unfounded assertion that "Locast is not an entity, but a service provided by SFCNY" that is laid out in full in Plaintiffs' Reply to Paragraph 7.

Finally, Defendants assert that the statement is "immaterial" because it "does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act."  But under Section 111(a)(5), secondary transmissions must be made "without charge to the recipients of the secondary transmission other than assessments necessary to defray the actual and reasonable costs

of maintaining and operating the secondary transmission service." 17 U.S.C. § 111(a)(5). Thus, this statement, together with the statements in Paragraphs 9, 64-65, and 67-75 are material because they collectively show that (1) although Locast offers a "free" service frequently interrupted by its own advertisements, it charges what Locast calls "donations" but what Locast's users and insiders have acknowledged and called subscription fees for uninterrupted services.

67.    Thereafter, and on any subsequent login, Locast interrupts the user's stream every 15 minutes on a given channel with a Locast advertisement asking the user to pay $5 per month. Ex. 3 (Goodfriend Dep. 141:12-142:2); Ex. 6 (Landers Dep. 214:2-10, 214:22-215:6).

**RESPONSE: Disputed and immaterial.** Locast is not an entity, but a service provided by SFCNY. Am. Answer, ECF No. 88 ¶ 3. Defendants dispute Plaintiffs' assertion that any subsequent login after the initial interruption-free period receives donation requests. Mr. Landers testified that "[a]ny user donation will result in a subsequent suppression of the donation request." Pls.' Ex. 6 (Landers Dep. Tr.) 216:6-8. Thus, Defendants state that Plaintiffs' statement that "any subsequent login" will be subject to donation requests is inaccurate. Further responding, Defendants dispute that all users who have not donated experience "interruptions" in their television program viewing. Some users may request an exemption from making a donation based on their financial circumstances and are still able to watch uninterrupted television on Locast. *See* Defs.' Ex. 32 (EC_00013437); Goodfriend Decl., ECF No. 129 ¶ 41. Locast also provides uninterrupted service to certain categories of individuals without donations, including first responders and military personnel. Goodfriend Opp. Decl. at ¶¶ 17-18. Other users may change the channel often enough that they never encounter a donation request. Goodfriend Decl., ECF No. 129 ¶ 40. Defendants further state that Paragraph 67 is immaterial because the statement therein does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act. *See Parks v. Lebhar-Friedman, Inc.*, No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 67:** Defendants do not dispute that for Locast users who do not "donate," on any subsequent login after registration, Locast interrupts the user's stream every 15 minutes on a given channel with a Locast advertisement asking the user to pay $5 per month. Instead, Defendants' Response, which "adds argumentative and . . . lengthy narrative . . . the object of which is to 'spin' the impact of the admissions [Defendants have] been compelled

to make," is not appropriate, and is entitled to no weight. *See Goldstick*, 2002 WL 1906029, at *1. The remainder of Defendants' Response, which "adds argumentative and . . . lengthy narrative . . . the object of which is to 'spin' the impact of the admissions [Defendants have] been compelled to make," also is not appropriate, and is entitled to no weight. *See Goldstick*, 2002 WL 1906029, at *1. Defendants dispute that this applies to all Locast users, since it does not apply to the users who pay Locast's subscription fee. This "dispute," however, does not genuinely dispute the fact that there are Locast users who are subject to these interruptions.

Defendants also dispute that "all users" experience such interruptions because they either "change the channel often enough that they never or seldom encounter a donation request" or because the users have requested waivers because of their financial circumstances or because they are first responders or military personnel. Defendants, however, omit that users have only been able to request such waivers on three occasions (in March 2020, Zweifach Decl., Ex. 92 (SFCNY-000067556); in May 2020, Zweifach Decl., Ex. 91 (SFCNY-000066395); and around September 2020, Zweifach Decl., Ex. 96 (Falkowski Dep.) at 274:16-19) related to the COVID-19 pandemic and California wildfires before Defendants launched the Locast Cares program, which is a "limited offer," this year, Zweifach Decl., Ex. 67. In other words, for the first two years of Locast's launch, Locast did not make any such exceptions. Furthermore, these waivers do not contradict the fact that there are Locast users who are not able to receive the waivers who thus are subject to receiving interruptions, having their streams cut, and because of the interruptions and stream cutting, missing television programming. Mr. Goodfriend's declaration also does not support Defendants assertion in the seventh sentence, as Mr. Goodfriend only notes that "Locast requests donations by terminating the broadcast stream, playing a fifteen-second video requesting donations, and returning the user to the Locast program guide from which they can restart the broadcast stream or

choose another channel," and the fifteen-minute timer resets to zero every time a user changes the channel, but says nothing regarding Defendants' contention that some users may change the channel often enough that they never or seldom encounter a donation request. ECF No. 129 (Goodfriend Decl.) ¶ 40.

Plaintiffs also adopt herein their Reply to Defendants' unfounded assertion that "Locast is not an entity, but a service provided by SFCNY" that is laid out in full in Plaintiffs' Reply to Paragraph 7.

Finally, Defendants assert that the statement is "immaterial" because it "does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act." But under Section 111(a)(5), secondary transmissions must be made "without charge to the recipients of the secondary transmission other than assessments necessary to defray the actual and reasonable costs of maintaining and operating the secondary transmission service." 17 U.S.C. § 111(a)(5). Thus, this statement, together with the statements in Paragraphs 9, 64-66, and 68-75, are material because they collectively show that (1) although Locast offers a "free" service frequently interrupted by its own advertisements, it charges what Locast calls "donations" but what Locast's users and insiders have acknowledged and called subscription fees for uninterrupted services.

68.    Locast directs users to a payment webpage that describes the "donations" as "subscriptions." Ex. 14 (Foster Decl. ¶ 14).

**RESPONSE: Disputed and immaterial.** Locast is not an entity, but a service provided by SFCNY. Am. Answer, ECF No. 88 ¶ 3. Defendants do not dispute that the word "subscriptions" appears on a screen where some Locast users may make a donation. However, further responding, Defendants dispute Plaintiffs' use of the word donations in quotation marks to the extent that it presents a misleading characterization of Locast's webpage. Any reference to a "subscription" on Locast's website clearly applies to Locast's prompt for users to "Donate $5 Monthly." Pls.' Ex. 14 (Foster Decl., attaching Expert Report of Ian Foster) 50, Figure 41. This simply means that the

website is communicating to the user that the donation will recur monthly if they choose the "subscription" option; it does not mean that the donation is described as a subscription. Defendants further state that Paragraph 68 is immaterial because the statement therein does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act. *See Parks v. Lebhar-Friedman, Inc.*, No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 68:**  Defendants do not dispute that the payment webpage describes the "donations" as "subscriptions," and instead assert that this "simply means that the website is communicating to the user that the donation will recur monthly if they choose the 'subscription' option; it does not mean that the donation is described as a subscription. "[A] dispute over the characterization of certain basic facts and over other extraneous issues" is not sufficient to create a genuine dispute of material fact. *See B.U.S.A.*, 2009 WL 3076042, at *1 n.2. The remainder of Defendants' Response, which "adds argumentative and . . . lengthy narrative . . . the object of which is to 'spin' the impact of the admissions [Defendants have] been compelled to make," is also not appropriate, and is entitled to no weight. *See Goldstick*, 2002 WL 1906029, at *1. Furthermore, Defendants do not provide any "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)" in support of its assertion. Local Civ. R. 56.1(d).

Plaintiffs also adopt herein their Reply to Defendants' unfounded assertion that "Locast is not an entity, but a service provided by SFCNY" that is laid out in full in Plaintiffs' Reply to Paragraph 7.

Finally, Defendants assert that the statement is "immaterial" because it "does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act." But under Section 111(a)(5), secondary transmissions must be made "without charge to the recipients of the

secondary transmission other than assessments necessary to defray the actual and reasonable costs of maintaining and operating the secondary transmission service." 17 U.S.C. § 111(a)(5). Thus, this statement, together with the statements in Paragraphs 9, 64-67, and 69-75, are material because they collectively show that although Locast offers a "free" service frequently interrupted by its own advertisements, it charges what Locast calls "donations" but what Locast's users and insiders have acknowledged and called subscription fees for uninterrupted services.

69.     If the user does not pay, he or she is sent to Locast's program guide and must navigate back to the channel he or she was watching before the interruption—missing programming in the interim. Ex. 3 (Goodfriend Dep. 141:12-142:2); Ex. 6 (Landers Dep. 214:13-20); Ex. 7 (Falkowski Dep. 111:9-17). If the user pays, he or she receives uninterrupted service for a period of time "correlating" to the amount of the payment. Ex. 6 (Landers Dep. 217:1-10).

**RESPONSE: Disputed in part, and immaterial.** Locast is not an entity, but a service provided by SFCNY. Am. Answer, ECF No. 88 ¶ 3. Defendants do not dispute that after the donation request is displayed, users are returned to the program guide and that users who have donated receive uninterrupted service for the amount of time that correlates to their donation. Defendants dispute Plaintiffs' assertion that all users that do not pay are sent to the program guide and miss programming. Some users may request an exemption from making a donation based on their financial circumstances and are still able to watch uninterrupted television on Locast. *See* Defs.' Ex. 32 (EC_00013437); Goodfriend Decl., ECF No. 129 ¶ 41. Locast also provides uninterrupted service to certain categories of individuals without donations, including first responders and military personnel. *Id.*; Goodfriend Opp. Decl. at ¶¶ 17-18. Other users may change the channel often enough that they never encounter a donation request, and thus never miss the programming they choose to view. Goodfriend Decl., ECF No. 129 ¶ 40. Defendants further state that Paragraph 69 is immaterial because the statement therein does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act. *See Parks v. Lebhar-Friedman, Inc.*, No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 69:** Defendants do not dispute that some users who do not donate to SFCNY are sent back to Locast's program guide and must navigate back to the channel he or she was watching before the interruption—missing programming in the interim. Instead, Defendants dispute that "all users" experience such interruptions because they either

"change the channel often enough that they never or seldom encounter a donation request" or because the users have requested waivers because of their financial circumstances or because they are first responders or military personnel. "[A] dispute over the characterization of certain basic facts and over other extraneous issues" is not sufficient to create a genuine dispute of material fact. *See B.U.S.A.*, 2009 WL 3076042, at *1 n.2. The remainder of Defendants' Response, which "adds argumentative and . . . lengthy narrative . . . the object of which is to 'spin' the impact of the admissions [Defendants have] been compelled to make," is also not appropriate, and is entitled to no weight. *See Goldstick*, 2002 WL 1906029, at *1. Defendants omit that users have only been able to request such waivers on three occasions (in March 2020, Zweifach Decl., Ex. 92 (SFCNY-000067556); in May 2020, Zweifach Decl., Ex. 91 (SFCNY-000066395); and around September 2020, Zweifach Decl., Ex. 96 (Falkowski Dep.) at 274:16-19) related to the COVID-19 pandemic and California wildfires before Defendants launched the Locast Cares program, which is a "limited offer," this year, Zweifach Decl., Ex. 67. In other words, for the first two years of Locast's launch, Locast did not make any such exceptions. Furthermore, these payment waivers do not contradict the fact that there are Locast users who are not able to receive the waivers who thus are receiving interruptions, having their streams cut, and because of the interruptions and stream cutting, missing television programming. Furthermore, Mr. Goodfriend's declaration does not support Defendants assertion in the seventh sentence, as Mr. Goodfriend only notes that "Locast requests donations by terminating the broadcast stream, playing a fifteen-second video requesting donations, and returning the user to the Locast program guide from which they can restart the broadcast stream or choose another channel," and the fifteen-minute timer resets to zero every time a user changes the channel, but says nothing regarding Defendants' contention that some users may change the channel often enough that they never or seldom encounter a donation request. ECF No. 129

(Goodfriend Decl.) ¶ 40.

Plaintiffs also adopt herein their Reply to Defendants' unfounded assertion that "Locast is not an entity, but a service provided by SFCNY" that is laid out in full in Plaintiffs' Reply to Paragraph 7.

Finally, Defendants assert that the statement is "immaterial" because it "does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act." But under Section 111(a)(5), secondary transmissions must be made "without charge to the recipients of the secondary transmission other than assessments necessary to defray the actual and reasonable costs of maintaining and operating the secondary transmission service." 17 U.S.C. § 111(a)(5). Thus, this statement, together with the statements in Paragraphs 9, 64-68, and 70-75, are material because they collectively show that although Locast offers a "free" service frequently interrupted by its own advertisements, it charges what Locast calls "donations" but what Locast's users and insiders have acknowledged and called subscription fees for uninterrupted services.

70.    For example, if the user pays the full $5 (or more) per month, he or she receives uninterrupted service for the entire month. Ex. 6 (Landers Dep. 216:9-14). However, if the user pays less than $5, he or she receives uninterrupted service for only a portion of the month on a *pro rata* basis—*e.g.*, a $1 payment suppresses interruptions for 20% of the month. Ex. 6 (Landers Dep. 217:1-10).

**RESPONSE: Disputed in part, and immaterial.** Defendants do not dispute the fact that users who donate $5 will receive interruption-free service for a month. Defendants dispute Plaintiffs' statements contained in Paragraph 70 because Plaintiffs omit important context: users can request interruption-free services based on specific need, such as COVID-19 and its impact on employment, weather emergencies, and more. *See* Defs.' Ex. 32 (EC_00013437); Goodfriend Decl., ECF No. 129 ¶ 41; Goodfriend Opp. Decl. at ¶¶ 17-18. In such circumstances, users are able to view programming on Locast interruption-free without providing any donation. Goodfriend Decl., ECF No. 129 ¶ 41. Defendants state that Plaintiffs' statement, without this additional context, is misleading and mischaracterizes the nature of the Locast service donation model. Defendants further state that Paragraph 70 is immaterial because the statement therein does not

provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act. *See Parks v. Lebhar-Friedman, Inc.*, No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 70:**  Defendants do not dispute that some users who pay less than $5 will receive uninterrupted service for only a portion of the month on a *pro rata* basis—*e.g.*, a $1 payment suppresses interruptions for 20% of the month.  Instead, Defendants contend that some users can request for interruption-free services and that Plaintiffs' statement in Paragraph 70 is "misleading and mischaracterizes the nature of the Locast service donation model," without providing any evidence to support that assertion.  "[A] dispute over the characterization of certain basic facts and over other extraneous issues" is not sufficient to create a genuine dispute of material fact.  *See B.U.S.A.*, 2009 WL 3076042, at *1 n.2.  The remainder of Defendants' Response, which "adds argumentative and . . . lengthy narrative . . . the object of which is to 'spin' the impact of the admissions [Defendants have] been compelled to make," is also not appropriate, and is entitled to no weight. *See Goldstick*, 2002 WL 1906029, at *1. Defendants omit that users have only been able to request such waivers on three occasions (in March 2020, Zweifach Decl., Ex. 92 (SFCNY-000067556); in May 2020, Zweifach Decl., Ex. 91 (SFCNY-000066395); and around September 2020, Zweifach Decl., Ex. 96 (Falkowski Dep.) at 274:16-19) related to the COVID-19 pandemic and California wildfires before Defendants launched the Locast Cares program, which is a "limited offer," this year, Zweifach Decl., Ex. 67. In other words, for the first two years of Locast's launch, Locast did not make any such exceptions. Furthermore, these payment waivers do not contradict the fact that there are Locast users who are not able to receive the waivers who thus are receiving interruptions, having their streams cut, and because of the interruptions and stream cutting, missing television programming.

Defendants also assert that the statement is "immaterial" because it "does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act."  But under Section 111(a)(5), secondary transmissions must be made "without charge to the recipients of the secondary transmission other than assessments necessary to defray the actual and reasonable costs of maintaining and operating the secondary transmission service."  17 U.S.C. § 111(a)(5).  Thus, this statement, together with the statements in Paragraphs 9, 64-69, and 71-75, are material because they collectively show that although Locast offers a "free" service frequently interrupted by its own advertisements, it charges what Locast calls "donations" but what Locast's users and insiders have acknowledged and called subscription fees for uninterrupted services.

71.      As Landers acknowledged, "the more money you pay, the longer [the interruption screen] [i]s suppressed." Ex. 6 (Landers Dep. 217:11-14).

**RESPONSE:  Disputed in part, and immaterial.**  Defendants do not dispute there is a correlation between donation amount and the duration of interruption-free programming. However, Defendants dispute Plaintiffs' statements contained in Paragraph 71 because Plaintiffs omit important context: users can request interruption-free services based on specific need, such as COVID-19 and its impact on employment, weather emergencies, and more. *See* Defs.' Ex. 32 (EC_00013437); Goodfriend Decl., ECF No. 129 ¶ 41; Goodfriend Opp. Decl. at ¶¶ 17-18.  In such circumstances, users are able to view programming on Locast interruption-free without providing any donation. Goodfriend Decl., ECF No. 129 ¶ 41. Locast also provides uninterrupted service to certain categories of individuals without donations, including first responders and military personnel. Goodfriend Opp. Decl. at ¶¶ 17-18. Defendants state that Plaintiffs' statement, without this additional context, is misleading and mischaracterizes the nature of the Locast service donation model.  Defendants further state that Paragraph 71 is immaterial because the statement therein does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act. *See Parks v. Lebhar-Friedman, Inc.*, No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 71:** Defendants do not dispute Plaintiffs' quotation of Mr. Landers testimony in Paragraph 71. Instead, Defendants contend that some users can request for interruption-free services. "[A] dispute over the characterization of certain basic facts and over other extraneous issues" is not sufficient to create a genuine dispute of material fact. *See B.U.S.A.*, 2009 WL 3076042, at *1 n.2. The remainder of Defendants' Response, which "adds argumentative and . . . lengthy narrative . . . the object of which is to 'spin' the impact of the admissions [Defendants have] been compelled to make," is also not appropriate, and is entitled to no weight. *See Goldstick*, 2002 WL 1906029, at *1. Defendants omit that users have only been able to request such waivers on three occasions (in March 2020, Zweifach Decl., Ex. 92 (SFCNY-000067556); in May 2020, Zweifach Decl., Ex. 91 (SFCNY-000066395); and around September 2020, Zweifach Decl., Ex. 96 (Falkowski Dep.) at 274:16-19) related to the COVID-19 pandemic and California wildfires before Defendants launched the Locast Cares program, which is a "limited offer," this year, Zweifach Decl., Ex. 67. In other words, for the first two years of Locast's launch, Locast did not make any such exceptions. Furthermore, these payment waivers do not contradict the fact that there are Locast users who are not able to receive the waivers who thus are receiving interruptions, having their streams cut, and because of the interruptions and stream cutting, missing television programming.

Defendants also assert that the statement is "immaterial" because it "does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act." But under Section 111(a)(5), secondary transmissions must be made "without charge to the recipients of the secondary transmission other than assessments necessary to defray the actual and reasonable costs of maintaining and operating the secondary transmission service." 17 U.S.C. § 111(a)(5). Thus,

this statement, together with the statements in Paragraphs 9, 64-70, and 72-75, are material because they collectively show that although Locast offers a "free" service frequently interrupted by its own advertisements, it charges what Locast calls "donations" but what Locast's users and insiders have acknowledged and called subscription fees for uninterrupted services.

      72.     Locast users have reported that their streams have been interrupted during the punchline of a comedy, gameplay of a sporting event, or an acceptance speech at an award show. Exs. 16, 47, and 48 (Falkowski Exs. 36, 35, 50).

      **RESPONSE: Disputed and immaterial.** Defendants dispute that such reports have been received from most users, and state that SFCNY has received many reports detailing the manner in which the Locast service has helped members of the public. Goodfriend Opp. Decl. at ¶ 19. Defendants state that Paragraph 72 is immaterial because the statement therein does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act. *See Parks v. Lebhar-Friedman, Inc.*, No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed"). Defendants further dispute Paragraph 72 because it is based on inadmissible hearsay. *See Epstein v. Kemper Ins. Companies*, 210 F. Supp. 2d 308, 314 (S.D.N.Y. 2002) (noting that statements in a Rule 56.1 statement "are inappropriate if they are not based on personal knowledge, contain inadmissible hearsay, are conclusory or argumentative, or do not cite to supporting evidence").

**REPLY TO RESPONSE TO PARAGRAPH 72:** Defendants do not dispute that Locast users reported that their streams have been interrupted during the punchline of a comedy, gameplay of a sporting event, or an acceptance speech at an award show. Instead, Defendants dispute that "most users" have made such complaints. Defendants' Response "improperly interject[s] arguments and/or immaterial facts in response to facts asserted" by Plaintiffs, and is entitled to no weight. *See Baity*, 51 F. Supp. 3d at 418. Mr. Goodfriend's declaration, Plaintiffs' sole support for its assertion, merely repeats the proposition in the first sentence of Defendants' Response without citation to any admissible evidence. Goodfriend Opp. Decl. at ¶ 19. Furthermore, Plaintiffs' statement in Paragraph 72 does not say that those reports were "received from ***most*** users," as Defendants erroneously added. Therefore, Defendants do not dispute that there are

Locast users who have reported that their streams have been interrupted during the punchline of a comedy, gameplay of a sporting event, or an acceptance speech at an award show, as supported by Plaintiffs' Exhibits 16, 47, and 48.

Defendants' hearsay argument is also unfounded. As Defendants are aware, Mr. Falkowski, who was deposed as the corporate representative of eCreek Solutions Group, testified that it was eCreek's regular business practice to create the reports in Plaintiffs' Exhibits 16, 47, and 48 (his deposition exhibits 35, 36, and 50) at or near the dates indicated on the documents and eCreek's regular business practice to retain and maintain these records. Zweifach Decl., Ex. 96 (Falkowski Dep.) at 22:5-7; 189:20-198-7; 235:19-241-22. In other words, these documents are subject to the "business records exception," pursuant to Federal Rule of Evidence 803(6), and thus admissible. *See U.S. v. Reyes*, 159 F.3d 949 (2d Cir. 1998).

Finally, Defendants assert that the statement is "immaterial" because it "does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act." But under Section 111(a)(5), secondary transmissions must be made "without charge to the recipients of the secondary transmission other than assessments necessary to defray the actual and reasonable costs of maintaining and operating the secondary transmission service." 17 U.S.C. § 111(a)(5). Thus, this statement, together with the statements in Paragraphs 9, 64-71, and 73-75, are material because they collectively show that although Locast offers a "free" service frequently interrupted by its own advertisements, it charges what Locast calls "donations" but what Locast's users and insiders have acknowledged and called subscription fees for uninterrupted services.

73.    When describing Locast's business plan, Landers wrote that Locast would earn revenue from "[u]ser subscriptions" that "[w]e call . . . a donation like the PBS guys do." Ex. 49 (Landers Ex. 17).

109

**RESPONSE:  Disputed as stated, and immaterial.**  Locast is not an entity, but a service provided by SFCNY. Am. Answer, ECF No. 88 ¶ 3. Defendants do not dispute that the quoted language in Paragraph 73 appears in Plaintiffs' Exhibit 49. However, Defendants dispute Plaintiffs' characterization of this document because it fails to recognize Mr. Landers's deposition testimony regarding this language. Defendants state that in Mr. Landers's deposition, he testified about this document and stated that he was "using imprecise language since [he was] using [his] business terminology," and stating that his intention with that language was that "he follow[ed] the models of other not-for-profits that are operating in the market today" to establish Locast's business plan. Opp. Ex. 2 (Landers Dep. Tr.) at 195:17-18, 196:2-5. Mr. Landers consistently testified that he "should have used more precise language" in the document cited by Plaintiffs. *Id.* at 197:20-21. Plaintiffs' omission of this testimony is misleading and mischaracterizes the true nature of Mr. Landers's intentions in describing Locast's business plan.  Further responding, Defendants states that Locast seeks voluntary donations from its users and that 90% of its registered users use the Locast service without making any donation. Defs.' SOMF ¶ 157. Defendants further state that Paragraph 73 is immaterial because the statement therein does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act. *See Parks v. Lebhar-Friedman, Inc.*, No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 73:**  Defendants do not dispute the quoted language in Paragraph 73, but instead emphasize that Mr. Landers later testified that he was using "imprecise language" and that he "should have used more precise language."  "[A] dispute over the characterization of certain basic facts and over other extraneous issues" is not sufficient to create a genuine dispute of material fact . *See B.U.S.A.*, 2009 WL 3076042, at *1 n.2.  Mr. Landers' testimony that he used "imprecise language" does not defeat the fact that he did use such language—in other words, Mr. Landers did not contend that his statement in Exhibit 17 to his deposition was false, which would be a genuine dispute.

Plaintiffs also dispute Defendants' additional immaterial assertion that "Locast seeks voluntary donations from its users and that 90% of its registered users use the Locast service without making any donation" for the reasons outlined in Plaintiffs' Response to Paragraph 157 and adopted in this Reply.  This additional immaterial assertion, "the object of which is to 'spin' the

impact of the admissions [Defendants have] been compelled to make," is not appropriate, and is entitled to no weight. *See Goldstick*, 2002 WL 1906029, at *1."

Plaintiffs also adopt herein their Reply to Defendants' unfounded assertion that "Locast is not an entity, but a service provided by SFCNY" that is laid out in full in Plaintiffs' Reply to Paragraph 7.

Finally, Defendants assert that the statement is "immaterial" because it "does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act." But under Section 111(a)(5), secondary transmissions must be made "without charge to the recipients of the secondary transmission other than assessments necessary to defray the actual and reasonable costs of maintaining and operating the secondary transmission service." 17 U.S.C. § 111(a)(5). Thus, this statement, together with the statements in Paragraphs 9, 64-72, and 74-75 are material because they collectively show that although Locast offers a "free" service frequently interrupted by its own advertisements, it charges what Locast calls "donations" but what Locast's users and insiders have acknowledged and called subscription fees for uninterrupted services.

74.    In an email dated April 23, 2019, Chris Bennett, an employee at Nagrastar (DISH's outside vendor for developing the Locast app), asked, "Would it be possible to. . . [r]emove the 'Donate Now' ads on the Dish production stream? . . . This would allow us [to] improve the experience for Dish users while continuing working on a fix." Ex. 50 (Landers Ex. 19). In an email dated May 16, 2019, Landers responded to the email, stating that Locast "cannot remove the 'Donate now' ads for DISH customers. This interrupt is essential to our 'free trial' experience for users and how we limit our free usage exposure." *Id.*

**RESPONSE: Disputed in part, and immaterial.** Locast is not an entity, but a service provided by SFCNY. Am. Answer, ECF No. 88 ¶ 3. Defendants do not dispute that Plaintiffs' Exhibit 50 contains the language quoted in Paragraph 74. However, further responding, Defendants state that Mr. Landers testified that the free trial experience described in Landers Ex. 19 was necessary for a sustainable business model, thus Defendants dispute Plaintiffs' omission of this context. *See* Pls.' Ex. 50 (Landers Ex. 19). Defendants further state that Mr. Landers testified that in October 2018, he did not think SFCNY had a "sustainable business model," so he devised

the donation interrupt system at the direction of Mr. Goodfriend.  Opp. Ex. 2 (Landers Dep. Tr.) at 229:4-12.  Mr. Landers stated: "At this point, I understood for this survival of a not-for-profit, there needed to be a way to encourage users to make donations." *Id.* at 229:13-15. Without this context Mr. Landers provided in his deposition, Plaintiffs' inclusion of this quote from Mr. Landers's email mischaracterizes the nature of his statements. Defendants further state that Paragraph 74 is immaterial because the statements therein do not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act. *See Parks v. Lebhar-Friedman, Inc.*, No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 74:**  Defendants do not dispute Plaintiffs' quoting of a document in Paragraph 74, but instead provide additional testimony from Mr. Landers regarding that document.  Defendants' Response, which "adds argumentative and . . . lengthy narrative . . . the object of which is to 'spin' the impact of the admissions [Defendants have] been compelled to make," is not appropriate, and is entitled to no weight. *See Goldstick*, 2002 WL 1906029, at *1.  None of Mr. Landers' testimony contradicts the fact that Mr. Landers wrote that the ad interruption system, which Mr. Landers devised, was "essential" to Locast's free trial experience and how SFCNY "limit[ed its] free usage exposure."  Zweifach Decl., Ex. 50 (Landers Ex. 19).

Plaintiffs also adopt herein their Reply to Defendants' unfounded assertion that "Locast is not an entity, but a service provided by SFCNY" that is laid out in full in Plaintiffs' Reply to Paragraph 7.

Defendants also assert that the statement is "immaterial" because it "do not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act."  But under Section 111(a)(5), secondary transmissions must be made "without charge to the recipients of the secondary transmission other than assessments necessary to defray the actual and reasonable costs

of maintaining and operating the secondary transmission service." 17 U.S.C. § 111(a)(5). Thus,

this statement, together with the statements in Paragraphs 9, 64-73, and 75, are material because

they collectively show that although Locast offers a "free" service frequently interrupted by its

own advertisements, it charges what Locast calls "donations" but what Locast's users and insiders

have acknowledged and called subscription fees for uninterrupted services.

75. Locast users have complained that Locast's interrupted service is essentially unwatchable. Ex. 7 (Falkowski Dep. 315:5-316:7); *see, e.g.*, Ex. 51 (SFCNY-000031405), Ex. 52, 47, and 16 (Falkowski Exs. 34, 35, 36). They also have complained that they effectively must pay for uninterrupted service. *Id.*

**RESPONSE: Disputed and immaterial.** Locast is not an entity, but a service provided by SFCNY. Am. Answer, ECF No. 88 ¶ 3. Defendants dispute that a significant number of users have described the Locast service as "essentially unwatchable," and state that SFCNY has received many reports detailing the manner in which the Locast service has helped members of the public. Goodfriend Opp. Decl. at ¶ 19. Defendants dispute Paragraph 75 because it is based on inadmissible hearsay and thus not supported by admissible evidence. *See Epstein v. Kemper Ins. Companies,* 210 F. Supp. 2d 308, 314 (S.D.N.Y. 2002) (noting that statements in a Rule 56.1 statement "are inappropriate if they are not based on personal knowledge, contain inadmissible hearsay, are conclusory or argumentative, or do not cite to supporting evidence"). Defendants further state that Paragraph 75 is immaterial because the statement therein does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act. *See Parks v. Lebhar-Friedman, Inc.*, No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 75:** Defendants do not dispute that Locast users

have complained that Locast's interrupted service is essentially unwatchable and that they have

complained that they effectively must pay for uninterrupted service. Instead, Defendants dispute

that a "significant number" of users have made such complaints. Plaintiffs dispute Defendants'

characterization of "significant," and regardless, Mr. Goodfriend's declaration, Plaintiffs' sole

support for its assertion, merely repeats the proposition in the second sentence of Defendants'

Response without citation to any admissible evidence. Goodfriend Opp. Decl. at ¶ 19.

Defendants' Response "improperly interject[s] arguments and/or immaterial facts in response to facts asserted" by Plaintiffs, and is entitled to no weight. *See Baity*, 51 F. Supp. 3d at 418. Specifically, Defendants' claim that "SFCNY has received many reports detailing the manner in which the Locast service has helped members of the public" is an immaterial assertion, and supported solely by Mr. Goodfriend's declaration, which merely repeats the proposition in the second sentence of Defendants' Response without citation to any admissible evidence. Goodfriend Opp. Decl. at ¶ 19.

Plaintiffs also adopt herein their Reply to Defendants' unfounded assertion that "Locast is not an entity, but a service provided by SFCNY" that is laid out in full in Plaintiffs' Reply to Paragraph 7.

Defendants' hearsay argument is also unfounded. As Defendants are aware, Mr. Falkowski, who was deposed as the corporate representative of eCreek Solutions Group, testified that it was eCreek's regular business practice to create the reports in Plaintiffs' Exhibits 16, 47, and 52 (his deposition exhibits 34, 35, and 36) at or near the dates indicated on the documents and eCreek's regular business practice to retain and maintain these records. Zweifach Decl., Ex. 96 (Falkowski Dep.) at 22:5-7; 189:20-198-7. In other words, these documents are subject to the "business records exception," pursuant to Federal Rule of Evidence 803(6), and thus admissible. *See Reyes*, 159 F.3d 949.

Finally, Defendants assert that the statement is "immaterial" because it "does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act." But under Section 111(a)(5), secondary transmissions must be made "without charge to the recipients of the secondary transmission other than assessments necessary to defray the actual and reasonable costs

of maintaining and operating the secondary transmission service."  17 U.S.C. § 111(a)(5).  Thus,

this statement, together with the statements in Paragraphs 9 and 64-74, are material because they

collectively show that although Locast offers a "free" service frequently interrupted by its own

advertisements, it charges what Locast calls "donations" but what Locast's users and insiders have

acknowledged and called subscription fees for uninterrupted services.


### F.  Locast Does Not Make Assessments

76.        According to Goodfriend, he is "familiar with the statute" 17 U.S.C. 111(a)(5),
including that it "speaks in terms of assessment of the actual and reasonable expenses of operating
the service." Ex. 3 (Goodfriend Dep. 166:16-22). Yet, Locast has never "made such assessments."
Ex. 3 (Goodfriend Dep. 167:1-4) ("Q. Has Locast ever made such assessments? [A.] No.").
Goodfriend did not "try[] to come up with an assessment to cover cost. And therefore, while
[Locast] did think about incremental cost as well as some cost, and [Locast] thought about how to
allocate costs that the entire operation incurred on a per-user or per-donor basis, in general, [Locast]
kept coming back to this is just a recommended donation amount." Ex. 3 (Goodfriend Dep. 168:4-
12).

        **RESPONSE: Disputed in part.** Locast is not an entity, but a service provided by SFCNY.
Am. Answer, ECF No. 88 ¶ 3.  Defendants do not dispute that Mr. Goodfriend testified that he is
familiar with 17 U.S.C. § 111(a)(5).  However, further responding, Defendants otherwise dispute
Plaintiffs' characterization of Mr. Goodfriend's testimony. Mr. Goodfriend testified that, while
Locast does not make "assessments," covering the costs associated with the Locast service was an
important consideration in deciding on a recommended donation amount. *See* Pls.' Ex. 3
(Goodfriend Dep. Tr.) 167:1-168:6.

**REPLY TO RESPONSE TO PARAGRAPH 76:**  Defendants do not dispute Plaintiffs'

quotation of Mr. Goodfriend's testimony, except for their assertion that Mr. Goodfriend testified

that "covering the costs associated with the Locast service was an important consideration in

deciding on a recommended donation amount."  Defendants' Response "improperly interject[s]

arguments and/or immaterial facts in response to facts asserted" by Plaintiffs, and is entitled to no

weight.  *See Baity*, 51 F. Supp. 3d at 418.  Plaintiffs dispute Defendants' characterization of

"important" and regardless, Mr. Goodfriend did not testify that covering the costs was an

"important consideration."  Instead, Mr. Goodfriend testified that:

> we were not trying to come up with an assessment to cover cost.  We were trying
> to come up with a recommended donation to cover costs.  And, therefore, while we
> did think about incremental cost as well as some cost, and we thought about how
> to allocate costs that the entire operation incurred on a per-user or per-donor basis,
> in general, we kept coming back to this is just a recommended donation amount.

Zweifach Decl., Ex. 3 (Goodfriend Dep.) at 168:3-12; *see also id.* at 167:1-168:6 (no mention of

covering the costs as being an "important consideration").

Plaintiffs also adopt herein their Reply to Defendants' unfounded assertion that "Locast is not

an entity, but a service provided by SFCNY" that is laid out in full in Plaintiffs' Reply to

Paragraph 7.

77.    Goodfriend set the monthly fee at $5 because it was a "small round number[]."
Ex. 3 (Goodfriend Dep. 167:13-168:12).

**RESPONSE: Disputed and immaterial.** Defendants dispute Plaintiffs' statement because
it mischaracterizes the nature of Mr. Goodfriend's testimony by failing to include the rest of the
sentence. Mr. Goodfriend testified that nonprofits commonly "look for a small round number . . .
***and then, of course, we asked, is this going to be sufficient to cover costs.***" Pls.' Ex. 3 (Goodfriend
Dep. Tr.) 167:6-17 (emphasis added). Defendants state that this second portion of the sentence
demonstrates that defraying operational costs was a key consideration for Locast in devising a
requested donation amount. Defendants further state that Paragraph 77 is immaterial because the
statement therein does not provide a basis for the Court to rule in favor of either party in connection
with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the
Copyright Act. *See Parks v. Lebhar-Friedman, Inc.*, No. CIVA 04-7133 DCP KNF, 2008 WL
3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not
provide any basis to rule in favor of either party for summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 77:** Defendants do not dispute Plaintiffs' quotation

of Mr. Goodfriend's testimony, except for their assertion that Mr. Goodfriend testified that

"defraying operational costs was a key consideration for Locast in devising a requested donation

amount."  Defendants' Response "improperly interject[s] arguments and/or immaterial facts in

response to facts asserted" by Plaintiffs, and is entitled to no weight.  *See Baity*, 51 F. Supp. 3d at

418.  Plaintiffs dispute Defendants' characterization of "key" and regardless, Mr. Goodfriend did

not testify that covering the costs was a "key consideration."  Instead, Mr. Goodfriend testified that:

> we were not trying to come up with an assessment to cover cost.  We were trying to come up with a recommended donation to cover costs.  And, therefore, while we did think about incremental cost as well as some cost, and we thought about how to allocate costs that the entire operation incurred on a per-user or per-donor basis, in general, we kept coming back to this is just a recommended donation amount.

Zweifach Decl., Ex. 3 (Goodfriend Dep.) at 168:3-12; *see also id.* at 167:6-17 (no mention of covering the costs as being an "key consideration").

Defendants also assert that the statement is "immaterial" because it "does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act."  But under Section 111(a)(5), secondary transmissions must be made "without charge to the recipients of the secondary transmission other than assessments necessary to defray the actual and reasonable costs of maintaining and operating the secondary transmission service."  17 U.S.C. § 111(a)(5).  Thus, this statement is material because it shows that Locast's charges are not assessments, which are community-based charges.

## A.     Locast's Revenue Exceeds Its Costs

78.     In 2020, Locast's total costs (including depreciation) were $2.436 million. Ex. 53 (SFCNY-000096399, at SFCNY-000096401-SFCNY-000096402).

**RESPONSE: Disputed in part, and immaterial.** Locast is not an entity, but a service provided by SFCNY. Am. Answer, ECF No. 88 ¶ 3. Defendants state that these costs represent what it cost to operate the Locast service in 2020, when the Locast service began operating in 16 markets and gradually expanded to 25 markets.  Goodfriend Opp. Decl. at ¶ 20. Defendants further state that the Locast service expects to continue to expand and costs are expected to increase commensurately.  *Id.*  Defendants state that Paragraph 78 is immaterial because the statement therein does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act. *See Parks v. Lebhar-Friedman, Inc.,* No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not

provide any basis to rule in favor of either party for summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 78:**  Defendants do not dispute that in 2020, Locast's total costs (including depreciation) were $2.436 million.  And the additional facts they provide through Mr. Goodfriend's declaration statements about Locast's future expansion costs not only fail to controvert Plaintiffs' statement but also are immaterial.  Defendants' Response "improperly interject[s] arguments and/or immaterial facts in response to facts asserted" by Plaintiffs, and is entitled to no weight.  *See Baity*, 51 F. Supp. 3d at 418.  Under Section 111(a)(5), secondary transmissions must be made "without charge to the recipients of the secondary transmission other than assessments necessary to defray the actual and reasonable costs of ***maintaining*** and ***operating*** the secondary transmission service."  17 U.S.C. § 111(a)(5) (emphasis added).  Thus, a nonprofit may impose assessments only to defray the costs of sustaining the transmission service itself—not to generate millions of dollars to fund nationwide expansion, as Mr. Goodfriend proposes.  Furthermore, Mr. Goodfriend's declaration does not state that costs will "increase commensurately," as Defendants claim in the third sentence of Defendants' Response; he only states that they "expect that our costs will increase with that expansion and as we further professionalize and improver operations."  Goodfriend Opp. Decl. at ¶ 20.  Mr. Goodfriend's declaration also merely repeats the proposition in the second sentence and the remainder of the proposition in the third sentence of Defendants' Response without citation to any admissible evidence.  Goodfriend Opp. Decl. at ¶ 20.  Thus, neither Mr. Goodfriend, in his declaration, nor Defendants provide any evidence to support their claims in the second and third sentences of Defendants' Response.

Plaintiffs adopt herein their Reply to Defendants' unfounded assertion that "Locast is not an entity, but a service provided by SFCNY" that is laid out in Plaintiffs' Reply to Paragraph 7.

Finally, Defendants assert that the statement is "immaterial" because it "does not provide

a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to

whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act."  But as

noted above, under Section 111(a)(5), secondary transmissions must be made "without charge to

the recipients of the secondary transmission other than assessments necessary to defray the actual

and reasonable costs of maintaining and operating the secondary transmission service."  17 U.S.C.

§ 111(a)(5).  This statement, together with the statements in Paragraphs 79-81, are material because

they collectively show that Locast's subscription charges are not "necessary to defray the actual

and reasonable costs of maintaining and operating the secondary transmission service," since

Locast's charges exceed its costs by millions of dollars.

79.     In 2020, Locast collected total revenue of $4.519 million, including $4.372 million from users and $147,161 from other sources. *Id.*

**RESPONSE: Disputed in part, and immaterial.** Locast is not an entity, but a service provided by SFCNY. Am. Answer, ECF No. 88 ¶ 3. Defendants state that Paragraph 79 is immaterial because the statement therein does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act. *See Parks v. Lebhar-Friedman, Inc.,* No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 79:**  Defendants do not dispute Plaintiffs' statement

in Paragraph 79:  In 2020, Locast collected total revenue of $4.519 million, including $4.372

million from users and $147,161 from other sources.  Instead, Defendants' only dispute is their

repeatedly manufactured dispute that "Locast is not an entity, but a service provided by SFCNY."

Plaintiffs adopt herein their Reply to Defendants' unfounded assertion that "Locast is not an entity,

but a service provided by SFCNY" that is laid out in full in Plaintiffs' Reply to Paragraph 7.

Defendants also assert that the statement is "immaterial" because it "does not provide a

basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to

whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act." But under

Section 111(a)(5), secondary transmissions must be made "without charge to the recipients of the

secondary transmission other than assessments necessary to defray the actual and reasonable costs

of maintaining and operating the secondary transmission service." 17 U.S.C. § 111(a)(5). This

statement, together with the statements in Paragraphs 78 and 80-81, are material because they

collectively show that Locast's subscription charges are not "necessary to defray the actual and

reasonable costs of maintaining and operating the secondary transmission service," since Locast's

charges exceed its costs by millions of dollars.

80.      For 2021, Locast forecasts costs of $3.074 million as compared to total revenue
of $15.622 million, including about $15.572 million from users and $50,000 from other sources.
Ex. 54 (SFCNY-000072122, at SFCNY-000072132). By 2024, Locast projects that, depending on
the number of new markets from which it captures broadcast signals, it will accumulate between
$236 million and $357 million in cash. Ex. 54 (SFCNY-000072122, at SFCNY-000072132,
SFCNY- 000072134, SFCNY-000072136).

**RESPONSE: Disputed as stated, and immaterial.** Locast is not an entity, but a service
provided by SFCNY. Am. Answer, ECF No. 88 ¶ 3. Revenue projections that were prepared for
and shared with Apollo Global Management have proven to be inaccurate. Goodfriend Opp. Decl.
at ¶ 15. And many of SFCNY's assumptions in its prior informal projections no longer hold true,
as they were drafted at a time when SFCNY was in danger of insolvency, and were intended to
demonstrate to potential lenders how SFCNY could pay back any loans. *Id.* Further answering,
SFCNY anticipates that its costs will increase based on, among other things, expansion into new
markets and improvements to the Locast service. *Id.* SFCNY also anticipates that net revenues will
decrease based on, among other things, expansion of the provision of the uninterrupted Locast
service to greater numbers of users without requests for donations. *Id.* SFCNY anticipates that it
will continue to expand and improve the Locast service and control revenue such that it will not
accumulate more revenue than is needed to maintain the Locast service, including retaining only a
reasonable balance as necessary to account for contingencies necessary to maintain and operate the
Locast service. *Id.* at ¶¶ 16-17. Locast disputes that it actually projects that it will accumulate
between $236 million and $357 million in cash at any time in the future. *Id.* at ¶ 15. Defendants
state that Paragraph 80 is immaterial because the statement therein does not provide a basis for
the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's
Locast service falls within Section 111(a)(5) of the Copyright Act. *See Parks v. Lebhar-Friedman,
Inc.,* No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1
statements are "immaterial" if they "do not provide any basis to rule in favor of either party for

summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 80:**  Defendants do not dispute that Exhibit 54 shows the listed forecasts in Paragraph 80.  Instead, Defendants' Response, which "adds argumentative and . . . lengthy narrative . . . the object of which is to 'spin' the impact of the admissions [Defendants have] been compelled to make," is not appropriate, and is entitled to no weight.  *See Goldstick*, 2002 WL 1906029, at *1.  Defendants first argue that "[r]evenue projections that were prepared and shared with Apollo Global Management have proven to be inaccurate," and cite to Mr. Goodfriend's declaration, which merely repeats the proposition in the second sentence of Defendants' Response without citation to any admissible evidence.  Goodfriend Opp. Decl. at ¶ 15.  Thus, neither Mr. Goodfriend, in his declaration, nor Defendants provide any evidence to support their claims in the second sentence of Defendants' Response.  And in fact, SFCNY's revenue projections have been inaccurate because SFCNY has **exceeded** the projections—for example, SFCNY's 2020 Profit and Loss Forecast by Month as of January 28, 2020 projected that Locast would have "Total Income" of $4,287,691.23 and "Net Operating Income" of $1,376,154.17.  Zweifach Decl., Ex. 90 ( KELLY_0000358) at KELLY_0000359.  But as SFCNY's Management Report for the Period ended December 31, 2020 (and prepared on January 19, 2021) showed, actual "Total Income" was $4,519,339.13, and "Net Operating Income" was $2,161,541.21.  Zweifach Decl., Ex. 53 (SFCNY-000096399) at SFCNY-000096401-02.

As to the third sentence of Defendants' Response, Mr. Goodfriend's declaration does not state that "many of SFCNY's assumptions in its prior informal projections no longer hold true." Goodfriend Opp. Decl. at ¶ 15.  Instead, Mr. Goodfriend stated that "[i]n 2020, at least one of these informal projections showed how, under certain assumptions, it would be theoretically possible for SFCNY's revenue to reach between $236 million and $357 million."  *Id.*  Furthermore, Mr.

Goodfriend's declaration merely repeats the remainder of the proposition in the third sentence of Defendants' Response without citation to any admissible evidence. *Id.* Thus, neither Mr. Goodfriend, in his declaration, nor Defendants provide any evidence to support their claims in the third sentence of Defendants' Response.

As to the fourth through sixth sentences of Defendants' Response, Mr. Goodfriend's declaration also merely repeats the propositions in those sentences without citation to any admissible evidence. Goodfriend Opp. Decl. at ¶¶ 15-17. The assertions are also all based on "anticipations" and things that "may" happen, without any documents (such as the forecasts from SFCNY that Plaintiffs have cited) to verify these unsubstantiated claims. Thus, neither Mr. Goodfriend, in his declaration, nor Defendants provide any evidence to support their claims in the third sentence of Defendants' Response.

In the seventh sentence of Defendants' Response, Defendants assert that "Locast disputes that it actually projects that it will accumulate between $236 million and $357 million in cash at any time in the future," and cite to paragraph 15 of Mr. Goodfriend's declaration. But what Mr. Goodfriend actually claims is that the projection "showed how, under certain assumptions, it would be theoretically possible for SFCNY's revenue to reach between $236 million and $357 million." Goodfriend Opp. Decl. at ¶ 15. If Mr. Goodfriend wants to testify that the projections that he and his closest collaborators, Mr. Kelly and Mr. Landers, created and used to try to raise money were inflated or false, that is up to him, but that does not create a dispute now about the content of the projections.

Plaintiffs also adopt herein their Reply to Defendants' unfounded assertion that "Locast is not an entity, but a service provided by SFCNY" that is laid out in full in Plaintiffs' Reply to Paragraph 7.

Finally, Defendants also assert that the statement is "immaterial" because it "does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act." But under Section 111(a)(5), secondary transmissions must be made "without charge to the recipients of the secondary transmission other than assessments necessary to defray the actual and reasonable costs of maintaining and operating the secondary transmission service." 17 U.S.C. § 111(a)(5). This statement, together with the statements in Paragraphs 78-79 and 81, are material because they collectively show that Locast's subscription charges are not "necessary to defray the actual and reasonable costs of maintaining and operating the secondary transmission service," since Locast's charges exceed its costs by millions of dollars.

81.      In 2019, in a presentation to Apollo Global Management, LLC, Locast stated that it expected to accumulate nearly $19.433 million in cash by 2023. Ex. 55 (Sobel Ex. 16, at AGM000000938); Ex. 44 (Sobel Dep. 111:17-112:12).

**RESPONSE: Disputed in part, and immaterial.** Locast is not an entity, but a service provided by SFCNY. Am. Answer, ECF No. 88 ¶ 3. Defendants do not dispute Plaintiffs' Exhibits 55 and 44 contains the figures quoted in Paragraph 81, but dispute that SFCNY stated that it "expected" to accumulate nearly $19.433 in cash by 2023. *See* Goodfriend Opp. Decl. at ¶ 15. Further answering, Defendants state that Plaintiffs' Exhibit 55 is a Confidential Information Memorandum that was prepared in conjunction with an attempt to secure a loan and was intended to illustrate that, under certain assumptions, SFCNY would be able to generate revenues sufficient to pay back the loan being sought. *Id.* It was not a projection of intended cash accumulation, but rather contained financing plans created to try "to raise money" and "explain [the Locast] business." Opp. Ex. 10 (Sobel Dep. Tr.) 103:12-13, 104:4-5. Thus, defendants dispute Plaintiffs' omission of this context demonstrating that the document was prepared to show those who may be willing to contribute that the Locast service was viable investment. Defendants further state that Paragraph 81 is immaterial because the statement therein does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act. *See Parks v. Lebhar-Friedman, Inc.*, No. CIVA 04-7133 DCP KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008) (Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed").

**REPLY TO RESPONSE TO PARAGRAPH 81:**    Defendants do not dispute that the

presentation in Exhibit 55 states that the "Cumulative Cash Position" for 2023 would be $19.433 million. Instead, Defendants' Response, which "adds argumentative and . . . lengthy narrative . . . the object of which is to 'spin' the impact of the admissions [Defendants have] been compelled to make," is not appropriate, and is entitled to no weight. *See Goldstick*, 2002 WL 1906029, at *1. Defendants dispute that "SFCNY stated that it 'expected' to accumulate nearly $19.433 [million] in cash by 2023." In support of this assertion, Defendants cite to paragraph 15 of Mr. Goodfriend's declaration, but that paragraph does not claim anything regarding whether or not SFCNY expected to accumulate $19.433 million in cash by 2023.

Furthermore, Mr. Sobel testified that Mr. Goodfriend sent the presentation "in response to [Mr. Sobel's] request for due diligence information" because Mr. Goodfriend "was trying to raise money, and he wanted to explain his business to [Apollo]." Zweifach Decl., Ex. 98 (Sobel Dep.) at 103:16-104:5. As Mr. Sobel explained, the "purpose" of the document was "[t]o educate [Apollo] on how the business is doing, how he thinks it's going to do, and address any . . . diligence questions [Apollo] may have," with those diligence questions being "the types of questions [Apollo] ask[s] to learn more about a company before [Apollo] invest[s] in it." *Id.* at 104:12-105:1. Mr. Sobel, who reviewed this document, "analyze[d] it to attempt to determine the value of Locast" and "relied on it as being accurate information." *Id.* at 105:3-16.

Plaintiffs also adopt herein their Reply to Defendants' unfounded assertion that "Locast is not an entity, but a service provided by SFCNY" that is laid out in full in Plaintiffs' Reply to Paragraph 7.

Finally, Defendants assert that the statement is "immaterial" because it "does not provide a basis for the Court to rule in favor of either party in connection with Plaintiffs' Motion as to whether SFCNY's Locast service falls within Section 111(a)(5) of the Copyright Act." But under

Section 111(a)(5), secondary transmissions must be made "without charge to the recipients of the secondary transmission other than assessments necessary to defray the actual and reasonable costs of maintaining and operating the secondary transmission service." 17 U.S.C. § 111(a)(5). This statement, together with the statements in Paragraphs 78-80, are material because they collectively show that Locast's subscription charges are not "necessary to defray the actual and reasonable costs of maintaining and operating the secondary transmission service," since Locast's charges exceed its costs by millions of dollars.

Dated: June 17, 2021

<div style="margin-left: 40%">

/s/ Gerson A. Zweifach
Gerson A. Zweifach
Thomas G. Hentoff (*pro hac vice*)
Joseph M. Terry (*pro hac vice*)
Tian Huang (*pro hac vice*)
Jean Ralph Fleurmont (*pro hac vice*)
Angelica H. Nguyen

WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005

650 Fifth Avenue
Suite 1500
New York, NY 10019

Tel: (202) 434-5000
Fax: (202) 434-5029
gzweifach@wc.com
thentoff@wc.com
jterry@wc.com
thuang@wc.com
jfleurmont@wc.com
anguyen@wc.com

*Attorneys for All Plaintiffs*

Paul D. Clement (*pro hac vice*)
Erin E. Murphy (*pro hac vice*)

</div>

KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004

Tel: (202) 389-5000
Fax: (202) 389-5200
paul.clement@kirkland.com
erin.murphy@kirkland.com

*Attorneys for Plaintiffs Fox Television Stations, LLC and Fox Broadcasting Company, LLC*