

August 6, 2021

Via ECF

The Honorable Louis L. Stanton
United States District Judge
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007-1312

**Orrick, Herrington & Sutcliffe LLP**
222 Berkeley Street
Suite 2000
Boston, MA 02116-3740

+1 617 880 1800
**orrick.com**

**R. David Hosp**

**E** dhosp@orrick.com
**D** +1 617 880 1886
**F** +1 617 880 1801

**Re:    American Broadcasting Companies, Inc. et al. v. David R. Goodfriend et al., No. 19-cv-7136-LLS**

Dear Judge Stanton:

We represent defendants Sports Fans Coalition NY, Inc. ("SFCNY") and David R. Goodfriend (collectively "Defendants") in the above referenced matter, and we write to request a pre-motion status conference to address three issues that have arisen as the parties are preparing for trial, potentially in November of this year. Defendants have conferred with Plaintiffs and Plaintiffs have indicated they do not believe a conference is necessary at this time.

First, Defendants wish to seek leave to take *de bene esse* deposition testimony of five Locast users who will testify as to their own experience with attempts to receive OTA broadcast signals, the public interest served by the availability of SFCNY's Locast service, and their access to the service, both as donors receiving uninterrupted service, and as non-donors receiving service interrupted by periodic requests for donations. Four of these witnesses were disclosed prior to the close of discovery,[1] and Defendants offered to make them available to Plaintiffs for the purposes of discovery depositions, but Plaintiffs declined to take such depositions. Defendants now seek to take *de bene esse* depositions to preserve the witnesses' testimony in light of the uncertainties created by the Coronavirus pandemic. It is Defendants' hope that some (if not all) of the witnesses in question will be able to appear in person to testify, assuming an in-person trial is held. However, out of an abundance of caution based on the uncertainties in scheduling and process presented by the pandemic, as well as potential health risks to the witnesses depending on the status of the pandemic at the time of trial, Defendants seek leave to take recorded video depositions in the next month so

---

[1] The idea of such individuals providing testimony was discussed on at least one meet and confer earlier in the discovery period; however the individuals' identities were officially disclosed on the last day of the discovery period with the express proviso that they could be deposed out of time. One additional individual has since been identified; however, given that Plaintiffs have opted not to take any discovery relating to the other four users, there is no prejudice in Defendants identifying the additional witness at this time. Plaintiffs will likely argue that the issue of whether Locast users can testify is a matter best addressed in motions *in limine*, but this is only because they intend to argue that they have been "prejudiced" by not being able to take depositions of these witnesses. Defendants have offered depositions and by addressing this issue now, instead of directly before trial, it ameliorates any prejudice.

1



that testimony can be presented in video form if necessary.  It is our anticipation that the depositions should take significantly less than two hours each (and may be concluded in less than one hour) including any cross-examination and redirects, and we have confirmed with the witnesses that they are willing to sit for the depositions in early September and have the technology available to participate by Zoom for the convenience of the witnesses, the parties, and the court reporters.

Second, Defendants seek guidance regarding the appropriateness and waiver implications of introducing a memorandum and testimony from Beth Kingsley, SFCNY's nonprofit attorney advisor regarding the deductibility of $5 monthly donations made by Locast users.  As the Court is aware, Plaintiffs have argued that the $5 monthly payments are not donations, but are "fees" charged by Locast for access to uninterrupted service.  During the course of expert discovery, Defendants produced an unredacted version of an email from Mr. Goodfriend to his auditor explaining the basis for his belief that the $5 payments were, in fact, donations, with a reference to a legal assessment (provided by Ms. Kingsley).  The advice in question, as well as the related references to the advice in email correspondence, was originally withheld by litigation counsel on the assumption of privilege in light of the fact that, on its face, the information was from SFCNY's attorney to Mr. Goodfriend and contained legal analysis that appeared to be privileged.  When Plaintiffs later questioned the assertion of privilege, and demanded that the advice given be turned over in unredacted form, litigation counsel conducted a further investigation and determined that a memorandum had been created for the purpose of sharing the information contained within it with any interested third-party donors to confirm that the $5 monthly donations were, in accordance with IRS regulations, appropriately treated as tax deductible charitable contributions, rather than *quid pro quo* payments.  Because the memorandum was prepared for the benefit of, and to be shared with, third parties, the memorandum and certain related information previously redacted was produced in unredacted form in accordance with Plaintiffs' agreement that the production would not work a waiver of attorney client privilege beyond the topics addressed in the memorandum.  In producing the memorandum, Defendants also agreed (on multiple occasions) to confer regarding any appropriate remedial steps that should be taken to address any potential prejudice to plaintiffs, including, potentially, depositions of Mr. Goodfriend and Ms. Kingsley limited to the topic of advice contained in the memorandum.  Plaintiffs declined to discuss such remedial measures.[2]

Notwithstanding the facts that (1) Defendants produced the material in question ***in response to Plaintiffs' demand***, (2) Plaintiffs previously agreed that the production of the memorandum and related materials would not work a waiver of attorney client privilege beyond the topics covered in the memorandum itself, and (3) Defendants offered reasonable additional discovery on the topics covered in the memorandum, Plaintiffs have now taken the position that no witness for the Defendants may refer to the memorandum in question—even if raised by Plaintiffs on cross-examination—or all privilege related to all communications between Defendants and their attorneys (including trial counsel) should be deemed waived.  The position is absurd, of course, but it does raise the issue of what testimony may be given regarding the memorandum and its contents, and the

---

[2] Plaintiffs argue that this issue should be addressed in motions *in limine*.  Again, this appears to be a strategic approach so that they can claim that they have been prejudiced by not being able to take discovery.  By addressing this issue now, Defendants seek to make clear that any prejudice can be remedied between now and the start of trial.



scope of any resulting waiver. Defendants seek clarification on this issue.

Third, Defendants ask for a status conference to seek guidance from the Court regarding a core dispute relating to the law that will govern this case should it go to trial. The dispute concerns the legal meaning of the phrase, "nonprofit organization, with any purpose of direct or indirect commercial advantage," and has been briefed extensively in several motions filed by both parties, including both parties' summary judgment motions and numerous *Daubert* motions. In short, Defendants assert that the question of whether a nonprofit organization has any purpose of direct or indirect commercial advantage is governed by an established body of nonprofit law. *See, e.g.* Mem. of Law in Support of Defs.' Mot. for Summ. J. 23-27, ECF No. 124; Defs.' Mem. of Law in Opp'n to Pls.' Mot. for Partial Summ. J. 20-25, ECF No. 139; Defs.' Reply in Support of Mot. for Summ. J. 14-18, ECF No.178; Mem. of Law in Support of Defs.' Mot. to Exclude Pls.' Expert Witness Gregory J. Nachtwey 9-10, ECF No. 222; Defs.' Mem. of Law in Opp'n to Pls.' Mot. to Exclude the Ops. and Test. Of Defs.' Expert Thomas J. Raffa, CPA 6-7, ECF No. 264; Reply in Support of Defs.' Mot. to Exclude Pls.' Expert Witness Jeffrey A. Eisenach, Ph.D. 4-8, ECF No. 287. Because every purpose a 501(c)(3) charitable organization has must fall "exclusively" into one of several enumerated categories (none of which include any purpose of direct or indirect commercial advantage), there is an established body of law that has dictated parameters of what constitutes any commercial purpose. *See, e.g., Debs Mem'l Radio Fund v. Comm'r*, 148 F.2d 948, 951-952 (2d Cir. 1945); *Bohemian Gymnastic Ass'n Sokol of City of New York v. Higgins*, 147 F.2d 774, 776 (2d Cir. 1945); *see also Trinidad v. Sagrada Orden de Predicadores de la Privincia del Santisimo Rosario de Filipinas*, 263 U.S. 578, 580-581 (1924). Under that body of case law, the fact that a 501(c)(3) organization has excess revenue (or "profit") is not relevant to whether it has an impermissible commercial purpose if the revenues in question are used for the sole purpose of advancing the organization's charitable mission. *See, e.g.*, *Bohemian Gymnastic Ass'n*, 147 F.2d at 776 ("In the case at bar the ultimate object to which the corporate income is devoted is to promote education. To that end all funds of the corporation, including membership dues, as well as the profits derived from the bar and restaurant and the receipts obtained from renting out the bowling alley, gymnasium or other parts of the building, were destined."). Similarly, the fact that an organization's activities in some way "benefit" unrelated third parties as a byproduct of accomplishing its mission is not relevant to the question of whether it has a purpose of commercial benefit (whether direct or indirect). *See Goldsboro Art League, Inc. v. Comm'r of Internal Revenue*, 75 T.C. 337, 345 (1980). Under this standard, most of what Plaintiffs rely on to argue that SFCNY has a purpose of direct or indirect commercial advantage is irrelevant. Plaintiffs, by contrast, argue that any commercial activity or third-party benefit is relevant. *See, e.g.*, Pls.' Mot. for Partial Summ. J., ECF No. 117. As the parties prepare their pre-trial submissions, it would be extremely helpful to have some guidance from the Court in order to make sure that the evidentiary submission addresses the appropriate legal standard.

Respectfully submitted,
*/s/ R. David Hosp*
R. David Hosp

CC: All counsel of record via ECF