ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/31/21

AMERICAN BROADCASTING COMPANIES,
INC., DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM
CORPORATION, CBS BROADCASTING INC.,
CBS STUDIOS INC., FOX TELEVISION
STATIONS, LLC, FOX BROADCASTING
COMPANY, LLC, NBCUNIVERSAL MEDIA,
LLC, UNIVERSAL TELEVISION LLC, AND
OPEN 4 BUSINESS PRODUCTIONS, LLC,

Plaintiffs and Counterclaim
Defendants,

        - against -

DAVID R. GOODFRIEND and SPORTS FANS
COALITION NY, INC.,

Defendants and Counterclaim
Plaintiffs.

19 Civ. 7136 (LLS)

OPINION & ORDER

        Plaintiffs seek partial summary judgment dismissing

defendants' affirmative defense that defendants' operation of

the Locast internet service is exempt from copyright

infringement liability under 17 U.S.C. § 111(a)(5). See Dkt. No.

117. Reciprocally, defendants move for summary judgment on the

same issue, seeking a contrary finding that Section 111(a)(5)

does grant them a statutory exemption from the copyright law.

See Dkt. No. 123.

        For the reasons set forth below, plaintiffs' motion is

granted, and defendants' is denied.

## BACKGROUND

        Defendant non-profit organization Sports Fans Coalition NY,

Inc. ("SFCNY") operates the Locast service, which captures over-

-1-

the-air ("OTA") broadcast signals and retransmits them over the internet, enabling viewers to stream live television on their preferred internet-connected viewing device. The signals include copyrighted transmissions from plaintiffs' broadcast stations. Locast has not paid for a license or obtained plaintiff's consent to retransmit those programs.

Defendant Goodfriend founded SFCNY in 2017.[1] According to Mr. Goodfriend, the organization was founded and Locast was created in order to provide Americans free access to local, free television which, for technical and geographic reasons, they are unable to access without commercial Pay-TV services (provided by multichannel video programming distributors, or "MVPDS") or other subscription-based internet services such as YouTube TV and Hulu+ Live TV.

Locast's retransmissions are available online to any registered user in the designated geographic area, even those who can access the original OTA signal using OTA television antennas. Locast recipients have free access to the full repertory of news and entertainment channels; but non-paying users' programming is interrupted after every fifteen minutes of watching a single channel with a fifteen-second video requesting donations, and viewers then lose time re-acquiring the program.

---

[1] Mr. Goodfriend moves separately for summary judgment on the basis that he is statutorily immune from liability. See Dk. No. 109. A more detailed background of SFCNY's founding and Mr. Goodfriend's role at the organization will be contained in an Order addressing that motion.

To avoid that interruption in service, users can pay $5 a month for "preferred" (i.e., uninterrupted) access to the service, or can request that the service stop displaying the donation requests based on their financial circumstances. Users who choose to pay receive the uninterrupted service for time correlating to the amount of the payment. For example, if the user pays the minimum $5 amount, she receives uninterrupted service for the entire month. If the user pays less, the time period during which she receives uninterrupted service within the month is decreased on a pro-rata basis (e.g., $1 paid provides uninterrupted service for 20% of the month).

The obvious economic fact is that these "donations" are really a scale of fees for uninterrupted service, and it works. At present, Locast is almost fully funded by payments from users.

Besides those payments from Locast recipients, SFCNY also generates income through donations from MVPDs, such as AT&T, Promotion and Advancement of Local Opportunities ("PALO") and Liberty Cable vision of Puerto Rico LLC. Some MVPDS integrate the Locast application in their own smart-TV platforms, and in the event of a channel blackout (which may result from a breakdown in retransmission consent negotiations between an MVPD and broadcast owner), those MVPDS can direct their customers to the Locast app so that there is no disruption in their live TV service.

As of May 2021, SFCNY and Locast capture and retransmit OTA signals over the Internet that are receivable in 32 designated market areas and are available to viewers all day.

Plaintiffs bring this suit to bar defendants from operating the Locast service and for statutory damages for their infringed works.

In December of 2019, the parties agreed to limit the scope of the litigation to the issue of applicability of the Section 111(a)(5) exemption, which is the sole question before the Court on these two motions.

## STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute is genuine if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Baldwin v. EMI Feist Catalog, Inc., 805 F.3d 18, 25 (2d Cir. 2015), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

## DISCUSSION

Section 111(a)(5) of the Copyright Act sets forth certain limitations on a copyright holder's exclusive rights. Subsection (a)(5) states:

-4-

(a) Certain Secondary Transmissions Exempted. —The secondary
transmission of a performance or display of a work
embodied in a primary transmission is not an infringement
of copyright if—

. . .

(5) the secondary transmission is not made by a cable
system but is made by a governmental body, or other
nonprofit organization, without any purpose of direct or
indirect commercial advantage, and without charge to the
recipients of the secondary transmission other than
assessments necessary to defray the actual and reasonable
costs of maintaining and operating the secondary
transmission service.

17 U.S.C. § 111(a)(5)

Plaintiffs set forth several arguments that defendants'
Locast service does not come within the statutory exemption. For
the most part, they present such conflicting characterizations
of the facts that they are more suited to trial than a summary
disposition.

But summary judgment is appropriate with respect to the
requirement that defendants' service is conducted ". . . without
charge to the recipients of the secondary transmission other
than assessments necessary to defray the actual and reasonable
costs of maintaining and operating the secondary transmission
service."

Based on the undisputed facts, it is clear that the Locast
service is not offered without charges other than those
"necessary to defray the actual and reasonable costs of
maintaining and operating" its service.

The payments defendants elicit from users are charges

-5-

assessed on users to avoid constant service interruptions, regardless of whether defendants euphemistically call them publicly "recommended donations". Locast users pay the minimum $5 monthly fee in exchange for month-long, uninterrupted service. It is not merely a recurring gift to a charitable cause. It is of no consequence that a number of users employ the service without paying. SFCNY still solicits, and receives, substantial amounts in charges from recipients for its uninterrupted service.

In 2020, Locast's total costs (including depreciation) were $2.436 million. Pls. R. 56.1 Statement ("SOMF") ¶ 78. According to defendants, those costs "represent what it costs to operate the Locast service in 2020, when the Locast service began operating in 16 markets and gradually expanded to 25 markets." Dfs. Counter SOMF ¶ 78. Locast's total revenue in 2020 was $4.519 million, comprised of $4.372 million from users and $147,161 from other sources. Pls. SOMF ¶ 79. On those undisputed facts, in 2020 Locast made far more money from user charges than was necessary to defray its costs of maintaining and operating its service.

Defendants argue that Locast's funding qualifies for the statutory exemption because payments from users are re-invested in the organization to cover costs of "maintaining an operating an expanding system", see Dfs. Opp. Br. at 33, and the costs of expansion are part of the operation. See Dfs. Br. at 36.

-6-

Defendants aver that contributions from users are essential to the expansion of the Locast service. See Dfs. SOMF ¶¶ 149-150. They argue that disallowing use of the assessments for that purpose would prevent expansion, which they say was not intended by Congress when granting the exemptions. See Dfs. Opp. Br. at 33.

But under the statute, income made from charges to recipients can only be used to defray the actual and reasonable costs of maintaining and operating the service, not of expanding it into new markets. The argument that Section 111(a)(5) should not "prevent" a natural process of expansion misconceives the statutory structure. Retransmissions (i.e., secondary performances of copyrighted matter) are already penalized ("prevented") by the Copyright Law in its main section. See 17 U.S.C. § 501 ("Anyone who violates any of the exclusive rights of the copyright owner . . . is an infringer of the copyright or right of the author, as the case may be."). Nothing in Section 111 specifies that an expansion of the number of infringing transmissions is exempt from that law, and it is not for a court to infer that Congress really meant to allow them. It would have been simple for Congress to add one word to paragraph (5) to make it read ". . . costs of maintaining, *expanding*, and operating the secondary transmission service." But expansion is nowhere mentioned, and it is therefore excluded from the short, tightly-crafted grant of exemptions.

Since portions of its user payments fund Locast's expansion, its charges exceed those "necessary to defray the actual and reasonable costs of maintaining and operating the secondary transmission service", which is the only exemption granted in Section 111(a)(5).

Accordingly, defendants' affirmative defense is stricken.

## CONCLUSION

Plaintiffs' motion for partial summary judgment is granted. Defendants' motion for summary judgment is denied.

So Ordered.

Dated:   New York, New York
         August 31, 2021

                                   _Louis L. Stanton_
                                   LOUIS L. STANTON
                                   U.S.D.J.

-8-