ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
╔══════════════════════════════════╗
║ USDC SDNY                         ║
║ DOCUMENT                          ║
║ ELECTRONICALLY FILED              ║
║ DOC #:_____             ║
║ DATE FILED:  9/1/21               ║
╚══════════════════════════════════╝
```

AMERICAN BROADCASTING COMPANIES,
INC., DISNEY ENTERPRISES, INC.,
TWENTIETH CENTURY FOX FILM
CORPORATION, CBS BROADCASTING INC.,
CBS STUDIOS INC., FOX TELEVISION
STATIONS, LLC, FOX BROADCASTING
COMPANY, LLC, NBCUNIVERSAL MEDIA,
LLC, UNIVERSAL TELEVISION LLC, AND
OPEN 4 BUSINESS PRODUCTIONS, LLC,

Plaintiffs and Counterclaim
Defendants,

- against -

DAVID R. GOODFRIEND and SPORTS FANS
COALITION NY, INC.,

Defendants and Counterclaim
Plaintiffs.

19 Civ. 7136 (LLS)

OPINION & ORDER

Defendant David R. Goodfriend moves for summary judgment based on a finding of statutory immunity from liability and dismissal of all claims pursuant to the federal Volunteer Protection Act ("VPA"), 42 U.S.C. § 14501 et seq., and the New York Not-For-Profit Corporation law § 720-a. Plaintiffs oppose defendant Goodfriend's motion, arguing that the statutes do not provide immunity from liability where the claims against Mr. Goodfriend only seek injunctive relief or, for the purposes of the 720-a claim, are barred by the Supremacy Clause. Plaintiffs also argue that even if statutory immunity were available in this case, Mr. Goodfriend cannot meet his burden of proving that his position and activities at co-defendant non-profit corporation Sports Fans Coalition New York, Inc. ("SFCNY")

-1-

satisfy the statutory requirements.

While the Court finds that the VPA defense may be raised in this case, dismissal is nonetheless inappropriate at this stage.

**BACKGROUND**

In 2017, defendant David R. Goodfriend founded the 501(c)(3) nonprofit corporation SFCNY, the named co-defendant in this case, whose over—the-air broadcast retransmission service, Locast, is the subject of the present copyright infringement dispute.

Before founding SFCNY, Mr. Goodfriend worked in various government roles. Df. SOMF ¶¶ 4-6. After leaving government service, he spent seven years at DISH Network where he worked in television and multichannel video programming distributor ("MVPD") regulation. Id. ¶ 7. From 2006-2009, Mr. Goodfriend served as the Vice President of Law and Public Policy at DISH. Id. ¶ 9. Following his employment at DISH, Mr. Goodfriend joined Emmer Consulting, where he represents various companies and organizations involved in telecommunications, id. ¶ 11, and in 2009, he founded Sports Fans Coalition ("SFC"), a nonprofit organization focused on the rights of sports fans. Id. ¶ 12.

Since founding SFCNY in 2017, Mr. Goodfriend has served as the Chairman, President, and Treasurer of SFCNY, and currently serves as its Chairman. Id. ¶ 28. He is also a member of the corporation's Board of Directors. Id. ¶ 29.

Plaintiffs' primary suit is against Mr. Goodfriend's

-2-

organization SFCNY for its operation of the Locast service,

which they argue infringes their copyrights by broadcasting

plaintiffs' television programming over the internet without a

license. Plaintiffs also bring their infringement claim directly

against Mr. Goodfriend for his role in the allegedly infringing

activity carried out by the organization.

Whether Mr. Goodfriend can be sued in his individual

capacity is the issue before the Court in this motion.

In December of 2019, the parties entered a case-narrowing

Agreement limiting the scope of the litigation and withdrawing

"any claims for monetary remedies whatsoever (e.g., legal,

equitable, statutory, direct, indirect, derivative, or

otherwise" against Mr. Goodfriend, leaving him subject only to a

claim for injunctive relief. See Terry Decl. Ex. 2 at 3. The

Agreement also provided that if Mr. Goodfriend is dismissed from

the case, both parties reserve the right to argue to what degree

Mr. Goodfriend can still be considered for purposes of

addressing SFCNY's liability and the applicability of the

Section 111(a)(5) exemption and how he may be included in any

fashioning of declaratory or injunctive relief. See id.

Mr. Goodfriend now moves for summary judgment on the basis

that he is statutorily immune under both federal and state law

from liability for harm caused by SFCNY, arguing that he was a

volunteer acting within the scope of his responsibilities at the

corporation, and his conduct was not willful, reckless, grossly

-3-

negligent or consciously, flagrantly indifferent to plaintiffs'
rights.

Plaintiffs argue that statutory immunity is not available
in this case where only injunctive relief is sought, and even if
it were, Mr. Goodfriend has not met his burden of proving that
his position and activities at SFCNY satisfy the statutory
requirements.

**STANDARD**

"The court shall grant summary judgment if the movant shows
that there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law." Fed. R. Civ.
P. 56(a). "A fact is material if it 'might affect the outcome of
the suit under the governing law,' and a dispute is genuine if
'the evidence is such that a reasonable jury could return a
verdict for the nonmoving party.'" Baldwin v. EMI Feist Catalog,
Inc., 805 F.3d 18, 25 (2d Cir. 2015), quoting Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510,
91 L.Ed.2d 202 (1986).

**DISCUSSION**

1) Applicability of the VPA and Section 720-a

The Volunteer Protection Act and Section 720-a of New
York's Not-For-Profit Corporation Law provide liability
protection for volunteers who satisfy the statutory requirements
listed below.

The Volunteer Protection Act states:

-4-

[N]o volunteer of a nonprofit organization or governmental entity shall be liable for harm caused by an act or omission of the volunteer on behalf of the organization or entity if—

(1)   the volunteer was acting within the scope of the volunteer's responsibilities in the nonprofit organization or governmental entity at the time of the act or omission;

(2)   if appropriate or required, the volunteer was properly licensed, certified, or authorized by the appropriate authorities for the activities or practice in the State in which the harm occurred, where the activities were or practice was undertaken within the scope of the volunteer's responsibilities in the nonprofit organization or governmental entity;

(3)   (3) the harm was not caused by willful or criminal misconduct, gross negligence, reckless misconduct, or a conscious, flagrant indifference to the rights or safety of the individual harmed by the volunteer; . . .

42 U.S.C. § 14503.   Section 720-a similarly states:

[N]o person serving without compensation as a director, officer or trustee of a corporation, association, organization or trust described in section 501 (c)(3) of the United States internal revenue code shall be liable to any person other than such corporation, association, organization or trust based solely on his or her conduct in the execution of such office unless the conduct of such director, officer or trustee with respect to the person asserting liability constituted gross negligence or was intended to cause the resulting harm to the person asserting such liability.

NPC § 720-a.

First, plaintiffs urge the Court to deny Mr. Goodfriend's motion on the basis that he cannot be protected under the VPA because the statute does not apply to claims which seek only injunctive relief. Pl. Opp. Br. at 3-6. Plaintiffs cite two cases to support their argument, neither of which is binding or persuasive here. See Institute of Cetacean Research v. Sea Shepherd Conservation Society, 774 F.3d 935, 956-57 (9th Cir.

2014) (holding that "the VPA does not affect the power of federal courts to impose civil fines to redress contempt" and reasoning that the purpose of the Act was to "curb lawsuits against volunteers, not curb courts' contempt power."); see also Episcopal Church in Diocese of Connecticut v. Gauss, 2010 WL 1497141 at * 14 (Conn. Super. Ct. Mar. 15, 2010) (The Superior Court of Connecticut stating, without any reasoning, that the VPA is "inapplicable to the instant action in which plaintiffs seek declaratory and injunctive relief.").

The Court finds that the VPA immunity is available to shield volunteers from liability in actions seeking solely injunctive relief, in accord with its plain meaning and the purpose behind its enactment.

Unlike other federal statutes, the VPA does not define or restrict "liability" to "liability" for certain remedies. Compare Health Care Quality Improvement Act, 42 U.S.C. § 11111 (1986) (providing that "[i]f a professional review action . . . of a professional review body meets all the standards specified," the professional review body and other specified individuals "shall not be liable in damages under any law of the United States or of any State (or political subdivision thereof) with respect to the action."); Liability Risk Retention Act, 15 U.S.C. § 3901(a)(2) (1981) (defining "liability" as "legal liability for damages (including costs of defense, legal costs and fees, and other claims expenses) because of injuries to

-6-

other persons, damage to their property, or other damage or
loss").

A determination of liability, i.e., whether one is
obligated according to law or equity, is separate from the
subsequent imposition of monetary or equitable relief. The VPA
operates to shield volunteers from that initial determination,
regardless of the ensuing determination of the appropriate
relief.

This interpretation is in line with the VPA's statutory
purpose and the history of its enactment, which intended to
shield eligible volunteers from lawsuits and their accompanying
burdens (hiring an attorney, going to court, paying court fees,
dedicating time to litigation), not merely from responsibility
for monetary damages. See H.R. Rep. No. 105-101, pt. 1, at p. 5
(1997)("[R]ather than thanking these volunteers, our current
legal system allows them to be dragged into court and subjected
to needless and unfair lawsuits."); see also 143 Cong. Rec.
H3097 ("The problem, Mr. Speaker, is not that volunteers are
having to pay large judgments, that has not occurred in our
legal system, but what has occurred is that volunteers have
routinely been named as defendants in lawsuits and have had to
hire an attorney, go to court, and attend to all the costs and
time obligations that that involves.") (statement of Rep.
Inglis).

Section 720-a has been interpreted by New York State courts

*not* to apply to claims for injunctive relief. See Kamchi v. Weissman, 1 N.Y.S.3d 169, 183 (2d Dep't 2014) ("[T]he qualified immunity afforded by N-PCL 720-a is not applicable to the sixth cause of action, since that claim seeks a declaratory judgment and injunctive relief rather than money damages."); see also Loren v. Arbittier, 2016 WL 5958103, at *8 (N.Y. Sup. Ct. Oct. 11, 2016) ("The court notes that the qualified immunity afforded by N-PCL 720-a is not applicable to the fifth cause of action in the first instance, since that cause of action seeks a declaratory judgment and injunctive relief rather than money damages.")

Under the State Courts' interpretation of their own statute, 720-a provides less protection from suit than the federal statute, and therefore, by the terms of the VPA, it is preempted. See 42 U.S.C. § 14502(a) ("[T]his chapter preempts the laws of any State to the extent that such laws are inconsistent with this chapter, except that this chapter shall not preempt any state law that provides additional protection from liability relating to volunteers or to any category of volunteers in the performance of services for a nonprofit organization or governmental entity.").

2) Whether Defendant has Proven the Statutory Elements as a Matter of Law

This leaves the question of whether Mr. Goodfriend has shown that there is no genuine dispute of material fact regarding each of the VPA's statutory elements.

There is no genuine dispute that SFCNY is a nonprofit organization within the meaning of the VPA. See Df. Reply SOMF ¶¶ 15-17. There is also no dispute that Mr. Goodfriend's actions with respect to SFCNY and the Locast service were within the scope of his duties as President, Treasurer, Chairman or as a member of the Board of SFCNY. Id. ¶ 31.

However, there is a genuine dispute of material fact concerning whether Mr. Goodfriend satisfies the VPA's definition of "volunteer".

The VPA defines "volunteer" as "an individual performing services for a nonprofit organization . . . who does not receive (A) compensation (other than reasonable reimbursement or allowance for expenses actually incurred); or (B) any other thing of value in lieu of compensation, in excess of $500 per year . . . ." 42 U.S.C. § 14505(6).

Mr. Goodfriend does not receive a cash salary from SFCNY, and plaintiffs' argument that his salary from SFC should be imputed to his position at SFCNY requires a speculative interpretation of the facts concerning SFC and SFCNY's relationship.

However, plaintiffs raise a genuine dispute of material fact concerning whether Mr. Goodfriend receives "any other thing of value" from his services at SFCNY. They state:

> ". . . Mr. Goodfriend also has received things of value. In December 2017, prior to the launch of Locast, Mr. Goodfriend signed an agreement with Nicholas & Lence Communications ("NLC"), which was charged with, among other things, securing

him "speaking and networking opportunities . . . at business
events in the NYC Metro areas" as well as "interviews with
business media." Terry Decl., Ex. 57 at SFCNY-000060274. . . .
As Plaintiffs' opening motion for partial summary judgment
outlined, Mr. Goodfriend also has developed commercial
relationships with the companies he solicits for Locast
funding and has used those relationships to make pitches for
his other companies, including making a proposal for his
family-owned consulting business to a potential Locast
investor. Terry Decl., Ex. 4. (Mr. Goodfriend writing to
Apollo executives in an email that he and his consulting team
were "putting together a presentation for you regarding"
expanding opposition to a corporate merger.).

. . .

Mr. Goodfriend has received other forms of benefits for his
activities related to SFCNY or Locast. Mr. Goodfriend founded
SFCNY and created Locast in part to benefit Sports Fans
Coalition ("SFC"), an advocacy organization he founded, and to
benefit himself. Per his April 11, 2017 memorandum to SFC's
board of directors, Mr. Goodfriend explained that he "would
like to launch a new initiative that would expand the reach
and scale of SFC but which would be controversial and involve
litigation"—SFCNY/Locast. Terry Decl., Ex. 20 at SFCNY-
000044166. In attempting to convince SFC's board of directors
to take on this project, Mr. Goodfriend stated that he
"believe[d] that this would be a good fight for us to mount,
particularly as it would expand our relationships with donors
and new fans." Id. . . . On November 22, 2017, Brian Hess, an
employee at Emmer Consulting (Mr. Goodfriend's lobbying firm)
and the executive director of Sports Fans Coalition, wrote
that Locast was a "vanity thing for David [Goodfriend]. He's
trying to create something he can attach his legacy to
regardless of Sports Fans Coalition. I think there are real
benefits that SFC can reap from this but that's not the real
motivation behind David's push on this project." Terry Decl.,
Ex. 22. A few days after Locast's launch, on January 18, 2018,
Mr. Goodfriend exchanged emails with his mother about Locast.
Terry Decl., Ex. 23. Mr. Goodfriend wrote: [I]f we lose in
court, I haven't lost much and probably gain reputation as a
fearless badass. Major, major figures have reached out to me
with a quiet "attaboy."

Pl. Counter SOMF ¶¶ 33, 34.

That suggests that through his work at Locast, Mr.

Goodfriend has gained valuable relationships with donors and

fans to the benefit of himself as well as SFC, enhancing his

reputation in the industry, and leading to future employment and other opportunities worth over $500 a year.

## CONCLUSION

While defendant may raise the VPA defense, there remains a genuine issue of material fact whether he receives "any other thing of value" from his services at SFCNY, and his motion for summary judgment is therefore denied.

So Ordered.

Dated:    New York, New York
          September 1, 2021

*Louis L. Stanton*
LOUIS L. STANTON
U.S.D.J.