UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN BROADCASTING COMPANIES, INC., DISNEY ENTERPRISES, INC., TWENTIETH CENTURY FOX FILM CORPORATION, CBS BROADCASTING INC., CBS STUDIOS INC., FOX TELEVISION STATIONS, LLC, FOX BROADCASTING COMPANY, LLC, NBCUNIVERSAL MEDIA, LLC, UNIVERSAL TELEVISION LLC, and OPEN 4 BUSINESS PRODUCTIONS, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> DAVID R. GOODFRIEND and SPORTS FANS COALITION NY, INC., <br><br> Defendants. | No. 19-cv-7136 (LLS) <br><br> **EXPEDITED TREATMENT REQUESTED** |

## MOTION TO ENFORCE THE PARTIES' CASE NARROWING AGREEMENT AND FOR ENTRY OF PERMANENT INJUNCTION

Plaintiffs American Broadcasting Companies, Inc., Disney Enterprises, Inc., Twentieth Century Fox Film Corporation, CBS Broadcasting Inc., CBS Studios Inc., Fox Television Stations, LLC, Fox Broadcasting Company, LLC, NBCUniversal Media, LLC, Universal Television LLC, and Open 4 Business Productions, LLC (collectively, "Plaintiffs") respectfully submit this Motion to Enforce the Parties' Case Narrowing Agreement and for Entry of Permanent Injunction in the above-captioned matter. The Parties have already agreed that, should the Court find that the exemption claimed by Defendants is inapplicable, the Court should "immediately" enter a permanent injunction. *See* Case Narrowing Agreement (December 17, 2019), ECF No. 243-2 at 5. Because Defendants David R. Goodfriend and Sports Fans Coalition NY, Inc. (collectively, "Defendants") are currently infringing Plaintiffs' copyrights on a breathtaking scale and at an

increasing pace, Plaintiffs seek expedited treatment of this Motion. Attached hereto is Exhibit 1, Plaintiffs' Proposed Permanent Injunction.

On December 17, 2019, following an early conference with the Court, Plaintiffs and Defendants (collectively, the "Parties") negotiated a detailed agreement to narrow the scope of this litigation by limiting claims, counterclaims, and discovery and by specifying the conditions and processes regarding remedies (the "Case Narrowing Agreement").[1] ECF No. 243-2. Recognizing that, absent the application of the Section 111(a)(5) Exemption (the "Exemption"), Defendants were systemically infringing thousands of Plaintiffs' copyrights by retransmitting broadcast programming without any license, the Parties agreed that "[i]f the Court determines that Mr. Goodfriend and SFCNY do not qualify for the [Section 111(a)(5)] Exemption," "the Court should *immediately* enter a Permanent Injunction barring Mr. Goodfriend and SFCNY, along with their officers, agents, servants, employees, attorneys, and other persons who are in active concert or participation with Mr. Goodfriend, SFCNY, or their officers, agents, servants, employees, or attorneys . . . from operating Locast."[2]  *Id.* at 5 (emphasis added).  Consistent with this commitment, the Parties agreed that Defendants would not engage in discovery of "[i]rreparable harm," *id.* at 6, nor would the Parties raise any other issues or contest this remedy—if the Court found that the Exemption did not apply, the Parties agreed that the Court should "immediately" enter the permanent injunction.

Defendants agreed to this provision in exchange for ample consideration, including but not limited to Plaintiffs' agreeing not to pursue any financial recovery from Mr. Goodfriend and other

---

[1] Although the Case Narrowing Agreement was confidential when signed, the Case Narrowing Agreement has since been filed publicly and therefore is no longer confidential.

[2] References to "Locast" are to a service operated by Defendants that provides access to local broadcast signals over the internet to consumers, which is also the subject of this litigation.

2

individuals or entities who are involved with Locast.  Plaintiffs also agreed not to pursue actual damages, and only to "pursue a statutory award . . . [not] exceed[ing] $10,000 per infringed and eligible work."  *Id.* at 3, 5.  In effect, the Parties agreed the central focus of the case would be whether the Exemption applied, but that upon a finding that it did not, an injunction should issue "immediately."[3]

On August 31, 2021, the Court ruled that Defendants are not exempt from liability for copyright infringement under Section 111(a)(5).  ECF No. 322 at 8 ("[D]efendants' affirmative defense is stricken.").  The Case Narrowing Agreement has now been triggered and, by its terms, should be enforced "immediately."  In light of the Parties' explicit agreement and Defendants' ever-expanding infringement, Plaintiffs ask for expedited treatment of this Motion and the entry of the permanent injunction.

Courts routinely hold that a party's acknowledgement that its conduct results in irreparable harm is entitled to "great weight" when assessing whether an injunction should issue.  *Alpha Capital Aktiengesellschaft v. Advanced Viral Rsch. Corp.*, No. 02-CV-10237 (GBD), 2003 WL 328302, at *5 (S.D.N.Y. Feb. 11, 2003); *accord Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir. 1999) (where parties' agreement "concede[d] that" a breach "shall entitle[] [the plaintiff] to injunctive relief, because it would cause irreparable injury," entry of permanent injunction was not an abuse of discretion); *id.* (stipulation to irreparable harm "might arguably be viewed as an admission"); *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 49 (2d Cir. 1999) (defendant's "acknowledge[ment]" in parties' agreement that breach "would cause 'irreparable injury'" was relevant to injunctive relief inquiry).  Here, Defendants have done more than just acknowledge

---

[3] The Parties agreed that Defendants would be free to seek a stay of the Permanent Injunction, and that Plaintiffs would be free to oppose a stay, but as to what happens upon a finding of liability, the Parties agreed to the immediate issuance of the injunction.

that irreparable harm results from their ongoing and pervasive copyright infringement; they expressly agreed that "the Court should *immediately* enter a Permanent Injunction" upon rejection if their affirmative defense.  ECF No. 243-2 at 5 (emphasis added).  The Court should hold Defendants to that carefully negotiated language and enter a permanent injunction.[4]

The Case Narrowing Agreement made sense in 2019, and the record in this case only confirms that a permanent injunction should issue.  Indeed, there is ample evidence that, absent injunctive relief, Plaintiffs will suffer irreparable harm; remedies at law (which have already been narrowed by agreement in favor of injunctive relief) will be inadequate; the balance of hardships favors relief now; and the public interest will be served by enforcing the Case Narrowing Agreement and stopping Defendants' massive infringement of Plaintiffs' copyrights.  *Barcroft Media, Ltd. v. Coed Media Grp., LLC*, 297 F. Supp. 3d 339, 355–56 (S.D.N.Y. 2017) (articulating the standard).

Plaintiffs will suffer irreparable harm from Defendants' infringement because any lost revenue and diminished reputation that Plaintiffs have suffered and will continue to suffer is "difficult if not impossible to measure."  *Broad. Music, Inc. v. Prana Hosp., Inc.*, 158 F. Supp. 3d 184, 195 (S.D.N.Y. 2016) ("'[C]ourts routinely find the harm suffered by plaintiffs in copyright cases to be 'irreparable' on the theory that lost sales or diminished reputation can be difficult if not impossible to measure."); *Elsevier Inc. v. Siew Yee Chew*, No. 17-CV-6225 (JGK) (GWG), 2019 WL 74606, at *12 (S.D.N.Y. Jan. 2, 2019), *report and recommendation adopted*, No. 17-CV-6225 (JGK), 2019 WL 10947099 (S.D.N.Y. Jan. 23, 2019) (same).

---

[4] In the Case Narrowing Agreement, the parties further agreed that they would attempt to agree on a statutory damages award and, if necessary, seek a brief bench trial on that issue.  Following resolution of the proper amount of statutory damages, the Court can issue a final judgment, reflecting both the injunction and the damages award.

As Plaintiffs' witnesses have testified, Defendants' operation of Locast has resulted in a loss of control over Plaintiffs' copyrighted works, resulting in an unmeasurable amount of reputational damage. Ex. 2 (Orlando Dep.) at 117:11-16 (testifying that a Locast user complained to a CBS station regarding the "lousy signal" on Locast); Ex. 3 (D. O'Connell Dep.) at 152:11-16 (testifying that Locast "take[s our] signal and . . . put[s] it out in a format that doesn't have the content creator or the business owner have any kind of control of quality"); Ex. 4 (Morris Dep.) at 171:14-20 ("Locast is . . . an unlicensed distributor of our content, and our agreements with our licensed distributors protect our quality of the content that we invest a lot of money in creating and take a lot of pride in creating and distributing."); *id.* 174:9-12 (testifying that Locast causes broadcasters to "los[e] the ability to . . . ensure the quality of our content was going to be maintained throughout the distribution chain").

The record also reflects that Plaintiffs will lose both advertising revenue and retransmission consent revenue, both of which are difficult to quantify. Plaintiffs receive advertising revenue based on the numbers of viewers who tune in to watch, which is measured by Nielsen ratings. Ex. 5 (Leone Dep.) at 91:12-16. But the viewers diverted to Locast are not measured by Nielsen. Leone Dep. 92:3-7; 95:18-99:13. Plaintiffs therefore lose an immeasurable amount of advertising revenue based on users who access their programming through Locast, rather than through over-the-air or pay-television services.

Locast's operations have undermined and will continue to undermine the retransmission consent regime established by Congress. For example, AT&T, in making its $500,000 "donation" to Locast, noted that it was "meant to give us some leverage during our Retrans negotiations." ECF No. 122 (Plaintiffs' SUMF) ¶ 46. ███████████████████████████
████████████████████████████████████████████████████

██████████████████████████████████ ECF No. 182 (Plaintiffs' SUMF Reply) ¶ 35. ██████

██████████████████████████████████████████████████████████

██████████████████████████████████ Plaintiffs' SUMF ¶ 48.

As for the Defendants, "it is axiomatic, in considering the balance of hardships, that an infringer cannot complain about the loss of ability to offer its infringing product." *Barcroft*, 297 F. Supp. 3d at 356 (internal citations and quotation marks omitted). Furthermore, "[c]ourts generally grant permanent injunctions where liability has been established and there is a threat of continuing infringement." *Malibu Media, LLC v. Baker*, No. 18-CV-3263 (JGK) (BCM), 2020 WL 3978302, at *7 (S.D.N.Y. June 18, 2020) (internal citation omitted).

In this case, there is not just a "threat of continuing infringement," but a certainty. Indeed, the scale of Locast infringement has greatly increased since this litigation commenced. At the time this lawsuit was filed in July 2019, Locast captured broadcast signals from 13 market areas and transmitted them over the internet. Plaintiffs' SUMF ¶ 11. As of May 2021 (when summary judgment was filed), Locast captured broadcast signals from 19 additional market areas,. Plaintiffs' SUMF ¶ 12. And as the Court observed in its summary-judgment order, Defendants are committed to continuing their nationwide expansion, which (absent an injunction) will only further increase the immeasurable injury to Plaintiffs.

Regarding the public interest, Defendants continue to enlist third parties in their systemic infringement, reaching agreements to include the Locast app (with infringing programing) on DISH devices, *see* Plaintiffs' SUMF ¶ 36, and Vizio televisions.[5] It is against the public interest for Defendants' infringement not only to continue, but entangle more third parties. *See Malibu*, 2020 WL 3978302, at *7 ("[T]hreat of continuing infringement" warrants permanent injunction).

---

[5] *See* https://www.nexttv.com/news/locast-adds-support-from-vizio-smart-tvs.


And while Defendants publicly claim to provide access to vital news and emergency information, the record demonstrates that, in every city in which Locast captures signals, Plaintiffs and their local affiliates stream the same news that Locast retransmits, but without advertisements demanding "contributions" to Locast.  Plaintiffs' SUMF and SUMF Reply ¶ 16.  Nor is there any evidence that a significant number of Locast users cannot access free television signals over the air.  ECF No. 229-1 (Schwartzman Dep.) at 65:14-20 (defense expert failing to provide any specific estimate of the number of individuals unable to receive over-the-air signals, testifying that he could offer nothing more than an estimate that the number was "greater than zero and somewhat, perhaps, a good bit greater than zero").  The public interest does not counsel in favor of allowing Defendants to continue infringing thousands of copyrights every day.  Thus, ''injunctive relief here will advance the public's compelling interest in protecting copyright owners' marketable rights to their work so as to encourage the production of creative work." *Barcroft*, 297 F. Supp. 3d at 356 (citations omitted).

The Parties entered an explicit Case Narrowing Agreement providing for exactly what should happen upon a finding that Defendants are not entitled to the Exemption.  That finding has been made.  Plaintiffs ask the Court to enforce the Case Narrowing Agreement, and to enter a permanent injunction against Defendants.

Dated: September 1, 2021                    Respectfully submitted,

/s/ Gerson A. Zweifach
Gerson A. Zweifach
Thomas G. Hentoff (*pro hac vice*)
Joseph M. Terry (*pro hac vice*)
Tian Huang (*pro hac vice*)
Jean Ralph Fleurmont (*pro hac vice*)
Angelica H. Nguyen
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC. 20005

650 Fifth Avenue
Suite 1500
New York, NY 10019

Tel: (202) 434-5000
gzweifach@wc.com
thentoff@wc.com
jterry@wc.com
thuang@wc.com
jfleurmont@wc.com
anguyen@wc.com

*Attorneys for All Plaintiffs*

Paul D. Clement (*pro hac vice*)
Erin E. Murphy (*pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, NW
Washington, DC 20004

Tel: (202) 389-5000
paul.clement@kirkland.com
erin.murphy@kirkland.com

*Attorneys for Plaintiffs Fox Television Stations, LLC and Fox Broadcasting Company, LLC*