**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

AMERICAN BROADCASTING
COMPANIES, INC., DISNEY
ENTERPRISES, INC., TWENTIETH
CENTURY FOX FILM CORPORATION,
CBS BROADCASTING INC., CBS
STUDIOS INC., FOX TELEVISION
STATIONS, LLC, FOX BROADCASTING
COMPANY, LLC, NBCUNIVERSAL
MEDIA, LLC, UNIVERSAL TELEVISION
LLC, and OPEN 4 BUSINESS
PRODUCTIONS, LLC,

      *Plaintiffs and Counterclaim-Defendants*,

          v.

DAVID R. GOODFRIEND and SPORTS
FANS COALITION NY, INC.,

      *Defendants and Counterclaim-Plaintiffs*.

Case No. 19-cv-7136-LLS

**REPLY IN SUPPORT OF**
**DEFENDANTS' MOTION TO EXCLUDE**
**PLAINTIFFS' EXPERT WITNESS JACK N. GOODMAN**

# TABLE OF CONTENTS

I.      **ARGUMENT** .................................................................................................. 1

   A.   Plaintiffs Fail To Show That Mr. Goodman's Opinions Are Relevant To Any Fact
     In Issue .............................................................................................................. 1

   B.   The Danger Of Mr. Goodman's Opinions Misleading The Jury And Confusing
     The Issues Far Outweighs Its Probative Value .................................................. 6

   C.   Mr. Goodman's Opinions Regarding The Legislative History And Purpose Of The
     Cable Act Are Improper Legal Opinions And Are Not Helpful To The Trier Of Fact ...... 6

   D.   Mr. Goodman's Bias Renders Objectivity Impossible And Renders His Opinions
     Unreliable And Unfairly Prejudicial .................................................................. 9

II.     **CONCLUSION** ........................................................................................... **10**

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Biomerieux, S.A. v. Hologic, Inc.*,
    No. CV 18-21-LPS, 2020 WL 583917 (D. Del. Feb. 6, 2020) ...........................................9, 10

*Cary Oil Co. v. MG Refining & Marketing, Inc.*,
    No. 99-CV-1725(VM), 2003 WL 1878246, at *5 (S.D.N.Y. Apr. 11, 2003) ..........................9

*In re Fosamax Prods. Liab. Litig.*,
    645 F. Supp. 2d 164, 191 (S.D.N.Y. Jul. 27, 2009) ...................................................................6

*Giles v. Rhodes*,
    No. 94 Civ. 6385 (CSH), 2000 WL 142056 (S.D.N.Y. Sept. 27, 2000) ...................................4

*Krekelberg v. City of Minneapolis*,
    991 F.3d 949 (8th Cir. 2021) .....................................................................................................9

*LaSalle Bank Nat'l Ass'n v. CIBC Inc.*,
    No 08-cv-8426 (WHP), 2012 WL 466785 (S.D.N.Y. Feb. 14, 2012). .....................................6

*In re Mirena IUD Prods. Liab. Litig.*,
    169 F. Supp. 3d 396, 467 (S.D.N.Y. 2016)...............................................................................6

*Music Sales Corp. v. Morris*,
    73 F. Supp. 2d 364 ....................................................................................................................8

*Orie v. Sec'y Penn. Dep't of Corr.*,
    940 F.3d 845 (3d Cir. 2019)...................................................................................................8, 9

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*,
    691 F. Supp. 2d 448 (S.D.N.Y. 2010)......................................................................................6

*In re Rezulin Prods. Liab. Litig.*,
    309 F. Supp. 2d 531 (S.D.N.Y. 2004).......................................................................................2

*United States v. Gatto*,
    No. 17-cr-0686 (LAK), 2019 WL 266944 (S.D.N.Y. Jan. 17, 2019).......................................5

*United States v. Stewart*,
    433 F.3d 273 (2d Cir. 2006)..............................................................................................4, 7, 9

**Other Authorities**

Fed. R. Evid. 702 ..........................................................................................................................1, 5

Defendants David R. Goodfriend and Sports Fans Coalition NY, Inc. ("Defendants") respectfully submit this Reply in support of their Motion to Exclude Plaintiffs' Expert Witness Jack N. Goodman, ECF No. 216 ("Defs.' Mot."). In Plaintiffs' Opposition to Locast's Motion to Exclude Plaintiffs' Expert Witness Jack N. Goodman, ECF No. 255 ("Pls.' Opp'n"), Plaintiffs mischaracterize Defendants' arguments, reiterate Mr. Goodman's irrelevant achievements as a communications law attorney, and regurgitate the same arguments regarding the meaning of 17 U.S.C. § 111(a)(5) made in their summary judgment briefs. What they fail to do, however, is articulate how Mr. Goodman's opinions "fit" any of the key issues of fact in this case. Mr. Goodman's opinions and testimony should therefore be excluded because they are not relevant, they impermissibly incorporate legal conclusions, and their probative value is substantially outweighed by the dangers of unfair prejudice, confusion of the issues, and misleading the jury.

## I.   ARGUMENT

### A.   Plaintiffs Fail To Show That Mr. Goodman's Opinions Are Relevant To Any Fact In Issue

First, despite Plaintiffs' attempts to argue otherwise, Mr. Goodman's opinions are not relevant to determining any "fact in issue." Fed. R. Evid. 702(a). Much of Plaintiffs' relevancy argument stems from a mischaracterization of Defendants' opening brief. Plaintiffs suggest that Defendants have argued that Mr. Goodman's opinions are irrelevant because Mr. Goodman did not "set out to interpret Section 111(a)(5) . . . or apply the elements of Section 111(a)(5)." Pls.' Opp'n at 3. Defendants made no such argument. Defendants instead argued that "[n]one of Mr. Goodman's opinions are relevant to determining ***the presence of facts*** supporting any of [Section 111(a)(5)'s] five factors." Defs.' Mot. at 6[1]; *compare* Pls.' Opp'n at 12 (mischaracterizing

---

[1] Unless otherwise indicated, all internal citations and quotations have been omitted and all emphasis has been added.

Defendants' arguments as "complain[ing] that Mr. Goodman's opinions are 'irrelevant' because they are *not* legal conclusions regarding the meaning and application of Section 111(a)(5)") (emphasis in original), *and* Defs.' Mot. at 5-6 (arguing that Mr. Goodman's report "contains no references to Locast, no references to SFCNY, and no references to ***any of the facts*** relevant to determining the application of Section 111(a)(5) . . . That is, it contains no discussions of any issues of fact that are relevant to this case."). As Defendants' actual argument makes clear, Mr. Goodman's opinions do not "fit" any of the ***issues of fact*** relevant to this case.[2]  *See In re Rezulin Prods. Liab. Litig*., 309 F. Supp. 2d 531, 540 (S.D.N.Y. 2004) (expert testimony must "have a valid connection to the pertinent inquiry").

Second, Plaintiffs argue that "generalized testimony" regarding the "background and development of retransmission consent" will be helpful to the trier of fact in determining whether Sports Fans Coalition NY, Inc. ("SFCNY") operates with any purpose of direct or indirect commercial advantage. Pls.' Opp'n at 5-8. But Defendants have not been accused of violating the 1992 Cable Act, and Plaintiffs offer no coherent reason *why* expert testimony about the history and purpose of retransmission consent would help the trier of fact to determine the applicability of this element, merely rehashing their summary judgment arguments about the benefit SFCNY's

---

[2] And, to the extent Plaintiffs argue that it would be inappropriate for an expert to offer an opinion concerning the issue of whether SFCNY retransmits broadcast television channels pursuant to Section 111(a)(5) of the Copyright Act, the reports of their experts Jeffrey A. Eisenach, Ph.D and Gregory J. Nachtwey should be excluded on that basis. *See* Najemy Decl. in Supp. of Defs.' Mots. to Exclude Pls.' Expert Witnesses Jack N. Goodman, Robert Corn-Revere, Jeffrey A. Eisenach, and Gregory J. Nachtwey ("Najemy Decl."), ECF No. 223, Ex. 6 (Eisenach Rep.) ¶ 14 ("I have been retained by Williams & Connolly, LLP, counsel for Plaintiffs . . . to assess, from an economic perspective, evidence related to whether Locast operates in a manner so as to provide 'direct or indirect commercial advantage,' to itself or others . . . and whether the economic evidence is consistent with Locast operating for the 'purpose of direct or indirect commercial advantage"); *Id.* Ex. 9 (Nachtwey Rep.) at 2 ("I have been asked to determine . . . whether Locast has acted in a manner consistent with a purpose of directly or indirectly pursuing commercial advantage for itself or its principal").

Locast service allegedly provides to *third parties*. *Id.* at 6-8. Plaintiffs spend multiple pages of their brief reciting their arguments that SFCNY is operating with a purpose of direct or indirect commercial advantage because (i) Locast "appear[s] on pay-television platforms;" (ii) cable companies allegedly benefit from Locast's operation; and therefore (iii) SFCNY receives a commercial advantage. *Id.* at 5-7.[3] Plaintiffs never argue that Mr. Goodman's opinions discuss any of this. Instead, Plaintiffs admit that Mr. Goodman's opinions and testimony provide nothing but "background information" about retransmission consent. *Id.* at 7. He provides no opinions about the Locast service's impact on this regime.

And, despite Plaintiffs' protestations, even if Mr. Goodman *did* provide any opinions making it more or less likely that Locast impacts bargaining during retransmission consent negotiations (he did not) this would not "fit" the issue of whether SFCNY operates with any purpose of direct or indirect commercial advantage. Plaintiffs' efforts to draw a connection between any alleged benefits to third parties and benefits to SFCNY fail. For example, Plaintiffs attempt to distinguish *In re Cellco Partnership*, where this Court rejected the argument that because playing ringtones provided a "potential commercial advantage to Verizon," a third party, Verizon customers were also playing ringtones for a "commercial advantage." 663 F. Supp. 2d 363, 375 (S.D.N.Y. 2009). In *Cellco*, the potential benefits to Verizon from customers playing its ringtones were *more* apparent than they are here. Yet this Court still rejected the argument that a

---

[3] Plaintiffs again mischaracterize Defendants' arguments, stating that "Locast also takes the position that, in evaluating the commercial advantage element of Section 111(a)(5), none of its commercial activities or purposes matter so long as it is registered as a 501(c)(3) organization and it fulfills its purported charitable purpose." Pls.' Opp'n at 5-6. Defendants have never made such an argument. Instead, Defendants have argued that an entity operating as a 501(c)(3) nonprofit in good standing "can be **presumed** to lack any purpose of direct or indirect commercial advantage," assuming, as is the case here, there is no evidence of activity that would cause the organization to lose its nonprofit status based on the presence of a commercial purpose in pursuit of private profit. Defs.' Mem. of Law in Opp'n to Pls.' Mot. for Partial Summ. J., ECF No. 248, 18-23, 26-29.

benefit to third parties provided a direct or indirect commercial advantage.[4]

Similarly, Mr. Goodman's testimony regarding the 1992 Cable Act is irrelevant because communications law has no relevance in this case—this case is about Section 111(a)(5) of the Copyright Act.  It is undisputed that SFCNY is not subject to regulation under the Cable Act of 1992, and Plaintiffs are not claiming that SFCNY violated the Cable Act of 1992.  As a result, the testimony should be excluded.  *See United States v. Stewart*, 433 F.3d 273, 311-12 (2d Cir. 2006) (determining that the district court properly exercised its discretion to exclude expert testimony about "facts supporting an insider trading charge," reasoning that this testimony "increased the potential for confusion" because these facts "were not relevant to the charge under consideration."); *Giles v. Rhodes*, No. 94 Civ. 6385 (CSH), 2000 WL 142056, at *4 (S.D.N.Y. Sept. 27, 2000) (determining that an expert's report on the subject of neurological damage was "not relevant to any central issue of fact in this case and would therefore serve no purpose" because "plaintiff will not claim a neurological injury at trial").  Furthermore, *Auther v. Oshkosh Corp.* stands for the proposition that an expert's own explanation of his testimony—and the limits of that testimony—is relevant to the inquiry of whether that testimony should be presented to a jury.  No. 09-CV-00527(A)(M), 2013 WL 5272959 (W.D.N.Y. Sept. 16, 2013).  As in *Auther*, the Plaintiffs' "current explanation of the relevance" of Mr. Goodman's testimony "is difficult to reconcile with [Mr. Goodman's] own understanding of the opinion he rendered."  *Id.* at *3; Najemy Decl. Ex. 2

---

[4] Plaintiffs' attempts to distinguish cases excluding irrelevant expert testimony are similarly unavailing.  In these cases, courts excluded expert testimony that was irrelevant to any issues under consideration.  For example, in *United States v. Tomasetta*, the court stated that "compliance with GAAP is relevant *only* as evidence of whether a defendant acted in good faith," after first holding that the expert's "testimony [was] not relevant to any element of the charged offense," since "[t]he Government does not charge Defendants with violating GAAP," and therefore his testimony "would confuse the jury and waste time."  No. 10-cr-1205(PAC), 2011 WL 6382562, at *2 (S.D.N.Y. Dec. 12, 2011).

(Goodman Dep. Tr.) at 49:12-19 (Q: "Mr. Goodman, just to make sure that we are all on the same page, you are not offering any testimony regarding the question of whether or not Locast operates for the purpose of direct or indirect commercial advantage; is that right?" A: "I am not offering any testimony on whether Locast qualifies for the exemption under the copyright act.").

Finally, "generalized testimony" is only appropriate if the "testimony 'fits' the facts of the case." Fed. R. Evid. 702, Advisory Committee's Note (2000 amendments). That is, generalized testimony that has at best a "tenuous" connection to any facts of consequence should be excluded. *See, e.g.*, *United States v. Gatto*, No. 17-cr-0686 (LAK), 2019 WL 266944, at *10 (S.D.N.Y. Jan. 17, 2019) ("Generalized testimony concerning the quantitative benefits of recruiting five-star high-school men's basketball players without controlling for the student-athletes' eligibility to compete at best would have been only tenuously relevant to the jury's materiality inquiry in this case."). The cases Plaintiffs cite are inapposite. In *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, the court determined that a "two page section" of the entire expert's report "describ[ing] relevant characteristics of hedge funds" was relevant to the remainder of his opinion "on investor due diligence and will provide the jury with important background information." 691 F. Supp. 2d 448, 468 n.113 (S.D.N.Y. 2010). Unlike in *Pension*, where the expert's report included a two-page background section, Mr. Goodman's report is *entirely* "generalized testimony." And in *LaSalle Bank Nat'l Ass'n v. CIBC Inc.*, the court excluded general testimony about industry practice, finding that it was irrelevant to the action for breach of contract and breach of warranty. No 08-cv-8426 (WHP), 2012 WL 466785, at *14 (S.D.N.Y. Feb. 14, 2012).

Because Mr. Goodman's opinions are not sufficiently tied to the facts of the case, they should be excluded.

**B. The Danger Of Mr. Goodman's Opinions Misleading The Jury And Confusing The Issues Far Outweighs Its Probative Value**

Downplaying Defendants' concerns about the dangers of Mr. Goodman's opinions confusing the issues and misleading the jury, Plaintiffs argue that the probative value of Mr. Goodman's opinions outweighs these dangers.  Pls.' Opp'n at 11-12.  Plaintiffs' argument rests on the position that Mr. Goodman's opinions have substantial probative value.  To the contrary, Mr. Goodman's opinions have no probative value.  And any arguable probative value is far outweighed by the dangers of unfair prejudice, confusing the issues, and misleading the jury.

The cases Plaintiffs cite are inapposite.  In *In re Mirena IUD Prods. Liab. Litig.*, the court determined that "it would be helpful to the jury to have an expert explain" the FDA's "complex regulatory process."  169 F. Supp. 3d 396, 467 (S.D.N.Y. 2016).  This made perfect sense in that products liability action where the FDA's willingness to accept certain warnings for the product was relevant to determining whether the product's label gave adequate warning about the risks of IUDs.  *Id.* at 408-409, 465.  Similarly, in *In re Fosamax Prods. Liab. Litig.*, the court found that an expert's testimony about FDA regulatory requirements "inform[ing] the standard of care in the pharmaceutical industry" would be helpful in a pharmaceutical products liability claim based on failure to warn.  645 F. Supp. 2d 164, 191 (S.D.N.Y. Jul. 27, 2009).  These cases show that expert testimony is helpful to explain complex subjects in cases where those subjects are relevant—not that it is helpful to introduce complex subjects through expert testimony where that topic is completely unrelated to any of the key issues.

**C. Mr. Goodman's Opinions Regarding The Legislative History And Purpose Of The Cable Act Are Improper Legal Opinions, Are Prejudicial, And Are Not Helpful To The Trier Of Fact**

Plaintiffs' also contend that Mr. Goodman does not usurp this Court's role by offering opinions on the purpose of the Cable Act and its legislative history.  First, they fault Defendants

6

for presenting a "contradictory" argument that "Mr. Goodman's opinions are 'irrelevant because they are *not* legal conclusions regarding the meaning and application of Section 111(a)(5)" and also arguing "that Mr. Goodman's opinions should be excluded because they *are* legal conclusions."   Pls.' Opp'n at 12 (emphasis in original).   Plaintiffs again blatantly misconstrue Defendants' argument that Mr. Goodman did not provide any opinions on the "***key issues of fact***" in this case.   Defs.' Mot. at 7.

Second, while Plaintiffs argue that Mr. Goodman will not usurp the court's role by offering improper legal opinions, they nevertheless confirm that "Mr. Goodman will explain how ***Congress recognized and sought*** to change a legal landscape that allowed pay-television providers to both compete with broadcast television and build their businesses in part on retransmitting broadcast television without meaningful compensation to broadcasters."   Pls.' Opp'n at 8.   Plaintiffs admit that they intend to use this testimony to suggest that Congress created the retransmission consent regime to serve benefit the Plaintiffs and "by interfering with a congressionally created system for its own commercial benefit, [SFCNY] is *disserving* the public interest and acting with a purpose of direct and indirect commercial advantage."   *Id.*   In other words, Plaintiffs plan to ask Mr. Goodman to supplant the Court's role in interpreting legislative history and reaching legal conclusions, all in an effort to paint SFCNY as a bad actor with respect to a regulatory regime that is unrelated to Section 111(a)(5) of the Copyright Act—the ***only*** Act under which Plaintiffs have brought claims.   Plaintiffs' motives are clear and allowing such improper testimony would be unduly prejudicial to Defendants.   It is improper for Plaintiffs to seek to tar Defendants by implying that they have run afoul of legislation unrelated to the actual claim at issue in the case.   *See, e.g.*, *Stewart*, 433 F.3d at 311-12 (determining that the district court properly exercised its discretion to exclude expert testimony about "facts supporting an insider trading charge," reasoning that this

7

testimony "increased the potential for confusion" because these facts "were not relevant to the charge under consideration."); *Orie v. Sec'y Penn. Dep't of Corr.*, 940 F.3d 845 (3d Cir. 2019) (finding the trial court properly excluded expert testimony pertaining to state senate rules that were irrelevant to what the former state senator was accused of and "could not have affected [the jury's] finding").  Moreover, Plaintiffs cannot argue that the Cable Act is relevant to that determination (it is not) while also arguing that Mr. Goodman's testimony about the meaning of the law, its legislative history, and Congressional intent does not usurp the Court's role because it is not the "applicable law."

Third, Plaintiffs' claim that "expert testimony regarding background legal principles are not legal conclusions requiring exclusion" (Pls.' Opp'n at 12) is both a far broader proposition than the case law supports and not applicable to Mr. Goodman's opinions, which go beyond general "legal principles."  Experts may testify to "the ordinary practices of those engaged in the business of law, legal studies, or law-related fields, or as to trade customs and usages of those so employed," but may not "express[] legal conclusions on the meaning" of the law.  *Music Sales Corp. v. Morris*, 73 F. Supp. 2d 364, 381 (striking affidavit of William F. Patry, which "almost wholly expresses legal conclusions on the meaning of the 1976 Act (except for some brief historical background on the Act)").

The cases Plaintiffs cite do not hold otherwise.  In *United States v. Bilzerian*, the government's expert gave "general background on federal securities regulation and the filing requirements of Schedule 13D, which he presented by showing a blank form."  926 F.2d 1285, 1294 (2d Cir. 1991).[5]  Mr. Goodman's report goes far beyond "general background" or "general

---

[5] Similarly, in *Cary Oil Co. v. MG Refining & Marketing, Inc.*, Plaintiffs offered "testimony to explain general corporate governance principles and the concept of veil-piercing."  No. 99-CV-1725(VM), 2003 WL 1878246, at *5 (S.D.N.Y. Apr. 11, 2003).

principles," interpreting legislative history and providing opinions on Congressional purpose. Najemy Decl. Ex. 1 (Goodman Rep.) at ¶¶ 13, 14, 15, 27, 29. And, because the defendant in *Bilzerian* did not object to "the expert's general testimony" at trial, "the issue was waived." *Id.* at 1294-95.

### D. Mr. Goodman's Bias Renders Objectivity Impossible And Renders His Opinions Unreliable And Unfairly Prejudicial

Plaintiffs attempt to minimize Mr. Goodman's history as their attorney, suggesting that he can be objective because he has not worked for ABC at Wilmer Cutler Pickering Hale and Dorr LLP since 2011 or the NAB since 2004, and now merely works in "private practice" *where his clients include* "broadcasters." Pls.' Opp'n at 15. Plaintiffs argue that Mr. Goodman can "objectively opine on the issues in this case," but in the same breath agree that it is a fact that Mr. Goodman "has represented broadcasters in retransmission consent negotiations" and has "advocated on behalf of the NAB to defend retransmission consent in court against cable companies." *Id.* In other words, Plaintiffs suggest that Mr. Goodman's testimony is relevant because "Locast seeks to undermine" the retransmission consent regime to the detriment of the broadcasters,[6] but he can "objectively opine" that the retransmission consent regime was intended

---

[6] It is also entirely irrelevant what impact Locast may or may not have on the broadcasters' ability to collect retransmission payments. The only relevant inquiry is whether SFCNY is operating within the bounds of Section 111(a)(5) of the Copyright Act—not whether SFCNY's actions have implications on other statutory regimes. The only possible purpose this testimony could serve is to unfairly, and prejudicially, case SFCNY has a bad actor. It should not be allowed. *See Stewart*, 433 F.3d at 311-12; *Orie*, 940 F.3d 845; *Krekelberg v. City of Minneapolis*, 991 F.3d 949, 958 (8th Cir. 2021) ("This [retaliation, harassment, and failure-to-investigate evidence] evidence was also unfairly prejudicial" and "translated into a major and irrelevant trial theme: the City is a bad actor.. . . Failing to exclude the bad-acts testimony was an abuse of discretion under Rule 403, as it was minimally if at all probative to the issues at trial and essentially put the City on trial for harassment, discrimination, and failure to respond, when the accesses were the only relevant source of City liability."); *Biomerieux, S.A. v. Hologic, Inc.*, No. CV 18-21-LPS, 2020 WL 583917, at *2 (D. Del. Feb. 6, 2020) (excluding "evidence of Defendants' economic and corporate issues unrelated to any

9

to "change a legal landscape" that left broadcasters "without meaningful compensation" even though Mr. Goodman represented broadcasters' interests in these very same negotiations and served as the NAB's counsel in connection with the same act that changed this landscape.  Pls.' Opp'n at 8; Najemy Decl. Ex. 1 (Goodman Rep.) at ¶¶ 4-8; Najemy Decl. Ex. 2 (Goodman Dep. Tr.) at 20:16-21:1, 36:4-38:6.  This position is untenable.  Mr. Goodman is far from a neutral participant.  His inescapable bias renders his opinions unreliable and the danger of unfair prejudice to Defendants outweighs any arguable probative value.

## II.   CONCLUSION

Expert testimony must be helpful and reliable.  Mr. Goodman's opinions are neither.  Because Defendants have established that Mr. Goodman's opinions are irrelevant, biased, unfairly prejudicial, and usurp the Court's role, and Plaintiffs have failed to show that his opinions are admissible, Mr. Goodman's initial report and all testimony based on that report should be excluded.[7]

 Dated: August 5, 2021                          Respectfully submitted,


                                                */s/ R. David Hosp*
                                                R. David Hosp
                                                Mark S. Puzella (admitted pro hac vice)
                                                Sheryl Koval Garko (admitted pro hac vice)
                                                Caroline K. Simons
                                                Laura B. Najemy (admitted pro hac vice)
                                                ORRICK, HERRINGTON & SUTCLIFFE LLP
                                                222 Berkeley Street, Suite 2000
                                                Boston, MA 02116
                                                Tel: (617) 880-1800
                                                dhosp@orrick.com

---

claim or defense" where it served no purpose other than painting Defendants as "chronic bad actors").

[7] To the extent Mr. Goodman's rebuttal report suffers from the same flaws, that report and all related testimony should similarly be excluded.

mpuzella@orrick.com
sgarko@orrick.com
csimons@orrick.com
lnajemy@orrick.com

Elizabeth E. Brenckman
Lindsay Rindskopf
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142
Tel: (212) 506-5000
ebrenckman@orrick.com
lrindskopf@orrick.com

Shane D. Anderson (admitted pro hac vice)
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Tel: (213) 629-2020
sanderson@orrick.com

Erin M.B. Leach (admitted pro hac vice)
ORRICK, HERRINGTON & SUTCLIFFE LLP
2050 Main St. Suite 1100
Irvine, CA 92614
Tel: (949) 567-6700
eleach@orrick.com

Mitchell L. Stoltz
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA  94109
Tel: (415) 436-9333
mitch@eff.org

*Counsel for Defendants and Counterclaim-Plaintiffs David R. Goodfriend and Sports Fans Coalition NY, Inc.*