UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN BROADCASTING COMPANIES, INC., DISNEY ENTERPRISES, INC., TWENTIETH CENTURY FOX FILM CORPORATION, CBS BROADCASTING INC., CBS STUDIOS INC., FOX TELEVISION STATIONS, LLC, FOX BROADCASTING COMPANY, LLC, NBCUNIVERSAL MEDIA, LLC, UNIVERSAL TELEVISION LLC, and OPEN 4 BUSINESS PRODUCTIONS, LLC,<br><br>*Plaintiffs and Counterclaim-Defendants*,<br><br>v.<br><br>DAVID R. GOODFRIEND and SPORTS FANS COALITION NY, INC.,<br><br>*Defendants and Counterclaim-Plaintiffs*. | Case No. 19-cv-7136-LLS<br><br>**ORAL ARGUMENT REQUESTED** |

**REPLY IN SUPPORT OF
DEFENDANTS' MOTION TO EXCLUDE
PLAINTIFFS' EXPERT WITNESS JEFFREY A. EISENACH, PH.D.**

# **TABLE OF CONTENTS**

I.   ARGUMENT ................................................................................................................... 1

    A. Plaintiffs Admit That Dr. Eisenach Offers No Testimony Relating to a Purpose of Commercial Benefit to SFCNY ........................................................................................ 1

    B. Dr. Eisenach Applies the Wrong Legal Standard in Examining SFCNY's Purpose ........... 4

    C. Dr. Eisenach's Opinions Regarding The Legislative History And Purpose Of The Cable Act Are Not Helpful To The Trier Of Fact And Should Be Excluded ..................... 8

    D. Any Arguably Probative Value Of Dr. Eisenach's Opinions Is Outweighed By The Dangers Of Confusion Of The Issues, Misleading The Jury, And Unfair Prejudice .......... 9

    E. Dr. Eisenach's Opinion That The Locast Service Is Not Free Is A Personal Opinion That Should Be Excluded .............................................................................................. 10

II.   CONCLUSION ............................................................................................................ 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Associated Music Publishers v. Debs Mem'l Radio Fund*,
    141 F.2d 852 (2d Cir. 1944)..................................................................................................7

*Bohemian Gymnastic Ass'n Sokol of City of New York v. Higgins*,
    147 F.2d 774 (2d Cir. 1945)..................................................................................................5

*Cmty. for Creative Nonviolence v. Reid*,
    490 U.S. 730 (1989)..............................................................................................................5

*Debs Mem'l Radio Fund v. Comm'r*,
    148 F.2d 948 (2d Cir. 1945)..........................................................................................5, 7, 8

*Malibu Media, LLC v. Baiazid*,
    152 F. Supp. 3d 496 (E.D. Va. 2015) ...................................................................................5

*Morris v. Nielsen*,
    374 F. Supp. 3d 239 (E.D.N.Y. 2019) ..................................................................................4

*Trinidad v. Sagrada Orden de Predicadores de la Privincia del Santisimo Rosario de Filipinas*,
    263 U.S. 578 (1924)..............................................................................................................5

**Statutes**

17 U.S.C. § 111(a)(5)........................................................................................3, 4, 5, 6, 7

26 U.S.C. § 501.......................................................................................................................4, 5

1909 Copyright Act...............................................................................................................4, 7

1992 Cable Act ................................................................................................................8, 9, 10

Defendants David R. Goodfriend and Sports Fans Coalition NY, Inc. ("Defendants") respectfully submit this Reply in support of their Motion to Exclude Plaintiffs' Expert Witness Jeffrey A. Eisenach, ECF No. 220 ("Defs.' Mot.").

## I. ARGUMENT

### A. Plaintiffs Admit That Dr. Eisenach Offers No Testimony Relating to a Purpose of Commercial Benefit to SFCNY

In opposing Defendants' Motion to exclude Dr. Eisenach, Plaintiffs make the somewhat stunning (though perhaps unavoidable) admission that Dr. Eisenach does not offer any testimony about any purpose of direct or indirect commercial advantage on the part of SFCNY. Rather, Dr. Eisenach's testimony relates solely to, "how Locast is able to ***benefit [] pay-television operators***, and how Locast has ***injured Plaintiffs***." Mem. of Law in Opposition to Defs.' Mot. to Exclude the Opinions and Testimony of Plaintiffs' Expert Jeffrey A. Eisenach, Ph.D., ECF No. 253 ("Pls.' Opp'n") at 16.[1] But neither of these topics is relevant to the issue of commercial purpose—which is limited solely to whether SFCNY has a purpose of direct or indirect commercial advantage *for itself*.[2] On this topic, Dr. Eisenach offers no opinions or analysis, and, indeed, he and Plaintiffs' other witnesses have admitted that no revenue collected by SFCNY has been used for the private benefit of SFCNY, its principals, officers, board members, or anyone associated with the organization. Instead, all funds raised by SFCNY have been used for the sole public purpose of operating the organization and providing access to over-the-air ("OTA") television programming to the public.

---

[1] Unless otherwise indicated, all internal citations and quotations have been omitted and all emphasis has been added.

[2] At various places in their Opposition Plaintiffs attempt to argue that Locast's operations have resulted in a benefit to itself; however, they do not dispute that all of the revenue collected relating to Locast is used to maintain, operate, and/or expand the service and that there is no evidence that any financial gains have been distributed to Mr. Goodfriend or others. *See infra* Section I.B.

Dr. Eisenach offers the opinion that SFCNY's Locast service benefits pay-TV platforms like DISH Network ("DISH") and AT&T during periods of limited duration when they are at an impasse in retransmission consent negotiations with broadcasters. He does not, however, offer any opinion that any pay-TV platforms are associated with or related to SFCNY. He does not offer any opinion that any pay-TV platform was involved in the creation of SFCNY or in defining the mission and purpose of launching the Locast service. Nor could he, as the undisputed evidence shows that: no pay-TV platform was involved in SFCNY's creation (Mem. of Law in Support of Defs.' Mot. for Summ. J. ("Defs.' MSJ"), ECF No. 124 14-15; Defs.' Statement of Material Facts Pursuant to Local Rule 56.1 ("SOMF"), ECF No. 125 ¶¶ 106, 110); no pay-TV platform funded SFCNY's creation or the development of the Locast service (*id.*); no pay-TV platform made any donation or any other form of payment to SFCNY for a year and a half from the time of the launch of the Locast service (Defs.' MSJ 14, 17; SOMF ¶ 121); the only major pay-TV platform that ever gave any money to SFCNY was AT&T, which had no prior connection to Mr. Goodfriend or anyone else associated with SFCNY, gave a one-time donation a year-and-a-half after the Locast service was launched, and has not given any money to SFCNY in the two years since that donation (Defs.' MSJ 17; SOMF ¶ 137); DISH, the only pay-TV platform with which Plaintiffs claim that Mr. Goodfriend has any association, was not involved in the creation of SFCNY, has never given any funding to SFCNY, and has paid Mr. Goodfriend less as a lobbyist after the Locast service was launched (Defs.' MSJ 12; SOMF ¶ 18); Decl. of Laura B. Najemy in Support of Defs.' Reply in Support of Their Mot. for Summ. J., ECF No. 180, Ex. 14; and SFCNY consistently advertises itself as an alternative to exorbitant pay-TV subscription fees, encouraging the public to "cut the cord" and abandon the pay-TV providers (Defs.' MSJ 31; SOMF ¶¶ 117, 120). As a result, neither

Plaintiffs nor Dr. Eisenach present any evidence of any relevant connection between any pay-TV providers and SFCNY.

Plaintiffs initially brought their claims alleging that SFCNY was a sham organization that was formed and funded by pay-TV interests, and that it was intended to enrich Mr. Goodfriend and others associated with SFCNY. They have been given full discovery and visibility into SFCNY's founding and funding, and this original theory of their case has been proved false. Given that neither Plaintiffs nor Dr. Eisenach can assert or opine that any pay-TV platform is associated with SFCNY or played any role in its founding, Dr. Eisenach's opinion that some pay-TV platforms have, for brief periods of time during retransmission consent negotiations, deemed the Locast service of marginal commercial benefit to them is entirely irrelevant to the Section 111(a)(5) analysis, and in particular, the central question in play in this trial: whether SFCNY launched the Locast service for the purpose of direct or indirect commercial advantage for itself or any of its officers or founders.

Similarly, Dr. Eisenach's opinion that SFCNY's Locast service in some way harms Plaintiffs by reducing the costs paid by members of the public in gaining access to the free OTA programming they are entitled to receive (Najemy Ex. 6[3] (Eisenach Rep.) at ¶ 16) is irrelevant to the issues in this case. Whether or not Plaintiffs' revenues might decline as a result of the Locast service is simply not relevant to whether SFCNY has a purpose of direct or indirect commercial advantage or benefit. As a result, not only does Plaintiffs' Opposition fail to overcome Defendants' arguments, it actually concedes that Dr. Eisenach's opinions are not related to any

---

[3] All references herein to "Najemy Ex. __" are to the exhibits attached to the Declaration of Laura B. Najemy in Support of Defendants' Motions to Exclude Plaintiffs' Expert Witnesses Jack N. Goodman, Robert Corn-Revere, Jeffrey A. Eisenach, Ph.D., and Gregory J. Nachtwey (ECF No. 223).

3

pertinent issue in this case.

### B. Dr. Eisenach Applies The Wrong Legal Standard In Examining SFCNY's Purpose

Plaintiffs also fail to coherently address the reality that Dr. Eisenach applies the wrong legal standard in assessing the issue of SFCNY's purpose. Because Dr. Eisenach applies an improper standard in his assessment, his testimony will not be helpful to the jury. Plaintiffs argue incoherently that nonprofit law, which has established standards to determine whether a 501(c)(3) nonprofit has an improper commercial purpose, has no relevance in assessing whether SFCNY is a nonprofit organization "without any purpose of direct or indirect commercial benefit." Pls.' Opp'n 7. They further knock down strawman arguments and attempt to improperly import language from fair use cases that address entirely different concerns under the 1909 Copyright Act unrelated to the purpose of Section 111(a)(5). *Id.* at 6-7.

Plaintiffs advance the somewhat absurd argument that Defendants have "failed to cite any authority suggesting that tax law definitions or requirements about the general purposes and activities of nonprofits are at all relevant to the interpretation of Section 111(a)(5)." *Id.* at 7. Not so. Defendants cite to Section 111(a)(5) itself, which provides an exemption to any "***nonprofit organization***, without purpose of direct or indirect commercial advantage." Defs.' Mot. at 7-8. The Copyright Act does not define what constitutes a "non-profit organization" without any such purpose, but tax law does. *See* 26 U.S. § 501(c)(3). It is well established that where Congress uses undefined terms that have acquired meaning under other areas of the law, it is presumed to have incorporated the meanings that those terms have acquired. *See Morris v. Nielsen*, 374 F. Supp. 3d 239, 249, 249 n.2 (E.D.N.Y. 2019) ("[W]hen Congress employs a term of art, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken. … This interpretive rule applies to phrases used in other

statutes."). Thus, for example, in determining whether someone is an "employee" such that they fall within the ambit of the Copyright Act's provisions identifying a "work-made-for-hire," courts properly look outside copyright law to the law of agency to determine whether a creator is, in fact, acting as an "employee." *Cmty. for Creative Nonviolence v. Reid*, 490 U.S. 730, 740-41, 751 (1989); *see also Malibu Media, LLC v. Baiazid*, 152 F. Supp. 3d 496, 499-500 (E.D. Va. 2015) (applying caselaw determining the meaning of the phrase "prevailing party" as used in the Fair Housing Amendments Act of 1988 and the Americans with Disabilities Act of 1990 to the same terms in § 505 of the Copyright Act).

In this instance, Congress exempted from copyright liability any secondary transmissions made by a "nonprofit organization, without any purpose of direct or indirect commercial advantage." 17 U.S.C. § 111(a)(5). The question of whether an organization is a "nonprofit" is determined under tax law. 26 U.S.C. § 501. And the question of whether a 501(c)(3) charitable nonprofit has any commercial purpose, whether direct or indirect (either of which would by definition be improper and strip it of its charitable status), is one that has been addressed repeatedly by courts such that a body of common law has developed giving those terms meaning. *See, e.g., Debs Mem'l Radio Fund v. Comm'r*, 148 F.2d 948, 951-952 (2d Cir. 1945); *Bohemian Gymnastic Ass'n Sokol of City of New York v. Higgins*, 147 F.2d 774, 776 (2d Cir. 1945); *see also Trinidad v. Sagrada Orden de Predicadores de la Privincia del Santisimo Rosario de Filipinas*, 263 U.S. 578, 580-81 (1924). Plaintiffs offer no coherent argument why the meanings and interpretations from that body of law do not apply in this case. Indeed, Plaintiffs' argument that the meanings developed under tax law should ***not*** apply runs counter to the rules of statutory construction.

Rather than address Defendants' arguments or provide a rationale why established law interpreting the terms used in Section 111(a)(5) should be ignored, Plaintiffs suggest that

Defendants' position would allow *any nonprofit* to benefit from Section 111(a)(5), render the phrase "without any purpose of direct or indirect commercial advantage" meaningless, and thereby, "effectively delete[] several words from the text of Section 111(a)(5) and [] render its limitations meaningless and subject to ready circumvention." Pls.' Opp'n at 7 n.6. But this is a strawman. It assumes that every nonprofit must, by definition, avoid having a "purpose of direct or indirect commercial advantage." As Plaintiffs are aware, this is not so. While 501(c)(3) organizations must avoid having such a purpose, Defendants have repeatedly pointed out that many other types of nonprofits (e.g., 501(c)(4) and 501(c)(6) organizations) can and do have commercial purposes. *See, e.g.*, Defs.' MSJ 2 n.1, 24 n.9; Mem. of Law in Support of Defs.' Mot. to Exclude Pls.' Expert Witness Gregory J. Nachtwey, ECF No. 222, 6. Those are "nonprofit organizations" that would nonetheless be excluded from the exemption provided by Congress in Section 111(a)(5).[4] But the body of case law identifying when a 501(c)(3) organization has an improper commercial purpose (whether direct or indirect) still applies—and Dr. Eisenach ignores that standard, instead ascribing a commercial *purpose* to commercial *activity*, even though that activity is intended to serve the charitable purpose as allowed under the law.

Plaintiffs knock down another strawman when they assert that Defendants take the position that SFCNY's "status as a 501(c)(3) forecloses an inquiry into 'any [such] purpose' that it may have had, regardless of what Section 111(a)(5) may say." Pls.' Opp'n at 3-4. Again, as Plaintiffs

---

[4] That is not to say that every 501(c)(4) or 501(c)(6) organization has a purpose of commercial advantage. Indeed, if the Court were dealing with a 501(c)(4) or a 501(c)(6) there would be no presumption of a lack of such a commercial purpose and it would be essential to evaluate whether it was operating with any direct or indirect purpose of commercial advantage. Similarly, as noted below, 501(c)(3) status does not guarantee the right to the exemption if there is evidence that the organization, in fact, has a commercial purpose under the relevant standards developed under established nonprofit case law. Dr. Eisenach offers no such evidence regarding SFCNY in this case, however.

are well aware, Defendants have never made such an argument. An inquiry into SFCNY's purpose is entirely appropriate, and were there any evidence that SFCNY was actually intended to be or was being used to funnel direct or indirect benefits to those associated with it, it would have a "purpose of direct or indirect commercial advantage" that would both strip it of its 501(c)(3) status, as well as prevent it from benefitting from the exemption provided in Section 111(a)(5). But Dr. Eisenach offers no opinion or evidence to that effect. Indeed, Plaintiffs experts admit that there is no such evidence supporting such findings. Decl. of Lindsay Rindskopf in Supp. of Defs.' Reply in Supp. of Defs.' Mot. to Exclude Pls.' Expert Witness Jeffrey A. Eisenach, Ph.D, Ex. 1 (Eisenach Dep. Tr.) at 116:10-19, 124:18-125:1, 126:19-22, 120:19-131:4, 131:22-132:9; Najemy Ex. 9 (Nachtwey Rep.) at 43 n.198. Rather he offers evidence only that the Locast service may benefit unrelated pay-TV platforms in certain circumstances, and that it may harm Plaintiffs' commercial interests in those circumstances. Those opinions are irrelevant to the pertinent question to be considered by the jury.

     Plaintiffs try to evade the established standard under which courts determine whether a nonprofit has any direct or indirect commercial purpose under 501(c)(3) by arguing that this Court should follow the Second Circuit's interpretation of a different phrase—"for profit"—under the 1909 Copyright Act in *Associated Music Publishers v. Debs Mem'l Radio Fund*, 141 F.2d 852 (2d Cir. 1944) ("*Debs I*"), referring to this as "the applicable *Debs* copyright decision." Pls.' Opp'n at 4. But they ignore the reality that the decision was decided under the earlier Act, that the standard enunciated in *Debs I* was specifically rejected in the 1976 Act, and that *Debs II* addressed the specific question at issue in this case—whether a charitable nonprofit has an impermissible commercial purpose. *Debs Mem'l Radio Fund, Inc. v. Comm'r*, 148 F.2d 948, 951-52 (2d Cir. 1945) ("*Debs II*"); *see also* Defs.' Mem. of Law in Opp'n to Pls.' Mot. for Partial Summ. J., ECF

No. 139, 20-22. *Debs II* found that evidence of commercial activity and revenue surplus did not evidence any sort of commercial purpose as long as the commercial activity advanced the charitable mission, and the revenue raised was used to fund the public benefit that was the purpose of the nonprofit. 148 F.2d at 951-52. Because Dr. Eisenach and Plaintiffs admit that all of these things are true in this case, Dr. Eisenach's opinion that SFCNY has a purpose of commercial benefit applies the incorrect legal standard, will not be helpful to the jury, and must be excluded.

### C. Dr. Eisenach's Opinions Regarding The Legislative History And Purpose Of The Cable Act Are Not Helpful To The Trier Of Fact And Should Be Excluded

Defendants have argued that Dr. Eisenach's testimony regarding the meaning of and Congressional intent behind the 1992 Cable Act and related statutes should be excluded either because that testimony is not relevant to the question of whether SFCNY has a commercial purpose, or because it is impermissible legal testimony. Defs.' Mot. at 2-3, 7, 12-13. In opposing these arguments, Plaintiffs take wholly contradictory positions, arguing simultaneously that the intent of the 1992 Cable Act is relevant because it is the "raison d'être for Locast and the key to understanding its commercial purpose," but that it is also not legal testimony because the statute is not "relevant to establishing liability in the case." *Compare* Pls.' Opp'n at 12 (arguing that the 1992 Cable Act is key to understanding "[t]he story of Locast, and the nature of its pursuit of commercial advantage") *with* Pls.' Opp'n at 13 (attempting to distinguish cases cited by Defendants regarding improper legal opinion by suggesting that, unlike this case, "the courts excluded testimony where the experts provided opinions and interpretations of statutes relevant to establishing liability in the case."). Both positions cannot be true. It simply cannot be the case that opinions regarding the Congressional intent behind the 1992 Cable Act are necessary to establishing liability in this case, and yet the intent behind the 1992 Cable Act is somehow not "relevant to establishing liability in th[is] case." As a result, testimony regarding Congressional

8

intent should be excluded.[5]

### D. Any Arguably Probative Value Of Dr. Eisenach's Opinions Is Outweighed By The Dangers Of Confusion Of The Issues, Misleading The Jury, And Unfair Prejudice

Plaintiffs argue that "this case involves complex issues beyond the ken of the average juror." Pls.' Opp'n at 15. But this is not really so. The central issue in this case is whether SFCNY operates the Locast service with the purpose of direct or indirect commercial advantage for itself or related individuals. As to that question, straightforward testimony from accounting experts who have examined SFCNY's financials will be relevant—and all of that expert testimony, both from Plaintiffs' and Defendants' experts, establishes that there has been no commercial advantage to Mr. Goodfriend or anyone else associated with SFCNY. *See generally* Decl. Of Angelica H. Nguyen in Supp. of Pls.' Mot. to Exclude Ops. and Test. of Defs.' Expert Thomas J. Raffa, CPA ("Nguyen Decl."), ECF No. 232, Ex. 1 (Raffa Rep.); Nguyen Decl., Ex. 2 (Raffa Rebuttal Rep.); *see also* Najemy Ex. 9 (Nachtwey Rep.) at 43 n.198.

Even to the extent that the court agrees that there is some relevance to evidence related to alleged commercial advantage to unrelated third parties that had nothing to do with the founding or funding of SFCNY, the nature of those asserted commercial advantages are simple to understand: Plaintiffs have an economic interest in receiving the highest retransmission consent fees they can get from pay-TV platforms, and pay-TV platforms have an economic interest in paying the lowest retransmission fees they can to Plaintiffs. During retransmission consent negotiations, when there is an impasse, Plaintiffs often stop delivering their signals to the pay-TV platform in order to encourage the platform's subscribers to quit the platform, thereby increasing the leverage Plaintiffs have to extract higher and higher retransmission consent fees. During those

---

[5] To the extent that an explanation of the economic regime established by the 1992 Cable Act is relevant to this case (it is not), that explanation can be given without reference to Congressional intent.

impasses, to mitigate that threat, pay-TV platforms alert their subscribers to alternative means by which the OTA programming that Plaintiffs have "taken down" on the platform can be watched—like the OTA signals themselves, Plaintiffs' own online offerings, and SFCNY's Locast service—because increasing access to that programming may reduce the odds that they will lose customers during those impasses.  As a result, Plaintiffs claim that the availability of the Locast service provides some unquantifiable commercial advantage to pay-TV platforms.

These concepts are easy for the average juror to understand, and lengthy testimony about the Congressional intent behind the 1992 Cable Act and complex economic theory about "economies of scale," "multi-sided markets," "BANTA," and complex negotiations strategy is hardly needed for jurors to understand the issues at hand.  Najemy Ex. 6 (Eisenach Rep.) at ¶¶ 16, 19, 20-27.  Indeed, it would appear that Plaintiffs seek to offer this testimony to make what is actually pretty simple seem enormously complex in an attempt to confuse the jurors.

### E. Dr. Eisenach's Opinion That The Locast Service Is Not Free Is A Personal Opinion That Should Be Excluded

Finally, while Plaintiffs assert that Dr. Eisenach's expertise includes "consumer protection issues" (Pls.' Opp'n at 14), they do not explain how that expertise in any way gives special insight into whether payments made by some Locast service users are "fees" or "donations."  Nor do they offer any indication how Dr. Eisenach's "expertise" gives him any better understanding of the "cost" of the "transactions" related to payments by Locast service users.

There is no dispute about the manner in which the system works.  The service is provided for free, but donation requests interrupt the free streaming service periodically.  SOMF ¶ 152-155.  If a donation of $5 per month is received, the service is no longer interrupted.  *Id.* at ¶ 156.  Individuals who cannot afford a donation of $5 per month, as well as individuals in certain categories, like first-responders, active military and veterans, and others, are offered uninterrupted

service to Locast service without making any donation or making any payment. *Id.* None of this is seriously in dispute, and Plaintiffs offer no basis on which Dr. Eisenach's testimony about whether the jury should consider this a "fee" or a "donation" would provide any greater insight than the jurors already have based on their common sense and the undisputed facts. As a result, this testimony should be excluded.

## II.   CONCLUSION

For the foregoing reasons, and those set forth in Defendants' Motion, the Court should grant Defendants' motion to exclude Dr. Eisenach's opinions and testimony.

Dated: August 5, 2021                                             Respectfully submitted,

*/s/ R. David Hosp*
R. David Hosp
Mark S. Puzella (admitted pro hac vice)
Sheryl Koval Garko (admitted pro hac vice)
Caroline K. Simons
Laura B. Najemy (admitted pro hac vice)
ORRICK, HERRINGTON & SUTCLIFFE LLP
222 Berkeley Street, Suite 2000
Boston, MA 02116
Tel: (617) 880-1800
dhosp@orrick.com
mpuzella@orrick.com
sgarko@orrick.com
csimons@orrick.com
lnajemy@orrick.com

Elizabeth E. Brenckman
Lindsay Rindskopf
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142
Tel: (212) 506-5000
ebrenckman@orrick.com
lrindskopf@orrick.com

Shane D. Anderson (admitted pro hac vice)
ORRICK, HERRINGTON & SUTCLIFFE LLP

777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Tel: (213) 629-2020
sanderson@orrick.com

Erin M.B. Leach (admitted pro hac vice)
ORRICK, HERRINGTON & SUTCLIFFE LLP
2050 Main St. Suite 1100
Irvine, CA 92614
Tel: (949) 567-6700
eleach@orrick.com

Mitchell L. Stoltz
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA  94109
Tel: (415) 436-9333
mitch@eff.org

*Counsel for Defendants and Counterclaim-Plaintiffs David R. Goodfriend and Sports Fans Coalition NY, Inc.*