LAW OFFICES

# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

GERSON A. ZWEIFACH
(202) 434-5534
gzweifach@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

September 15, 2021

**VIA ECF**

The Honorable Louis L. Stanton
United States District Judge
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007

   Re: *American Broadcasting Companies, Inc., v. Goodfriend*, No. 19-cv-7136-LLS

Dear Judge Stanton:

   We represent Plaintiffs in the above-captioned matter.  Pursuant to the parties' December 17, 2019 Case Narrowing Agreement, "[u]pon a finding that the Exemption does not apply, the Parties agree to ask the Court to schedule a brief bench trial addressed to a statutory damages award.  The Parties will first attempt to agree on a statutory award against SFCNY.  If the Parties cannot reach agreement, the Broadcasters agree to pursue a statutory award not to exceed $10,000 per infringed and eligible work, and solely against SFCNY."  Ex. 1 (Case Narrowing Agreement) at 5.  We ask the Court to set a status conference at its convenience to address the scheduling of a bench trial on damages.

   On September 3, 2021, after Your Honor found that the exemption did not apply, we sent a letter to defense counsel, inviting Defendants to agree to a statutory damages award.  Ex. 2 (September 3, 2021 Letter from G. Zweifach to D. Hosp).  Yesterday, on September 14, 2021, defense counsel informed Plaintiffs that Defendants "likely will not oppose" the motion for injunctive relief, but are otherwise "considering the status of the litigation."  Ex. 3 (September 14, 2021 email from D. Hosp to G. Zweifach).

   While we of course remain open to resolving the issue of statutory damages as the Case Narrowing Agreement provides (should the Defendants engage with us), we believe that the Court should schedule a bench trial before final judgment is entered, as well as before an appeal proceeds. That is what the parties' Case Narrowing Agreement contemplates, and in fact makes clear that Plaintiffs are "not to seek to collect on any damages award until after all appeals are exhausted." Ex. 1 at 5.

   Accordingly, we request the scheduling of a status conference to schedule a bench trial on statutory damages.

WILLIAMS & CONNOLLY LLP
September 15, 2021
Page 2

Respectfully submitted,

Gerson A. Zweifach

cc:     All Counsel of Record via ECF

# EXHIBIT 1

HIGHLY CONFIDENTIAL SETTLEMENT COMMUNICATION – SUBJECT TO RULE 408

# AGREEMENT

This Agreement ("Agreement"), which is effective as of December 17, 2019 ("Effective Date"), is made by and between:

American Broadcasting Companies, Inc. ("ABC"), a Delaware corporation with its principal place of business at 77 West 66th Street, New York, New York;

Disney Enterprises, Inc. ("DEI"), a Delaware corporation with its principal place of business at 500 S. Buena Vista Street, Burbank, California;

Twentieth Century Fox Film Corporation ("Twentieth Century Fox"), a Delaware corporation with its principal place of business at 10201 West Pico Blvd., Los Angeles, California;

CBS Broadcasting Inc. ("CBS"), a New York corporation with its principal place of business at 51 West 52nd Street, New York, New York;

CBS Studios Inc. ("CBS Studios"), a Delaware corporation with its principal place of business at 51 West 52nd Street, New York, New York;

Fox Television Stations, LLC ("Fox TV"), a Delaware corporation with its principal place of business at 1211 Avenue of the Americas, New York, New York;

Fox Broadcasting Company, LLC ("FBC"), a Delaware corporation with its principal place of business at 10201 West Pico Blvd., Los Angeles, California;

NBCUniversal Media, LLC ("NBCUniversal"), a Delaware limited liability company with its principal place of business at 30 Rockefeller Plaza, New York, New York;

Universal Television LLC ("Universal Television"), a New York limited liability company, with its principal place of business at 30 Rockefeller Plaza, New York, New York;

Open 4 Business Productions, LLC ("Open 4 Business"), a Delaware limited liability company, with its principal place of business at 100 Universal City Plaza, Universal City, California;

David R. Goodfriend ("Mr. Goodfriend"), an individual who resides in Bethesda, Maryland; and

Sports Fans Coalition NY, Inc. ("SFCNY"), a tax-exempt non-profit charitable organization, incorporated under the Not-For-Profit Corporation Law of the State of New York, with its principal place of business at 3075 Veterans Highway, Suite 131, Ronkonkoma, New York 11779.

ABC, DEI, Twentieth Century Fox, CBS, CBS Studios, Fox TV, FBC, NBCUniversal, Universal Television, and Open 4 Business are referred to collectively herein as the "Broadcasters." The Broadcasters, Mr. Goodfriend, and SFCNY are each referred to herein individually as a "Party" and collectively as the "Parties."

# RECITALS

**WHEREAS**, the Broadcasters filed civil action number 19-cv-7136 in the Southern District of New York against Mr. Goodfriend and SFCNY (the "Litigation," defined herein);

**WHEREAS,** in connection with the Litigation, the Broadcasters asserted a claim for copyright infringement against Mr. Goodfriend and SFCNY ("Copyright Claim");

**WHEREAS,** in connection with the Litigation, the Broadcasters requested relief from Mr. Goodfriend and SFCNY, including an injunction and monetary remedies;

**WHEREAS,** in connection with the Litigation, Mr. Goodfriend and SFCNY filed an answer to the Broadcasters' complaint, denying that they are liable to the Broadcasters for copyright infringement based on, among other reasons, exemption under 17 U.S.C. § 111(a)(5) ("Exemption");

**WHEREAS,** in connection with the Litigation, Mr. Goodfriend and SFCNY asserted fourteen affirmative defenses ("Affirmative Defenses");

**WHEREAS**, in connection with the Litigation, Mr. Goodfriend and SFCNY filed counterclaims for: (i) conspiracy in restraint of trade in violation of Section 1 of the Sherman Act; (ii) violation of the Donnelly Act (N.Y. Gen. Bus. Law § 340); (iii) violation of N.Y. Gen. Bus. Law § 349; (iv) unfair competition in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*; (v) unlawful competition in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*; and (vi) tortious interference with prospective economic advantage against the Broadcasters ("Counterclaims");

**WHEREAS,** the Parties each deny liability or wrongdoing, and no admission to the contrary should be implied by this Agreement or its terms; and

**WHEREAS**, the Parties mutually desire to limit the scope of the Litigation by proceeding to an expeditious trial only on the issue of the applicability of the Exemption, if that issue is not disposed of by summary adjudication. Nothing in this Agreement is intended to identify the trier of fact at trial, and the Parties reserve all rights with respect to that issue arising under the existing pleadings and the Federal Rules of Civil Procedure with respect to that issue.

**NOW, THEREFORE**, in consideration of all the representations, promises, and covenants described below, and for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

## A.     REPRESENTATIONS AND WARRANTIES

1.     Each Broadcaster represents and warrants that the person executing this Agreement on its behalf has full authority, competence, and power to bind it to this Agreement and all the terms hereof.

2.     Mr. Goodfriend represents and warrants that he has full authority, competence, and power to bind himself to this Agreement and all the terms hereof.

3.     SFCNY represents and warrants that the person executing this Agreement on its behalf has full authority, competence, and power to bind it to this Agreement and all the terms hereof.

## B.     ADDITIONAL DEFINITIONS

1.     The "Litigation" means the entire civil action No. 19-cv-7136 in the Southern District of New York, including the Copyright Claim, the applicability of the Exemption, the Affirmative Defenses, and the Counterclaims.

2.     "Withdraw" means to retract and covenant not to pursue, to waive any current or future right to pursue, and to forever release any option to pursue (in this Litigation or any other litigation no matter the forum), even though no formal, public amendment to the pleadings of the Litigation will be made.

3.     The "Locast service" means the service operated by SFCNY that provides access to local broadcast signals over the Internet to consumers, that is the subject of the Litigation.

4.     All references below to "documents" or "all documents" means non-privileged documents.

## C.     AGREEMENT TO LIMIT THE SCOPE OF THE LITIGATION

1.     The Broadcasters agree to Withdraw any claims for monetary remedies of any kind whatsoever (e.g., legal, equitable, statutory, direct, indirect, derivative, or otherwise) against Mr. Goodfriend concerning the Locast service. Mr. Goodfriend will remain named in the Litigation as a Party unless dismissed under one of the Reserved Defenses.  The Parties agree that the Broadcasters' agreement to withdraw claims for monetary damages against Mr. Goodfriend does not alter his status as a Defendant for any other purpose.  If Mr. Goodfriend is dismissed under one of the Reserved Defenses, the Broadcasters reserve the right to argue that Mr. Goodfriend can be considered for purposes of addressing whether the Exemption applies, and to ensure that any award of declaratory and injunctive relief applies to Mr. Goodfriend, and SFCNY reserves the right to oppose such arguments. For the avoidance of doubt, the Broadcasters are not agreeing that they have suffered no economic harm caused by the infringement pled in the Complaint, only that they are not going to seek a statutory or other monetary damages award against Mr. Goodfriend or any of the individuals identified in Paragraph C.2.

2.     The Broadcasters agree to covenant not to pursue, to waive any right to pursue, and to release any option to pursue (in this Litigation or any other litigation no matter the forum) claims for monetary remedies of any kind whatsoever (e.g., legal, equitable, statutory, direct, indirect, derivative, or otherwise) against Scott Landers, Brian Hess, DeVan Hankerson, Sue Emmer, Habiba Alcindor, Phillip Berenbroick, Brian Frederick, Chris Lewis, Hope Solo, Mark Walsh, Dave Zirin, Michael Kelly and IOT Locast LLC, as well as any other former or current Sports Fans Coalition Inc. or SFCNY board member or employee, arising from the operation of the Locast service up through the date of final judgment in this Litigation.  The Parties agree that nothing in this provision is intended to limit the Broadcasters' ability to call attention to the actions of or benefits to any or all of these persons or entities in pursuing claims against the Defendants,

notwithstanding that Defendants reserve the right to challenge the legal relevance of any such actions or benefits on grounds other than the waiver of claims for monetary remedies identified in the first sentence of this provision.

       3.     Mr. Goodfriend and SFCNY agree to Withdraw: (i) the Counterclaims; and (ii) all Affirmative Defenses in connection with the Litigation, except the Affirmative Defenses embodied in 17 U.S.C. § 111(a)(5), New York Not-for-Profit Corporation Law Section 720-a, and the Volunteer Protection Act ("Reserved Defenses"). Nothing in this Agreement will limit Mr. Goodfriend's right to seek dismissal in his personal capacity on grounds of the Reserved Defenses, except that the parties agree that, even if Mr. Goodfriend is dismissed, the Broadcasters may argue that the Court should continue to consider any purpose of direct or indirect commercial advantage to Mr. Goodfriend for purposes of addressing whether the Exemption applies, and SFCNY reserves the right to oppose such arguments.

       4.     The Parties agree that the withdrawal of the Counterclaims and the Affirmative Defenses is intended to limit the evidence introduced and the arguments asserted, to focus adjudication on the availability of the Exemption. The Parties recognize that there will be some arguments made and evidence relied upon concerning the extent of broadcast coverage and that there will be some arguments made and evidence introduced at trial concerning retransmission consent and the impact of Locast on retransmission consent. However, the Parties also agree that:

       (a) Mr. Goodfriend and SFCNY may argue that the Broadcasters could provide greater broadcast coverage than they do, and that providing that coverage could reduce consumer costs.

       (b) While all Parties may demonstrate that there are limits to broadcast coverage, if the Broadcasters argue that they have done everything to maximize that coverage within the law, Mr. Goodfriend and SFCNY are free to argue to the contrary, but they are not free to claim or argue that the Broadcasters are withholding broadcast coverage to extract retransmission consent fees.

       (c) Mr. Goodfriend and SFCNY may argue that the purpose of the Locast service is to make broadcast television more widely available and to encourage more people to avail themselves of free-to-air service, and the Broadcasters are free to argue that Mr. Goodfriend and SFCNY have other purposes, including purposes that disqualify them from the Exemption.

       (d) The Broadcasters may argue that a purpose of Mr. Goodfriend and SFCNY is to devalue retransmission consent rights for the direct and indirect commercial advantage of the defendants and their distribution partners and funders, and that this purpose is incompatible with the Exemption. Mr. Goodfriend and SFCNY reserves the right to dispute any such argument and the relevance thereof. The Parties agree that neither the Broadcasters' pursuit of these arguments nor Goodfriend and SFCNY's response to these arguments would entitle Mr. Goodfriend or SFCNY to claim or argue to the effect that the Broadcasters have created the need for retransmission consent fees or sought to maintain or enhance them by withholding broadcast coverage or discouraging viewers from enjoying free-to-air television.

       5.     The Parties agree to fully litigate the applicability of the Exemption according to the schedule outlined in Exhibit A hereto, as that schedule may be modified by agreement of the parties and/or by order of the Court.

6.      If the Court determines that Mr. Goodfriend and SFCNY do not qualify for the Exemption, the Parties agree that the Court should immediately enter a Permanent Injunction barring Mr. Goodfriend and SFCNY, along with their officers, agents, servants, employees, attorneys, and other persons who are in active concert or participation with Mr. Goodfriend, SFCNY, or their officers, agents, servants, employees, or attorneys (if they receive actual notice pursuant to Rule 65(d)(2) of the Federal Rules of Civil Procedure) from operating Locast. Nothing in this Agreement is intended to bar Mr. Goodfriend and SFCNY from applying for a stay of the Permanent Injunction pending appeal, nor to bar the Broadcasters from opposing any such stay. Upon a finding that the Exemption does not apply, the Parties agree to ask the Court to schedule a brief bench trial addressed to a statutory damages award. The Parties will first attempt to agree on a statutory damage award against SFCNY.  If the Parties cannot reach agreement, the Broadcasters agree to pursue a statutory award not to exceed $10,000 per infringed and eligible work, and solely against SFCNY. Mr. Goodfriend and SFCNY agree to waive a jury trial on statutory damages and not to pursue discovery directed towards actual damages or any other issue than the number of infringed and eligible works. The Broadcasters agree not to seek to collect on any damages award until after all appeals are exhausted, but do not agree not to oppose a stay of injunctive relief pending appeal.

7.      The Parties agree that they will not formally amend their pleadings to reflect this Agreement, but they are each free to bring this Agreement to the attention of the Court as necessary.

## D.      THE EFFECT OF THE AGREEMENT ON DISCOVERY

1.      The Parties have entered this Agreement in part to limit the discovery burden on each of them. They agree that discovery should be limited to matters relevant to the applicability of the Exemption, and to reasonable searches proportionate to the scope of the case defined herein and they have agreed to further limitations designed to reduce the burden of these proceedings. For the avoidance of doubt, the Parties have further agreed as follows:

2.      Mr. Goodfriend and SFCNY shall be entitled to seek discovery from the Broadcasters and/or third parties as follows:

(a) The Broadcasters will conduct a reasonable search of likely document custodians for non-privileged documents and/or communications that mention or directly relate to Mr. Goodfriend, Locast, SFCNY, Sports Fans Coalition Inc., the application of Section 111(a)(5) to any online technology (including Locast), or to the past or future treatment or interpretation of the phrases "other non-profit organization," and/or "direct or indirect commercial advantage.". The Parties will negotiate in good faith the lists of custodians and search terms that will be used. If the Parties are unable to reach an agreement concerning the custodians and search terms, they will present the issues to the Court, which will be asked for guidance consistent with the overall purpose of this Agreement.

(b) To the extent that filings including coverage maps available from the FCC do not address the extent of the Broadcasters' signal coverage and any gaps therein (including complaints related to signal strength), the Broadcasters will provide such materials.

(c) To the extent that the Broadcasters call a witness to testify about the Broadcasters' signal strength, efforts to provide broadcast coverage, and the role of the FCC in regulating those efforts and activities, the Broadcasters will make that witness available for deposition along with (at a reasonable time prior to such depositions) any and all materials that the witness may rely upon, and shall conduct a reasonable search for and produce documents reasonably sufficient to directly address the substance of the witness's testimony.

(d) To the extent that the Broadcasters call a witness to testify about the origins of retransmission consent and its business and legal rationale, the Broadcasters will make that witness available for deposition along with (at a reasonable time prior to such depositions) any and all materials that the witness may rely upon and shall conduct a reasonable search for and produce documents reasonably sufficient to directly address the substance of the witness's testimony.

(e) To the extent that the Broadcasters call one or more witnesses to testify about the impact of Locast on any negotiations for retransmission consent, the Broadcasters will make that witness available for deposition along (at a reasonable time prior to such depositions) with any and all materials that the witness may rely upon and shall conduct a reasonable search for and produce documents reasonably sufficient to directly address the substance of the witness's testimony.

3.      The list above is not intended to preclude the possibility of SFCNY and Mr. Goodfriend seeking additional discovery consistent with this Agreement. For the avoidance of doubt, Mr. Goodfriend and SCFNY will not be entitled to the following discovery,  except to the extent that such material is specifically called for  in Section D.2., above:

(a) Irreparable harm discovery.

(b) Discovery of the costs of creating and the profitability of copyrighted works, discovery of internal documents regarding retransmission consent, discovery of MPVD negotiations, depositions of Broadcasters' executives unless one of them is identified by the Broadcasters as a witness to a pay-tv platform invoking Locast in a retrans negotiation.

(c) Discovery of broadcast equipment purchases, amounts spent on broadcast, internal emails on broadcast coverage.

4.      The Broadcasters shall be entitled to discovery from Mr. Goodfriend and SFCNY and other third parties to include:

(a) IP addresses and other information in the possession custody or control of SFCNY, Mr. Goodfriend, or their agents that, together with other information, tends to identify where the users of Locast are physically located.

(b) all of the revenue derived from lobbying and consulting activity of the Emmer firm or any other lobbying or consulting firm or 501c3 entity associated with Mr. Goodfriend or any member of his family.

(c) all of the lobbying or consulting activity undertaken by Mr. Goodfriend, the Emmer firm or any other consulting firm associated with Mr. Goodfriend with respect to positions taken

on retransmission consent related issues, and other activity undertaken for the benefit or in support of DISH, DirecTV, ATT and any other pay-tv platform, including but not limited to email and other documents referencing the same.

(d) all payments, benefits, assistance or consideration that has flowed from DISH, DirecTv, ATT, and any other pay-tv platform or firm to Mr. Goodfriend, SFCNY, the Emmer firm, or any other lobbying or consulting firm or nonprofit organization associated with Mr. Goodfriend or any member of his family, including but not limited to email and other documents referencing the same.

(e) all sources of funding and support for SFCNY, including loans, in-kind services, and the like.

(f) neither Mr. Goodfriend nor SFCNY will oppose reasonable discovery from DISH, ATT, DirecTV and any other pay-tv platform or firm directed towards any presentations related to Locast, any pitches or requests for financial or distribution support, the rationale for any contributions or other payments that have flowed from those entities to any person or entity associated with Mr. Goodfriend.

(g) neither Mr. Goodfriend nor SFCNY will oppose reasonable discovery from booster or translator firms directed towards their operations, their relationships with pay-tv operators, and their relationships with broadcast stations affiliated with the Broadcasters.

(h) The list above is not intended to preclude the possibility of the Broadcasters seeking additional discovery consistent with this Agreement.

## E.    CONFIDENTIALITY

1.    This Agreement and all correspondence relating to this Agreement is confidential. This is requested by all Parties.

2.    Except as necessary to enforce this Agreement pursuant to Paragraph C.7, the Parties shall keep the existence of this Agreement and its terms confidential and no Party shall now or hereafter disclose such terms and particulars to any third party except: (a) as may be required by applicable law, regulation, or order of a governmental authority of competent jurisdiction; (b) to the professional legal and financial counsel representing such Party, provided that they likewise agree to keep the existence of this Agreement and its terms confidential; and (c) to the individuals exempted from monetary liability pursuant to Section C.2 herein, provided that they likewise agree to keep the existence of this Agreement and its terms confidential. With respect to subsection (a) of this Paragraph, such disclosing Party shall, to the extent possible, provide the other Party with prior written notice of such applicable law, regulation or order and, at the request of the other Party, use reasonable efforts to limit the disclosure of the terms and conditions of this Agreement, and to obtain a protective order or other confidential treatment. Where failure to disclose will place the Party in violation of a court order, such court order shall govern, and compliance with such court order shall not be a breach of this Section E. With respect to subsection (c) of this Paragraph, the only information concerning the Agreement that may be disclosed to such individuals is the fact that they are and will be exempt from any monetary liability.

3.     If asked by shareholders, lenders, analysts, or others with a legitimate interest in the status of claims no longer part of the Litigation pursuant to this Agreement, each Party or its publicly held parent entity may answer only that the claim in question is no longer being actively pursued at this time.

## F.     MISCELLANEOUS

l.     This Agreement embodies the complete and entire agreement between the Parties and supersedes any and all prior oral or written promises, representations, conditions, provisions, terms, or understandings between any or all the Parties, with respect to the prosecution of this Lawsuit and the Counterclaims.

2.     This Agreement may not be amended, modified, terminated, or waived, in whole or in part, without the prior written and authorized consent of all the Parties.

3.     This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to conflict of law provisions. The Parties agree that personal jurisdiction over and venue in any legal proceeding arising out of or relating to this Agreement is proper in the Southern District of New York.

4.     The Parties acknowledge that they have been represented by and have relied upon all desired counsel, legal and otherwise, in the negotiations and preparation of this Agreement, that they have read this Agreement, have had the opportunity to have its contents fully explained to them by counsel, and that they are fully aware of and understand all of its terms and legal consequences and agree to be bound thereto.

5.     This Agreement shall not be construed against the Party preparing it, but shall be construed as if all Parties jointly prepared this Agreement without any uncertainty or ambiguity being interpreted against any particular Party due that that Party's having written, modified, changed, or deleted any portion of this Agreement.

6.     This Agreement is binding on and inures to the benefit of the Parties and their respective successors and assigns.

7.     The inclusion of headings in this Agreement is for convenience only and shall not affect the construction or interpretation of the Agreement.

8.     This Agreement may be executed in counterparts with the same force and effect as if executed in one complete document. If one or more counterparts of this Agreement are executed, each such counterpart shall constitute a duplicate original hereof.

IN WITNESS WHEREOF, this Agreement has been duly executed by the Parties to be effective as of the Effective Date.

DRAFT - HIGHLY CONFIDENTIAL SETTLEMENT COMMUNICATION – SUBJECT TO RULE 408

**AGREED TO:**

_____

**Signed for ABC**

Name:_____

Title:_____

Date:_____


_____

**Signed for DEI**

Name:_____

Title:_____

Date:_____


_____

**Signed for Twentieth Century Fox**

Name:_____

Title:_____

Date:_____


_____

**Signed for CBS**

Name:_____

Title:_____

Date:_____


_____

**Signed for CBS Studios**

Name:_____

Title:_____


_____

**Signed for Mr. Goodfriend**

Name: DAVID GOODFRIEND

Title: N/A

Date: 12-20-19


_____

**Signed for SFCNY**

Name: _____

Title: CHAIRMAN

Date: 12-20-19

10

**AGREED TO:**

_____
**Signed for American Broadcasting**

**Companies, Inc.**

Name: James M. Kapenstein

Title: Vice President

Date: December 19, 2019

_____

**Signed for Disney Enterprises, Inc.**

Name:_____

Title:_____

Date:_____

_____

**Signed for Twentieth Century Fox**

**Film Corporation**

Name:_____

Title:_____

Date:_____

_____

**Signed for CBS**

Name:_____

Title:_____

Date:_____

_____
**Signed for Mr. Goodfriend**

Name:_____

Title:_____

Date:_____

_____

**Signed for SFCNY**

Name:_____

Title:_____

Date:_____

9

HIGHLY CONFIDENTIAL SETTLEMENT COMMUNICATION – SUBJECT TO RULE 408

**AGREED TO:**

**Signed for American Broadcasting**

**Companies, Inc.**

Name:_____

Title:_____

Date:_____

**Signed for Disney Enterprises, Inc.**

Name:_Daniel F. Grossman_____

Title:_Vice President_____

Date:_December 19, 2019_____

**Signed for Twentieth Century Fox**

**Film Corporation**

Name:_____

Title:_____

Date:_____

**Signed for CBS**

Name:_____

Title:_____

Date:_____

**Signed for Mr. Goodfriend**

Name:_____

Title:_____

Date:_____

**Signed for SFCNY**

Name:_____

Title:_____

Date:_____

9

HIGHLY CONFIDENTIAL SETTLEMENT COMMUNICATION – SUBJECT TO RULE 408

**AGREED TO:**

---

**Signed for American Broadcasting**

**Companies, Inc.**

Name:_____

Title:_____

Date:_____

---

**Signed for Disney Enterprises, Inc.**

Name:_____

Title:_____

Date:_____

**Signed for Twentieth Century Fox**

**Film Corporation**

Name:_Jonathan S. Headley_____

Title:_Treasurer_____

Date:_December 19, 2019_____

---

**Signed for CBS**

Name:_____

Title:_____

Date:_____

---

**Signed for Mr. Goodfriend**

Name:_____

Title:_____

Date:_____

---

**Signed for SFCNY**

Name:_____

Title:_____

Date:_____

9

**AGREED TO:**

| | |
|---|---|
| **Signed for ABC** | **Signed for Mr. Goodfriend** |
| Name:_____ | Name:_____ |
| Title:_____ | Title:_____ |
| Date:_____ | Date:_____ |
| | |
| **Signed for DEI** | **Signed for SFCNY** |
| Name:_____ | Name:_____ |
| Title:_____ | Title:_____ |
| Date:_____ | Date:_____ |

**Signed for Twentieth Century Fox**

Name:_____

Title:_____

Date:_____

*Naomi B. Waltman*

**Signed for CBS**

Name: Naomi B. Waltman

Title: Vice President & Assistant Secretary

Date: 12/19/19

9

*Naomi B. Waltman*

**Signed for CBS Studios**

Name: Naomi B. Waltman

Title: Vice President and Assistant Secretary

Date: 12/19/19

_____

**Signed for Fox TV**

Name:_____

Title:_____

Date:_____

_____

**Signed for FBC**

Name:_____

Title:_____

Date:_____

_____

**Signed for NBCUniversal**

Name:_____

Title:_____

Date:_____

HIGHLY CONFIDENTIAL SETTLEMENT COMMUNICATION – SUBJECT TO RULE 408

**Signed for CBS Studios**

Name:_____

Title:_____

Date:_____


**Signed for Fox TV**

Name:_____

Title: EVP and Chief Litigation Counsel

Date:_____12/19/19_____


**Signed for FBC**

Name:_____

Title: EVP and Chief Litigation Counsel

Date:_____12/19/19_____


**Signed for NBCUniversal**

Name:_____

Title:_____

Date:_____

HIGHLY CONFIDENTIAL SETTLEMENT COMMUNICATION – SUBJECT TO RULE 408

_____

**Signed for CBS Studios**

Name:_____

Title:_____

Date:_____

_____

**Signed for Fox TV**

Name:_____

Title:_____

Date:_____

_____

**Signed for FBC**

Name:_____

Title:_____

Date:_____

**Signed for NBCUniversal**

Name: DANIEL M. KUMMER

Title: SVP, Litigation, NBCUniversal Media LLC

Date: 12/20/19

10

HIGHLY CONFIDENTIAL SETTLEMENT COMMUNICATION – SUBJECT TO RULE 408

**Signed for Universal Television**

Name: DANIEL M. KUMMER

Title: SVP, Litigation, NBCUniversal Media, LLC

Date: 12/20/2019

**Signed for Open 4 Business**

Name: DANIEL M. KUMMER

Title: SVP, Litigation, NBCUniversal Media, LLC

Date: 12/20/19

# EXHIBIT 2

LAW OFFICES

# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

GERSON A. ZWEIFACH
(202) 434-5534
gzweifach@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

September 3, 2021

**VIA EMAIL** (dhosp@orrick.com)

R. David Hosp, Esq.
Orrick, Herrington & Sutcliffe LLP
222 Berkeley Street
Suite 2000
Boston, MA 02116-3740

      Re:   <u>Damages</u>

Dear Dave:

      In addition to providing for the immediate entry of an injunction, the parties' December 17, 2019 Case Narrowing Agreement also provides that, "[u]pon a finding that the Exemption does not apply, the Parties agree to ask the Court to schedule a brief bench trial addressed to a statutory damages award. The Parties will first attempt to agree on a statutory award against SFCNY." I am writing in an effort to reach agreement on statutory damages. There are 3,248 works at issue. You can find their copyright registration numbers in the Exhibits attached to the Amended Complaint.

      Plaintiffs agreed not to pursue an award in excess of $10,000 per infringed work. That is substantially less than we would expect to be awarded absent the agreed cap.

      Under 17 U.S.C. § 504(c)(1), "the copyright owner may elect . . . to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just." There is authority in the Second Circuit recognizing that, even without any suggestion of willful infringement, television programs support an award of at least $10,000 per work. *See Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.*, 996 F.2d

WILLIAMS & CONNOLLY LLP

R. David Hosp, Esq.
September 3, 2021
Page 2

1366, 1381 (2d Cir. 1993) (holding that award of "$15,000 for each work infringed is sustainable with or without a finding of willfulness" where the infringed works were television programs); *see also Am. Broad. Companies, Inc. v. Aereo, Inc.*, No. 12 Civ. 1540 (AJN), ECF No. 356 (Stipulated Consent Judgment and Permanent Injunction under which Plaintiffs were awarded $10,000 per work). Where there is evidence of willfulness, the numbers are much higher. *See Disney Enterprises, Inc. v. VidAngel, Inc.*, 16 Civ. 4109 (AB), ECF No. 494 (S.D.N.Y. June 17, 2019) (awarding $75,000 per work); *Nat'l Cable Television Ass'n, Inc. v. Broad. Music, Inc.*, 772 F. Supp. 614, 653 (D.D.C. 1991) ($45,000 per television program); *Columbia Pictures Television, Inc. v. Krypton Broadcasting of Birmingham, Inc.*, 259 F.3d 1186, 1195 (9th Cir. 2001) ($72,000 per infringed television program); *TVB Holdings (USA), Inc. v. HTV Int'l Ltd.*, No. 16-CV-1489 (DLI) (PK), 2018 WL 7076022, at *6, *7 (E.D.N.Y. Mar. 9, 2018) (awarding $30,000 per show).

As the summary judgment briefing reflects, there is ample evidence that Defendants launched Locast well aware of the litigation risk, but mindful of the visibility and other benefits that the lawsuit would generate for Mr. Goodfriend and Sports Fans Coalition, regardless of whether the case proved defensible. There's no need to recite that evidence here. The fact that Defendants, in the face of the Complaint, accelerated Locast's expansion and pressed forward with infringement "on a massive scale" is indisputable. *TVB Holdings*, 2018 WL 7076022, at *7.

We believe that, if a bench trial is required, the court would find that the statutory damages are far in excess of, and therefore limited only by, the $10,000 cap. As the Amended Complaint reflects, with 3,248 works at issue, that would be an award of $32.48 million.

If Defendants are interested in avoiding a bench trial on damages when it appears (at least to us) that they have already negotiated a substantial discount on the exposure, please let me know.

Sincerely,

Gerson A. Zweifach

cc:    Laura B. Najemy, Esq. (via email: lnajemy@orrick.com)

# EXHIBIT 3

**From:** Hosp, David <dhosp@orrick.com>
**Date:** Tuesday, Sep 14, 2021, 5:20 PM
**To:** Zweifach, Gerson <GZweifach@wc.com>, Najemy, Laura <lnajemy@orrick.com>
**Subject:** RE: attached

Gerson:

My client is currently considering the status of the litigation.  We intend to respond to Plaintiffs' motion for injunctive relief tomorrow and likely will not oppose that.  In the meantime, as you are aware, the Locast service has been taken down.  We will respond to your letter once my client has fully assessed the current situation.  Thanks very much.

R. David Hosp
Partner

Orrick
Boston
T +1-617-880-1886
M +1-781-864-6401
dhosp@orrick.com

-----Original Message-----
From: Zweifach, Gerson <GZweifach@wc.com>
Sent: Tuesday, September 14, 2021 10:56 AM
To: Hosp, David <dhosp@orrick.com>; Najemy, Laura <lnajemy@orrick.com>
Subject: FW: attached

Dave: following up on attached from sept 3. Regardless whether it's yes, no, or go away, I'd  welcome knowing your position before our next submission to Court. Thanks.

From: Zweifach, Gerson <GZweifach@wc.com<mailto:GZweifach@wc.com>>
Date: Friday, Sep 03, 2021, 9:30 AM
To: Hosp, David <dhosp@orrick.com<mailto:dhosp@orrick.com>>, 'Najemy, Laura'
<lnajemy@orrick.com<mailto:lnajemy@orrick.com>>
Subject: attached

_____

This message and any attachments are intended only for the addressee and may contain information that is privileged and confidential. If you have received this message in error, please do not read, use, copy, distribute, or disclose the contents of the message and any attachments. Instead, please delete the message and any attachments and notify the sender immediately. Thank you.

NOTICE TO RECIPIENT | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

For more information about Orrick, please visit http://www.orrick.com<http://www.orrick.com/>.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.